Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
Nicholas D. Acedo, Bar #021644
Jacob B. Lee, Bar #030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1699
kwieneke@swlfirm.com
cretts@swlfirm.com
nacedo@swlfirm.com
jlee@swlfirm.com

Attorneys for Defendants City of Phoenix,
Jim House, Russell Davis, Charles Masino,
Judy Townsend, Harvey Hamrick, Frank
Dimodica, Michael Jahn, and Phillip
Wolslagel

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Jean Milke, | NO. 2:15-cv-00462-ROS |
| Plaintiff, | |
| v. | |
| City of Phoenix;<br>Maricopa County;<br>Maricopa County Attorney William<br>Montgomery, in his official capacity; and<br>Detective Armando Saldate, Jr.;<br>Detective Robert Mills;<br>Detective Jim House;<br>Detective Russell Davis;<br>Detective Charles Masino;<br>Detective Judy Townsend;<br>Detective Harvey Ernie Hamrick;<br>Detective Frank DiModica;<br>Sergeant Silverio Ontiveros;<br>Lieutenant Michael Jahn; and<br>Phillip Wolslagel, in their individual<br>capacities, | **CITY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ................................ 1

    A.   Plaintiff's Arrest, Criminal Conviction, and Subsequent Release ................ 1

    B.   Plaintiff's Civil Claims ......................................................................... 3

    C.   Allegations Against the City Defendants ................................................. 5

        1.   Detective Russell Davis ................................................................ 5

        2.   Detective Jim House .................................................................... 5

        3.   Detective Judy Townsend ............................................................. 6

        4.   Detective Charles Masino ............................................................. 6

        5.   Detectives Harvey Hamrick and Frank DiModica ........................... 6

        6.   Lieutenant Michael Jahn .............................................................. 6

        7.   Sergeant Silverio Ontiveros ......................................................... 7

        8.   Detective Robert Mills ................................................................. 7

        9.   Phillip Wolslagel ........................................................................ 8

        10.   City of Phoenix ........................................................................ 10

II.   RELEVANT LEGAL PRINCIPLES ................................................................ 9

    A.   Rule 12(b)(6) ...................................................................................... 9

    B.   Personal Participation ......................................................................... 10

    C.   Qualified Immunity ............................................................................ 10

    D.   *Heck* Preclusion Doctrine .................................................................. 12

III.   CLAIMS AND DEFENDANTS THAT SHOULD BE DISMISSED ................... 12

    A.   Defendants Hamrick and DiModica Should Be Dismissed. ...................... 12

    B.   All Claims Based on Scott's Interview and Styers' Forensic
        Evidence Should be Dismissed. ............................................................ 12

    C.   All Claims Based on Plaintiff's Arrest Should Be Dismissed. .................. 14

    D.   All Claims Based on Trial Testimony Should Be Dismissed. .................... 15

    E.   Count I Should Be Dismissed. ............................................................. 16

        1.   Failure-to-disclose claim ............................................................ 16

        2.   Fabricated-evidence claim ........................................................... 17

    F.   Counts II, IX, and X Should Be Dismissed. .......................................... 20

i

1

## TABLE OF CONTENTS (continued)

2
**Page**

3
1.    The individual City Defendants are entitled to qualified
      immunity on Plaintiff's federal claim. ................................. 20

4
2.    The state and federal claims fail as a matter of law. ........................ 21

5
a.    Plaintiff cannot rebut the presumption of
      prosecutorial independence. .................................... 21

6
b.    The conclusion of Milke's criminal proceedings
      did not amount to a "favorable termination". ........................ 23

7

8
c.    Milke has not alleged facts showing that all of
      the individual City Defendants were a cause of
      her prosecution. ................................................ 25

9
d.    The City cannot be vicariously liable. .................................. 25

10
G.    Count III Should Be Dismissed. ................................ 25

11
H.    Count IV Should Be Dismissed. .................................... 27

12
I.    Count V Should Be Dismissed. .................................... 28

13
J.    Count VI Should Be Dismissed. .................................... 31

14
K.    Count VII Should Be Dismissed. .................................... 33

15
L.    Dismissal Should Be With Prejudice. ............................... 34

16
M.    Any Second Amended Complaint Must Comply With Rule 8. .................. 35

17
IV.    CONCLUSION ..................................................... 36

18

19

20

21

22

23

24

25

26

27

28

ii

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AE ex rel. Hernandez v. Cnty. of Tulare*
  666 F.3d 631 (9th Cir. 2012) ......................................................... 33

*Albright v. Oliver*
  510 U.S. 266 (1994) ..................................................................... 20

*Anderson v. Creighton*
  483 U.S. 635 (1987) ..................................................................... 11

*Ashcroft v. al–Kidd*
  131 S. Ct. 2074 (2011)........................................................... 10, 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...................................................... 9, 10, 28, 32

*Awabdy v. City of Adelanto*
  368 F.3d 1062 (9th Cir. 2004)..........................................21, 22, 23, 24

*Baker v. McCollan*
  443 U.S. 137, (1979) ..................................................................... 31

*Beets v. Cnty. of Los Angeles*
  669 F.3d 1038 (9th Cir. 2012) ................................................... 12, 13

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...............................................................passim

*Bosworth v. United States*
  No. CV 14-0283 DMG SS, 2014 WL 7466985
  (C.D. Cal. Dec. 30, 2014) ........................................................... 13

*Boyd v. Benton Cnty.*
  374 F.3d 773 (9th Cir. 2004) ....................................................... 30

*Bressi v. Ford*
  575 F.3d 891 (9th Cir. 2009) ....................................................... 22

*Briscoe v. LaHue*
  460 U.S. 325 (1983) ..................................................................... 15

*Brosseau v. Haugen*
  543 U.S. 194 (2004) ..................................................................... 11

*Browning v. Pend Oreille Cnty. Sheriff's Dep't*
  No. CV-070286-JLQ, 2008 WL 3852693 (E.D. Wash.
  Aug. 14, 2008), *aff'd*, 442 F. App'x 310 (9th Cir. 2011) ............... 30, 31

*Buckley v. Fitzsimmons*
  20 F.3d 789 (7th Cir. 1994) ........................................................... 13

*Campbell v. Brummett*
  504 U.S. 965 (1992) ..................................................................... 20

*Carroll v. Carman*
  135 S. Ct. 348 (2014)............................................................... 10, 11

*Cassettari v. Nevada Cnty., Cal.*
  824 F.2d 735 (9th Cir. 1987) ......................................................... 28

## TABLE OF AUTHORITIES (continued)

**Page**

*Celestin v. City of New York*
581 F. Supp. 2d 420 (E.D.N.Y. 2008) .......................................................... 28

*Christensen v. Armstrong*
473 F. App'x 652 (9th Cir. 2012) ................................................................ 23

*Chuman v. Wright*
76 F.3d 292 (9th Cir. 1996) ........................................................................ 10

*City & Cnty. of San Francisco, Calif. v. Sheehan*
135 S. Ct. 1765 (2015) ................................................................................ 11

*City of Los Angeles v. Heller*
475 U.S. 796 (1986) .................................................................................... 33

*City of Oklahoma City v. Tuttle*
471 U.S. 808 (1985) .................................................................................... 34

*Cunningham v. City of Wenatchee*
345 F.3d 802 (9th Cir. 2003) ...................................................................... 14

*Deskovic v. City of Peekskill*
894 F. Supp. 2d 443 (S.D.N.Y. 2012) ........................................................ 31

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001) .......................................................... 17, 18, 19

*Donahoe v. Arpaio*
869 F. Supp. 2d 1020 (D. Ariz. 2012) ........................................................ 28

*Donahoe v. Arpaio*
No. CV10-2756-PHX-NVW, 2011 WL 5119008
(D. Ariz. Oct. 28, 2011) ........................................................................ 35, 36

*Escamilla v. City of Santa Ana*
796 F.2d 266 (9th Cir. 1986) ...................................................................... 29

*Fernandez v. City of Phoenix*
No. CV 11-02001-PHX-FJM, 2012 WL 2343621
(D. Ariz. June 20, 2012) .............................................................................. 33

*Ford v. Revlon, Inc.*
734 P.2d 580 (Ariz. 1987) .......................................................................... 25

*Franklin v. Terr*
201 F.3d 1098 (9th Cir. 2000) .................................................................... 15

*Frazier v. Cupp*
394 U.S. 731 (1969) .................................................................................... 14

*Frey v. Stoneman*
722 P.2d 274 (Ariz. 1986) .................................................................... 23, 24

*Galloway v. Cnty. of Los Angeles*
No. CV 09-1775 SJO (JCG), 2012 WL 3887060
(C.D. Cal. Aug. 15, 2012), *report and recommendation adopted*,
2012 WL 3887058 (C.D. Cal. Sept. 7, 2012) ............................................ 30

*Gausvik v. Perez*
345 F.3d 813 (9th Cir. 2003) ...................................................................... 19

iv

<u>**TABLE OF AUTHORITIES (continued)**</u>

<u>**Page**</u>

*Giglio v. U.S.*
  405 U.S. 150 (1972) ..................................................... 16

*Hall v. City of Los Angeles*
  697 F.3d 1059 (9th Cir. 2012) .............................. 17, 26

*Hansen v. Black*
  885 F.2d 642 (9th Cir. 1989) ...................................... 10

*Harper v. City of Los Angeles*
  533 F.3d 1010 (9th Cir. 2008) ................................... 22

*Heck v. Humphrey*
  512 U.S. 477 (1994) ........................................... passim

*Hobbs v. City of Long Beach*
  534 F. App'x 648 (9th Cir. 2013) .............................. 25

*Hubbs v. Alamao*
  360 F. Supp. 2d 1073 (C.D. Cal. 2005) ..................... 14

*Imbler v. Pachtman*
  500 F.2d 1301 (9th Cir. 1974) ...................................... 3

*Johnson v. Brady*
  No. CV–14–1875–PHX–DGC, 2015 WL 390794
  (D. Ariz. Jan.28, 2015) ............................................... 34

*Jones v. Edmond*
  No. 1:14-CV-31 (WLS), 2014 WL 5801536
  (M.D. Ga. Nov. 7, 2014)............................................. 29

*Jones v. Williams*
  297 F.3d 930 (9th Cir. 2002) ...................................... 10

*Kyles v. Whitley*
  514 U.S. 419 (1995) ..................................................... 16

*Lacey v. Maricopa Cnty.*
  693 F.3d 896 (9th Cir. 2012) ...................................... 27

*Larez v. City of Los Angeles*
  946 F.2d 630 (9th Cir. 1991) ...................................... 32

*Lauderdale v. Permanente Med. Grp., Inc.*
  845 F.2d 1029 (9th Cir. 1988) ................................... 29

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001) ........................................ 1

*Lisker v. City of Los Angeles*
  780 F.3d 1237 (9th Cir. 2015) ................................... 15

*Livers v. Schenck*
  700 F.3d 340 (8th Cir. 2012) ...................................... 29

*Mayes v. City of Hammond, IN*
  442 F. Supp. 2d 587 (N.D. Ind. 2006)........................ 16

*McHenry v. Renne*
  84 F.3d 1172 (9th Cir. 1996) ...................................... 35

v

1

## TABLE OF AUTHORITIES (continued)

2

**Page**

3    *Milke v. Mroz*
        339 P.3d 659 (App. 2014) .......................................................... 3, 24

4    *Milke v. Ryan*
        711 F.3d 998 (9th Cir. 2013) ................................................. 3, 22, 24

5    *Milke v. Ryan*
        No. CV98-60-PHX-RCB, 2010 WL 383412

6    (D. Ariz. Jan. 29, 2010) ............................................................... 2

7    *Milke v. Schriro*
        No. CV-98-0060-PHX-RCB, 2006 WL 3421318

8    (D. Ariz. Nov. 27, 2006) .............................................................. 2

     *Monell v. Dep't of Soc. Servs. of City of New York*
9        436 U.S. 658 (1978) ......................................................... 4, 5, 33

10   *Monteilh v. Cnty. of Los Angeles*
        820 F. Supp. 2d 1081 (C.D. Cal. 2011) ........................................ 29

11   *Moore v. Kayport Package Exp., Inc.*
        885 F.2d 531 (9th Cir. 1989) ..................................................... 34

12
     *Moran v. Klatzke*
13       682 P.2d 1156 (Ariz. App. 1984) ............................................... 23

14   *Murphy v. Coconino Cnty. Sheriff's Office*
        No. CV-08-8089-PCT-DGC, 2009 WL 3219275

15   (D. Ariz. Oct. 6, 2009) .............................................................. 34

16   *Newman v. Cnty. of Orange*
        457 F.3d 991 (9th Cir. 2006) ................................................ 21, 23

17   *Nickel v. Woods*
        229 F. App'x 432 (9th Cir. 2007) ............................................... 19

18   *Osborne v. Rose*
        133 F.3d 916 (4th Cir. Jan. 20, 1998) ......................................... 21

19
     *Pitt v. D.C.*
20       491 F.3d 494 (D.C. Cir. 2007) ................................................... 21

21   *Plumhoff v. Rickard*
        134 S. Ct. 2012 (2014) ............................................................ 10

22   *Rehberg v. Paulk*
        132 S. Ct. 1497 (2012) ............................................................ 15

23   *Reichle v. Howards*
        132 S. Ct. 2088 (2012) ....................................................... 11, 21

24   *Robbins v. Oklahoma*
        519 F.3d 1242 (10th Cir. 2008) .................................................. 10

25
     *Saucier v. Katz*
26       533 U.S. 194 (2001) ............................................................... 11

27   *Scott v. Ryan*
        686 F.3d 1130 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 120 (2013) ............. 12

28

## <u>TABLE OF AUTHORITIES (continued)</u>

<u>Page</u>

*Slade v. City of Phoenix*
541 P.2d 550 (Ariz. 1975) ........................................................................ 21

*Smiddy v. Varney*
665 F.2d 261 (9th Cir. 1981) .................................................................... 21

*Smith v. City of Hemet*
394 F.3d 689 (9th Cir. 2005) .................................................................... 12

*Sparling v. Hofman Constr. Co.*
864 F.2d 635 (9th Cir. 1988) .................................................................... 35

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) .................................................................... 10

*Stapley v. Pestalozzi*
733 F.3d 804 (9th Cir. 2013) .................................................................... 28

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2012) .................................................................. 34

*State v. Milke*
865 P.2d 779 (Ariz. 1993) .......................................................................... 2

*State v. Millanes*
885 P.2d 106 (Ariz. App. 1994) ............................................................... 24

*Styers v. Schriro*
547 F.3d 1026 (9th Cir. 2008), *cert. denied*, 130 S. Ct. 379 (2009) .............. 12

*Tarantino v. Citrus County Government*
2014 WL 4385550 (M.D. Fla. 2014) .................................................... 29, 30

*Taylor v. Barkes*
135 S. Ct. 2042 (2015) ........................................................................ 11, 16

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989) .................................................................. 10

*Ting v. United States*
927 F.2d 1504 (9th Cir. 1991) ............................................................ 29, 30

*United States v. Haswood*
350 F.3d 1024 (9th Cir. 2003) .................................................................. 26

*United States v. Miller*
984 F.2d 1028 (9th Cir. 1993) .................................................................. 26

*Usher v. City of Los Angeles*
828 F.2d 556 (9th Cir. 1987) .................................................................... 21

*Wallace v. Kato*
549 U.S. 384 (2007) ........................................................................... 15, 20

*Walsh v. Eberlein*
560 P.2d 1249 (Ariz. App. 1976) ............................................................. 22

*Watkins v. City of Oakland*
145 F.3d 1087 (9th Cir. 1998) .................................................................. 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES (continued)</u>

<u>Page</u>

*Williams v. Dep't of Corr.*
  No. CV 1–06–1793–RCC, 2009 WL 1598441
  (E.D. Cal. June 5, 2009) ................................................................. 34
*Wilson v. Layne*
  526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ......................................... 11, 29
*Yousefian v. City of Glendale*
  779 F.3d 1010 (9th Cir. 2015) ...................................................... 23

**Statutes**

42 U.S.C. § 1983 .............................................................................. passim

**Other Authorities**

Ariz. Const. art. II, § 10 .............................................................................. 24

**Rules**

Rule 12(b), Federal Rules of Civil Procedure ........................................... 1, 9, 10

Pursuant to Fed.R.Civ.P. 12(b), Defendants City of Phoenix, Robert Mills, Jim House, Russell Davis, Charles Masino, Judy Townsend, Harvey Hamrick, Frank DiModica, Silverio Ontiveros, Michael Jahn, and Phillip Wolslagel ("City Defendants") move to dismiss Plaintiff's First Amended Complaint ("FAC").[1]

## I.    ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The following factual allegations derive from the FAC, and are accepted as true for purposes of this Motion only because they must be at this pleading stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The recounted procedural history relies in part on judicial decisions by the Arizona Court of Appeals, the Arizona Supreme Court, the United States District Court for the District of Arizona, and the Ninth Circuit Court of Appeals pertaining to Plaintiff's criminal proceedings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (court may take judicial notice of another court's opinion, but "not for the truth of the facts recited therein").

### A.    Plaintiff's Arrest, Criminal Conviction, and Subsequent Release

On December 2, 1989, Debra Milke and her four-year-old son, C.M., lived with Milke's boyfriend, Jim Styers, in his Phoenix apartment.  (Dkt. 36, ¶¶ 32, 41.)  That morning, Styers, with Milke's permission, took C.M. to Metrocenter Mall to see Santa Claus.  (Id., ¶ 33.)  At 2:45 p.m., Styers reported to police that he "lost" C.M. at the Mall; he also informed Milke.  (Id., ¶ 34.)  Police searched the Mall and parking lot to no avail.  (Id., ¶¶ 36-37.)  As part of their investigation, police interviewed Styers and his friend, Roger Scott, both of whom made suspicious statements.  (Id., ¶ 43.)  The next day, Scott ultimately confessed that he and Styers were "involved in" C.M.'s murder.  (Id., ¶¶ 57, 58.) Scott led police to C.M.'s body, about 20 miles from the Mall in a dry desert wash.  (Id., ¶ 59.)  He had been shot three times in the back of the head.  (Id.)  In talking with police,

---

[1] Defendant Armando Saldate, whom Plaintiff alleges "was a duly appointed and acting Detective of the" Phoenix Police Department at all times relevant to the FAC (Dkt. 36, ¶ 19), has filed a separate motion to dismiss. The City Defendants incorporate arguments in his motion only to the extent noted below.

1  Scott "implicated" Milke in the crime.  (Id., ¶ 62.)  Milke alleges police fabricated that
2  Scott implicated her in C.M.'s murder.[2] (Id.)

3      Earlier that day, on December 3, 1989, Milke had driven to her father's house in
4  Florence.  (Dkt. 36, ¶ 41.)  After learning C.M.'s fate and Milke's alleged involvement,
5  police traveled to Florence to speak with Milke.  (Id., ¶ 64.)  Police escorted her to a local
6  county precinct, where Phoenix Police Detective Armando Saldate interviewed her. (Id.,
7  ¶¶ 64, 66.)  Milke alleges that she "denied any involvement whatsoever in the crime," but
8  that Detective Saldate reported to "other officers, his supervisors, and prosecutors that
9  [she] confessed to arranging the murder of her son."  (Id., ¶¶ 79-80, 84.)  Detective
10 Saldate did not record this interview.  (Id., ¶ 70.)  In a separate recorded interview by
11 Detective Robert Mills happening at the same time in Phoenix, Scott again stated that
12 Milke was involved in C.M.'s murder.  (Id., ¶¶ 62, 92.)  Milke alleges Detective Mills
13 "pressured Scott to implicate" her in that interview as well.  (Id.)

14     A grand jury indicted Milke on first degree murder charges; a jury convicted her
15 and sentenced her to death; and the Arizona Supreme Court affirmed her conviction and
16 sentence.[3] (Dkt. 36, ¶¶ 85, 142, 153-154.)  *See State v. Milke*, 865 P.2d 779, 782 (Ariz.
17 1993).  Milke unsuccessfully sought post-conviction relief in state court, and then filed a
18 petition for writ of habeas corpus in federal district court.  (Dkt. 36, ¶ 155.)  The
19 Honorable Robert Broomfield denied habeas relief.  *See Milke v. Schriro*, No. CV-98-
20 0060-PHX-RCB, 2006 WL 3421318, at *2 (D. Ariz. Nov. 27, 2006); *Milke v. Ryan*,
21 No. CV98-60-PHX-RCB, 2010 WL 383412, at *1 (D. Ariz. Jan. 29, 2010).

22

23 _____
          [2] Milke affirmatively alleges that "either Styers, Scott, or both actually murdered"
24 C.M., and that "[s]ubsequent evidence would corroborate that both Styers and Scott had
   been involved in the murder, including statements from both men and evidence that Styers
25 had recently purchased a gun, later found in Scott's home, of the same caliber as the one
   that killed" C.M..  (Dkt. 36, ¶¶ 5, 56, 60.)

26        [3] Scott and Styers refused to testify at Milke's trial. (Dkt. 36, ¶¶ 93, 114.)
   Following Milke's trial, they were both tried, found guilty of murder, and sentenced to
27 death. (Id., ¶ 148.) Milke alleges that Styers, at his trial, "admitted being in the desert with
   C.M. and Scott at the time C.M. was murdered," and further testified that "Scott shot
28 C.M., and the two of them attempted to cover up the murder." (Id., ¶ 140.)

The Ninth Circuit, however, vacated Milke's conviction and death sentence, concluding that the prosecution failed to disclose Detective Saldate's entire personnel file, including disciplinary action that had occurred more than a decade earlier, and court orders in which courts had allegedly found Saldate violated constitutional protections during interrogations.[4]  *See Milke v. Ryan*, 711 F.3d 998, 1007, 1019 (9th Cir. 2013). (Dkt. 36, ¶¶ 45-51, 157.)  Despite the fact that Milke had not specifically raised this issue in her direct appeal or her post-conviction or habeas-corpus proceedings, and only cursorily raised it in her reply brief before the Ninth Circuit, the court granted Milke a retrial to allow her the opportunity to introduce this evidence to a jury.  *Id.*

When the state initiated retrial proceedings, Milke moved to dismiss the charges, arguing that the prosecution's failure to disclose Detective Saldate's personnel file and the other cases in which he had been found to have allegedly violated other criminal defendants' constitutional rights barred her retrial.  *See Milke v. Mroz*, 339 P.3d 659, 663, ¶ 8 (App. 2014).  The trial court denied her motion and Milke appealed.  *Id.*  The Arizona Court of Appeals concluded that the prosecution's failure to disclose the information violated Arizona's Double Jeopardy Clause and barred a retrial.  *Id.* at 666–67, ¶¶ 17, 21. The Arizona Supreme Court denied the state's petition for review, and the charges were thereafter dismissed with prejudice.  (Dkt. 36, ¶ 287.)

### B.    Plaintiff's Civil Claims

Milke filed this civil suit seeking to recover damages for the 23 years she spent incarcerated.  (Dkt. 1, 36.)  She is suing the City of Phoenix, most of the detectives that investigated C.M.'s disappearance and death, and the City's criminalist who conducted the forensic investigation.  (Dkt. 36.)  She is also suing Maricopa County and the County Attorney for her prosecution ("County Defendants"). (Id.) All claims against the individual City Defendants are brought against them in their individual capacity, and all

---

[4] This determination is not binding against the City Defendants or Saldate in this civil suit. *See Imbler v. Pachtman*, 500 F.2d 1301, 1304 (9th Cir. 1974) (legal determinations in criminal defendant's habeas proceedings are not res judicata as to defendant in subsequent § 1983 suit who was not a party in habeas proceeding).

federal constitutional claims are brought pursuant to 42 U.S.C. § 1983. (Dkt. 36, ¶¶ 11, 31.) The claim against the City of Phoenix is brought pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Id., ¶ 185.) The state law claims are brought under Arizona's common law. (Id., ¶¶ 282-300.) Milke is requesting compensatory damages against all Defendants, punitive damages against all individual Defendants, and attorneys' fees. (Id. at 79-80.) The claims are as follows:

|  | Claim | Defendants |
|---|---|---|
| **Count I** | Violation of Due Process (§ 1983) | Mills, House, Davis, Masino, Townsend, Hamrick, DiModica, Ontiveros, Jahn, and Wolslagel |
| **Count II** | Malicious Prosecution (§ 1983) | Mills, House, Davis, Masino, Townsend, Hamrick, DiModica, Ontiveros, Jahn, and Wolslagel |
| **Count III** | Violation of Right Against Self-Incrimination (§ 1983) | Mills, House, Davis, Masino, Townsend, Hamrick, DiModica, Ontiveros, and Jahn |
| **Count IV** | Conspiracy (§ 1983) | Mills, House, Davis, Masino, Townsend, Hamrick, DiModica, Ontiveros, Jahn, and Wolslagel |
| **Count V** | Failure to Intercede (§ 1983) | Mills, House, Davis, Masino, Townsend, Hamrick, DiModica, Ontiveros, and Jahn |
| **Count VI** | Supervisory Liability (§ 1983) | Ontiveros and Jahn |

|  | **Claim** | **Defendants** |
|---|---|---|
| **Count VII** | *Monell* Liability (§ 1983) | City of Phoenix |
| **Count IX** | Malicious Prosecution (state law) | Mills, House, Davis, Masino, Townsend, Hamrick, DiModica, Ontiveros, Jahn, and Wolslagel |
| **Count X** | Malicious Prosecution (state law) | City of Phoenix |

(Id., ¶¶ 211-267, 282-300.)  Counts I–V and IX are also brought against Saldate.  (Id.)  Count VIII is brought against the County Defendants only.  (Id., ¶¶ 268-281.)

C.    **Allegations Against the City Defendants**

1.    **Detective Russell Davis**

Milke alleges that, in the morning following C.M.'s disappearance but before police found his body, Detective Davis was with Milke at her apartment and asked her questions about Styers, Scott, and her ex-husband (C.M.'s father).  (Dkt. 36, ¶ 42.)  Milke alleges that Detective Davis "noted" that she "put her feet up on the chair, appeared to make herself comfortable, indicated she was in a hurry to get to Florence, and immediately following the interview got up right away and left for Florence."  (Id., ¶ 111.)  Milke alleges that Detective Davis "used these statements to suggest, falsely, that [she] was uninterested in the search for her son."  (Id.)

2.    **Detective Jim House**

Milke alleges that Detective House was with Detective Davis when he was asking Milke questions about Styers, Scott, and her ex-husband.  (Dkt. 36, ¶¶ 42, 112.)  Milke alleges that Detective House "knew or should have known that Davis had fabricated or embellished evidence against [Milke], [but] took no corrective action."  (Id.)  Milke also alleges that Detective House arrived at the murder scene and numbered and photographed

shoe prints in close proximity to C.M.'s body but did not have casts made of the shoeprint impressions.  (Dkt. 36, ¶¶ 116-117.)

### 3.    Detective Judy Townsend

Milke alleges that, in the morning following C.M.'s disappearance but before police found his body, Detective Townsend was tasked with monitoring the telephone at Milke's apartment.  (Dkt. 36, ¶ 41.)  Milke alleges that Detective Townsend falsely "suggested that [she] appeared very calm, was in a hurry to go to Florence, and did not ask anyone to stay by the phone in her home when she left—insinuating that [she] was again unconcerned with" C.M..  (Id., ¶ 113.)  Milke also alleges that Detective Townsend was one of the detectives whom Scott led to C.M.'s body in the desert.  (Id, ¶ 59.)

### 4.    Detective Charles Masino

Milke alleges that Detective Masino responded to the mall to interview Styers and help search for C.M. on the day of his disappearance.  (Dkt. 36, ¶ 36.)  Milke alleges that Detective Masino also asked her questions at her apartment that evening to help identify C.M..  (Id., ¶ 38.)  Milke alleges that Detective Masino then "falsely reported that [she] appeared unconcerned about her son's disappearance and was instead more concerned with Styers," and "further suggested that she was uninterested in coming to the mall to assist in the search for her son." (Id., ¶ 39.)  Milke also alleges that Detective Masino was present at the initial briefing with Detectives Saldate and Mills.  (Id., ¶ 53.)

### 5.    Detectives Harvey Hamrick and Frank DiModica

Milke alleges that Detectives Hamrick and DiModica drove to Florence to "guard" Milke at the county precinct until Detective Saldate arrived to interview her.  (Dkt. 36, ¶ 66.)  Milke alleges that they did not speak to her.  (Id.)

### 6.    Lieutenant Michael Jahn

Milke alleges that Lieutenant Jahn was a supervisor to the other detectives and ordered Detectives Hamrick and DiModica to drive to Florence and "guard" Milke until Detective Saldate arrived.  (Dkt. 36, ¶¶ 66, 251.)

### 7.    Sergeant Silverio Ontiveros

Milke alleges that Sergeant Ontiveros was part of the decision to call in Detectives Saldate and Mills to assist in the investigation. (Dkt. 36, ¶ 43.)   According to Milke, Ontiveros "knew or should have known that Saldate's [alleged] reputation was built directly on his history of unconstitutional misconduct in interrogations, not on quality police work."   Milke broadly alleges that Ontiveros and other unidentified supervisors "continued to bring Saldate in to lead important investigations, failed to discipline him for his misconduct, and, knowing the risk to suspects and witnesses' constitutional rights, failed to appropriately supervise him." (Id., ¶¶ 44, 53.)

Milke alleges that Sergeant Ontiveros was present at the initial briefing with Detectives Saldate and Mills, and ordered Detectives Hamrick and DiModica to travel to Florence and "guard" Milke in Florence until Detective Saldate arrived.  (Dkt. 36, ¶¶ 53, 66.)  Milke alleges that Sergeant Ontiveros "ordered" Detective Saldate to tape record his interview with Milke in Florence.  (Id., ¶ 69.)  Despite that allegation, Milke alleges that Sergeant Ontiveros did not "[take] any action to ensure documentation or corroboration of Ms. Milke's statement."  (Id., ¶ 103.)

Milke goes on to allege in conclusory fashion that Sergeant Ontiveros "directly participated" in misconduct, "knowingly refused to terminate the wrongful prosecution of Ms. Milke," "failed to adequately discipline, train, supervise, and/or control [his] subordinates, and "violated Ms. Milke's constitutional rights by acquiescing in the deprivation of Ms. Milke's constitutional rights by [his] subordinates."  (Dkt. 36, ¶¶ 252-256.)  Milke also alleges, without plausible specifics, that "it was reasonably foreseeable" that Sergeant Ontiveros' unspecified actions would result in a deprivation of Milke's rights. (Id., ¶ 255.)

### 8.    Detective Robert Mills

Milke alleges that Detective Mills was the first detective to interview Scott on the morning after C.M.'s disappearance, but did not have any "success." (Dkt. 36, ¶ 54.) After Scott implicated Styers to Detective Saldate, Milke alleges that Detective Mills

1   accompanied Scott and Detective Saldate to the murder scene. (Id., ¶ 59.)  Milke alleges

2   that Detective Mills did not hear Scott implicate Milke on the drive over.  (Id., ¶ 62.)

3   Milke alleges that Detective Mills then interviewed Scott again to obtain a recorded

4   confession," and "pressured Scott" to implicate Milke.  (Id., ¶¶ 62, 92.)  Milke alleges that

5   Detective Mills "fed Scott a story implicating [Milke] before or during his tape recorded

6   interrogation" and then Scott "regurgitated" "vague accusations that [Milke] was involved

7   in the murder."  (Id.)  Milke also alleges that Detective Mills was with Scott when he led

8   them to the shoes in the plantar at Metrocenter Mall, and requested that the shoes and the

9   shoe imprint photographs taken by Detective House be forensically examined. (Id., ¶¶ 118,

10  120, 122, 124.)  Milke alleges that Detective Mills arranged for casts to be taken of both

11  Styers and Scott's feet.  (Id.)

### 9.     Phillip Wolslagel

13      Milke alleges that Wolslagel, a criminalist in the City of Phoenix Crime Laboratory,

14  compared the photographs of the shoe imprints taken by Detective House at the murder

15  scene to a pair of shoes found in a plantar in the Metrocenter Mall parking lot; Scott had

16  taken police to the shoes and told them that Styers was wearing the shoes when he shot

17  C.M.. (Dkt. 36, ¶¶ 29, 120.)  Milke alleges that Wolslagel reported to detectives and

18  prosecutors that he could not identify or exclude the shoes as being the source of the

19  imprints but "there were no relevant differences" between the two.  (Id., ¶ 125.)  Milke

20  alleges that "Wolslagel's conclusions do not comport with minimally accepted practices

21  for an analyst trained in footwear impression comparison," the comparison photographs

22  "were of poor quality," "and by emphasizing the lack of 'relevant' differences [he]

23  significantly overstated the import of his conclusions."  (Id.)  In other words, she alleges,

24  Wolslagel "fabricated the strength of his scientific conclusions."  (Id., ¶ 126.)

25      Milke also alleges that Wolslagel examined the gunshot residue on C.M.'s

26  sweatshirt.  (Dkt. 36, ¶ 127.)  Milke alleges that Wolslagel admitted he was unable to

27  determine the "muzzle-to-target" distance, but "went on to report that he would expect the

28  muzzle-to-target distance to be approximately five feet or less," which coincided with the

distance between the shoe imprints and C.M.'s body and reinforced Styers' connection to the murder. (Id., ¶ 128.) Milke alleges that Wolslagel fabricated his conclusion because "[s]cience, in fact, indicates that the estimated range of distance was eighteen inches or less." (Id.)

Milke last alleges that Wolslagel compared the bullets in C.M.'s skull and shell casings recovered from the side of the road miles from C.M.'s body with test-fired casings and bullets from a firearm recovered from Scott's home and linked to Styers. (Dkt. 36, ¶ 130.) Milke alleges that Wolslagel "admitted that he could neither include nor exclude the Scott/Styers revolver," but then went on to find, based on "only a single point of comparison," "scientifically-significant similarities between one of the shell casings recovered from the roadside and one of the chambers of the Scott/Styers revolver." (Id., ¶ 131.) Milke alleges that even "[a] minimally-trained ballistics examiner" would have known that a single point of comparison was "scientifically meaningless." (Id.) Thus, she alleges, Wolslagel fabricated his opinion. (Id., ¶ 132.)

### 10. City of Phoenix

Milke alleges the City had a "custom, policy, pattern, and practice in the City of Phoenix … of condoning, encouraging, ratifying, and acquiescing in the practice of fabricating evidence, coercing statements of suspects, manipulating witnesses, violating suspects' rights to counsel, committing perjury, failing to disclose material exculpatory and impeachment evidence, and covering up this unconstitutional misconduct." (Dkt. 36, ¶¶ 165, 260.) She alleges this practice existed by virtue of the City's "failure to supervise and discipline" officers who engaged in this conduct, and that policymakers had "actual or constructive notice" of these practices. (Id., ¶¶ 166, 167, 261, 263.)

## II. RELEVANT LEGAL PRINCIPLES

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility is more than a

"sheer possibility that a defendant has acted unlawfully." *Id*. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent," they are not plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  In reviewing a Rule 12(b)(6) motion, a court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal,* 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.    Personal Participation

An individual can only be held liable under § 1983 if he or she personally participated in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation.").  The Ninth Circuit has expressly rejected a "team effort" theory as a grounds for liability because it improperly "allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996).  Similarly, supervisory officials cannot be held vicariously liable for the actions of subordinates. *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 676.

### C.    Qualified Immunity

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2080 (2011)). "This doctrine 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *al-Kidd*, 131 S. Ct. at 2085).

10

1    A right is clearly established only if, at the time of the challenged conduct, it was

2    'sufficiently clear' that every 'reasonable official would have understood that what he is

3    doing violates that right.'" *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton,*

4    483 U.S. 635, 640 (1987)).   "In other words, 'existing precedent must have placed the

5    statutory or constitutional question beyond debate.'"   *Reichle v. Howards*, 132 S. Ct.

6    2088, 2093 (2012) (quoting *al Kidd*, 131 S. Ct. at 2083).  A right is not clearly established

7    if it is grounded in a "broad general proposition," such as the right to be free from an

8    unreasonable search or seizure, *al-Kidd*, 131 S. Ct. at 2084, or the right to be free from

9    retaliation for one's free speech, *Reichle*, 132 S. Ct. at 2094 (quoting *Brosseau v. Haugen,*

10   543 U.S. 194, 198 (2004)).   Rather, the inquiry must be undertaken "in light of the

11   specific context of the case," i.e., in a more "particularized" sense.  *Brosseau*, 543 U.S. at

12   198–99 (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 206 (2001)).

13   For purposes of qualified immunity, the right must have been clearly established by

14   Supreme Court precedent, not one circuit's precedent. *See*, *e.g.*, *Taylor v. Barkes*,

15   135 S. Ct. 2042, 2044 (2015) (defendants entitled to qualified immunity because "[n]o

16   decision of this Court" had established a right to the proper implementation of adequate

17   suicide prevention protocols"); *City & Cnty. of San Francisco, Calif. v. Sheehan*,

18   135 S. Ct. 1765, 1775 (2015) (defendants entitled to qualified immunity where "nothing in

19   our cases suggests the constitutional rule applied by the Ninth Circuit"); *Reichle,*

20   132 S. Ct. at 2093–94 (holding "clearly established" standard not satisfied where "[t]his

21   Court has never recognized a First Amendment right to be free from a retaliatory arrest

22   that is supported by probable cause"); *see also Carroll*, 135 S. Ct. at 350 ("Assuming for

23   the sake of argument that a controlling circuit precedent could constitute clearly

24   established federal law in these circumstances . . . ."); *al-Kidd*, 131 S. Ct. at 2084 (quoting

25   *Wilson v. Layne,* 526 U.S. 603, 617 (1999)) (noting that a district court's "*ipse dixit* of a

26   footnoted dictum" is "not 'controlling authority' in any jurisdiction, much less the entire

27   United States" and "falls far short of what is necessary absent controlling authority: a

28   robust 'consensus of cases of persuasive authority'").

11

### D.   *Heck* Preclusion Doctrine

A person convicted of a crime cannot sue under § 1983 if success in the civil lawsuit would imply the invalidity of his conviction. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) ("[I]f a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."). This has become known as the "*Heck* preclusion doctrine" or "*Heck* bar." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012). In *Beets*, the Ninth Circuit addressed whether the *Heck* bar extended to individuals other than the individual who was eventually tried and convicted. The court extended the *Heck* bar and held that a plaintiff's § 1983 claim is barred if it must prove facts that are "fundamentally inconsistent" with another individual's criminal conviction. *Id.* at 1046–48.

## III.   CLAIMS AND DEFENDANTS THAT SHOULD BE DISMISSED

### A.   Defendants Hamrick and DiModica Should Be Dismissed.

The only involvement Detectives Hamrick and DiModica allegedly had in the investigation is that they drove to Florence and waited with Milke at the county precinct until Detective Saldate arrived to interview her. (Dkt. 36, ¶ 66.) That lone allegation does not support *any* of Milke's claims against them (Counts I-V, IX). They should be dismissed from this lawsuit.

### B.   All Claims Based on Scott's Interview and Styers' Forensic Evidence Should be Dismissed.

Milke concedes that both Scott and Styers were tried, found guilty of murder, and sentenced to death. (Dkt. 36, ¶ 148.) Both of their convictions have been upheld and all appeals have been exhausted. *See Scott v. Ryan*, 686 F.3d 1130, 1131 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 120 (2013); *Styers v. Schriro*, 547 F.3d 1026, 1036 (9th Cir. 2008), *cert. denied*, 130 S. Ct. 379 (2009).[5]

---

[5] Styers still has an avenue of potential relief from his death sentence. *See State v. Styers*, 254 P.3d 1132, 1133 (Ariz. 2011). His final appeal is pending in the Ninth Circuit. *See Styers v. Ryan*, No. 12–16952 (9th Cir. Sept. 4, 2012); *Styers v. Ryan*, No. CV-12-

1    **Scott's Interview**.  Milke appears to be basing some of her claims on Detective

2    Mills' interview of Scott.  Milke acknowledges that Scott "tape recorded" his interview,

3    but nonetheless alleges that "Scott's statements implicating Ms. Milke were false,

4    fabricated and coerced."  (Id., ¶¶ 92, 93.)  To the extent Milke is relying on the allegation

5    that Detective Mills coerced Scott into confessing, she is barred from doing so for three

6    reasons.

7        First, she does not have standing.  In *Buckley v. Fitzsimmons*, 20 F.3d 789, 794–95

8    (7th Cir. 1994), in a case dealing with similar circumstances regarding an allegedly

9    coerced statement, the court held:

10           Coercing witnesses to speak, rather than loosening their
             tongues by promises of reward, is a genuine constitutional
11           wrong, but the persons aggrieved would be Cruz and
             Hernandez rather than Buckley. Overbearing tactics violate
12           the right of the person being interrogated to be free from
             coercion. Buckley cannot complain that the prosecutors may
13           have twisted Cruz's arm, any more than he can collect
             damages because they failed to read Cruz *Miranda* warnings
14           or searched Cruz's house without a warrant. Rights personal to
             their holders may not be enforced by third parties. Let us
15           suppose the prosecutors put Cruz on the rack, tortured him
             until he named Buckley as his confederate, and then put the
16           transcript in a drawer, or framed it and hung it on the wall but
             took no other step, or began a prosecution but did not
17           introduce the statement. Could Buckley collect damages under
             the Constitution? Surely not; Cruz himself would be the only
18           victim.

19    (Internal citations omitted).  Thus, there can be no constitutional violation for the alleged

20    coercion of another individual's statement.

21        Second, as set forth above, she is barred by *Heck*.  *See Beets*, 669 F.3d at 1046–48.

22    In *Bosworth v. United States*, No. CV 14-0283 DMG SS, 2014 WL 7466985, at *7 (C.D.

23    Cal. Dec. 30, 2014), the court recognized that claims alleging a coerced confession were

24    *Heck*-barred because they necessarily implied the invalidity of [the defendant's]

25    subsequent convictions and sentences.  Similarly, in this case, a finding that Detective

26

27    ———————————————————————————————

28    2332-PHX-JAT, 2013 WL 1775981, at *6 (D. Ariz. Apr. 25, 2013); *Styers v. Ryan*,
      No. CV-98-2244-PHX-JAT, 2012 WL 3062799, at *6 (D. Ariz. July 26, 2012).

1   Mills coerced Scott's confession would call into question the validity of that confession

2   and Scott's subsequent conviction.

3        Third, Detective Mills is entitled to qualified immunity.  Milke's allegation that

4   Detective Mills "pressured" Scott is insufficient to support a claim as it is not even clear

5   what Milke is claiming occurred that constituted "pressuring."  Nonetheless, as set forth

6   more fully in Saldate's motion to dismiss, continuing to question a suspect who has

7   claimed innocence and accusing the suspect of lying during that process is not

8   unconstitutional.  *See Cunningham v. City of Wenatchee*, 345 F.3d 802 (9th Cir. 2003).

9   Milke's allegation that Detective Mills "fed Scott a story implicating [Milke] before or

10  during his tape recorded interrogation" also fails. There is no allegation that would

11  establish how Detective Mills would have known Milke was not involved at the time of

12  this interview.  And, as set forth more fully in Saldate's motion to dismiss, police officers

13  are permitted to use "trickery and deception" in their investigations.  *See Frazier v. Cupp*,

14  394 U.S. 731, 739 (1969).  To the extent Milke alleges that Detective Mills' investigative

15  techniques constitute a constitutional violation, any such violation was not clearly

16  established in 1989.

17       **Styers' Forensic Evidence**.  Milke also appears to base some of her claims on

18  forensic evidence, including shoeprint evidence, gunpowder residue, and ballistics testing,

19  which she contends was fabricated.  (Dkt. 36, ¶¶ 121, 125, 126, 128, 129, 131, 132.)  But

20  she also acknowledges that this evidence only linked Styers to C.M.'s murder.  (Id.)  This

21  too is barred by *Heck* because a finding that the forensic evidence was fabricated would

22  call Styers' criminal conviction into question.  *See Hubbs v. Alamao*, 360 F. Supp. 2d

23  1073, 1080 (C.D. Cal. 2005) (claim based on alleged preparation of false forensic report

24  barred by *Heck*).

25       **C.    All Claims Based on Plaintiff's Arrest Should Be Dismissed.**

26       Throughout the FAC, and specifically in Counts I and VI, Milke alleges that her

27  arrest was "wrongful" or "unlawful."  (Dkt. 36, ¶¶ 189, 203, 204, 221, 251.)  To the extent

28  any of her claims are based on the alleged unlawfulness of her arrest, they are time-barred,

and she cannot, as a matter of law, recover damages related to her arrest.[6]  "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  *Wallace v. Kato*, 549 U.S. 384, 397 (2007).  Milke was detained pursuant to legal process in December 1989, and the two-year statute of limitations on that claim ran no later than December 1991.  Accordingly, any wrongful-arrest claim that Milke purports to state must be dismissed.

### D.    All Claims Based on Trial Testimony Should Be Dismissed.

The FAC is vague as to which allegedly fabricated evidence made its way into Milke's criminal trial and through what means.  Although she references certain trial testimony by Saldate and Wolslagel (see, e.g., Dkt. 36, ¶¶ 134, 152), she does not specifically plead that any of the other individual City Defendants provided testimony at her criminal trial and whether their testimony serves as the basis for the claims against them (see, e.g., Id. at ¶¶ 39, 42, 111, 113, 123, 150, 214).  Notwithstanding, "[w]itnesses, including police officers, are absolutely immune from liability for testimony at trial."  *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015) (citing *Briscoe v. LaHue,* 460 U.S. 325, 345–46 (1983)).  This absolute immunity "extends to preparatory activities 'inextricably tied' to testimony, such as conspiracies to testify falsely." *Id.* (citing *Franklin v. Terr,* 201 F.3d 1098, 1102 (9th Cir. 2000)); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012) (immunity cannot be circumvented by claiming "witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution"). Therefore, Milke's claims are barred to the extent they are based on any criminal trial testimony.

---

[6] Milke's counsel had informed Defendants' counsel they were not raising a false arrest claim, yet they left these allegations in their FAC.

### E.    Count I Should Be Dismissed.

Milke contends that each of the individual City Defendants violated her right to due process and a fair trial under the Fourteenth Amendment.  The core of this allegation is that "Saldate and the other Defendants" (1) "suppressed material exculpatory and impeachment evidence of her innocence," and (2) "fabricated false evidence of [her] guilt." (Dkt. 36, ¶ 212.)  The failure-to-disclose claim is presumably based on the disclosure issues involving Saldate, which the Ninth Circuit addressed in Milke's habeas corpus proceeding.  (Id., ¶ 218.)  The fabricated-evidence claim is based on (a) Milke's confession, (b) the "forensic evidence," and (c) other unspecified allegations. (Id., ¶¶ 214-215, 217.)

### 1.    Failure-to-disclose claim

Due process requires the state to disclose certain evidence to the defense. *Giglio v. U.S.*, 405 U.S. 150, 154–55 (1972).  For the reasons stated in Saldate's separate motion to dismiss, that duty: (1) did not extend to the individual City Defendants in this case; and, alternatively, (2) was not clearly established at the time of Milke's criminal trial.   In addition, for a police officer to be civilly liable under § 1983 any officer to whom the duty attaches must have known of the evidence.  *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (prerequisite to disclosure obligation is that police know of exculpatory eyewitness evidence); *Mayes v. City of Hammond, IN*, 442 F. Supp. 2d 587, 633 (N.D. Ind. 2006) (police officer not liable under § 1983 for *Brady* violation if he was not aware of exculpatory hypnosis evidence); *see generally Taylor*, 880 F.2d at 1045 (liability under § 1983 requires personal participation by each defendant).

Milke does not allege that any of the individual City Defendants had actual knowledge of the contents of Saldate's personnel file or court decisions finding he allegedly violated a suspect's constitutional rights; the subpoena issued during the criminal trial; or the district court's order to disclose during the habeas corpus proceedings. (Dkt. 36, ¶¶ 45-51, 146, 157-158.)  Nor does she allege that any of them had an opportunity to volunteer the information even if they did have knowledge.  Indeed,

16

1    Milke alleges that it took "a team of ten researchers" "nearly 7,000 hours" and "over

2    three-and-a-half months" "sifting through criminal court records on microfiche" to find

3    the information they did.  (Id., ¶ 156.)  Milke also does not allege that the individual City

4    Defendants knew whether the personnel file had been disclosed, not disclosed, or

5    allegedly destroyed.   (Dkt. 36, ¶ 174-176.)  Because there is no allegation that the

6    individual City Defendants personally participated in the alleged constitutional

7    violation—the failure to disclose information—this due process claim should be dismissed

8    as to them.

9                    **2.     Fabricated-evidence claim**

10         Fabrication of evidence claims are governed by *Devereaux v. Abbey*, 263 F.3d

11   1070, 1076 (9th Cir. 2001), and require that a plaintiff,

12              *at a minimum,* point to evidence that supports at least one of
              the following two propositions: (1) Defendants continued their
13              investigation of [the plaintiff] despite the fact that they knew
              or should have known that he was innocent; or (2) Defendants
14              used investigative techniques that were so coercive and
              abusive that they knew or should have known that those
15              techniques would yield false information.

16         **Confession**.  To the extent this claim is grounded in Milke's confession (Dkt. 36,

17   ¶ 215), it does not state a claim against any of the individual City Defendants, as there are

18   no allegations that any of them participated in Milke's interview.  (Dkt. 36, ¶¶ 72-83.)

19   Milke also does not allege that they knew Saldate allegedly fabricated the confession, that

20   Milke was innocent, or that they continued their investigation after the confession.   In

21   addition, Milke's confession-allegation fails to state a claim because it is improperly

22   raised under the Fourteenth Amendment.   A fabrication-of-evidence theory based on an

23   alleged coerced confession of the plaintiff is a *Fifth* Amendment claim, if anything.  *Hall*

24   *v. City of Los Angeles*, 697 F.3d 1059, 1068–69 (9th Cir. 2012).  Therefore, this theory

25   should be dismissed as to all individual City Defendants.

26         **Forensic Evidence**.  This allegation seemingly concerns Wolslagel only.   There

27   are no factual allegations supporting a claim that any other individual City Defendant

28   fabricated forensic evidence.  (Dkt. 36, ¶¶ 115-136.)  Although Milke baldly alleges that

                                    17

Detectives Saldate, Mills, and House "each participated in the fabrication of inculpatory shoeprint evidence" (Id., ¶ 115), there are no factual allegations that show they fabricated anything.  *See Twombly*, 550 U.S. at 555 (the "formulaic recitation of the elements of" a claim is insufficient).  Milke alleges only that Detective House numbered and photographed the shoe imprints at the murder scene, and Detectives Saldate and Mills submitted them for forensic analysis.  (Id., ¶¶ 117-118.)  All individual City Defendants, except Wolslagel, should be dismissed from this theory for that reason.

A fabricated-evidence claim against Wolslagel fails for at least three reasons.  First, as discussed above, the evidence is barred by *Heck*.  Second, Milke affirmatively alleges that the alleged forensic evidence serves only to connect Styers to C.M.'s murder.  (Dkt. 36, ¶¶ 121, 128, 131.)  She also affirmatively alleges (concedes) that Styers was involved in the murder.  (Id., ¶¶ 56, 60.)  Thus, even if we assume as true that Wolslagel fabricated all of the forensic evidence, it does not change the undisputed allegation that Styers murdered (or at least assisted in murdering) C.M..  More importantly, it does not show that Wolslagel knew or should have known that *Milke* was innocent, nor does Milke allege facts supporting that Wolslagel otherwise knew or should have known she was innocent yet continued with his examinations.  Third, the allegations of fabrication are not really fabrications. They are merely attacks on Wolslagel's underlying analyses and criticisms of his expert opinions.  In Milke's own words, they are "junk science."  (Id., ¶ 133.)  For example, she alleges he "failed to take a number of basic investigative steps and disregarded evidence that pointed away from [Milke]." (Id., ¶ 135.)  This is not fabricated evidence.  *See Devereaux*, 263 F.3d at 1076–77 (plaintiff's claim that defendant failed "to adhere to established guidelines and policies concerning the questioning of child witnesses," departed "from accepted professional judgment, practice, and standards," and failed to conduct interrogations "in a manner that would ensure the veracity of the information obtained"—did not support a claim of fabricated evidence). This theory should be dismissed as to Wolslagel as well.

**Other allegations**.  Milke generally alleges that "Defendants" fabricated evidence "in a number of ways" "[a]s described in greater detail above."  (Dkt. 36, ¶ 214.)  The City Defendants have perused the entire FAC, and Milke does not allege that Detectives Hamrick, DiModica, House, or Jahn, or Sergeant Ontiveros, fabricated any evidence. This theory should be dismissed as to these individual City Defendants for that reason.  To the extent any claim against Detective Mills is based on his interview of Scott, it should be dismissed for the reasons discussed above (no standing, *Heck* bar, and qualified immunity) and because Milke does not actually allege Mills "fabricated" anything.  With respect to Detectives Davis, Townsend, and Masino, Milke alleges only that they falsely suggested that she appeared calm, unconcerned, and disinterested during their interaction with her. (Dkt. 36, ¶¶ 39, 111, 113.)  Such observations—perceiving a person's demeanor—can hardly be characterized as an investigative technique under *Devereaux*. Moreover, there are no allegations to support the assertion that these Defendants, at that time, knew or should have known Milke was innocent.  Even had they noted that she appeared concerned and interested, that is not proof of innocence.  Nonetheless, Milke had let Styers take C.M. from the house, and Styers, Milke's boyfriend, later reported him missing, they later found C.M. dead, and Scott implicated both Styers and Milke.  *See Nickel v. Woods*, 229 F. App'x 432, 435–36 (9th Cir. 2007) (defendant's knowledge of exculpatory evidence did not support claim that defendant knew or should have known plaintiff was innocent where there was other inculpatory evidence); *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003) (claim that officer falsified probable cause affidavit— stating victims tested "positive" for sexual abuse when in fact tests were only "suggestive" or "consistent" with sexual abuse, and stating eight children accused plaintiff of sexual abuse when only two children positively identified him—did not support showing that officer used investigative technique that would yield false information, nor did it show officer continued investigation despite knowing plaintiff was innocent.) Therefore, this theory should be dismissed as to Defendants Davis, Townsend, and Masino as well.

### F.     Counts II, IX, and X Should Be Dismissed.

Milke raises a § 1983 malicious prosecution claim in Count II and an analogous state common law claim in Count IX.  In both Counts, Milke contends that the individual City Defendants and Saldate "caused her" to be charged, without probable cause, "by knowingly providing the prosecution misinformation" and "concealing exculpatory and impeachment evidence."  (Dkt. 32, ¶¶ 224, 225, 227, 290, 291, 293.)  Milke's § 1983 claim is grounded in the Fourth and Fourteenth Amendments.  (Id., ¶ 225.)  It is unclear what seizure Milke relies on to support her Fourth Amendment claim.  Count X alleges the City is vicariously liable on the state law claim.  (Id., ¶ 299.)

#### 1.     The individual City Defendants are entitled to qualified immunity on Plaintiff's federal claim.

At the time of Milke's arrest (1989) and criminal trial (1990), a malicious prosecution claim was not clearly established.  (Dkt. 36, ¶¶ 142, 145.)  Even in 1992, after her criminal conviction (Id., ¶ 153), the United States Supreme Court still had not addressed whether § 1983 provided a cause of action for malicious prosecution.  *See Campbell v. Brummett*, 504 U.S. 965 (1992) (White, J., dissenting) (dissenting from denial of petition for writ of certiorari that presented this question).  It was not until 1994, four years after her conviction, that the Supreme Court addressed the availability of such a claim.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994).  A plurality of the court declined to recognize a malicious prosecution claim grounded in the Due Process Clause of the Fourteenth amendment, and expressed no view as to whether such a claim could succeed under the Fourth Amendment.  *Id*. at 268, 275.  The court recognized that "the extent to which a claim of malicious prosecution is actionable under § 1983 is one on which there is an embarrassing diversity of judicial opinion."  *Id*. at 271 n.4.  Even as recent as 2007—eighteen years after Milke's arrest—the Supreme Court noted that it has "never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983," and it failed to do so then.  *See Wallace*, 549 U.S. at 390 n.2.  Thus, it cannot be said that, at the time of the arrest and prosecution in this case, existing Supreme Court precedent placed

20

the constitutional question "beyond debate." *Reichle*, 132 S. Ct. at 2093; *see also Pitt v. D.C.*, 491 F.3d 494, 512 (D.C. Cir. 2007) (Fourth Amendment malicious prosecution claim not clearly established in January 2001); *Osborne v. Rose*, 133 F.3d 916, *5 (4th Cir. Jan. 20, 1998) (unpublished disposition) (Fourth Amendment malicious prosecution claim not clearly established in November 1994).

### 2.     The state and federal claims fail as a matter of law.

The elements of a state malicious prosecution claim "are (1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975). "In this circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." *Usher v. City of Los Angeles*, 828 F.2d 556, 561–62 (9th Cir. 1987). An exception to that rule, however, is if a plaintiff alleges that the malicious prosecution was "conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id*. Thus, if a plaintiff cannot prove one of the underlying elements, both the state and § 1983 claims fail.

### a.     Plaintiff cannot rebut the presumption of prosecutorial independence.

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). The filing of a criminal complaint immunizes investigating officers "because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Newman v. Cnty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (quoting *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)). This is also the law in Arizona:

> Where the instigator of a proceeding loses control over the case once the prosecution has been initiated, his participation in the prosecution thereafter is not such as will subject him to liability. Thus a malicious prosecution action will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so.

*Walsh v. Eberlein*, 560 P.2d 1249, 1252 (Ariz. App. 1976); *see also Bressi v. Ford*, 575 F.3d 891, 899 (9th Cir. 2009) ("Arizona law holds that when a criminal prosecutor judges the propriety of proceeding with a case and acts upon his own initiative in doing so, a malicious prosecution claim will not lie.") (citing *Walsh*). To attach liability to investigating officers, a plaintiff must rebut this "presumption of prosecutorial independence" by showing they "exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067.

The crux of this lawsuit is Milke's confession and whether it was fabricated. These allegations, and the attacks on Saldate's credibility, were laid out in Milke's habeas proceedings and recounted by the district court and Ninth Circuit in their decisions. After vacating Milke's conviction and sentence, the Ninth Circuit ordered the state to turn over Saldate's entire personnel file and inform the court if it intended to retry Milke. *Milke*, 711 F.3d at 1019. The state made the affirmative decision to retry Milke, despite her allegations against Saldate and concerning her confession. (Dkt. 36, ¶ 163.) Of course, Milke had already accused Saldate of fabricating the confession during her criminal trial. (Id., ¶ 6.) In other words, the state knew the state of the evidence and the accusations of fabrication it was facing and—exercising its independent judgment—it still elected to retry Milke. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008) (presumption that prosecutor's filing of a criminal complaint immunizes investigating officers unless "substantial" evidence shows that "the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment"). That decision immunized the investigating officers.

22

Not only did the state know about Milke's confession defense, but it also knew about her attacks on Wolslagel's forensic evidence opinions. (Dkt. 36, ¶ 134.) Moreover, "a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." *Newman*, 457 F.3d at 994. Thus, for example, the alleged observations of Milke's demeanor by Detectives Davis, Townsend, and Masino is not enough to rebut the presumption, even if Milke has a different perspective. *See Newman,* 457 F.3d at 993–95 (plaintiff bears the burden of rebutting independent judgment presumption, and "must provide more than an account of the incident in question that conflicts with the account of the officers involved"); *see also Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (existence of exculpatory evidence does not undermine probable cause); *Christensen v. Armstrong*, 473 F. App'x 652, 653 (9th Cir. 2012) (criminal suspect's account of interview with detective not sufficient to overcome presumption of prosecutorial independence). Milke cannot rebut the prosecutor's independent decision to proceed with criminal charges against her for the murder of her son.

**b.** **The conclusion of Milke's criminal proceedings did not amount to a "favorable termination."**

"[A]n essential element of a malicious prosecution claim is that the prior proceedings must have terminated in favor of the person against whom they were brought." *Moran v. Klatzke*, 682 P.2d 1156, 1157 (Ariz. App. 1984). To be considered favorable, a termination or dismissal" must "indicate[] in some fashion that the accused is innocent of wrongdoing." *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986); *see also Awabdy*, 368 F.3d at 1068 ("An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence."). In other words, the dismissal must "reflect[] the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Awabdy*, 368 F.3d at 1068.

The Arizona Court of Appeals terminated Milke's criminal proceeding when it granted her special-action relief, held that she could not be retried, and remanded with instructions to dismiss the pending charges with prejudice. *Milke*, 339 P.3d at 668, ¶ 23. The sole basis for the dismissal was Arizona's Double Jeopardy Clause, which "affords even greater protection than the federal Constitution." *Id.* at 664, 668, ¶¶ 10, 23; *see* Ariz. Const. art. II, § 10 ("No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."). The court barred a retrial because the alleged prosecutorial misconduct—i.e., the failure to disclose the information identified by the Ninth Circuit—was a "severe stain on the Arizona justice system," "call[ed] into question the integrity of the system and was highly prejudicial to Milke." *Id.* at 666–67, ¶¶ 17, 20. The court noted, however:

> Our analysis is based entirely on whether double jeopardy applies to bar Milke's retrial in this case, and we express no opinion regarding her actual guilt or innocence. As demonstrated by our supreme court's decision in *Minnitt,* actual guilt or innocence is not a part of a constitutional double jeopardy analysis.

*Id.* at 667, ¶ 22; *see also State v. Millanes*, 885 P.2d 106, 109 (Ariz. App. 1994) ("A double jeopardy claim is inherently different than the usual claim of error in that double jeopardy is independent of the issue of guilt.").

Nothing in the Arizona Court of Appeals' decision suggests Milke's innocence, nor does it reflect any opinion by the state or the court that the criminal charges lacked merit or would result in a decision in Milke's favor.[7] *Awabdy*, 368 F.3d at 1068; *Frey*, 722 P.2d at 278. Indeed, the state elected to retry Milke notwithstanding the Ninth Circuit's opinion. The court terminated the criminal proceedings pursuant to Arizona's Double Jeopardy Clause, which does not even consider the criminal defendant's actual guilt or innocence or the merits of the state's case. *See Frey*, 722 P.2d at 278 (noting that a

---

[7] Even Judge Kozinksi, the author of the Ninth Circuit decision, noted "Milke may well be guilty, even if Saldate made up her confession out of whole cloth. After all, it's hard to understand what reason Styers and Scott would have had for killing a four-year-old boy." *Milke*, 711 F.3d at 1024 (Kozinski, J., concurring).

24

termination is not favorable if it is merely procedural and does not reflect on the merits of the action). Therefore, it cannot be said that Milke's criminal prosecution terminated in her favor for purposes of her state and federal malicious prosecution claims. *See Hobbs v. City of Long Beach*, 534 F. App'x 648, 650 (9th Cir. 2013) (affirming dismissal of malicious prosecution claim because criminal prosecution that terminated based on instructional error did not terminate in plaintiff's favor).

### c.   Milke has not alleged facts showing that all of the individual City Defendants were a cause of her prosecution.

In addition to the reasons stated in Section III.A–D and III.E.2, Milke has not sufficiently alleged that any of the individual City Defendants personally participated in her prosecution or trial. Because she has not alleged any such facts, they are entitled to qualified immunity and dismissal on Milke's malicious prosecution claim.

### d.   The City cannot be vicariously liable.

Because Milke's state malicious prosecution claim fails, so too does her claim against the City based on respondeat superior principles. *See Ford v. Revlon, Inc.*, 734 P.2d 580, 584 (Ariz. 1987) ("[W]hen the master's liability is based solely on the negligence of his servant, a judgment in favor of the servant is a judgment in favor of the master."). That claim should be dismissed.

### G.   Count III Should Be Dismissed.

Milke alleges that Saldate not only fabricated her confession but also "twisted" and "manipulated" statements she did make (including truthful statements). (Dkt. 36, ¶¶ 97, 230-233.) She contends he used "highly coercive" interrogation techniques during his interview and ignored her demand for an attorney. (Id.) She alleges all of the individual City Defendants "knew or should have known that Saldate would attempt to coerce Ms. Milke." (Id., ¶ 234.) She alleges this conduct violated her Fifth, Sixth, and Fourteenth Amendment right against self-incrimination.

Initially, Milke's Sixth Amendment claim should be dismissed. That claim is presumably based on Milke's allegation that she invoked her right to counsel during her

interview and Detective Saldate ignored it.  The Sixth Amendment's right to counsel, however, "does not attach until the initiation of the first adversarial proceedings against the defendant." *United States v. Hines*, 963 F.2d 255, 257 (9th Cir. 1992).  An individual's right to counsel under *Miranda*, which is what Milke invokes here, is a *Fifth* Amendment claim.  *Id*. at 256.  Thus, her right-to-counsel claim, and her claim concerning coercive interrogation techniques, should be brought under the Fifth Amendment, if at all.[8]  *Hall*, 697 F.3d at 1068–69.

With respect to her underlying allegations, Milke fails to state a claim against any of the individual City Defendants.  An individual's involuntary (custodial) statement to police violates the Due Process Clause of the Fifth Amendment (applicable to the states through the Fourteenth Amendment).  *United States v. Miller,* 984 F.2d 1028, 1030 (9th Cir. 1993).  A statement is involuntary if it is coerced "either by physical intimidation or psychological pressure." *United States v. Haswood,* 350 F.3d 1024, 1027 (9th Cir. 2003).  Detective Saldate was the only person who interviewed Milke, and all of the allegations underlying this claim accuse only him of using coercive interview and investigation techniques intended to obtain a confession.  None of the individual City Defendants are alleged to have been involved.  Milke's contention that the individual City Defendants knew or should have known Saldate would allegedly attempt to coerce her does not state a Fifth Amendment violation; it does not even allege that they knew he did allegedly coerce her.  Finally, for the reasons stated in Saldate's motion to dismiss, the alleged interview and investigative techniques were not unconstitutional and/or did not violate any clearly established constitutional rights at the time they were allegedly employed.  Therefore, this Claim should be dismissed as against all individual City Defendants.

---

[8] The City Defendants presume that Milke invokes the Fourteenth Amendment only to incorporate her rights under the Fifth Amendment, and not as a separate due process right.  *Hall*, 697 F.3d at 1068–69. To the extent she invokes it to incorporate the Sixth Amendment, it should also be dismissed.

1    **H.    Count IV Should Be Dismissed.**

2    Milke alleges broadly that "Defendants and others yet unknown agreed among

3    themselves and others to act in concert to deprive Ms. Milke of her clearly established

4    constitutional rights as protected by the Fourth, Fifth, Sixth, and Fourteenth

5    Amendments." (Dkt. 36, ¶ 238.)  Milke conclusorily alleges that "[i]n addition to Saldate

6    and Mills, the remaining individual Defendants" fabricated inculpatory evidence,

7    concealed exculpatory evidence, and coerced false testimony."  (Id., ¶¶ 110, 238, 239.)

8    To support the conspiracy allegations, Milke relies on a list of purported facts that, even if

9    true, would not prove the existence of a conspiracy.  (Id., ¶¶ 105-136.)  Because Milke has

10   failed to plead facts showing a plausible conspiracy under clearly established law, the

11   defendants are entitled to qualified immunity and dismissal of her conspiracy claims.

12   Conspiracy is not an independent constitutional tort. *Lacey v. Maricopa Cnty.*,

13   693 F.3d 896, 935 (9th Cir. 2012).  Instead, it is a theory that, if properly pled, permits a

14   finding of liability against individuals who enter into an agreement to commit a

15   constitutional violation. *Id.*  To properly state a conspiracy claim, a plaintiff must allege

16   "a combination of two or more persons who, by some concerted action, intend to

17   accomplish some unlawful objective for the purpose of harming another which results in

18   damage." *Id.* at 935.

19   Milke's conspiracy allegations fail because they are conclusory and fail to

20   plausibly allege facts that, if proven, would show that "Defendants" entered into a

21   conspiracy. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the

22   'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

23   formulaic recitation of the elements of a cause of action will not do.").  Milke does not

24   allege: (a) the scope of the purported conspiracy; (b) the roles the individual City

25   Defendants (or Saldate) allegedly played in the conspiracy; or (c) when and how the

26   conspiracy supposedly operated. *Lacey,* 693 F.3d at 937.  In *Lacey*, the plaintiff was at

27   least able to allege which specific defendants participated in the alleged conspiracy. *Id.*

28   Milke does not even do that.  Instead, she simply claims that every allegation of

1    wrongdoing supports the existence of a conspiracy among and between the defendants,

2    and asks that her claim be permitted to proceed.

3         Allegations of multiple wrongs against multiple defendants are not sufficient to

4    plead conspiracy.  Milke wants the Court to read her various allegations of widespread

5    wrongdoing as "consistent with" a conspiracy, even though they are not.  But even if her

6    allegations could be construed as "consistent with" Milke's theory of conspiracy, they

7    "[stop] short of the line between possibility and plausibility of 'entitlement to relief.'"

8    *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).

9         Milke's conspiracy claims against the individual City Defendants (and Saldate) fail

10   for an additional reason.  The intracorporate conspiracy doctrine bars claims alleging that

11   a municipality and its employees conspired with themselves to commit a constitutional

12   violation.  *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1075 (D. Ariz. 2012), *aff'd sub*

13   *nom.*, *Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013); *see also Celestin v. City of New*

14   *York*, 581 F. Supp. 2d 420, 434 (E.D.N.Y. 2008) ("[W]here the individual defendants are

15   all employees of the institutional defendant, a claim of conspiracy will not stand.").

16        Finally, Milke's conspiracy claims assert the same underlying constitutional

17   violations alleged in Counts I, II, and III.  (Dkt. 36, ¶ 239.)  For the reasons discussed

18   above, to the extent Milke fails to state constitutional claims in those Counts against any

19   of the individual City Defendants (and/or Saldate), her conspiracy claims founded on

20   those underlying constitutional claims also fail.  *See Cassettari v. Nevada Cnty., Cal.*,

21   824 F.2d 735, 739 (9th Cir. 1987) ("The insufficiency of these allegations to support a

22   section 1983 violation precludes a conspiracy claim predicated upon the same

23   allegations.").

24        **I.    Count V Should Be Dismissed.**

25        It appears Milke is alleging that the individual City Defendants should have

26   interceded to prevent Saldate's alleged fabricated confession from taking place.  (Dkt. 36,

27   ¶ 246.)  The individual City Defendants are entitled to qualified immunity on this claim

28   because at the time of Milke's criminal investigation in 1989 it was not clearly established

1    that law enforcement officers had a constitutional duty to intervene outside of the

2    excessive force context.  The Supreme Court has never expressly recognized a failure-to-

3    intercede claim.  And the first Ninth Circuit decisions recognizing one were in the

4    excessive force context.  *See United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir.

5    1994); *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991); *see also Monteilh v.

6    Cnty. of Los Angeles*, 820 F. Supp. 2d 1081, 1093 (C.D. Cal. 2011) (noting that "[t]he vast

7    majority of cases … involve an officer's failure to intercede when fellow officers are

8    employing unlawful force").  Regardless, in 1988, the Ninth Circuit held that allegations

9    that officers failed to intercede in a barroom shooting did *not* state a due process violation.

10   *See Lauderdale v. Permanente Med. Grp., Inc.*, 845 F.2d 1029, *2 (9th Cir. 1988) (citing

11   *Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir. 1986)) (unpublished disposition).

12   And it does not appear that the Ninth Circuit has ever recognized a cause of action for

13   failure to intercede in the context of a fabricated confession.

14        The Eighth Circuit, however, recently addressed this issue and held that officers

15   were entitled to qualified immunity for this type of claim.  In *Livers v. Schenck*, 700 F.3d

16   340, 360 (8th Cir. 2012), the court, after noting that the majority of decisions on this issue

17   involved excessive force cases, held:

18            Assuming law enforcement officers have a constitutional duty
             to intervene outside of the excessive force context, such a duty
19           was not clearly established in 2006. Where, as here, the
             federal circuits disagree on whether conduct violates the
20           Constitution, and our court has not addressed the question, that
             conduct does not violate clearly established law because "it is
21           unfair to subject police to money damages for picking the
             losing side of the controversy." *Wilson v. Layne*, 526 U.S.
22           603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Appellants
             are entitled to qualified immunity on Livers' failure-to-
23           intervene claim.

24        Similarly, in *Jones v. Edmond*, No. 1:14-CV-31 (WLS), 2014 WL 5801536, at *6

25   (M.D. Ga. Nov. 7, 2014), the district court afforded qualified immunity on a similar claim:

26            The Court agrees with the *Tarantino* court's conclusion that
             failure to intervene liability may be a viable theory of liability
27           in Fourth Amendment unlawful search and seizure claim but
             that the law at the time of this incident [2012], which occurred
28           less than a year after the *Tarantino* incident, was not clearly

                                        29

1
2
3
4

> established. Defendants Brinson and Griffin, therefore, are entitled to qualified immunity regarding Jones' claim that their failure to intervene in the strip search violated his Fourth Amendment right to be free from unreasonable searches and seizures because the law was not clearly that they had a duty to intervene.

5
6
7

(Internal citations omitted); *see also Tarantino v. Citrus County Government*, 2014 WL 4385550 at \*11–14 (M.D. Fla. 2014) (outlining cases addressing failure to intervene claims in strip search and excessive force contexts and concluding that the law in 2011 was unclear as to whether officers had a duty to intervene in an unlawful strip search).

8
9
10
11

In the cases above, the courts afforded qualified immunity for conduct that occurred after the year 2000 because any duty to intercede—outside of the excessive force context—was not clearly established. In this case, the alleged conduct took place in 1989. At that time, there certainly was not a clearly established right for police intervention.

12
13
14
15
16
17
18
19
20
21
22
23
24

There was also no underlying constitutional violation. A failure-to-intercede claim requires a plaintiff to establish that the officers "provide[d] some affirmative physical support at the scene of the violation *and* when they are aware of the plan to commit the violation (or have reason to know of such a plan), but do not object." *Galloway v. Cnty. of Los Angeles,* No. CV 09-1775 SJO (JCG), 2012 WL 3887060, at \*6 (C.D. Cal. Aug. 15, 2012), *report and recommendation adopted*, 2012 WL 3887058 (C.D. Cal. Sept. 7, 2012) (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 780–81 (9th Cir. 2004)). Thus, officers have a duty to stop a constitutional violation only when they know or have reason to know of it. *Id* (citing *Ting*, 927 F.2d at 1511). In *Browning v. Pend Oreille Cnty. Sheriff's Dep't,* No. CV-070286-JLQ, 2008 WL 3852693, at \*8 (E.D. Wash. Aug. 14, 2008), *aff'd*, 442 F. App'x 310 (9th Cir. 2011), the plaintiff alleged that officers who were not present at the scene of an alleged violation somehow had an obligation to determine which of two versions of an event was correct and intercede. The court held:

25
26
27
28

> It is undisputed that these officers did not arrive on the scene until after Barrett had requested backup and Browning had been handcuffed. The officers did not witness any of the alleged excessive force and did not have a realistic opportunity to prevent any such harm from occurring. Moreover, there is very little evidence, if any, as to the extent of these officers

knowledge upon arriving on scene. **Even assuming the truth of Browning's version of events and that these officers were informed at the scene that Barrett had placed the handcuffs too tightly and had assaulted Browning during the arrest, the backup officers at the scene are not required to conduct an investigation to explore and eliminate every theoretically plausible claim of innocence or unlawful arrest.** *Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979) (arresting officers not required to investigate claim of mistaken identity or lack of requisite intent).

*Id.* (emphasis added).  In this case, just as in *Browning*, the individual City Defendants were not present during the alleged confession.

In response to defense counsel's request to Milke's counsel for legal authority to support her claim, Milke cited *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 460-61 (S.D.N.Y. 2012).  In that case, the court permitted a failure-to-intercede claim to move forward against an officer who was present when another officer allegedly violated a victim's rights in an interview.  However, in *Deskovic*, the officer who allegedly should have intervened had access to the audio of the interview while it was taking place, testified that he was able to hear anything that took place in the interview room, and there was evidence the officer was listening to the interview.  *Deskovic* stands only for the proposition that a failure-to-intercede claim can exist against an officer who observes a fellow officer committing a constitutional violation during an interview if the **officer is present** during the interview.  In this case, none of the individual City Defendants were present during Milke's interview.   As such, there can be no liability for failure to intercede.

**J.     Count VI Should Be Dismissed.**

Milke alleges that, as supervisors, Lieutenant Jahn and Sergeant Ontiveros (the "Supervisors") unconstitutionally caused her "wrongful arrest, confinement, prosecution, trial, conviction, and incarceration."  (Doc. 36, ¶ 251.)  Count VI is a wholesale allegation that never alleges a violation of any specific constitutional right.  Instead, it seeks to hold the Supervisors vicariously liable for the actions of their subordinates.  To that end, Milke makes the following conclusory allegations of supervisory liability:

31

1.    The Supervisors "directly participated" in misconduct by "creating conditions" that allowed Saldate "to fabricate Ms. Milke's confession and permitting the suppression of material exculpatory and impeachment evidence"; (Id., ¶ 252)

2.    The Supervisors failed to terminate the Milke prosecution "which they had reason to know was based on fabricated evidence"; (Id., ¶ 253)

3.    The Supervisors failed to train, discipline, and control subordinates Saldate and Mills; (Id., ¶¶ 254, 256);

4.    The Supervisors "acquiesced" in violations of Ms. Milke's rights; (Id., ¶ 255)

5.    The Supervisors showed reckless or callous indifference to Ms. Milke's rights; (Id.) and

6.    The Supervisors should have foreseen that their "misconduct" would result in a deprivation of Ms. Milke's constitutional rights. (Id., ¶ 256)

"In a § 1983 suit . . . the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Accordingly, to properly allege a cause of action for supervisory liability, a plaintiff "must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Id.* at 663.  To do that, a plaintiff must plead factual matter showing (1) "[the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).

Milke has not pleaded facts showing either bases for supervisory liability, and the Supervisors are entitled to qualified immunity on that claim.  Milke's conclusory allegations that the Supervisors violated an unspecified right fail to plausibly show either personal involvement in a constitutional deprivation or wrongful conduct that is causally connected to a constitutional violation.  Milke has not pleaded facts showing that either of the Supervisors had *actual personal* knowledge of any purported past constitutional violation by Saldate.  Milke has not pleaded facts showing that either of the Supervisors

32

1   personally participated in, acquiesced in, or otherwise acted to cause a constitutional

2   violation.

3       In the case of Lieutenant Jahn, there are no plausibly pleaded facts at all: only

4   conclusory allegations of wrongdoing. He is entitled to qualified immunity because his

5   actions do not amount to a constitutional violation, and even if they did, any purported

6   constitutional violation was not clearly established when Milke was prosecuted and

7   convicted.

8       Sergeant Ontiveros is entitled to qualified immunity as well. The allegation that

9   Sergeant Ontiveros ordered Detective Saldate to tape record his interview with Milke does

10  not amount to a constitutional violation.  Nor was Sergeant Ontiveros' purported failure to

11  discipline Saldate for allegedly not recording the interview a constitutional violation. Even

12  if these alleged actions could somehow be construed as constitutional violations, at the

13  time of Milke's prosecution and conviction it was not clearly established that this conduct

14  amounted to a constitutional violation.

15      Accordingly, the Supervisors should be granted qualified immunity, and Count VI

16  should be dismissed.

17      **K.    Count VII Should Be Dismissed.**

18      Milke's *Monell* claim against the City is based on her allegations against the

19  individual City Defendants and Saldate.  Because, as discussed above and for the reasons

20  stated in Saldate's motion to dismiss, the FAC fails to state a constitutional claim against

21  any of them, she cannot state a valid *Monell* claim against the City.  *See City of Los*

22  *Angeles v. Heller*, 475 U.S. 796, 799 (1986).

23      In addition, Milke's allegations concerning policies and practices are merely

24  boilerplate allegations.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637

25  (9th Cir. 2012) (conclusory allegation that defendant had policies, customs, or practices

26  relating to the custody and care of minors failed to state a claim); *Fernandez v. City of*

27  *Phoenix*, No. CV 11-02001-PHX-FJM, 2012 WL 2343621, at *2 (D. Ariz. June 20, 2012)

28  (non-specific policy and practice allegations fail to state a claim against City).

1    Furthermore, even liberally construed, the alleged policies and customs appear to be based

2    only on Saldate's alleged conduct. A city policy cannot exist "from the isolated

3    misconduct of a single, low-level officer." *City of Oklahoma City v. Tuttle,* 471 U.S. 808,

4    831 (1985); *see also Johnson v. Brady,* No. CV–14–1875–PHX–DGC, 2015 WL 390794,

5    at *4 (D. Ariz. Jan.28, 2015) ("Merely stating that municipal employees violated

6    Plaintiff's constitutional rights and that this reflected a 'custom or practice' of the

7    municipal defendants does not 'plausibly suggest an entitlement to relief.'") (quoting

8    *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2012)). Therefore, Milke's claim against the

9    City should be dismissed independent of the underlying allegations.

10              **L.    Dismissal Should Be With Prejudice.**

11              Those dismissed claims that cannot be cured by amendment should be dismissed

12    with prejudice. The Court should also dismiss with prejudice any claim that is not

13    supported with sufficient factual allegations. Counsel for all Defendants met and

14    conferred with Milke's counsel after she filed her Complaint, and advised them of their

15    failure to allege adequate personal participation and other legal flaws therein.  (Exhibit 1.)

16    Milke filed her FAC, but did not cure those deficiencies; instead, she added her state law

17    claims and factual allegations that still failed to bolster any of her existing claims.  Having

18    already had an opportunity to cure but failing to do so, she should not be permitted

19    another one.  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)

20    ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.");

21    *Murphy v. Coconino Cnty. Sheriff's Office*, No. CV-08-8089-PCT-DGC, 2009 WL

22    3219275, at *1 (D. Ariz. Oct. 6, 2009) ("Failure to cure deficiencies by previous

23    amendments is one of the factors to be considered in deciding whether justice requires

24    granting leave to amend.") (quoting *Williams v. Dep't of Corr.,* No. CV 1–06–1793–RCC,

25    2009 WL 1598441, at *2 (E.D. Cal. June 5, 2009)).

26

27

28

                                            34

1

### M.   Any Second Amended Complaint Must Comply With Rule 8.

2       As discussed above, Milke's claims against the City Defendants fail either as a

3  matter of law or fact.  If the Court allows her another opportunity to amend her complaint,

4  it should order that any Second Amended Complaint comply with Fed.R.Civ.P. 8.

5              A complaint having the factual elements of a cause of action
              present but scattered throughout the complaint and not
6              organized into a "short and plain statement of the claim" may
              be dismissed for failure to satisfy Rule 8(a). *Sparling v.*
7              *Hofman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988). A
              claim must be stated clearly enough to provide each defendant
8              fair opportunity to frame a responsive pleading. *McHenry v.*
              *Renne,* 84 F.3d 1172, 1176 (9th Cir. 1996). "Something
9              labeled a complaint ..., yet without simplicity, conciseness and
              clarity as to whom plaintiffs are suing for what wrongs, fails
10             to perform the essential functions of a complaint." *Id.* at 1180.
              A complaint that is "argumentative, prolix, replete with
11             redundancy ... [and] consists largely of immaterial background
              information" is subject to dismissal. *Id.* at 1177.

12  *Donahoe v. Arpaio*, No. CV10-2756-PHX-NVW, 2011 WL 5119008, at *2 (D. Ariz.

13  Oct. 28, 2011).   Milke's 80-page, 300-paragraph FAC violates these principles.   It

14  contains unnecessary, inflammatory, and argumentative allegations that serve no proper

15  purpose.  Indeed, the first five pages of the FAC is merely a summary, really a story more

16  suitable for a Dateline NBC exposé.  Milke quotes Judge Kozinski's concurring opinion in

17  her habeas proceeding throughout. The entire FAC is designed to garner public sympathy,

18  even going so far as to suggest that the criminal courts have declared her innocent—not

19  so.  Yet, she fails to allege very basic things, like how the allegedly fabricated evidence

20  made its way into her trial.  (Dkt. 36, ¶¶ 39, 42, 111, 113, 123, 214.)  These intentional

21  ambiguities have deprived the City Defendants from being able to advance various

22  immunities and other legal defenses to her claims.  The prolixity of the FAC is also

23  egregious, making it nearly impossible to determine which allegations support which

24  claims.  And then there are allegations that have nothing to do with Milke's claims (the

25  Scott interview and Styers' forensic evidence).

26      This is unacceptable.  The "pleading process is not to be compromised by the

27  inclusion of immaterial facts or accusations" and it is not an opportunity for Milke to

28

"pursue other objectives or to indulge in general disparagement of other parties." *Donahoe*, 2011 WL 5119008, at **3-4.  She should not be permitted to do it again if the Court grants her a third chance to properly state her claims.

**IV.    CONCLUSION**

For these reasons, Milke's claims against the City Defendants should be dismissed with prejudice.

DATED this 10th day of August, 2015

STRUCK WIENEKE & LOVE, P.L.C.


By      /s/ Nicholas D. Acedo
  Kathleen L. Wieneke
  Christina Retts
  Nicholas D. Acedo
  Jacob B. Lee
  3100 West Ray Road, Suite 300
  Chandler, Arizona  85226
  Attorneys for Defendants City of Phoenix,
  Jim House, Russell Davis, Charles Masino,
  Judy Townsend, Harvey Hamrick, Frank
  Dimodica, Michael Jahn, and Phillip
  Wolslagel

O'CONNOR & CAMPBELL, PC


By      /s/ Nicholas D. Acedo (with authority)
  Daniel J. O'Connor, Jr.
  James E. Doman, Jr.
  Shane P. Dyet
  7955 South Priest Drive
  Tempe, AZ 85284
  Attorneys for Defendant Robert Mills

HOLLOWAY ODEGARD & KELLY, P.C.


By      /s/ Nicholas D. Acedo (with authority)
  Sally A. Odegard
  Jesse M. Showalter
  3020 E. Camelback Road, Suite 201
  Phoenix, AZ 85016
  Attorneys for Defendant Silverio Ontiveros

36

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Anna B. Hoffmann: | Anna@nsbcivilrights.com |
| Christina G. Retts: | cretts@swlfirm.com |
| | swolford@swlfirm.com |
| Daniel J. O'Connor: | caseadmin@occlaw.com |
| Daniel T. Benchoff: | dbenchoff@aztriallaw.com |
| | Kcapaldi@aztriallaw.com |
| Farhang Heydari: | Farhang@nsbcivilrights.com |
| Jacob B. Lee: | jlee@swlfirm.com, |
| | arowley@swlfirm.com |
| James A. Eaves: | artie.eaves@sandersparks.com |
| | michele.logan@sandersparks.com |
| James E. Doman, Jr.: | eddy.doman@occlaw.com |
| | allison.moore@occlaw.com |
| Jesse M. Showalter: | jshowalter@hoklaw.com |
| | gzappia@hoklaw.com |
| | jesses@gmail.com |
| | pkelly@hoklaw.com |
| | traymond@hoklaw.com |
| Jody C. Corbett: | jody@berkelawfirm.com |
| | laine@berkelawfirm.com |
| | shirley@berkelawfirm.com |
| Kathleen L. Wieneke: | kwieneke@swlfirm.com |
| | lpiasecki@swlfirm.com |
| Lori V. Berke: | lori@berkelawfirm.com |
| M. E. Rake, Jr.: | brake@aztriallaw.com |
| | adavis@aztriallaw.com |
| Michael D. Kimerer: | MDK@kimerer.com |
| | jpak@kimerer.com |
| | mwallingsford@kimerer.com |
| Nicholas D. Acedo: | NAcedo@swlfirm.com |
| Nick J. Brustin: | nick@nsbcivilrights.com |
| | david@nsbcivilrights.com |
| | elizabeth@nsbcivilrights.com |
| Rhonda E. Neff: | rneff@kimerer.com |
| | mwallingsford@kimerer.com |
| | rhondaneff@cox.net |
| Sally A. Odegard: | sodegard@hoklaw.com |
| | gzappia@hoklaw.com |

1    Shane P. Dyet:                    Shane.Dyet@occlaw.com

2

3        I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

4

5        N/A

6                                                 /s/ Nicholas D. Acedo

7    3082166.1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28