J. Arthur Eaves/Bar No. 019748
Robin E. Burgess/Bar No. 015330
Megan A. Evans/Bar No. 028900
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ  85012-3099

J. Arthur Eaves
Direct Phone:  (602) 532-5730
Direct Fax:  (602) 230-5034
E-Mail: Artie.Eaves@SandersParks.com

Robin E. Burgess
Direct Phone:  (602) 532-5783
Direct Fax:  (602) 230-5048
E-mail:  Robin.Burgess@SandersParks.com

Megan A. Evans
Direct Phone:  (602) 532-5642
Direct Fax:  (602) 230-5042
E-Mail: Megan.Evans@SandersParks.com

Attorneys for Maricopa County Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Jean Milke,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Phoenix; Maricopa County; Maricopa County Attorney William Montgomery, in his official capacity; and Detective Armando Saldate, Jr.; Detective Robert Mills; Detective Jim House; Detective Russell Davis; Detective Charles Masino; Detective Judy Townsend; Detective Harvey Ernie Hamrick; Detective Frank DiModica; Sergeant Silverado Ontiveros; Lieutenant Michael John; Walter E. Barky; Phillip Wolslagel; and George Bolduc, in their individual capacities,<br><br>　　　　　Defendants. | No. 2:15-cv-00462-ROS<br><br>**Defendant Maricopa County's Response to Defendant Saldate's Motion for Ruling That Detective Saldate Will Not Waive His Fifth Amendment Privilege as to Other Alleged Misconduct by Responding to Questions Related to the C.M. Investigation** |

Defendant Maricopa County submits this Response to Defendant Saldate's Motion for Ruling That Detective Saldate Will Not Waive His Fifth Amendment Privilege as to Other Alleged Misconduct by Responding to Questions Related to the C.M. Investigation. Although not explicitly stated, Detective Saldate essentially argues that he will not engage in discovery unless this Court enters a ruling that he will not waive his Fifth Amendment privilege as to other alleged misconduct by responding to questions concerning the C.M. investigation. Detective Saldate evidently intends to assert his Fifth Amendment privilege as to other criminal investigations he was involved in based on the allegations in the Second Amended Complaint. There is no basis for Detective Saldate to invoke his Fifth Amendment privilege with respect to the C.M. investigation or any other investigation because Saldate faces no reasonable danger of a federal civil rights prosecution. This Response is supported by the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Relevant Factual Background.**

In this §1983 action, Plaintiff Debra Milke ("Milke") asserts various allegations against multiple defendants arising out of her December 1989 arrest and trial in September 1990 for the murder of her four year-old son, C.M. Specifically, Milke alleges that Maricopa County had a policy or practice of not disclosing exculpatory and impeachment evidence and not disciplining its employees for this practice. (Doc. 74 at ¶¶ 188-89). Milke also alleges that Maricopa County failed to maintain a system whereby prosecutors could access exculpatory and impeachment evidence. (Doc. 74 at ¶ 190). Her claims specifically relate to exculpatory and impeachment evidence involving Detective Saldate and allegations of misconduct that she alleges were never disclosed by prosecutors from the Maricopa County Attorney's Office (MCAO). (Doc. 74 at ¶ 35). In support of her claim against Maricopa County, Milke cites to other cases before and after

her prosecution, in which Detective Saldate is alleged to have engaged in misconduct. (Doc. 74 at ¶ 35).

In an opinion issued on March 14, 2013, the Ninth Circuit Court of Appeals found that MCAO failed to provide exculpatory impeachment material on Detective Saldate. *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013). The court considered historical information garnered from eight unrelated cases (the cases cited in the Second Amended Complaint) that Detective Saldate investigated in the late 1980s.[1] The Ninth Circuit characterized the cases as a "trove of undisclosed impeachment evidence" "about a key witness, whose testimony was essential to the case." *Id*., 711 F.3d at 1005, 1006. The court also found that MCAO failed to disclose evidence from Detective Saldate's personnel record documenting a 5-day suspension in 1973. *Id*. Milke relies heavily upon the Ninth Circuit's interpretation of those cases to support her allegations against MCAO. (Doc. 74 at ¶ 193).

The Ninth Circuit Court of Appeals unfairly labeled Detective Saldate as a liar, who engaged in a pattern of *Miranda* violations, and, in an unprecedented move, referred their Opinion to the United States Attorney for the District of Arizona and the Assistant United States Attorney General of the Civil Rights Division "for possible investigation into whether Saldate's conduct, and that of his superiors and other state and local officials, amounted to a pattern of violating federally protect rights of Arizona residents."[2] 711 F.3d at 1019-20.

---

[1] Those cases are: *State v. Conde*, 174 Ariz. 30, 846 P.2d 843 (App. 1992); *State v. Yanes*, CR 1303403 (Ariz. Sup. Ct. 1983); *State v. Mahler*, CR 90-00296 (Ariz. Sup. Ct. 1990); *State v. Jones*, CR 90-05127 (Ariz. Sup. Ct. 1990); *State v. Reynolds*, CR 88-0605 (Ariz. Sup. Ct. 1988); *State v. Rangel*, CR 89-08086 (Ariz. Sup. Ct. 1989); *State v. Rodriguez*, CR 161282 (Ariz. Sup. Ct. 1986); *State v. King*, 180 Ariz. 268, 883 P.2d 1024 (1994).

[2] The Ninth Circuit's characterization of Detective Saldate's past conduct is not a finding of fact; it is misleading, and based on incomplete and biased case summaries provided by Milke. Maricopa County strongly maintains that the Ninth Circuit's characterization of the circumstances in those cases was not only unnecessary, but was simply wrong

Based on these facts, Detective Saldate asserted his Fifth Amendment privilege in Maricopa County Superior Court in an attempt to avoid testifying in Milke's criminal retrial. The issue was appealed to the Arizona Court of Appeals, which rejected Detective Saldate's arguments for invoking the Fifth Amendment privilege, finding that there was no real and appreciable risk of prosecution if he was compelled to testify at Milke's retrial. *See State ex rel. Montgomery v. Mroz*, 2014 WL 1516585, at *1 ¶¶ 1-3 (Ariz. App. April 17, 2014)[3].

As Detective Saldate correctly points out in his motion, all of the prosecuting agencies with jurisdiction have declined to prosecute him. Additionally, he acknowledges that the Arizona Court of Appeals dispelled the argument that Detective Saldate could be prosecuted under a theory that he conspired to violate civil rights arising out of any alleged wrongdoing in other criminal investigations. Nevertheless, Detective Saldate still believes that there remains a possibility of prosecution for conspiracy claims arising out of his involvement in criminal investigations pre-dating the C.M. investigation.

## II. Legal Argument.

Detective Saldate accurately describes the state of the law regarding invocation of the Fifth Amendment privilege and its application in civil cases. Where Detective Saldate falls short is demonstrating that his anticipated testimony in this case regarding the C.M. investigation, or any other criminal investigation pre-dating the C.M. investigation[4], will subject him to a real and appreciable danger of criminal prosecution.

---

based on the actual facts, records, and court documents.
[3] This is a memorandum decision, and is cited here only by way of background of the issues giving rise to Detective Saldate's current motion.
[4] Contemporaneous or subsequent conduct cannot establish a pattern of violations that would put MCAO on notice of the need to conform to constitutional dictates prior to or at the time of Milke's trial and conviction. *Connick v. Thompson*, 131 S.Ct. 1350, 1360 at n. 7 (2011) (*citing Canton v. Harris*, 489 U.S. 378, 395 (1989). Subsequent cases can provide no basis for Milke's claims, and are thus irrelevant.

### A. Detective Saldate Faces No Reasonable Danger of a Federal Criminal Civil Rights Prosecution Because the Statute of Limitations Has Expired.

The Fifth Amendment privilege against compulsory self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814 (1951); *Kastigar v. United States*, 406 U.S. 441, 445, 92 S. Ct. 1653, 32 L.Ed.2d 212 (1972). Detective Saldate has the burden of showing that his testimony "would support a conviction under a federal statute … [or] furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486. "[I]f a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer." *Brown v. Walker*, 161 U.S. 591, 598 (1896). In other words, there can be no "real and appreciable" danger of a possibility of prosecution if there is a legal bar to initiation of criminal proceedings, such as the expiration of the statute of limitations.

The applicable statute under which the Executive Branch of the federal government could charge Saldate is 18 U.S.C § 242, deprivation of rights under color of law. To convict under this statute, the Government must prove: (1) that the defendant acted under color of law; (2) that the defendant's conduct deprived a person of a right secured or protected by the United States Constitution; (3) that the defendant acted willfully; and (4) the person deprived of his rights must have been an inhabitant of a State, Territory, or District. *United States v. Senak*, 477 F.2d 304, 306 (7th Cir. 1973); *United States v. Jackson*, 235 F.2d 925, 927 (8th Cir. 1956); *United States v. Giordano*, 260 F.Supp.2d 477, 483 (D.Conn. 2002).

"[E]very federal offense is governed by an express limitations period. If no statute specifically defines a limitations period (or prescribes the absence of a limitations period, see 18 U.S.C. § 3281[ ]) for a particular offense, a 'catchall' statute operates to forbid

prosecution, trial, or punishment . . . . § 3282." *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 157-158, 107 S. Ct. 2759, 2768 (1987) (Scalia, J., concurring).  Congress did not provide an express limitations period in 18 U.S.C. § 242 and, thus, the "catchall" statute governs a federal criminal civil rights offense.  The "catchall" statute, 18 U.S.C. Chapter 213, § 3282(a), provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

Milke alleges that Detective Saldate violated her Fifth, Sixth, and Fourteenth Amendment rights during her interrogation, which occurred on December 3, 1989. (Doc. 74 at ¶¶ 62-90, 237-254).  She further alleges that Detective Saldate fabricated her confession in violation of her right to a fair trial under the Fourteenth Amendment. *Id.* Milke's trial occurred in September and October of 1990.

Detective Saldate does not argue that he faces a real and appreciable danger of prosecution arising out of his interrogation of Milke and her subsequent trial.  The interrogation and trial occurred more than 25 years ago—well beyond the limitations period.  He concedes that he will respond to questions concerning the C.M. investigation; however, he fears that, in doing so, he will have waived his Fifth Amendment privilege as to other criminal investigations in which he was involved.  He argues that there is a possibility of prosecution under a conspiracy theory based on his involvement in criminal investigations other than the C.M. investigation.

With respect to a "conspiracy theory" to violate civil rights, it is unclear with whom Detective Saldate is/was conspiring.  Although conspiracy against rights is a crime under 18 U.S.C. § 241, it requires the participation of at least *two* persons. Section 241 provides (emphasis added):

> If **two or more persons** conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or [i]f **two or more persons** go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—**They** shall be fined under this title or imprisoned not more than ten years, or both

"The essence of a conspiracy is the agreement to engage in concerted unlawful activity… the prosecution must demonstrate that the defendant agreed with others to join the conspiracy and participate in the achievement of the illegal objective." *United States v. Grassi*, 616 F.2d 1295, 1301 (5th Cir. 1980).  Detective Saldate acknowledges the above analysis, which was explained by the Arizona Court of Appeals' memorandum decision, and yet, offers no additional facts or argument in support of his claim that he might possibly be subject to prosecution under 18 U.S.C. § 241.  Because no co-conspirator exists, Detective Saldate cannot reasonably apprehend a danger of prosecution under this statute.

Similarly, Detective Saldate cannot be prosecuted for alleged civil rights violations under § 242 with respect to any one of the other eight defendants for the same reason that he cannot be prosecuted for allegedly violating Milke's civil rights—and that is, the federal statute of limitations bar.  Detective Saldate interrogated Yanes in 1982; Conde in 1988; Rangel in 1989; and Mahler, Jones, and King in 1990; and he testified before the grand jury in Rodriguez's case in 1986 and in Reynolds case in 1988.  The statute of limitations has expired for prosecution under § 242 with respect to each of those defendants.  And since no co-conspirator has been identified for prosecution under §241, tolling of the statute of limitations is an invalid argument.

This is not a case where the government, in its discretion, will refrain from prosecuting a viable criminal civil rights violation. This is a case where the government cannot prosecute. The agencies having prosecutorial authority to bring federal criminal civil rights charges against Saldate have conclusively indicated that they cannot bring such charges. Thus, Detective Saldate has no reasonable ground to apprehend danger from his being compelled to testify.

### B. Detective Saldate Would Not Face a Reasonable Danger of Prosecution if He Testifies Regarding Other Cases in Which He Was Involved.

Detective Saldate mistakenly believes that there is reason to assert his Fifth Amendment privilege in response to questions posed of him in this case concerning cases other than the C.M. investigation. Specifically, he points to the allegations in Milke's Complaint, which include the cases cited in the Ninth Circuit's opinion, as the basis for his belief that he may be subject to prosecution for his involvement in those investigations. As previously explained, the statute of limitations has run on the eight cases cited in the Ninth Circuit's opinion. Setting the statute of limitations aside, Detective Saldate has no reasonable ground to apprehend danger from testifying regarding those cases, or any other cases, based on *dicta* contained in the Ninth Circuit's opinion.

Detective Saldate has misinterpreted the Ninth Circuit's warning that he may expose himself to a perjury prosecution. The Ninth Circuit found that the state post-conviction court (Judge Cheryl Hendrix) "grossly misapprehended the nature and content of the documents that Milke presented", which included court records from cases involving Detective Saldate. *Milke*, 711 P.3d at 1008. With respect to those documents, the Ninth Circuit stated:

> While the court held that "defense counsel would have been bound by the detective's answers" to the questions about these instances of

> misconduct, the documents would still have been valuable. With court orders in hand, defense counsel would have had a good-faith basis for questioning Saldate about prior instances where he had lied on the witness stand. [citation omitted.] If Saldate admitted the lies, his credibility would have been impaired. ***If he denied them, he would have exposed himself to a perjury prosecution.*** If he claimed he couldn't remember, defense counsel could have shown Saldate the documents to refresh his memory.

*Id.* at 1009 (emphasis added).

The Ninth Circuit was referring to *hypothetical* testimony, which was never elicited: *if* defense counsel *would have* questioned Detective Saldate about "prior instances where he had lied on the witness stand" and *if* Detective Saldate *would have* denied them, then he *would have* exposed himself to a perjury prosecution, at least in the Ninth Circuit's view. But the fact is that Detective Saldate was *never* asked about "prior instances where he had lied on the witness stand", either at the 1990 trial or when he testified at the 2010 evidentiary hearing during Milke's post-conviction proceedings[5]. As such, he has not made a false sworn material statement for which he could be charged with perjury.

Further, Detective Saldate cannot invoke the Fifth Amendment for testimony that he will provide in the future. *See Earp v. Cullen*, 623 F.3d 1065, 1070 (9th Cir. 2010) ["While the Fifth Amendment protects witnesses from incriminating themselves on the basis of past conduct, it "provides no protection for the commission of perjury."" (quoting *United States v. Apfelbaum*, 445 U.S. 115, 127 (1980))]. If Detective Saldate fears prosecution for perjury over anticipated testimony he may give in this case, "[t]he shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told." *Earp*, 623 F.3d at 1070 (9th Cir. 2010) (citation omitted). Detective Saldate cannot assert the Fifth

---

[5] *See Milke v. Ryan*, 2010 WL 383412 (Dist. Ariz. Jan. 29, 2010).

- 9 -

Amendment privilege to avoid testifying truthfully in this case.

## III. Conclusion.

There is no reasonable danger of a civil rights prosecution arising from the C.M. investigation or any other investigation in which Detective Saldate was involved, and he cannot preemptively invoke the Fifth Amendment privilege for testimony not yet given in this case. Maricopa County respectfully requests that the Court deny Detective Saldate's request for an order ruling that, if he responds to questions during the course of discovery related to the C.M. investigation, he will not be waiving his Fifth Amendment privilege as to other alleged misconduct.

**RESPECTFULLY SUBMITTED** this 20th day of October, 2016.

**SANDERS & PARKS, P.C.**

By     /s/ J. Arthur Eaves
    J. Arthur Eaves
    Robin E. Burgess
    Megan A. Evans
    3030 North Third Street
    Phoenix, Arizona  85012-3099
    Attorneys for Maricopa County Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants.

A courtesy copy with a copy of the Notice of Electronic filing was also **mailed** to HONORABLE ROSLYN O. SILVER on this same date at the following address:

HONORABLE ROSLYN O. SILVER
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 621
401 West Washington Street, SPC 56
Phoenix, AZ  85003

/s/ Michele Logan

- 10 -