Nick J. Brustin *(admitted pro hac vice)*
  Email: nick@nsbcivilrights.com
Anna Benvenutti Hoffmann *(admitted pro hac vice)*
  Email: anna@nsbcivilrights.com
Farhang Heydari *(admitted pro hac vice)*
  Email: farhang@nsbcivilrights.com
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson St., 8th Floor New York, NY 10013
Tel: (212) 965-9081 Fax: (212) 965-9084

Michael D. Kimerer (SBN 002492)
  Email: MDK@Kimerer.com
Rhonda Elaine Neff (SBN 029773)
  Email: rneff@kimerer.com
KIMERER & DERRICK, P.C.
1313 E. Osborn Road, Suite 100 Phoenix, AZ 85014
Tel: (602) 279-5900 Fax: (602) 264-5566

*Attorneys for Plaintiff Debra Milke*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Jean Milke<br><br>                    Plaintiff,<br><br>    vs.<br><br>City of Phoenix; Maricopa County; and Detective Armando Saldate, Jr. and Sergeant Silverio Ontiveros, in their individual capacities,<br>                    Defendants. | Case No. 2:15-cv-00462-ROS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT SALDATE'S MOTION FOR RULING THAT SALDATE WILL NOT WAIVE HIS FIFTH AMENDMENT PRIVILEGE AS TO OTHER ALLEGED MISCONDUCT BY RESPONDING TO QUESTIONS RELATED TO THE C.M. INVESTIGATION** |

## I.    Introduction

Given his history, Defendant Armando Saldate may well have an appropriate basis to invoke his Fifth Amendment privilege at some point during the pendency of this case. Indeed, at this point, Plaintiff does not contend that Saldate's stated plan to answer

1

questions about the C.M. investigation would necessarily waive any right he has to invoke his privilege as to other misconduct. But the manner in which Saldate asks the Court to bless his strategic choice at early this stage is inappropriate.

Saldate's motion takes the position that he has not yet invoked his Fifth Amendment privilege in this proceeding in a binding way. Indeed, Ninth Circuit law is clear that he *cannot* do so except in response to *specific questions*—in this case, at his deposition. (*See infra* Part II). Each specific invocation, in turn, must be assessed based on an "examination of the questions, their setting, and the peculiarities of the case." *United States v. Neff*, 615 F.2d 1235, 1240 (9th Cir. 1980). The reason for this longstanding rule is simple: neither the Court nor an opposing party can adequately assess, in advance, without specific context, the many ways that each question-and-answer at a future wide-ranging deposition might impact the witness's privilege against self-incrimination.

Saldate suggests that he may answer questions "related solely to his involvement in the C.M. Investigation" but assert his privilege "as to all other alleged crimes or misconduct." (Doc. 113 at 12). But this line does not explain how he will respond to a great many other questions, including, for example, his prior interrogation training, interactions with and reporting to police supervisors, misconduct of other Homicide detectives (relevant to Plaintiff's claims against the City), or what information he and others conveyed to Assistant County Attorneys on a range of cases (relevant to Plaintiff's claims against the County).[1] Plaintiff does not argue that Saldate may never invoke his Fifth Amendment privilege, but without knowing all the details that come with specific questions and specific invocations, Plaintiff is not able to take an informed position at this time.

---

[1] The questions that both Plaintiff and the other parties will no doubt put to Saldate at his deposition are substantially different than those that were likely to have been posed at Ms. Milke's retrial (when Saldate invoked his Fifth Amendment privilege). Although the confession and Saldate's credibility are still at issue, the focus of Plaintiff's civil rights claims is far more expansive than the criminal case (including *Monell* claims against the Phoenix Police Department and the Maricopa County Attorney's Office).

Rather than actually invoke his privilege in the proper manner and then see whether Plaintiff will challenge his invocation, Saldate asks the Court to bless his legal strategy now, before discovery begins. Of course, the Court cannot offer this type of advice. Any opinion the Court were to offer would be advisory, at best, and would be subject to additional litigation following Saldate's *actual* Fifth Amendment invocation at his deposition.

Rather than issue an advisory opinion, without a binding invocation or adequate context, Plaintiff respectfully requests that the Court deny Saldate's motion without prejudice to the underlying issues—including whether Saldate's invocation is proper or would result in partial waiver—and direct the parties, if necessary, to raise these issues following Saldate's deposition.

## II.    Saldate has not properly invoked his Fifth Amendment privilege, and asks this Court to provide non-binding legal advice without adequate context.

Saldate's motion asks the Court to issue an order determining that, as a general matter, he will not waive his Fifth Amendment privilege as to other not yet specified questions, should he hypothetically decide to answer questions about the C.M. investigation. Saldate's preferred course of action may well prove legally correct (that this choice will not result in subject matter waiver), but at this stage, the Court cannot weigh in because Saldate has not made a proper or binding invocation of his Fifth Amendment privilege.

The Ninth Circuit has repeatedly explained that "[t]he only way the Fifth Amendment can be asserted . . . is on a question-by-question basis." *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995); *see also Doe ex rel. Rudy-Glanzer v. Hamer*, 232 F.3d 1258, 1263 (9th Cir. 2000) ("The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right.").

"Only after an invocation of the privilege with respect to a specific question can a reviewing court determine whether a responsive answer might lead to injurious disclosures." *United States v. Dollinger*, 80 F.3d 389, 392 (9th Cir. 1996); *see also United States v. Tsui*, 646 F.2d 365, 367 (9th Cir. 1981) ("Even when the District Court is satisfied that the witness has a valid Fifth Amendment claim with regard to some issues, the court must permit questioning to establish the scope of the witness' claim and to determine whether there are other issues as to which the witness would not be able to assert the privilege.").

"The existence of such a hazard is generally determined from 'examination of the questions, their setting, and the peculiarities of the case.'" *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir. 1984) (quoting *United States v. Neff*, 615 F.2d 1235, 1240 (9th Cir. 1980)). Accordingly, blanket invocations or blanket refusals to answer questions are unacceptable. *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977) (approving the Fifth Circuit's conclusion in *United States v. Malnik*, 489 F.2d 682, that "[i]t is simply impossible to anticipate every question that might be asked and conclude that each would present a distinct possibility of self-incrimination if answered by the witness"); (*see also* Doc. 113 at 9 (acknowledging this law)).[2]

_____

[2] Saldate does not argue that this case falls within the sole exception to this basic rule of question-by-question invocation. The Ninth Circuit has recognized one exception where, "based on its knowledge of the case and of the testimony expected from the witness, the trial court can conclude that the witness could legitimately refuse to answer essentially all relevant questions." *Tsui*, 646 F.2d at 367–68 (affirming district court's acceptance of blanket invocation of privilege *at trial* after the court had already heard the Government's case-in-chief). "This exception, however, is a narrow one, only applicable where the trial judge has some special or extensive knowledge of the case that allows evaluation of the claimed fifth amendment privilege even in the absence of specific questions to the witness." *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982); *see also State v. Herrod*, 183 P.3d 519, 526–27 (Ariz. 2008) ("A trial court does not necessarily have to personally question the witness, conduct a hearing, or allow counsel to call the witness to the stand if the court possesses 'extensive knowledge of the case' such that it can find that the witness can legitimately invoke the Fifth Amendment to all relevant questions asked.").

This Court, although familiar with Plaintiff's allegations, does not have an adequate record to assess Saldate's blanket claim of privilege. To date, the record contains only

Perhaps even more problematic, Saldate's own motion takes the position that his current invocations—particularly those in his Answer—are not legally binding. (*See* Doc. 113 at 7 n.1 ("Saldate's Answer was not under oath and therefore responding to allegations contained therein concerning his involvement in the C.M. Investigation would not constitute a waiver of his Fifth Amendment protection")); *see also Indus. Indem. Co. v. Niebling*, 844 F. Supp. 1374, 1377 (D. Ariz. 1994) ("Clearly, the sort of blanket assertion of the privilege that the defendants have made in this case[—both in defendants' Answer and in a subsequent declaration—]is not sufficient, because it gives this Court no basis for determining whether invocation of the privilege is appropriate.").[3]

Saldate essentially admits therefore, that any opinion offered by this Court would be nothing more than legal advice for him to weigh in assessing whether or not to actually invoke his privilege at a future date. If the Court were to issue a substantive opinion on this motion, Saldate would be free to take the Court's advice and then reassess his strategy going forward. But this is the proper role of counsel, not the Court, which is barred from rendering opinions with respect to "abstract, hypothetical, or contingent questions." *Ala. State Fed. of Labor v. McAdory*, 325 U.S. 450, 461 (1945). Such requests for "advisory opinions" ask courts to make "advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument." *United States v. Fruehauf*, 365 U.S. 146,

letters from state and federal officials *declining* to pursue charges. (Doc. 113-1). The Arizona state court that considered Saldate's Fifth Amendment invocation during Ms. Milke's criminal proceedings, by contrast, had before it (among other things) most of the transcripts from the first trial, transcripts and exhibits from the 2010 federal court hearing, and records from the eight cases in which state courts found misconduct by Saldate.

[3] Defendant Saldate, citing *Neibling*, claims that he is forced to raise these issues now or risk a default judgment. But there is no reasonable fear that any court will find Saldate in *default* in this action. Indeed, not even the *Neibling* court reached this conclusion. *See Niebling*, 844 F. Supp. at 1378. The *Neibling* court did, however, reject Saldate's proposed method of adjudicating his Fifth Amendment assertion and instead required a "sufficient foundation" for the invocation. *Id.*

157 (1961); *see also Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009) ("The role of the courts is 'neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies.'"); *Hulstedt v. City of Scottsdale, Ariz.*, No. 09-cv-1258, 2011 WL 2836553, at *4 (D. Ariz. July 18, 2011) (explaining that the rule against advisory opinions or declaring rights in hypothetical cases serves to "conserve judicial resources[ and] improve judicial decision-making by requiring concrete controversies").

Although it seems generally unobjectionable that Saldate may answer some questions (related to the C.M. investigation) while not automatically waiving his right to invoke his privilege as to other questions (related to other allegations of misconduct), waiver, too, may ultimately only be assessed with respect to particular questions and answers. *See, e.g.*, *Mitchell v. United States*, 526 U.S. 314, 322 (1999) ("A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry. . . . [A] contrary rule 'would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony,' [i]t would . . . 'make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.'" (citations omitted)).

It does not take much imagination to envision answers that Saldate could offer, even to questions he deems "related" to the C.M. investigation, that would arguably open the door to additional questions that he deems "unrelated" to the C.M. investigation. Certain general statements about prior training or practices, for example, may unintentionally open the door to more specific inquiries. *See United States v. Anderson*, 79 F.3d 1522, 1527 (9th Cir. 1996) ("[A]n individual may lose the benefit of the privilege inadvertently, without a knowing and intelligent waiver.").

Ultimately, additional litigation over this issue may never take place—Saldate may be able to walk a line between answering some questions without waiving his rights as to others. At this early stage, however, no one can make such a judgment in the abstract. *See*

6

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (explaining that doctrine of ripeness and avoiding advisory opinions are "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements'").

**III.    Saldate's motion provides no authority for the Court to offer an assessment of Saldate's Fifth Amendment rights at this early stage.**

In seeking a ruling from the Court advising him on whether his anticipated strategy is sound, Saldate has not directed the Court to a single instance where another court has provided a similar advisory ruling. As discussed above, there is good reason for this lack of authority—this matter is simply not yet ripe for the Court to rule, and it will only become ripe once Saldate actually invokes his Fifth Amendment privilege and *if* Plaintiff seeks to overcome that privilege as to specific questions.

Anticipating how problematic his request is, Saldate argues, in a footnote, that he "is not seeking an impermissible advisory opinion" because Saldate has "already asserted his Fifth Amendment privilege in his Answer to the Second Amended Complaint as to specific allegations and Plaintiff has already raised the issue of an adverse inference from the assertion of the privilege." (Doc. 113 at 11 n.2). But just a few pages earlier, Saldate argues that his Answer was not under oath and therefore not a binding invocation (or waiver) of his privilege. (*Id.* at 7 n.1). Indeed, the entire tenor of his motion is that he has not yet made a decision on what course of action he will take. Moreover, although the Proposed Joint Case Management Plan does reference Plaintiff's "expect[ation] to raise partially dispositive and evidentiary issues to be resolved pretrial, including, for example, the adverse inferences to be drawn from Defendant Saldate's invocation of his 5th Amendment privilege," (Doc. 111 at 23), that expectation depends on Saldate's specific answers and invocations, s*ee Doe ex rel. Rudy–Glanzer*, 232 F.3d at 1265 (discussing potential adverse inferences in reference to the "question-by-question nature of the privilege against self-incrimination").

Saldate's only authority for asking the Court to provide such legal advice is *In re Commercial Financial Services, Inc.*, 247 B.R. 828 (Bankr. N.D. Okla. 2000), a case that involved the assertion of attorney-client privilege in response to specific discovery requests in a bankruptcy proceeding. (*See* Doc. 113 at 12 n.2); *see also In re Commercial*, 247 B.R. at 836–37 (noting that discovery had been propounded, that the discovery sought potentially privileged documents that would be listed on a privilege log, and that the issue of subject-matter waiver must be resolved before discovery could proceed).

But there is an indisputable difference between invoking a privilege in response to particular document requests and obtaining a ruling on the hypothetical implications of a future privilege invocation at a future deposition. The Ninth Circuit has explained that "[t]he application of privilege to a document production is different from a blanket privilege claim at an interview. **An unscripted interview is undefined, so a court cannot make a reasoned assessment of privilege before particular questions have been posed. In contrast, a document request lays out categories of documents requested**." *United States v. Bright*, 596 F.3d 683, 691 (9th Cir. 2010) (emphasis added) (citation and footnote omitted). This fundamental difference is why "in the context of oral questioning a [witness] has not fully litigated the privilege by issuing a general claim of privilege, [but] the same cannot be said of a claim of privilege over documents." *Id*. at 692 (citations omitted).

To the contrary, Plaintiff's research reveals that the vast majority of courts that have considered proposals similar to the one put forth by Saldate's motion have found it premature to involve the court. *See, e.g.*, *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 106–07 (1961) (finding challenge "premature" where Fifth Amendment privilege at issue had neither been invoked nor dishonored); *Herron v. E.P.A.*, 163 F.3d 606 (9th Cir. 1998) (unpublished) ("These Information Requests both demanded a great deal of information, and Herron's categorical refusal to respond to them, without explaining which specific questions he objected to, leaves us unable to tell what exactly his Fifth Amendment claim is. Were we to examine each and every question in these Information Requests to determine whether a requirement to answer any or all of

them might infringe on the Fifth Amendment, we would simply be providing an advisory opinion.").[4] The outcomes of these cases are in accord with the basic principle, discussed above, that federal courts involve themselves in concrete disputes, not hypothetical ones.

---

[4] *See e.g.*, *United States v. Bounos*, 693 F.2d 38, 40 (7th Cir. 1982) ("But the **defendants were not entitled to an advisory opinion on the scope of the Fifth Amendment**, either from the court or the prosecution; and, being ably represented, will not be heard to complain that the court gave them an inaccurate one. They certainly did not need, and were not entitled to, a formal grant of immunity, express assurances, or an exegesis of the Fifth Amendment." (emphasis added)); *In re Citroen*, 267 F.2d 915, 915–16 (2d Cir. 1959) ("**The motion is premature. No question has yet been put to the witness.** When he is questioned, he may or may not claim the privilege against self-incrimination. If he claims it, the Grand Jury may or may not offer him immunity. His motion assumes that he will claim his privilege and that they will then offer immunity. **What his motion asks the court to do is to render an advisory opinion as to the scope of the immunity protection** . . . , if immunity is hereafter offered him, and as to the constitutionality of such a grant of immunity. The court lacked jurisdiction to render an advisory opinion." (emphasis added)); *In re Wright*, 220 B.R. 543, 545 (S.D.N.Y. 1998) ("Ultimately, **the Debtors' request would require this Court to determine in advance the legal effect of future testimony in a context where the testimony is as yet unspecified.** Wright has neither asserted the privilege, nor provided any testimony. A federal court 'cannot entertain a claim which is based upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (emphasis added) (quoting *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998))); *S.E.C. v. Acree*, No. 92-0862, 1992 WL 427369, at *1 (D.D.C. Nov. 10, 1992) ("The defendant Stephen Lane moves for a protective order relieving him of his obligation to respond to the plaintiff, Securities and Exchange Commission (SEC) discovery requests and an order clarifying the parameters of his Fifth Amendment privilege in this case. . . . **In substance and effect, the defendants seek an advisory opinion of this Court stating what, if anything, it may do if the defendants elect to exercise their Fifth Amendment rights.** This the [sic] Court declines to do. The Court will not engage in speculation and possibilities but will limit its rulings to actual controversies ripe for consideration." (emphasis added)); *In re Commonwealth Fin. Corp.*, 288 F. Supp. 912, 913 (E.D. Pa. 1968) ("I am denying the application for a stay pending appeal, as premature. Until the petitioner indicates precisely what questions or areas of inquiry are considered protected by the 5th Amendment, or in some other way is prejudicial, any review of my July 11th decision (which merely directed the petitioner to be deposed) **would be tantamount to an advisory opinion.**" (emphasis added)).

**IV.    Before assessing either Saldate's invocation of his Fifth Amendment privilege or waiver, Plaintiff requires discovery into any indemnification agreement.**

Although Saldate's invocation of his Fifth Amendment privilege and related issues of waiver are not yet properly before the Court, Saldate's proposed invocation raises issues concerning possible indemnification agreements between the Defendants that require discovery before Plaintiff can take an informed position on Saldate's future Fifth Amendment invocation.

Saldate's position in this motion differs substantially from the position he took in 2013 and 2014, when Ms. Milke's retrial was still a possibility. In those criminal proceedings, Saldate, again represented by able counsel, invoked his Fifth Amendment privilege as to *all questions* pertaining either to Ms. Milke's case or to the other allegations of misconduct. Although Saldate does not explain this change, it appears to be a function of the potential damages at stake in this litigation. In particular, Saldate's motion states both that he is entitled to indemnification from the City of Phoenix and that he is complying with his duty to cooperate with the City by answering questions regarding this case. (*See* Doc. 113 at 11 (citing City Phoenix Code §§ 42-16, 42-17); *see also* Doc. 104 at 67–68 (claiming indemnification in his Answer)). Although Plaintiff raised this issue both in her Complaint and in response to Saldate's motion to dismiss, (*see* Doc. 74 ¶ 234; Doc. 50 at 45–46), the City of Phoenix has deliberately declined to take a position on this issue, (*see* Doc. 101 at 24 ("In answering Paragraph 234 of Plaintiff's Second Amended Complaint, the allegations call for a legal conclusion to which no response is required.")).

The question of whether and to what extent the City has agreed to indemnify Saldate, what type of "cooperation" the City will require in exchange, and how these issues impacted Saldate's Fifth Amendment invocation are all critical questions that Plaintiff must explore *before* taking an informed position on any future invocation by Saldate.

There is no question that indemnification agreements are proper sources of discovery. *See, e.g.*, *Brocklesby v. United States*, 767 F.2d 1288, 1292–93 (9th Cir. 1985) (finding indemnification agreement between co-defendants admissible to show whether

relationship was adverse and to attack the credibility of witnesses); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350, 2015 WL 5730101, at *2 (S.D.N.Y. Sept. 10, 2015) ("Courts have found that indemnification agreements between co-defendants, including agreements regarding the payment of defense fees and costs, are relevant to credibility issues and a proper subject of discovery."); *see also Kaplan*, 2015 WL 5730101, at *2 (collecting cases, including *Brocklesby*). That general principle is all the more applicable in this case, where indemnification appears to play a significant role in shaping Saldate's invocation of his privilege against self-incrimination.

Plaintiff intends to submit discovery requests to Defendants seeking information regarding indemnification in this case. Defendants' responses may well contain relevant information for Plaintiff and the Court to consider prior to adjudicating any motion regarding Saldate's Fifth Amendment rights.

## V. Conclusion

In opposing this motion, Plaintiff does not take the position that Saldate may never invoke his Fifth Amendment privilege; nor does Plaintiff take the position that Saldate may not invoke the Fifth Amendment privilege in the manner he suggests in this motion—as to other cases but not as to the C.M. investigation. What Saldate suggests may ultimately prove to be a legally tenable position.

Simply put, however, neither Plaintiff nor the Court can make an informed assessment of the complex issues raised by this motion without knowing precisely which questions Saldate chooses to answer, how he answers them, and for which questions he invokes his privilege. Without this necessary context, any ruling from the Court would be an advisory opinion as to the legal soundness of Saldate's proposed strategy.

Accordingly, Plaintiff respectfully requests that the Court deny Saldate's motion with the understanding that *if* Saldate invokes his privilege at his deposition, the parties may then revisit the issues raised by this motion.

11

DATED this 21st day of October, 2016.     By: _____/s/ Farhang Heydari_____

**NEUFELD SCHECK & BRUSTIN, LLP**

Nick J. Brustin
Anna Benvenutti Hoffmann
Farhang Heydari


**KIMERER & DERRICK, P.C.**

Michael D. Kimerer
Rhonda Elaine Neff


*Attorneys for Plaintiff Debra Jean Milke*

# CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2016 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Anna B. Hoffmann: | Anna@nsbcivilrights.com |
| Christina G. Retts: | cretts@swlfirm.com |
| | swolford@swlfirm.com |
| Daniel J. O'Connor: | caseadmin@occlaw.com |
| Farhang Heydari: | Farhang@nsbcivilrights.com |
| Jacob B. Lee: | jlee@swlfirm.com, |
| | arowley@swlfirm.com |
| James A. Eaves: | artie.eaves@sandersparks.com |
| | michele.logan@sandersparks.com |
| James E. Doman, Jr.: | eddy.doman@occlaw.com |
| | allison.moore@occlaw.com |
| Jesse M. Showalter: | jshowalter@hoklaw.com |
| | gzappia@hoklaw.com |
| | jesses@gmail.com |
| Jody C. Corbett: | jody@berkelawfirm.com |
| | laine@berkelawfirm.com |
| | shirley@berkelawfirm.com |
| Kathleen L. Wieneke: | kwieneke@swlfirm.com |
| | lpiasecki@swlfirm.com |
| Lori V. Berke: | lori@berkelawfirm.com |
| Michael D. Kimerer: | MDK@kimerer.com |
| | jpak@kimerer.com |
| | mwallingsford@kimerer.com |
| Nicholas D. Acedo: | NAcedo@swlfirm.com |
| Nick J. Brustin: | nick@nsbcivilrights.com |
| Rhonda E. Neff: | rneff@kimerer.com |
| | mwallingsford@kimerer.com |
| | rhondaneff@cox.net |
| Sally A. Odegard: | sodegard@hoklaw.com |
| | gzappia@hoklaw.com |
| Shane P. Dyet: | Shane.Dyet@occlaw.com |

  s/ Farhang Heydari

13