**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Jean Milke,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendants. | No. CV-15-00462-PHX-ROS<br><br>**ORDER** |

Plaintiff and Defendants wish to depose non-party James L. Styers but Styers believes he is entitled to refuse to answer all possible questions based on his Fifth Amendment privilege. Plaintiff and Defendants disagree, arguing the history and current status of Styers' challenges to his convictions and sentences establish he is no longer entitled to invoke the Fifth Amendment privilege. There is no authority definitively resolving the issue, specifically regarding Styers and his present status, but the better reading of existing law is that Styers is not now entitled to invoke the privilege regarding the crimes underlying his convictions.

## BACKGROUND

Styers' ability to invoke the Fifth Amendment appears to depend on the current status of his post-conviction challenges. Therefore, the Court has looked to the history of his post-conviction challenges in some detail. Only after reciting those events can the focus turn to the attempts to depose Styers in this litigation.

**A. Styers' Post-Conviction Proceedings**

In 1990, Styers was convicted of "first-degree murder, conspiracy to commit first-degree murder, child abuse, and kidnapping." 2007 WL 86944, at *2 (D. Ariz. Jan. 10, 2007). The court sentenced Styers to death. *State v. Styers*, 865 P.2d 765, 770 (Ariz. 1993). Styers appealed his convictions and sentences to the Arizona Supreme Court. That court reversed Styers' conviction for child abuse but affirmed his other convictions as well as the death sentence. *Id.* at 772, 778. The United States Supreme Court denied Styers' petition for writ of certiorari. *Styers v. Arizona*, 513 U.S. 855 (1994).

Styers then pursued state post-conviction relief. 2007 WL 86944, at *2. The state courts denied relief and, on December 16, 1998, Styers filed a federal petition for a writ of habeas corpus. *Id.* In those proceedings Styers asserted a total of nine claims. *Id.* at *1. In an order issued relatively early in those proceedings, the district court determined four claims "were procedurally barred and [one claim] lacked merit." *Id.* The district court later analyzed the remaining five claims and concluded Styers was not entitled to relief. Styers appealed to the Ninth Circuit.

The Ninth Circuit "affirm[ed] the district court on all counts, except Styers' claim that the Arizona Supreme Court failed to fulfill its obligations under *Clemons v. Mississippi*," regarding that court's independent weighing of the aggravating and mitigating circumstances. *Styers v. Schriro*, 547 F.3d 1026, 1027-27 (9th Cir. 2008). The Ninth Circuit remanded to the district court "with instructions to grant the writ with respect to Styers' sentence unless the state, within a reasonable period of time, either corrects the constitutional error in petitioner's death sentence or vacates the sentence and imposes a less sentence." *Id.* at 1036. The State of Arizona filed an unsuccessful petition for writ of certiorari. *Ryan v. Styers*, 558 U.S. 932 (2009).

Upon remand, "the district court entered judgment granting the writ of habeas corpus unless the State of Arizona, within 120 days of the judgment, 'initiate[d] proceedings either to correct the constitutional error in Petitioner's death sentence or to vacate the sentence and impose a lesser sentence consistent with the law.'" *Styers v. Ryan*, 2012 WL 3062799, at *1 (D. Ariz. July 26, 2012). The Supreme Court of Arizona

received briefing from both sides and concluded it was not necessary to send the case for a full resentencing. Rather, the Arizona Supreme Court concluded it could remedy the error identified by the Ninth Circuit by "conduct[ing] a new independent review of [Styer's] capital sentence." *Id.* at *2. The Arizona Supreme Court conducted that independent review and held the death sentence was appropriate. *Id.* Styers filed an unsuccessful petition for a writ of certiorari regarding the Arizona Supreme Court's decision. *Styers v. Arizona*, 565 U.S. 994 (2011). Styers then filed a motion in his federal habeas case requesting an "unconditional writ releasing him from his death sentence," arguing the Arizona Supreme Court had failed to comply with the federal court's instructions. 2012 WL 3062799, at *2.

The district court denied Styers' request for an unconditional writ. The district court held the relief ordered by the Ninth Circuit "gave the State the opportunity to cure the constitutional defect" but did not specify precisely how it must do so. *Id.* The Arizona Supreme Court's "new independent review of Petitioner's capital sentence . . . remedied the constitutional infirmity" the Ninth Circuit had identified. *Id.* at *6. Therefore, Styers was not entitled to any additional relief. Styers appealed the district court's decision.

Shortly after the district court's decision denying Styers' request for an unconditional writ, he filed a separate petition in federal court. CV-12-2332-PHX-JAT. That petition raised eight grounds for relief. *Styers v. Ryan*, 2013 WL 1775981, at *2 (D. Ariz. April 25, 2013). Some of those grounds addressed issues that were raised or could have been raised in Styers' earlier petition. But some of the grounds addressed aspects of the Arizona Supreme Court's reweighing. When reviewing that second petition, the district court concluded it could not consider any of the grounds Styers had raised in his earlier petition nor could the court consider any of the grounds Styers could have raised earlier. The district court concluded, however, that it could entertain arguments based on the "new independent sentencing review." *Id.* at *5. The district court decided to stay all those claims based on the pending appeal involving the earlier petition.

On December 30, 2015, the Ninth Circuit issued its opinion regarding Styer's earlier petition. In that opinion, the Ninth Circuit addressed whether, after the writ had been granted, the Arizona Supreme Court was entitled to conduct a new independent sentencing review or if the case should have been sent for an entirely new sentencing. *Styers v. Ryan*, 811 F.3d 292, 294 (9th Cir. 2015). The Ninth Circuit concluded the Arizona Supreme Court's decision that it could correct the error merely through a new independent sentencing review was not "contrary to, [nor did it] involve[] an unreasonable application of, clearly established federal law as determine by the Supreme Court of the United States." *Id.* at 297. Moreover, the Arizona Supreme Court's new independent sentencing review complied with all constitutional requirements. Therefore, Styers was not entitled to relief. Styers filed an unsuccessful petition for writ of certiorari. *Styers v. Ryan*, 137 S. Ct. 1332 (2017).

After the petition for writ of certiorari was denied in 2017, the district court hearing Styers' second federal petition issued its ruling. That court concluded the only grounds for relief that were still pending involved the propriety of the Arizona Supreme Court's independent sentencing review. Because the Ninth Circuit had addressed those grounds in its 2015 decision, the district court found the grounds "moot." *Styers v. Ryan*, 2017 WL 3641454, at *1 (D. Ariz. Aug. 24, 2017). The district court then denied Styers' request to reconsider its refusal to address the other grounds, including grounds involving Styers' convictions. The district court denied that request. Finally, the district court denied Styers' request for a certificate of appealability. CV-12-2332-PHX-JAT, Doc. 36. Styers subsequently requested a certificate of appealability from the Ninth Circuit. That request remains pending. Ninth Circuit Case No. 17-17356, Doc. 4 (filed January 17, 2018).

Based on this extensive history, Styers' convictions and death sentence have followed slightly differently post-conviction paths. Regarding his convictions, they have been affirmed during the following proceedings: 1) a direct appeal to the Arizona Supreme Court; 2) an unsuccessful petition for writ of certiorari to the United States

- 4 -

Supreme Court; 3) state post-conviction proceedings; 4) federal district court; 5) Ninth Circuit review; 6) an unsuccessful petition for writ of certiorari to the United States Supreme Court. Based on this history, it seems clear that there is no path remaining for Styers to challenge his convictions.

As for Styers' death sentence, he obtained relief from the Ninth Circuit in 2008 and the Arizona Supreme Court, after engaging in a new independent sentencing review, concluded the death sentence was appropriate. After that decision, Styers has unsuccessfully sought to challenge his sentence through the following: 1) an unsuccessful petition for writ of certiorari to the United States Supreme Court regarding the Arizona Supreme Court's decision; 2) an unsuccessful motion in district court; 3) a published Ninth Circuit opinion concluding the resentencing complied with previous federal orders and did not violate Styers' constitutional rights; 4) an unsuccessful petition for writ of certiorari regarding that Ninth Circuit decision; and 5) a district court order denying relief because the sentencing claims had already been considered and rejected by the Ninth Circuit. As with his convictions, it seems clear that there is no path remaining for Styers to challenge his death sentence.

Despite these decades-long attempts to overturn his convictions and sentences, Styers believes he still has not "exhausted all avenues for state post-conviction relief." Styers plans "to file a post-conviction petition" under one of the exceptions allowing for successive petitions. (Doc. 269 at 7). In addition, Styers describes his Ninth Circuit litigation as continuing and believes he may "be awarded a new trial or sentencing proceeding." (Doc. 269 at 7). While Styers and his counsel may have plans to file additional attempts at relief, and they may believe there is a possible chance at winning relief from the Ninth Circuit, given the actual course of Styers' challenges and in particular the finality of the court decisions, there is no meaningful chance of that occurring.

**B. Styers' Deposition**

During the present litigation, both Plaintiff and Defendants have sought to depose

Styers. Hoping to avoid prolonged proceedings, the Court originally directed the parties to submit written questions to Styers and his counsel for their consideration. (Doc. 206). Plaintiff and Defendants did so but Styers, through his counsel, stated he planned to invoke the Fifth Amendment to every question except for his date of birth and the date of his marriage. (Doc. 253-1 at 1). Thus, Styers claimed he was entitled to invoke the Fifth Amendment regarding, for example, the "names and ages of [his] children" and whether he has ever been arrested. (Doc. 253-1 at 1-2). After Styers made clear he would not answer any questions, the parties submitted briefing on whether Styers was entitled to invoke the Fifth Amendment as he proposed.

**ANALYSIS**

Styers' position is that he need not answer *any* questions regarding his life and activities. The Fifth Amendment obviously does not reach so far. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 189 (2004) ("To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled."). But neither the Ninth Circuit nor the Supreme Court has addressed the Fifth Amendment's reach in circumstances such as the present.

In 1999, the Supreme Court issued *Mitchell v. United States* which provides some guidance on the reach of the Fifth Amendment after conviction. 526 U.S. 314 (1999). There, Amanda Mitchell had pleaded guilty to "offenses arising from a conspiracy to distribute cocaine." *Id.* at 317. Despite pleading guilty, Mitchell "reserved the right to contest the drug quantity attributable to her." *Id.* At her sentencing hearing, Mitchell did not present any evidence nor did she testify. The district court then ruled "as a consequence of her guilty plea, [Mitchell] had no right to remain silent with respect to the details of her crime." *Id.* at 319. The district court explicitly "held it against [Mitchell]" that she did not testify at sentencing. *Id.* The Third Circuit affirmed, reasoning "it would be illogical" to allow a party to plead guilty and then invoke the Fifth Amendment at sentencing. *Id.* at 320. Thus, the issue for the Supreme Court was "whether, in the federal criminal system, a guilty plea waives the [Fifth Amendment] privilege in the

sentencing phase of the case." *Id.* at 316.

According to the Supreme Court, it had long ago rejected the proposition that "incrimination is complete once guilt [had] been adjudicated. *Id.* at 325 (citing *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (holding Fifth Amendment applies to penalty phase of capital murder trial)). But the Supreme Court noted "[i]t is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege." *Id.* at 326. "[T]hat principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared." *Id.* In support of these statements, the Supreme Court cited to *Reina v. United States*, 364 U.S. 507, 509 (1960). A brief look at *Reina* is necessary to understand why the *Mitchell* court cited it.

*Reina* involved an inmate who "was serving a five-year sentence for a federal narcotics offense when . . . he was subpoenaed before a federal grand jury." 364 U.S. at 509. During his grand jury appearance, the inmate was asked about other persons who had been involved in his crime. In response to those questions, the inmate invoked the Fifth Amendment "and refused to answer any of the questions." *Id.* The United States Attorney then obtained a court order pursuant to a federal statute that granted the inmate immunity from prosecution based on his testimony. When the inmate still refused to testify, he was found in criminal contempt.

The inmate appealed his criminal contempt conviction and the main issue for the Supreme Court was whether the statutory immunity covered "state, as well as federal, prosecution." *Id.* at 510. In determining the statutory immunity prohibited both types of prosecution, the Supreme Court noted there may not have been any need to grant the inmate federal immunity in the first place. That observation was based on "the ordinary rule that once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime." *Id.* at 513. In support of this, the Supreme Court cited a Second Circuit case that had held

"[i]t is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify." *United States v. Romero*, 249 F.2d 371, 375 (2d Cir. 1957). According to the *Reina* court, that Second Circuit case was "weighty authority for [the] proposition" that once an individual is convicted, the Fifth Amendment privilege no longer applies. *Reina*, 364 U.S. at 513.

Returning to *Mitchell*, the Supreme Court concluded the Fifth Amendment could still be invoked at sentencing because an individual "may have a legitimate fear of adverse consequences" should she testify at a sentencing hearing. 526 U.S. at 326. And the claim that Mitchell "had no right to remain silent but instead could be compelled to cooperate in the deprivation of her liberty would ignore the Fifth Amendment privilege at the precise stage where, from her point of view, it was most important." *Id.* at 327. Finally, the Court held the applicability of the Fifth Amendment at sentencing meant the district court had erred by drawing an adverse inference from Mitchell's failure to testify.

In the words of *Mitchell*, an individual cannot invoke the Fifth Amendment once "the sentence has been fixed and the judgment of conviction has become final." 526 U.S. at 326. And based on *Reina*, a judgment of conviction may be "final" despite the sentence not yet being fully executed.[1] The proper inquiry, therefore, appears to be whether a particular conviction is "final" despite the sentencing being not yet completed. If so, the Fifth Amendment does not apply.

In the criminal conviction context, there is a well-established definition of "final": a conviction becomes "final" when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). If

---

[1] There is no discussion whether the inmate in *Reina* had pursued post-conviction relief. At the time of that case, however, there were post-conviction remedies available to federal inmates. *See* 28 U.S.C. § 2255 (allowing for collateral attacks on federal sentences, enacted in 1948). And there was no deadline for filing collateral challenges. *See Clay v. United States*, 537 U.S. 522, 528 (2003) (noting prior to AEDPA "no statute of limitations governed requests for federal habeas corpus or § 2255 habeas-like relief"). Thus, even though the inmate had been in custody for some time, he had a plausible path for challenging this conviction.

this definition were to apply, an individual would not be entitled to invoke the Fifth Amendment after the conclusion of direct review proceedings. For Styers, those direct review proceedings ended in 1994. *Styers v. Arizona*, 513 U.S. 855 (1994). There is some authority adopting this view. *See Toepfer v. United States*, 518 F. App'x 834, 840 (11th Cir. 2013) (prisoner could not invoke privilege in post-conviction proceeding because "his judgment of conviction had already become final" and citing *Clay* definition of finality); McCormick On Evid. § 121 (7th ed.) ("Most courts . . . treat the finality of a conviction [as defined by the end of direct review] as unqualifiedly removing the risk of incrimination."). This rule, however, appears to conflict with Ninth Circuit law.

In *Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012), the petitioner had been convicted and sentenced to death in Arizona state court. His direct appeal and state post-conviction relief efforts were unsuccessful and he sought federal habeas relief. One of the claims on federal habeas involved the alleged ineffectiveness of the petitioner's counsel at sentencing which if he prevailed would entitle him to a new sentencing. During the federal habeas proceedings the district court entered a protective order, authorized a substantial amount of discovery, and conducted a six-day evidentiary hearing. The petitioner testified at that hearing but invoked the Fifth Amendment privilege in response "to all questions related to the crime." *Id.* at 813. The district court denied relief but the Ninth Circuit "vacated [the] death sentence and instructed the state court to conduct a new sentencing proceeding." *Id.* at 814. During the later state proceedings there was a disagreement about the scope of the federal protective order and whether the state could use evidence developed in the federal proceedings at the petitioner's resentencing. The district court ruled the state could use most of the information developed during the federal habeas proceeding and that ruling was appealed.

Most of the analysis by the Ninth Circuit regarding the scope of the protective order is not relevant here. In conducting that analysis, however, the Ninth Circuit made a number of observations regarding a federal habeas petitioner's Fifth Amendment

privilege. According to the Ninth Circuit, any "waiver of the Fifth Amendment privilege" during federal habeas proceedings "is narrow and courts must limit the use of any privileged testimony to litigation of the habeas claim." *Id.* at 823. The Ninth Circuit also stated that "in some circumstances petitioners . . . are permitted to refuse to answer questions by asserting their Fifth Amendment privilege" but, when petitioners do so, a court "is permitted to draw a negative inference against the petitioner[s]." *Id.* at 823. These statements assume federal habeas petitioners retain at least a limited version of the Fifth Amendment privilege throughout their federal proceedings despite state convictions obviously being "final" as that term is usually understood.

While *Lambright* assumed the petitioner was entitled to invoke the privilege during federal habeas proceedings, it did not offer an explanation of that position. Moreover, the whole discussion of the privilege in *Lambright* is difficult to understand because it does not identify the particular information allegedly withheld based on the privilege. That is, the opinion claimed the petitioner had refused to answer questions based on the privilege, meaning it is unclear what privileged information was even at issue, potentially rendering the entire discussion dicta. But regardless of its precise reasoning, *Lambright* provides a substantial basis to conclude the Fifth Amendment privilege does not evaporate entirely once a state conviction has become "final" under the normal test for finality in the conviction context.

*Mitchell* provides the Fifth Amendment no longer applies once a conviction is "final" while *Lambright* provides the Fifth Amendment continues to apply even in federal habeas proceedings for state prisoners. Those cases can be harmonized only by recognizing "[f]inality is variously defined; like many legal terms, its precise meaning depends on context." *Clay v. United States*, 537 U.S. 522, 527 (2003). Thus, for purposes of invoking the Fifth Amendment, "final" likely does not have its usual meaning. But absent any meaningful guidance from the Supreme Court or Ninth Circuit, it is difficult to arrive at the appropriate definition.

While the parties have presented competing proposals for the definition of "final,"

- 10 -

the best proposal is that offered by Defendants.[2] Defendants contend a conviction should qualify as "final," such that the privilege does not apply, when an individual is no longer facing "substantial and real . . . hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968). Under this "substantial and real" approach, an individual may still be able to invoke the privilege after his conviction is "final" under the normal test for finality provided there is a "substantial and real" chance that any testimony might be used against him in future proceedings. For example, an individual convicted in state court likely would be entitled to invoke the privilege when he is pursuing his first federal petition for post-conviction relief. Until that round of federal habeas is completed, there will usually remain substantial hazards of incrimination.

This "substantial and real" approach to finality allows for the holdings in *Reina* and *Lambright* to be consistent. The inmate in *Reina* had pursued and lost a direct appeal and there was no indication he was pursuing any form of post-conviction relief. In those circumstances, there were no "substantial and real . . . hazards of incrimination." 390 U.S. at 53. Thus, he could not invoke the privilege. By contrast, the inmate in *Lambright* had plausible—in fact, ultimately successful—post-conviction claims for relief. Thus, there remained substantial hazards of incrimination and he retained the ability to invoke the privilege. Applying the "substantial and real" approach to Styers requires the Court reject his position that he is entitled to invoke the privilege.

Styers has been litigating his convictions and sentences for years. He has been through direct appeals, state post-conviction proceedings, and multiple rounds of federal habeas. In 2008, the Ninth Circuit rejected Styers' guilt-related claims but granted relief

---

[2] Styers proposes "'finality' should be defined as the point after which the consequences of the witness' criminal case are no longer uncertain." (Doc. 269 at 5). Styers believes that point will not be reached in his case until he is executed. In other words, Styers believes a death-sentenced individual retains his Fifth Amendment privilege until his execution, regardless of the status of any challenges to his conviction and sentence. Under this approach, every death-sentenced individual under any and all circumstances, could never be forced to testify. Styers cites no authority recognizing such an absolute rule and such a rule would seriously impair the "truth-seeking function of the court" for no meaningful purpose. *Denham v. Deeds*, 954 F.2d 1501, 1504 (9th Cir. 1992). Moreover, *Reina* strongly indicates the privilege may no longer exist even when portions of a sentence remain to be served. Styers' proposed absolute rule, therefore, is not convincing.

on his death sentence. *Styers v. Schriro*, 547 F.3d 1026 (9th Cir. 2008). The Arizona Supreme Court then conducted additional proceedings and reinstated Styers' death sentence. The United States Supreme Court refused to review that decision. Years later, the Ninth Circuit rejected Styers' arguments regarding that reinstatement. *Styers v. Ryan*, 811 F.3d 292 (9th Cir. 2015). And again, the United States Supreme Court refused to review that decision. Therefore, Styers has been through a complete round of federal habeas regarding his convictions and sentences. And while Styers claims he still has plausible grounds for relief, especially sentencing-phase claims, the district judge handling his latest federal habeas petition held all the grounds Styers had asserted were "meritless," "moot," or subject to the "second or successive" bar.

Looking at the entirety of Styers' state and federal proceedings, there is no meaningful chance he will obtain relief. Accordingly, there is no "substantial and real" likelihood Styers will suffer any adverse consequences if he is required to testify at a deposition. In other words, Styers' convictions and sentences are "final" because "no adverse consequences can be visited upon [Styers] by reason of further testimony." *Mitchell*, 526 U.S. at 326. Styers is not entitled to invoke the Fifth Amendment privilege in connection with the crimes for which he was convicted.

In addition to questions regarding the crimes for which he was convicted, Styers has claimed he is entitled to invoke the Fifth Amendment in response to questions involving all other aspects of his life. Styers offers no meaningful explanation why he is entitled to do so. At present, there is no plausible basis for Styers to claim, for example, that identifying how many children he has will be incriminating. Furthermore, Styers claims he is entitled to invoke the privilege in response to questions that might implicate him in crimes allegedly committed during his service in Vietnam or in a conspiracy to murder Mark (Arizona) Milke. (Doc. 269 at 13). Absent substantially more information from Styers regarding the nature of his fears, the possibility of a war crimes prosecution for events occurring in Vietnam decades ago qualifies as "imaginary and unsubstantial." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001). Similarly, there is no indication of any

- 12 -

"substantial and real" likelihood that Styers might implicate himself regarding an alleged conspiracy to commit murder. Therefore, Styers cannot invoke the privilege in response to other questions about his life.

Styers' deposition will be allowed to proceed. Plaintiff, Defendants, Styers, and the Arizona Department of Corrections shall confer and arrange for that deposition as soon as possible. The Court notes that this Order does not appear to be an appealable order. *See In re Subpoena Served on California Pub. Utilities Comm'n*, 813 F.2d 1473, 1476 (9th Cir. 1987) ("The general rule is that orders regarding discovery, including sanction orders, are normally deemed interlocutory and reviewable only on appeal from a final judgment."). Styers' only option for obtaining appellate review may be to refuse to answer the deposition questions and then "appeal the ensuing contempt citation." *Id.*

Accordingly,

**IT IS ORDERED** the Motions for Ruling (Doc. 264, 265) are **GRANTED**. James L. Styers is not entitled to invoke the Fifth Amendment privilege at his deposition.

**IT IS FURTHER ORDERED** the parties shall arrange for the deposition as soon as possible. The parties shall file a status report regarding the deposition no later than **August 3, 2018**.

Dated this 25th day of July, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge