IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Jean Milke,   Plaintiff,   v.   City of Phoenix, et al.,   Defendants. | No. CV-15-00462-PHX-ROS   **ORDER** |

The parties have submitted a notice of discovery disputes regarding three issues.

**1. Scope of Attorney-Client Privilege**

The parties' first dispute involves the questioning of Plaintiff's criminal attorney C. Kenneth Ray II. Defendants took Ray's deposition but, according to Defendants, Ray "refused to answer any questions regarding his communications with Plaintiff, his interview of Defendant Saldate in 1990, his knowledge of any Brady or Giglio material during his representation of Plaintiff, his strategic decisions made while representing Plaintiff, and his withdrawal as Plaintiff's attorney." (Doc. 358 at 2). Defendants believe Ray should have answered all of those questions because Plaintiff "waived her attorney-client privilege regarding her communications with Mr. Ray and his actions as her attorney."

Prior to Ray's deposition, Plaintiff sent him a letter indicating she did not agree to waive "attorney-client or work product privilege." That letter did, however, give Ray "informed consent pursuant to Arizona Ethical Rule 1.6(a) . . . to sit for a deposition" and

answer questions "about any public actions [Ray] took as [Plaintiff's] attorney that are not covered by any privilege."[1]  Plaintiff also agreed Ray could answer questions "about any *Brady* or *Giglio* material that may have been known to you while acting as my attorney."  (Doc. 358-1 at 49).  Plaintiff now states she has "no opposition to Mr. Ray answering questions regarding his public actions or his knowledge of any relevant *Brady/Giglio* material in Plaintiff's case."  In addition, Plaintiff concedes Ray should answer "questions about the few letters between Plaintiff and Mr. Ray that were attached as exhibits to Plaintiff's habeas pleading and/or the limited contents of their communications that were disclosed by Plaintiff to third parties."[2]  Plaintiff argues, however, that she has not issued a "blanket waiver of the privilege as to all attorney-client communications" with Ray.  (Doc. 358 at 3).  While Plaintiff would like to maintain the attorney-client and work product privilege to the maximum extent possible, her own actions indicate she may have waived the privilege much more broadly than she would like.

By disclosing privileged communications to third parties Plaintiff waived the privilege on the subject of those communications.  *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (holding "the disclosure of information resulting in the waiver of the attorney-client privilege constitutes waiver only as to communications about the matter actually disclosed on that subject").  At present, there is evidence that Plaintiff disclosed to a third party a communication regarding Saldate's alleged "lying on police reports."  (Doc. 360 at 19).  Plaintiff also references other "letters between Plaintiff and Mr. Ray that were attached as exhibits to Plaintiff's habeas pleading."  Because Plaintiff agrees those communications waived any privilege, Ray must answer questions on the subjects addressed in those communications.  That waiver, however, is relatively limited as Plaintiff's disclosure of certain communications did not waive the

---

[1] Arizona Ethical Rule 1.6(a) "is much broader than the attorney-client privilege." *Samaritan Found. v. Goodfarb*, 862 P.2d 870, 879 (Ariz. 1993).
[2] During Plaintiff's criminal proceedings, she sent letters to third parties disclosing communications between her and Ray.  In one letter, Plaintiff stated Ray told her that other attorneys had told him "Saldate (cop) must be stopped because they had similar experiences with him lying on police reports."  (Doc. 360 at 19).

privilege regarding other subjects. *See id.* (holding "limited disclosure" to third party does not result in waiver regarding "every document or communication that touch on the more general" issues). The larger issue is Plaintiff's possible implicit waiver of the privilege.

"Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). The Ninth Circuit has outlined "a three-pronged test" to determine whether a party has implicitly waived the privilege. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). "First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit. Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue. Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense." *Id.* Application of this test establishes Plaintiff may have implicitly waived the privilege regarding a potentially large amount of communications with Ray.

Applying the three-prong test, the first prong supports a finding of waiver because Plaintiff is asserting the privilege as a result of her decision to file the present suit. The second prong also supports a finding of waiver because Plaintiff's claims put at least some privileged information at issue.[3] And the third prong also supports a finding of waiver because allowing Plaintiff to invoke the privilege would deny Defendants access to information vital to their defense. Thus, Plaintiff likely has implicitly waived the privilege in some respects. The scope of that waiver, however, cannot be determined on the present record.

Defendants will be required to prepare a list of the questions they wish to ask Ray

---

[3] For example, Plaintiff bases some of her claims on Defendants' alleged failure to turn over *Brady/Giglio* material. By asserting that claim, Plaintiff put at issue whether Defendants turned over *Brady/Giglio* material but also whether she and her attorney had the relevant *Brady/Giglio* material notwithstanding an absence of disclosure. Plaintiff seems to concede she has waived the privilege on the *Brady/Giglio* issue. But beyond that issue, Plaintiff has asserted a claim that Saldate fabricated her confession. If some of her privileged communications addressed whether that confession occurred, her decision to bring this suit may have waived any privilege regarding those communications.

1  that they believe Ray would refuse to answer based on assertion of the privilege.  Plaintiff
2  will be required to identify the questions Ray should answer and those which she believes
3  call for answers which are privileged.  The parties will then be required to submit the list
4  of questions, Plaintiff's responses, and briefs of no more than ten pages each outlining
5  their positions.

### 2. Privilege Log

The parties disagree on whether Plaintiff should be required to produce a "line-by-line privilege log."  Defendants believe a detailed privilege log is necessary to "provide sufficient notice" and allow Defendants to assess the privilege claims.  Plaintiff counters that producing a detailed privilege log "would be incredibly burdensome given the magnitude of documents here."  (Doc. 358 at 5).

The Ninth Circuit has explained a detailed privilege log is "*sufficient* to properly assert the privilege" but is not always "*necessary*."  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005).  In other words, the Ninth Circuit has not identified the minimum amount of detail a valid privilege log must contain.  Instead of a clear minimum, courts must make a "case-by-case determination" to assess the appropriate amount of detail.  *Id.* at 1149.  While a detailed privilege log "may be appropriate under some circumstances" other circumstances mean a detailed log "would be unduly burdensome." *Id.* at 1148.

When determining the appropriate amount of detail, a court must consider "the magnitude of the document production" and whether there are aspects of the litigation that would make a detailed privilege log "unusually easy" or "unusually hard" to produce.  *Id.* at 1149.  Multiple courts have recognized that requiring a detailed privilege log can be unduly burdensome given the nature and number of documents involved.  *See, e.g.*, *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 477 (S.D. Cal. 1997) (noting "a document-by-document privilege log is *not* required in certain circumstances" and not requiring detailed log when "hundreds of thousands, if not millions, of documents" were at issue); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 638 (D. Nev. 2013) (noting

- 4 -

1  "unquestionably large" volume of documents meant privilege log could require less
2  information than other cases).

3  In the present case, the number of documents at issue indicate an overly detailed
4  privilege log might be unduly burdensome.  The cursory privilege log produced by
5  Plaintiff, however, is not enough.  That privilege log provides no meaningful way for
6  Defendants to understand how many documents are at issue and to assess the validity of
7  the privilege claims.  Therefore, the parties will be required to confer and determine what
8  additional details would provide a sufficient basis for Defendants to assess the privilege
9  claims.  In doing so, the parties should keep in mind that it is unlikely the Court will
10 require the level of detail outlined by *In re Grand Jury Investigation*, 974 F.2d 1068 (9th
11 Cir. 1992), but *some* additional details regarding the withheld documents are needed.

### 3. Draft Expert Reports

During his deposition, one of Plaintiff's experts admitted that "Plaintiff authored the first draft of his report, and he adopted portions authored by Plaintiff."  The City of Phoenix then asked the expert to identify the specific portions of the report drafted by Plaintiff but Plaintiff objected.  According to Plaintiff, Federal Rule of Civil Procedure 26 does not allow questions "about the drafting process" between an expert and counsel.  That is not entirely accurate.

Federal Rule of Civil Procedure 26(b)(4) "provide[s] work-product protection against discovery regarding draft expert disclosures or reports and—with three specific exceptions—communications between expert witnesses and counsel."  *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 (9th Cir. 2014).  The three exceptions are for 1) communications that relate to the expert's compensation, 2) communications that "identify facts or data that [counsel] provided and that the expert considered in forming the opinions to be expressed," and 3) communications that include "assumptions . . . that the expert relied on in forming the opinions to be expressed."  Fed. R. Civ. P. 26(b)(4)(C).  In other words, any communications between counsel and an expert "containing 'factual ingredients' are discoverable, while opinion work product is not

1  discoverable." *Mackay*, 742 F.3d at 870.

2  Based on the exceptions in Rule 26, if the draft report prepared by Plaintiff's counsel conveyed "facts or data" or "assumptions" that the expert relied on, Plaintiff must disclose those portions of the draft report and the City of Phoenix is free to question the expert about those topics. *See United States ex rel. Wall v. Vista Hospice Care*, 319 F.R.D. 498, 508 (N.D. Tex. 2016) (party must produce portions of draft expert report that contained "facts or data that the party's attorney provided and that the expert considered). But if the draft report did not contain "facts or data" or "assumptions," it is protected by Rule 26(b)(4) and the City of Phoenix is not entitled to ask the expert about the drafting process. Because the deposition of the expert already occurred, Plaintiff's counsel will be required to notify the City of Phoenix whether the draft report contained any information that is subject to discovery under the three exceptions. If it did not, no further action is necessary. If it did, Plaintiff must disclose the relevant portions of the draft report and the parties should confer to determine whether it is necessary to reconvene the expert's deposition.

……
……
……
……
……
……
……
……
……
……
……
……
……

Accordingly,

**IT IS ORDERED** the Motion to Seal (Doc. 359) is **GRANTED**. The Clerk of Court shall file the documents previously lodged. This Order shall not be sealed.

**IT IS FURTHER ORDERED** no later than **October 15, 2018**, the parties shall file Defendants' questions, Plaintiff's responses, and briefs of no more than ten pages each regarding the questions Defendants wish to ask C. Kenneth Ray II.

**IT IS FURTHER ORDERED** no later than **October 15, 2018**, the parties shall file a joint statement of no more than five pages each addressing any remaining disputes regarding the privilege log and expert disclosure.

**IT IS FURTHER ORDERED** the Motion for Protective Order (Doc. 330) is **DENIED AS MOOT**.

Dated this 9th day of October, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge