Elizabeth C. Wang (admitted *pro hac vice*)
LOEVY & LOEVY
2060 Broadway, Ste. 460, Boulder, CO 80302
O: 720.328.5642; F: 312.243.5902
elizabethw@loevy.com

Jon Loevy (admitted *pro hac vice*)
Rachel Brady (admitted *pro hac vice*)
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl., Chicago, IL 60607
O: 312.243.5900; F: 312.243.5902
jon@loevy.com
brady@loevy.com

Michael D. Kimerer (Bar # 002492)
Rhonda Elaine Neff (Bar # 029773)
KIMERER & DERRICK, P.C.
1313 E. Osborn Rd., Suite 100, Phoenix, AZ 85014
Tel: 602.279.5900; Fax: 602.264.5566
mdk@kimerer.com
rneff@kimerer.com

Joshua E. Dubin, Esq. PA. (admitted *pro hac vice*)
7413 Fairfax Dr., Bldg. F, Tarmac, FL 33321
jdubin@dubinconsulting.com
*Counsel for Plaintiff Debra Jean Milke*

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| Debra Jean Milke, | ) |
| | ) |
| Plaintiff, | ) No. 2:15-cv-00462-ROS |
| v. | ) |
| | ) |
| City of Phoenix; | ) **PLAINTIFF'S BRIEF ON PRIVILEGE** |
| Maricopa County; | ) **ISSUES REMAINING IN DISPUTE** |
| Detective Armando Saldate, Jr.; and | ) **(PURSUANT TO DKT. 399)** |
| Sergeant Silverio Ontiveros, in their | ) |
| individual capacities. | ) |
| | ) |
| Defendants. | ) |
| | ) |

The only privilege issues left for the Court to resolve concern: (1) the extent to which Plaintiff's communications with her habeas counsel, Michael Kimerer and Lori Voepel, are protected from disclosure, and (2) the extent to which habeas counsel's work product are protected from disclosure. Plaintiff agreed to produce (and has produced) all communications between her and her trial counsel (Kenneth Ray), her trial investigator (Kirk Fowler), and her state post-conviction counsel (Anders Rosenquist). Furthermore, in the spirit of compromise and an effort to minimize unnecessary discovery disputes in this case, Plaintiff has agreed to produce these individuals' work product, despite the fact that there are meritorious grounds upon which to assert immunity over those documents.

Thus, the only dispute left concerns habeas counsel. Ms. Voepel and Mr. Kimerer represented Plaintiff from 2001 until 2015, when the Court of Appeals of Arizona ordered the charges against Plaintiff dismissed with prejudice due to the extensiveness of the prosecutorial misconduct. Despite the fact that Plaintiff has narrowed her assertion of privilege to only a small subset of documents, Defendants have decided that, now that Plaintiff has agreed to produce her communications with her trial counsel, investigator,

1

and state post-conviction counsel, they want *all* of her communications with *habeas counsel* as well. Defendants are also seeking *all* of habeas counsel's work product, which was prepared during or in anticipation of the habeas litigation and capital retrial. This extreme position is not reasonable, fair, or legally sound.

Defendants' argument for complete, blanket waiver is premised on the fact that Plaintiff disclosed eleven letters from her habeas counsel to journalist Jana Bommersbach, who wrote a book about Plaintiff. This argument is unsupportable. Plaintiff's position is that the attorney-client privilege with her habeas counsel has been waived only as the subject matters that she revealed to third parties such as Ms. Bommersbach. Plaintiff has already produced all of her letters with habeas counsel that contain the disclosed subject matters. And, there has been no implicit waiver of her attorney-client privilege with her habeas counsel because her *communications* with her habeas counsel have never been "at issue," and her habeas counsel's conduct has never been "at issue." Nor is there any unfairness in maintaining privilege over Plaintiff's communications with her habeas counsel on non-disclosed subject matters.

Furthermore, there has been no waiver of protection over habeas counsel's work product. The primary area of dispute with respect to work product is Plaintiff's assertion of work product protection over habeas counsel's communications with her mother (Renate Janka), her close family friend (Patrick Galbraith), and another friend (Frankie Aue), all of whom assisted Plaintiff and her counsel during the habeas and retrial proceedings. Ms. Voepel, in particular, communicated extensively with these three individuals over email. Not only is the vast majority of those communications of slight (if any) relevance to the claims and defenses in this case, but, as explained below, they are protected because the communications were for the purpose of litigation and there was no risk that the communications would be disclosed to adversaries.

It is worth noting that although the parties began discussing the scope of Plaintiff's waiver of attorney-client communications with her trial counsel in fall 2018, Defendants did not seek Plaintiff's communications with her *habeas counsel* until very recently.[1] In fact, Defendant City explicitly *excluded* attorney-client communications from its original request for production for communications.[2] Plaintiff also made clear, in her initial response to the City's request (back in January 2017), as well as in every supplemental response to City's request, that Plaintiff would produce relevant communications to/from *Plaintiff*. *See* Ex. 2 (Pl.'s 4th Supp. Resp. to City's 1st RFP) at 9-10. If the Defendants wanted Plaintiff's communications with her habeas counsel, they could have requested it long ago, and if Defendants believed that Plaintiff's response to the request for production was insufficient because they wanted Plaintiff's communications with her habeas counsel, they could have raised the issue far earlier.[3]

---

[1] Undersigned counsel's review of emails exchanged between Plaintiff's former counsel and defense counsel from October to December 2018 reveals no request for habeas counsel's communications with Plaintiff. To the contrary, it reveals an apparent agreement from the defense in October 2018 that a less detailed privilege log for documents from habeas counsel was acceptable (because they were not in dispute). And, it was not until January 29, 2019 that defense counsel specifically requested (albeit in an email) that Plaintiff search *all* of Michael Kimerer and Lori Voepel's emails.

[2] *See* Ex. 1 (Pl.'s Resp. to City's 1st RFP) at 7-8 (emphasis added). In Plaintiff's first response to this request for production, which was sent on January 20, 2017, she raised several meritorious objections to this request. *See id.* More importantly, Plaintiff stated that she would produce communications to/from Plaintiff. *Id.* at 8. Plaintiff subsequently supplemented her response and production numerous times, including by conducting a search of her emails. Plaintiff has produced every letter in her possession, custody, or control to/from her and a third party. This encompasses several thousand pages of letters.

[3] Defendants may argue that they did not seek habeas counsel's communications with Plaintiff until they determined that Ms. Bommersbach had written a book about Plaintiff, and that Plaintiff had provided some letters of habeas counsel to Ms. Bommersbach. But the fact that Ms. Bommersbach had written a book about Plaintiff was disclosed to Defendants as early as July 12, 2017, when Plaintiff produced an email referencing it. As Plaintiff's prior counsel told Defendants, a copy of the book was attached to that email but inadvertently left out of Plaintiff's production. That accidental oversight was never brought to Plaintiff's counsel's attention until November 2018. If Defendants wanted documents from Ms. Bommersbach—a third party not in Plaintiff's control—they could

3

**ARGUMENT**

**I.   Defendants Are Not Entitled To All Habeas Counsel Communications.**

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Generally, "[a] party is not entitled to discovery of information protected by the attorney-client privilege," even when it is relevant to an issue in the litigation. *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

**A.   Plaintiff Has Already Produced Communications with her Habeas Counsel on Certain Expressly Waived Subject Matters.**

"An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). Here, Plaintiff agrees that she has expressly waived certain communications with her habeas counsel by disclosing them to third parties who were not bound by the privilege. For instance, she provided eleven letters from her habeas counsel to journalist Jana Bommersbach. In letters to third parties, Plaintiff also disclosed certain communications from her attorneys. Plaintiff agrees that she has waived the attorney-client privilege "as to all other such communications on the same subject matter." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The waived subject matters are:

- whether Saldate fabricated Plaintiff's confession;
- whether Plaintiff confessed;
- whether Saldate ignored Plaintiff when she said, "No, I want a lawyer";

---

have subpoenaed her a long time ago. *See, e.g.*, *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012) (a party may be required to produce documents from a nonparty entity only if the party has a "legal right" to obtain the document). Furthermore, Defendants chose not to depose Plaintiff until August 2018 or send any interrogatories to her until November 2018, nearly at the end of discovery.

4

- whether there was any implied waiver of *Miranda*;
- whether Saldate recorded the interview despite being ordered to;
- whether Saldate allowed anyone else in the room during the interrogation;
- importance of recording interrogations;
- potential mediation with the State (during habeas);
- whether Jan Froebe should be called as a witness;
- a potential visit by Jana Bommersbach;
- the Death Penalty Commission;
- potential habeas arguments regarding *Martinez* and discussion of *Taylor*;
- an issue with Paul Huebl;
- conversation of Michael Kimerer with Julie Hall about Jim Styers;
- communications regarding a documentary;
- contact and communications with Jacques Secretan regarding his interviews/investigations;
- any book deals and/or ghost writing contracts;
- comments about suing Saldate;
- whether the state would appeal district court decision to Ninth Circuit;
- whether ACLU will be filing an amicus brief;
- possibility of getting an appeal bond if habeas is granted;
- references to Kent Cattani's argument (in the Ninth Circuit);
- Mark Milke storming Kimerer's office.

*See* Group Ex. 3 (2/19/19 Wang Letter and Privilege Log); Ex. 4 (2/28/19 Wang Email and Privilege Log). Plaintiff has produced all of her communications with habeas counsel on these subject matters. In addition, on February 19, 2019, Plaintiff produced a privilege log listing all habeas counsel correspondence with Plaintiff and indicating which ones contain the waived subject matters. Ex. 3. On February 26, 2019, the parties conferred, and as a result of that conferral, Plaintiff's counsel reviewed all of Plaintiff's letters in order to determine whether she had disclosed any habeas counsel communications (e.g., made reference to things that her attorneys told her or that she told her attorneys) to third parties. Plaintiff then included additional subject matters in the list of waived subject matters, including ones Defendants asked to be included. Ex. 4. Plaintiff provided an updated privilege log of the correspondence between Plaintiff and her habeas counsel. *Id.*

Plaintiff has now produced all of the letters to/from her habeas counsel that contain the above-listed waived subject matters. In some of the letters Plaintiff has produced, she

5

1   has appropriately redacted discussion of unrelated subject matters and disclosed only the
2   waived subject matters. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.
3   1992) ("the disclosure of information resulting in the waiver of the attorney-client
4   privilege constitutes waiver 'only as to communications about the matter actually
5   disclosed.' Pennzoil was not required, as a result of the limited disclosure, to provide
6   Chevron with every document or communication that touched on the more general tax
7   deferral question.") (quoting *Weil*, 647 F.2d at 25). Subject matter waiver "has been
8   narrowly construed, and has been applied 'if facts relevant to a particular, narrow subject
9   matter have been disclosed in circumstances in which it would be unfair to deny the other
10  party an opportunity to discover other relevant facts with respect to that subject matter.'
11  If a discernible line exists between the information withheld and the information
12  disclosed, the line should be maintained.'" *Starsight Telecast, Inc. v. Gemstar Dev.*
13  *Corp.*, 158 F.R.D. 650, 654-55 (N.D. Cal. 1994) (citations omitted). The Court should be
14  guided by "the subject matter of the documents disclosed, balanced by the need to protect
15  the frankness of client disclosure and to preclude unfair partial disclosures …." *Id.*
16      This balance has been accomplished by what Plaintiff has done: the production of all
17  habeas counsel communications on the waived subject matters. Plaintiff is not attempting
18  to use the privilege as both a sword and a shield: she is not disclosing only the "good"
19  letters and withholding the "bad" letters. *See Stanford v. Roche*, 237 F.R.D. 618, 625
20  (N.D. Cal. 2006). The "principal purpose" of the waiver doctrine "is to protect against the
21  unfairness that would result from a privilege holder selectively disclosing privileged
22  communications to an adversary …." *Tennenbaum v. Deloitte & Touche*, 77 F. 3d 337,
23  340-41 (9th Cir. 1996). This purpose has been accomplished here: Plaintiff has disclosed
24  *all the letters on a given subject matter*, including letters in which she discusses Saldate's
25  interrogation, her innocence, whether Saldate fabricated her confession, and whether she
26  confessed to Saldate. (Of course, she never says in any of her letters that she confessed,

6

1  that Saldate *didn't* fabricate her confession, or that she is actually guilty. That's because
2  those things aren't true. Instead, the letters on these topics—which the Defendants now
3  have—show that she has consistently maintained her innocence and that Saldate
4  fabricated her confession.)[4]

5  As Plaintiff understands it, Defendants are not disputing Plaintiff's description of the
6  waived subject matters.[5] Instead, Defendants argue that *all* of Plaintiff's communications
7  with habeas counsel, *regardless of subject matter*, has been implicitly waived, simply
8  because Plaintiff filed this lawsuit and the communications would purportedly be "vital"
9  to their defense. As discussed below, this argument has no basis in the law.

### B. There Has Been No Implicit Waiver of Privilege as to all Plaintiff's Attorney-Client Communications with her Habeas Counsel.

It is well-established that "[m]erely bringing an action does not, *ipso facto*, waive the privilege for communications on all subjects *relevant to* that cause of action. If it did, the attorney-client privilege would fail to provide protection in the very forum in which the

---

[4] In *In re Von Bulow*, 828 F.2d 94, 102-03 (2d Cir. 1987), a Second Circuit case cited repeatedly by the Ninth Circuit (including in *Chevron*, *Bittaker,* and *United States v. Mendelsohn*, 896 F.2d 1183 (9th Cir. 1990)) is factually similar. Von Bulow was convicted of assault with intent to murder, but his conviction was reversed and he was acquitted at retrial. His attorney wrote a book about his case, in which there were disclosures of conversations that von Bulow had with his attorney. 828 F.2d at 101. In a pending lawsuit, Von Bulow's wife claimed waiver of attorney-client privilege. *Id*. at 96. The Second Circuit found that the rule concerning selective disclosure "does not come into play when, as here, the privilege-holder or his attorney has made extrajudicial disclosures, and those disclosures have not subsequently been placed at issue during the litigation." *Id*. at 102. "Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication." *Id*. *See also Klein v. Demopulos*, 2010 WL 4365840, at *1-*2 (W.D. Wash. Oct. 27, 2010) ("Plaintiff chose to release a limited and discrete set of information, and there is no reason to construe these disclosures as a blanket waiver of privilege.").

[5] Plaintiff is willing to provide all of her habeas counsel correspondence to the Court for an *in camera* review so that the Court can determine for itself whether Plaintiff's disclosure of the letters containing the waived subject matters is adequate.

7

1 privilege was designed to ensure effective representation." 2 *Attorney-Client Privilege in*
2 *the U.S.* § 9:52; *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (attorney-
3 client communications "do not become discoverable simply because they are related to
4 issues raised in the litigation."). Plaintiff's primary claim in this case is that her
5 "confession" was fabricated. But that does not put all of her communications with her
6 attorneys about fabrication or the purported confession "at issue" or make it "vital to the
7 defense." If it did, there would be no attorney-client privilege in any litigation, because
8 anything any party said to his or her attorney relevant to the case would be "at issue" or
9 "vital to the defense." And, if this were the law, it would apply equally to Defendant
10 Saldate—anything he has said to any attorney, including the attorney who represented
11 him during the retrial, about whether he fabricated Plaintiff's confession or compelled her
12 to speak, would be discoverable.

13 The Ninth Circuit has uniformly held that there is only implicit waiver when the
14 nature of the communications themselves or the attorney-client relationship itself is
15 placed "at issue."[6] "Where a party raises a claim which in fairness requires disclosure of
16 the protected communication, the privilege may be implicitly waived." *Chevron*, 974
17 F.2d at 1162. The court found implicit waiver because the party who was invoking the
18 privilege was litigating a claim that "its tax position is reasonable because it was *based*
19 *on advice of counsel*" and therefore, it "put[] at issue the tax advice it received." *Id.* at
20 1162-63. That is, when counsel's behavior is at issue, the privilege can be waived. *See*
21 *also Arizona ex rel. Goddard v. Frito-Lay,* Inc, 273 F.R.D. 545, 556 (D. Ariz. 2011);
22 *Roehrs v. Minnesota Life Ins. Co.* 228 F.R.D. 632 (D. Ariz. 2005); *Sorensen v. Black &*
23 *Decker Corp.*, 2007 WL 1976652, at *2 (S.D. Cal. Apr. 9, 2007); *Safety Dynamics Inc. v.*

---

[6] Plaintiff's counsel has not found a single case in the Ninth Circuit (or any other federal court of appeals) that has interpreted the implicit waiver doctrine as broadly as the Defendants argue.

8

1 *Gen. Star Indem. Co.*, 2014 WL 268653, at *2-*3 (D. Ariz. Jan. 24, 2014); *United States
2 v. Kerr*, 2012 WL 2919450, at *3 (D. Ariz. July 17, 2012).

3   Similarly, in *Amlani*, the court held that the defendant had waived attorney-client
4 communications by asserting a claim of attorney disparagement. *Id.* at 1191. The
5 government argued that Amlani had implicitly waived the privilege by asserting the
6 disparagement claim because he had put at issue the circumstances under which he
7 substituted one attorney for another. *Id.*

8   The key questions are whether, through the affirmative act of filing suit, the Plaintiff
9 "puts the privileged information at issue," and whether "allowing the privilege would
10 deny the opposing party access to information vital to its defense." *id.* at 1195 (citing
11 *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)).

12   Likewise, in *Bittaker*, the habeas petitioner had asserted an ineffective assistance of
13 counsel claim with respect to his trial counsel. 311 F.3d at 716. There was implicit waiver
14 of his communications with his trial counsel, *but only because he had put his lawyer's
15 performance at issue*. *Id.* at 718-19.[7] Here, Plaintiff has not put her habeas counsel's
16 performance—or any of their communications about anything—at issue; she has never
17 litigated and is not litigating an ineffective assistance of counsel claim or advice of
18 counsel claim relating to habeas counsel. *See Kaiser Foundation Health Plan, Inc. v.
19 Abbott Laboratories, Inc.*, 552 F.3d 1033, 1043 (9th Cir. 2009) (no waiver where party's
20 defense at trial "was not that it acted based on advice of counsel" but "that it acted
21 without regard to, or even contrary to, what counsel advised"); *Postx Corp. v. Secure
22 Data in Motion, Inc.*, 2004 WL 2663518, at *5 (N.D. Cal. 2004) (party was not using the
23 privilege as a sword because it expressly stated its intention not to use or introduce the
24 *advice of counsel*).

25

26 [7] *Bittaker* court also held that the waiver extended only to the litigation of the federal habeas.

9

Plaintiff has not placed her protected communications with her habeas attorneys at issue because she does not intend to rely upon the contents of the privileged communications in order to prove her fabrication of evidence claim. *See AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 5062030, at *4-*5 (S.D.N.Y. 2008). That is, none of her claims rise or fall based on what she said to her attorneys or what they said to her.

And finally, as the above authorities show, disclosure of all Plaintiff's communications with her habeas counsel is not "vital to the defense." Defendants' argument on this point devolves, again, into an assertion that because Plaintiff's communications about fabrication or a confession are relevant to whether a fabrication or confession occurred, it is "vital to the defense" and therefore implicitly waived. Instead, the question is whether the *only evidence* available to Defendants to dispute Plaintiff's claim that Saldate fabricated her confession is what Plaintiff said to her attorneys about it (or what they said to her). Clearly, that is not the case here. They have Saldate's testimony and other, circumstantial evidence that they will presumably use at trial to show that Plaintiff did, in fact, confess to Saldate. They have also deposed Plaintiff, and they have thousands of pages of Plaintiff's letters. (She never says that she confessed or that Saldate did not fabricate her confession.) *See United States v. Sanchez*, 2016 WL 10651085, at *5 (C.D. Cal. Sept. 12, 2016) (finding no implicit waiver because the government had "alternative means of responding," including "present[ing] direct testimony from [the individual at issue] and cross-exam[ining] the Defendant and others about their testimony."). In any event, as discussed above, Plaintiff has produced all of her communications with her habeas counsel on fabrication and her "confession."

**II.    Defendants Are Not Entitled To All Work Product Generated During Plaintiff's Habeas Proceedings.**

The breadth of what Defendants are seeking is extraordinary: they want all the work product generated during Plaintiff's habeas proceedings, including Ms. Voepel's and Mr.

1 Kimerer's notes, memos, and communications with anyone. But there is no factual or
2 legal basis for such a broad assertion of waiver. More specifically, Defendants seek the
3 emails between Plaintiff's habeas counsel and third parties Renate Janka, Frankie Aue,
4 and Patrick Galbraith. Neither Mr. Aue nor Mr. Galbraith had anything to do with the
5 underlying investigation or prosecution; both of them became friends with Plaintiff and
6 her mother after her wrongful conviction. These emails contain habeas counsel's mental
7 impressions, legal conclusions, and discussions about legal strategy. They also contain
8 theories and avenues of potential investigation posited by Ms. Janka, Mr. Aue, and/or Mr.
9 Galbraith. Mr. Aue also maintained a website about Plaintiff's case.[8] Mr. Galbraith also
10 reported to Ms. Voepel about how Plaintiff was doing in prison, but Plaintiff has already
11 produced dozens of letters from her to Mr. Galbraith. Neither Ms. Milke nor Ms. Voepel
12 or Mr. Kimerer have waived work product protection over these communications, and
13 Defendants have no substantial need for them.[9] They are not discoverable.

### A.   The Emails Are Protected Work Product.

15 Communications between counsel about legal strategy are the definition of work
16 product. *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 482
17 (9th Cir. 2018). Ms. Voepel and Mr. Kimerer's communications with Ms. Janka, Mr.
18 Aue, and Mr. Galbraith, are also work product because the attorneys and third parties
19 shared a common interest in the litigation: they were working together to secure
20 Plaintiff's release from prison. The third parties were providing assistance to help the
21 attorneys secure Plaintiff's freedom. United by this common interest, communications
22 between all of those individuals are privileged work product. *Pulse Eng'g, Inc. v.*
23 *Mascon, Inc.*, 2009 WL 3234177, at *4 (S.D. Cal. Oct. 2, 2009) (work product privilege

---

[8] The website no longer exists, but Plaintiff produced over 100 pages of printouts from the website.
[9] Both the attorneys and the party for whom the work was prepared hold the privilege. *See, e.g., Doubleday v. Ruh*, 149 F.R.D. 601, 606 n.5 & n.6 (E.D. Cal. 1993).

11

1   not waived when attorney and third party share a common interest); *accord Pecover v.*
2   *Elec. Arts Inc.*, 2011 WL 6020412, at *1-*2 (N.D. Cal. Dec. 2, 2011); *U.S. v. American*
3   *Tel. and Tel. Co.*, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980).

4   The work product doctrine protects work product even after the litigation for which it
5   was prepared is terminated. *See* Fed. R. Civ. P. 26(b)(3). "[T]he literal language of the
6   Rule protects materials prepared for *any* litigation or trial as long as they were prepared
7   by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.*, 462 U.S. 19, 25
8   (1983) (work product doctrine applies to material prepared for a subsequent litigation
9   even though prior litigation ended six years earlier); *see also Redding v. Prosight*
10  *Specialty Mgmt. Co., Inc.*, 2013 WL 12316880, at *4 (D. Mont. Jan. 14, 2013). This is
11  especially true when the party for whom the work was prepared is the same in the
12  subsequent litigation. *See In re Subpoena Served on Cal. Public Utilities Comm'n*, 892
13  F.2d 778, 781 (9th Cir. 1989); *cf. Nidec Corp. v. Victor Co. of Japan*, 2007 WL 2349323,
14  at *1 (N.D. Cal. Aug. 14, 2007). Therefore this work product is still privileged even
15  though it was generated during previous litigation.

16/17   **B.   Even Though Habeas Counsel Disclosed Their Mental Impressions To Third Parties, There Was No Risk of Disclosure to an Adversary and Therefore No Waiver of Work Product Privilege.**

18  "[W]aiver of work product protection occurs only where disclosure of the otherwise
19  [protected] documents is made to a third party" who does not share a common interest,
20  "and that disclosure enables an adversary to gain access to the information." *Cave*
21  *Consulting Grp., Inc. v. OptumInsight, Inc.*, 2017 WL 5078436, at *3 (N.D. Cal. Nov. 6,
22  2017) (internal citations and quotation marks omitted). Courts in this circuit uniformly
23  hold that an attorney can share ideas with third parties without waiving work product
24  privilege as long as there is no risk that disclosing to the third party is likely to result in
25  disclosure to an adversary. *See Sugar Hill Music v. CBS Interactive Inc.*, 2014 WL
26  12586744, at *8 (C.D. Cal. Sept. 5, 2014); *Skynet Electronic Co., Ltd v. Flextronics Int'l,*

12

1  *Ltd.*, 2013 WL 6623874, at \*2-\*4 (N.D. Cal. Dec. 16, 2013); *Pecover*, 2011 WL
2  6020412, at \*1-\*2; *Pulse Eng'g, Inc. v. Mascon, Inc.*, 2009 WL 3234177, at \*4 (S.D. Cal.
3  Oct. 2, 2009); *In re Syncor ERISA Litigation*, 229 FRD 636, 645 & n.8 (C.D. Cal. 2005);
4  *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

These decisions are consistent with courts around the country. *See, e.g., In re Chevron Corp.*, 633 F.3d 153, 165 (3rd Cir. 2011); *United States v. Deloitte LLP*, 610 F.3d 129, 139-40 (D.C. Cir. 2010); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002), *cert. dismissed*, 539 U.S. 977 (2003); *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 & n.6 (1st Cir. 1997).

With respect to the emails between Ms. Voepel, Mr. Kimerer, Ms. Janke, Mr. Aue, and Mr. Galbraith, Defendants have not identified in what way counsel's communications with these three third parties was a disclosure to an adversary or make it more likely that the information would be disclosed to an adversary. Given that these communications were made in pursuit of a common interest, there was no risk that the information would fall into an adversary's hands. The privilege is still intact.[10]

### 1.  Ms. Milke has not explicitly waived work product privilege.

Courts in this Circuit routinely hold that, unlike with attorney-client communications, there is no subject-matter waiver for work product. That is, a party who discloses work product on a particular subject waives the privilege only for that specific work product and not for other work product, even if the party has waived attorney client privilege as to that subject. *See Valenzuela v. Union Pac. R.R. Co.*, 2016 WL 7385037, at \*3 (D. Ariz. Dec. 21, 2016) (Federal Rule of Evidence 502(a) "'abolishes the dreaded subject-matter

---

[10] Defendants may speculate that Mr. Aue put habeas counsel's legal theories on his website. But Plaintiff long ago (in 2017) disclosed over 100 pages of printouts from the website and Defendants have not identified a single instance in which habeas counsel's legal theories or mental impressions were disclosed on the website.

13

1 waiver, *i.e.*, that any disclosure of privileged matter worked a forfeiture of any other
2 privileged information that pertained to the same subject matter.'") (quoting *Trustees of*
3 *Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D.
4 1, 11 (D.D.C. 2010)); *accord Skynet Elec. Co.*, 2013 WL 6623874, \*2-\*4; *Informatica*
5 *Corp. v. Bus. Objects Data Integration, Inc.*, 454 F. Supp. 2d 957, 963 (N.D. Cal. 2006);
6 *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (waiver of
7 attorney-client privilege on one subject is not blanket of waiver of work product privilege
8 on other subjects).[11]

9 Therefore, even if this Court finds waiver of work product privilege as to certain
10 documents, that waiver does not apply to other work product on the same subject.

### 2. Work product containing counsel's thoughts and impressions enjoy additional protection.

13 All this to say: courts take a cautious and extremely narrow approach toward finding
14 waiver of the work product privilege. Even if a court finds waiver of work product
15 privilege based on disclosure to adversaries of subject matter, the waiver applies only to
16 factual or non-opinion work product on the same subject as the work product disclosed.
17 *See Cave Consulting Grp., Inc.*, 2017 WL 5078436, at \*3; *Garcia v. City of El Centro*,
18 214 F.R.D. 587, 591 (S.D. Cal. 2003) ("Opinion work product, containing an attorney's
19 mental impressions or legal strategies, enjoys nearly absolute immunity and can be
20 discovered only in very rare circumstances").

21 Beyond that, Ms. Voepel and Mr. Kimerer's impressions, opinions, and strategies are
22 still protected unless they are the subject of the litigation. *See Holmgren v. State Farm*
23 *Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("We agree with the several courts
24 and commentators that have concluded that opinion work product may be discovered and

---

[11] Courts across the country acknowledge this as well. *See, e.g., Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997); *Williams & Connolly LLP v. U.S. S.E.C.*, 729 F. Supp. 2d 202 (D.D.C. 2010), *judgment aff'd*, 662 F.3d 1240 (D.C. Cir. 2011).

admitted when mental impressions are *at issue* in a case and the need for the material is compelling."); *accord In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1239 (D. Or. 2017); *S.E.C. v. Roberts*, 254 F.R.D. 371, 374-75 (N.D. Cal. 2008). Nothing about Ms. Voepel or Mr. Kimerer's performance is at issue here, and therefore their thoughts and impressions are not discoverable. Defendants have no basis for seeking their notes, memos, legal research, or discussions with allies (e.g., Ms. Janka, Mr. Galbraith, and Mr. Aue) about any of their legal strategies.

### 3. Defendants have no substantial need for the factual underpinnings of counsel's communications and face no hardship in obtaining it by other means.

As a threshold matter, to the extent Defendants are seeking factual material in the emails between habeas counsel and Ms. Janke, Mr. Galbraith, and Mr. Aue, they have not identified what it is they are seeking. It is important to remember that neither Mr. Galbraith nor Mr. Aue are witnesses to the underlying investigation or prosecution and have no knowledge of the underlying facts. They only came to know Plaintiff after her wrongful conviction. And as for Ms. Janke, she had knowledge about Plaintiff's relationships with her family members, but Plaintiff has already produced affidavits, statements, letters, notes, and memos from Ms. Janke. Thus, this is not the classic hardship scenario where an attorney took notes during an interview with a witness in the case and then the witness died and the only thing left of what the witness knew was the attorney's notes of the interview. The emails between habeas counsel and these three individuals are not even close to that.

Defendants also cannot overcome the protection for the factual underpinnings of counsel's work product here because they have no substantial need for the information they are seeking, and it would not create an undue hardship for them to obtain the facts from an alternate source. *See* Fed. R. Civ. P. 26(b)(3); *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000).

1      First, Defendants do not have a substantial need for this information because the
2 content of the work product they are seeking is not an essential element of their defense.
3 Ms. Milke's claims primarily concern Defendants' conduct between 1989 and 1990.
4 Everything Defendants need to defend the case is contained in the trial and
5 postconviction record, and in the tremendous volumes of documents that have already
6 been produced. And even if there were something plausibly relevant in the emails
7 between habeas counsel and Ms. Janke, Mr. Galbraith, or Mr. Aue, at this point the best
8 Defendants can hope for is to find information to corroborate the information they
9 already have. That does not constitute a substantial need. *See Fletcher,* 194 F.R.D. at 671.
10     Second, Defendants face no hardship in obtaining any factual material underlying
11 these communications by other means. Indeed, Ms. Janke and Mr. Galbraith are dead,
12 and Mr. Aue lives in Germany. But neither Mr. Galbraith nor Mr. Aue had anything to do
13 with the underlying case. And Plaintiff has already disclosed a large amount of factual
14 material relating to Ms. Janke, such as her statements, affidavits, letters, and memos.
15     But the relevant inquiry is not whether Defendants can otherwise access the same
16 thoughts or content of the work product without undue hardship—which is what they are
17 asking for by requesting these individuals' communications with counsel; the inquiry is
18 whether Defendants have access to the same information that underlies the content of the
19 work product. *In re: Bard Ivc Filters Prod. Liab. Litig.*, 2016 WL 537587, at *8 (D. Ariz.
20 Feb. 11, 2016) (no hardship when plaintiff, seeking production of defendants'
21 communications with expert, had access to the same data expert relied on in creating
22 report); *Fletcher,* 194 F.R.D. at 671 (common examples of information that cannot be
23 obtained from other sources would include "test results that cannot be duplicated,"
24 "photographs taken immediately after an accident where the accident scene has since
25 changed," or "contemporaneous statement taken from, or made by, parties or witnesses").
26

1    Here Defendants have access to the same underlying information that habeas counsel
2    (and Mr. Aue, Mr. Galbraith, and Ms. Janka) did: the police reports, transcripts,
3    pleadings, thousands of pages of letters between Plaintiff and dozens of people, news
4    articles, books, and audio recordings. Defendants do not need, and should not have,
5    access to Mr. Kimerer and Ms. Voepel's impressions about those things.[12]

## CONCLUSION

At the core of all these inquiries is fundamental fairness and what Defendants need to defend their case. Fairness does not require that Plaintiff disclose more than she already has. Plaintiff has voluntarily waived privilege as to her communications with her trial counsel, trial investigator, and state postconviction counsel. She has agreed that there are certain subject matters on which privilege with her habeas counsel has been waived and voluntarily produced all of the correspondence on those topics. And Plaintiff has gone even further and agreed to produce all of her pre-habeas counsel's work product. Instead of engaging in compromise, Defendants have taken the extreme position that they want *all* communications of habeas counsel and *all* work product. This is not reasonable, fair, or supported by the law.

/s/ Elizabeth C. Wang

Elizabeth C. Wang (admitted *pro hac vice*)
LOEVY & LOEVY
2060 Broadway, Ste. 460, Boulder, CO 80302
O: 720.328.5642; F: 312.243.5902
elizabethw@loevy.com

Jon Loevy (admitted *pro hac vice*)
Rachel Brady (admitted *pro hac vice*)
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl., Chicago, IL 60607
O: 312.243.5900; F: 312.243.5902

---

[12] Plaintiff is willing to provide the emails between habeas counsel and Janke, Galbraith, and Aue to the Court for *in camera* review.

17

jon@loevy.com
brady@loevy.com

Michael D. Kimerer (Bar # 002492)
Rhonda Elaine Neff (Bar # 029773)
KIMERER & DERRICK, P.C.
1313 E. Osborn Rd., Suite 100, Phoenix, AZ 85014
Tel: 602.279.5900; Fax: 602.264.5566
mdk@kimerer.com
rneff@kimerer.com

Joshua E. Dubin, Esq. PA. (admitted *pro hac vice*)
7413 Fairfax Dr., Bldg. F, Tarmac, FL 33321
jdubin@dubinconsulting.com

**CERTIFICATE OF SERVICE**

I, Elizabeth Wang, hereby certify that on March 1, 2019, I filed the foregoing Plaintiff's Brief on Privilege Issues Remaining in Dispute via CM/ECF, which was electronically delivered to all counsel of record, including:

| | |
|---|---|
| Christina G. Retts | cretts@wienekelawgroup.com |
| James A. Eaves | artie.eaves@sandersparks.com |
| | michele.logan@sandersparks.com |
| Jody C. Corbett | jody@berkelawfirm.com |
| | laine@berkelawfirm.com |
| | Shirley@berkelawfirm.com |
| Josh Dubin | jdubin@dubinconsulting.com |
| Kathleen L. Wieneke | kwieneke@wienekelawgroup.com |
| | kpenny@wienekelawgroup.com |
| | lpiasecki@wienekelawgroup.com |
| Lori V. Berke | lori@berkelawfirm.com |
| Michael D. Kimerer | mdk@kimerer.com |
| | mwallingsford@kimerer.com |
| Rhonda E. Neff | rneff@kimerer.com |
| Robin E. Burgess | robin.burgess@sanderspark.com |
| Sally A. Odegard | sodegard@hoklaw.com |
| | gzappia@hoklaw.com |

/s/ Elizabeth C. Wang
Counsel for Plaintiff

19