# Exhibit 1

**Kim Penny**

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Monday, October 15, 2018 12:53 PM
**To:** Lori Berke
**Cc:** Christina Retts; Amelia Green; Sally Odegard; Michele N. Logan; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Joshua Dubin; Rhonda Neff; Vanessa Buch; MDK Kimerer, Michael; Kathleen Wieneke; Robin E. Burgess; Laine Roberts; Nancy N. Romo-Lopez; Nick Brustin; Bruce Corey; Lindsey Piasecki; Kim Penny; Langston Glaude; Jody Corbett
**Subject:** Re: Milke: Discovery Disputes

Counsel:

As indicated last week, we are unable to confer today because of preexisting depositions in other cases. To that end, our response to your positions is below.

**(1) Expert Draft Reports**

Pursuant to the Court's Order, we have represented to you that Dr. Rizzardi drafted the entirety of the first draft of her report. For Mr. Reiter and Mr. Drooyan, we have informed you that their draft reports did not contain any information subject to discovery under the three exceptions to Rule 26(b)(4).

Mr. Drooyan's testimony was not inconsistent with this representation. When asked about this precise issue, he testified as follows:

· Q.· Certainly when you were provided the initial
·3· ·draft of your report by plaintiff's counsel, you
·4· ·reviewed and relied upon that in preparing your report;
·5· ·correct?
·6· · · A.· No --
(Drooyan Dep. 275)

Mr. Drooyan was clear that the opinions in his report were his own, and we have already provided you with all the materials he relied on in reaching those opinions. (*See* Drooyan Dep. 273 ("No, these were opinions that I expressed to them, not what they expressed to me."). The same is true for Mr. Reiter. Moreover, we expressly agreed in our September 4 confer call and correspondence regarding expert productions that we would not be producing draft reports as those are protected under Rule 26. This understanding was also memorialized in our follow-up email after that call.

As we have now informed you that nothing in the draft reports falls under any exception to the Rule, it remains our position that, pursuant to the Court's Order, no further action is required.

**(2) Waiver**

(a) Implied Waiver for Brady/Giglio material

Plaintiff has already agreed that her defense team's knowledge of any *Brady/Giglio* material on Detective Saldate is relevant to her claims and thus privilege has been implicitly waived with respect to that specific subject. As you know, we sent a letter to this effect to Mr. Ray, giving him permission to testify regarding any such knowledge, and we also took this position at his deposition. We continue to have no objection to Mr. Ray testifying about this specific subject matter.

With respect to Defendants' requested review of every single withheld document for responsive materials, as we indicated on our September 4th confer call, such a review is uniquely burdensome in this case. The documents that we had at the start of this litigation were *not* segregated into separate prior files for Ken Ray or any other attorney, were largely not

scanned, and included an entire room worth of materials—including many duplicates—that were organized to prepare for a potential criminal trial, not for this litigation. At the outset of this case, we reviewed these copious documents to determine which were responsive in some way, and only scanned those documents that were deemed responsive. There are many boxes of documents that include materials we did not believe to be responsive to any requests or otherwise relevant on initial review that were never scanned and for which we do not have an index. Although we do not believe most of these documents include anything relevant (as that was the conclusion upon our initial review), it would be incredibly burdensome to re-review to confirm that—let alone produce any kind of privilege log for those documents.

We have however identified several segregated binders/boxes of correspondence between Plaintiff and her attorneys. The bulk of these letters are correspondence between Plaintiff and post-conviction counsel (Anders Rosenquist, Mike Kimerer, and Lori Voepel) but do contain some correspondence between Plaintiff and Ken Ray and Kirk Fowler. It is our position that Plaintiff has implicitly waived privilege solely with respect to the pre-conviction knowledge of Ken Ray and Kirk Fowler, as that is the only knowledge relevant to Plaintiff's claim. *See Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc) (holding courts "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it," as the implied waiver doctrine requires "closely tailor[ing] the scope of the waiver to the needs of the opposing party."); *Tennison v. City & Cty. of San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005) (evaluating implied waiver in the context of a wrongful conviction *Brady* claim and finding that "the waiver extends only to exculpatory evidence which Mr. Tennison and/or his [trial] counsel may have known about."). Indeed, it is "[plaintiff's] and [her] counsel's knowledge [that] is relevant to both the existence of a substantive constitutional violation as well as causation of damages in this civil action." *Tennison*, 226 F.R.D. at 622. That is because, "if [plaintiff or counsel] knew about the suppressed evidence before trial . . . that would be relevant to whether defendants' suppression caused his wrongful conviction." *Id.* In this case, the knowledge of post-conviction counsel regarding any *Brady/Giglio* material on Saldate has no bearing on causation. Because Plaintiff's claim has not put such knowledge at issue, communications with post-conviction counsel remain protected. Thus, it is our position that privilege has been waived solely with respect to responsive pre-conviction communications with Ken Ray and Kirk Fowler.

To that end, we can agree to the following review, which is reasonably calculated to identify any responsive material that was held back on privileged grounds and for which privilege has been waived:

(1) We will review all correspondence between Plaintiff and Mr. Ray for any responsive communications.

(2) We will review all correspondence between Plaintiff and Kirk Fowler for any responsive communications.

(3) We will review all correspondence in our possession between Ken Ray and/or Kirk Fowler and other individuals for any responsive communications.

(4) We will review audio recordings sent to or from Debra Milke from Ken Ray and/or Kirk Fowler for any responsive communications.

Because such review will be incredibly burdensome, we do not want to begin that review until we have either agreement among the parties or an order from the Court delineating the extent of the review and the extent of any required privilege log for those documents to avoid having to later duplicate efforts. For some of your requests, we have reviewed our files and can represent that we do not possess those categories of documents. Specifically:

(1) To our knowledge, we do not have any letters between Plaintiff and "other civil and criminal attorneys." Regardless, such letters would be covered by attorney-client privilege and so not discoverable.

(2) We do not have any documents indicating that Plaintiff took a lie detector test or the results of that test.

Finally, while we agree Plaintiff has affected an implicit waiver with respect to trial counsel's knowledge of *Brady/Giglio* material, to the extent you are arguing that Plaintiff has implicitly waived all privilege by filing this lawsuit, we do not agree. Since the outset of litigation, Plaintiff has consistently asserted her attorney-client privilege. And, aside from the *Brady/Giglio* issue, Plaintiff's claims do not place any attorney-client communications at issue. *See In re Geotheram Res. Int'l, Inc.*, 93 F.3d 648, 653 (9th Cir. 1996) (privilege is implicitly waived only when "the client tenders an issue touching directly upon the substance or content of an attorney-client communication--not when the testimony sought would be only one of several indirect forms of evidence about an issue"); *United States v. Amlani*, 169 F.3d 1189, 1196 (9th Cir. 1999) ("[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation."); *Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003) ("[T]he court must

impose a waiver no broader than needed to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose.").

You therefore do not have any grounds for seeking the production of all correspondence between Plaintiff and Mr. Ray (or any of her other attorneys), and we object to producing it.

(b) Express Waiver

As discussed in the Court's Order, Plaintiff has already agreed that privilege has been expressly waived with respect to the two letters that were attached to Plaintiff's habeas petition and the limited contents of any attorney-client communications that Plaintiff shared with third parties. We therefore agree that Mr. Ray can answer questions about this limited subject matter.

This limited waiver does not, however, mean that Plaintiff has waived privilege with respect to all matters. *See, e.g.*, *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosure constitutes a waiver of the attorney-client privilege . . . only as to communications about the matter actually disclosed."); *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 555-56 (D. Ariz. 2011) ("There is a limit, however, to the waiver. It extends only so far as to communications about the matter actually disclosed. The Ninth Circuit has cautioned against finding a complete waiver of the attorney-client privilege by noting that 'the breath of the waiver finding, untethered to the subject-matter disclosed, constitutes a particularly injurious privilege ruling.'" (citations omitted); *Willnerd v. Sybase, Inc.*, No. 09-cv-500 (BLW), 2010 WL 5391270, at *5 (D. Idaho Dec. 22, 2010) ("Guided by the principles of fairness, and having in mind the need to protect the frankness of client disclosures while seeking to protect against unfair partial disclosures, the Court concludes that Sybase's disclosure of communications relating to the Baum investigation does not justify a broad foray into Sybase's privileged communications on 'similar,' but not the same, subject matters.").

Thus, these limited waivers also do not provide a basis for you to seek all correspondence between Plaintiff and Ken Ray. And any exploration-- through Ken Ray's testimony or otherwise--of expressly waived topics must be narrowly tailored to the subject matter actually disclosed. *See, e.g.*, *Weil v. Inv./Indicators, Research & Mgmt. Inc*, 647 F.2d 18, 25 (9th Cir. 1981) ("[W]e find that the Fund waived its privilege only as to communications bout the matter actually disclosed, namely the substance of Blue Sky counsel's advice regarding registration of Fund shares pursuant to the Blue Sky laws."); *Rutherford v. Palo Verde Health Care Dist.*, No. 13-cv-1247 (JAK)(SPX), 2014 WL 12632901, at *7 (C.D. Cal. Apr. 17, 2014) ("The question here is how broadly to construe the 'subject' of the Trask Memo. The Trask Memo concerns a number of alleged violations of law at PHVD; however, certainly PVHD did not waive its privilege with respect to all attorney-client communications concerning any potential legal violations at PVHD. Thus, reasonably, the waiver extends only to subjects of the violations reported in the Trask Memo and its attachments.").

(c) Proposed Questions for Ken Ray

The Court issued its order instructing Defendants to provide their proposed list of questions to Plaintiff on October 9th, with responses due to the Court today, October 15th. We followed up on Friday, October 12th after having received no communication from you and also informed you that we'd be in depositions today and needed time to respond. We followed up again on Saturday, October 13th, as we still had not received your list of questions. You did not send this list until 3:30am EST on Sunday, October 14th—the day before our responses were due. Moreover, your list of proposed questions is patently excessive, with nearly 150 questions spanning 15 pages. It is not only unreasonably burdensome but impracticable for us to respond question-by-question given the late hour of production and excessive nature of the questions and our deposition schedule, which we informed you of in advance.

In general, however, we do not agree that Plaintiff has implicitly waived any privilege by filing this lawsuit beyond the *Brady/Giglio* issue and so object to any and all questions justified by implicit waiver. In *United States v. Amlani*, 169 F.3d 1189 (9th Cir. 1999), the Ninth Circuit explained that implicit waiver occurs only where the plaintiff's claim *requires* disclosure of protected communications. *Id.* at 1196 ("We therefore focus on whether the disparagement claim itself requires disclosure of protected communications."). Here, Plaintiff's fabrication claim does not require the disclosure of protected communication. *See, Caldwell v. City of San Francisco*, No. 12-cv-1892 (EDL), 2015 WL 1265048, at *5 (N.D. Cal. Mar. 19, 2015) ("[A] *Devereaux* claim is not predicted on what [Plaintiff] or [his] attorney knew during the criminal proceedings. Thus, the claim does not put any communications between Plaintiff and his attorney at issue, including what Plaintiff told his attorney regarding his involvement in the murder." (citation

omitted)); *see also Kaiser Found. Heath Plan, Inc. v. Abbott Labs, Inc.*, 552 F.3d 10133, 1043 (9th Cir. 2009) (finding no waiver where the client "did not actually rely on an advice-of-counsel defense"); *Valenzuela v. Union Pac. R.R. Co.*, No. 15-cv-1092 (PHX) (DGC), 2016 WL 7385037, at *5 (D. Ariz. Dec. 21, 2016) ("Waiver requires that a party put the advice of counsel at issue, either by asserting that it relied on that advice, or, as in *Amlani*, placing attorney-client communications squarely in the case.").

The *Amlani* Court also instructed that, "[w]hen the sought-after evidence is only one of several forms of indirect evidence about an issue, the privilege has not been waived." 169 F.3d at 1195 (citations omitted). Here, you have a multitude of other, more availing avenues for contesting Plaintiff's claim—including but not limited to the depositions of Plaintiff and Detective Saldate. *See e.g., In re Geothermal*, 93 F.3d at 652-53 ("The privilege is waived, however, only when the client tenders an issue touching directly upon the substance or content of an attorney-client communication--not when the testimony sought would be only 'one of several forms of indirect evidence' about an issue."); *Cervantes v. CEMEX, Inc.*, No. 12-cv-1932 (LJO)(JLT), 2014 WL 4104200, at *9 (E.D. Cal. Aug. 18, 2014) ("[If] mere showing" that privileged information would be "helpful" to a party "was deemed sufficient, the privilege would be completely eviscerated and clients would no longer be permitted to seek advice of counsel in confidence."); *United States v. Sanchez*, No. 14-cr-429 (JAK)(SSX), 2016 WL 10651085, at *5 (C.D. Cal. Sept. 12, 2016) (finding no implicit waiver because the government had "alternative means of responding," including "present[ing] direct testimony from [the individual at issue] and cross-exam[ing] the Defendant and others about their testimony").

We therefore object to any and all questions posed in reliance on Plaintiff's so-called implicit waiver beyond Mr. Ray's knowledge of any *Brady/Giglio* material—including the dozens of proposed questions on Plaintiff's communications with Mr. Ray about her interrogation by Detective Saldate. With respect to any remaining questions you contend are based on express waiver, we are unable to evaluate the appropriateness of these questions because you have not provided any information about your basis for claiming specific waiver (i.e., you have not identified the letter(s) in which Plaintiff allegedly waived the privilege with respect to certain subject matter). Until you identify the justification for each question you claim is allowed due to an express waiver, we are unable to determine whether Mr. Ray should or should not answer such questions.

**(3) <u>Privilege Log</u>**

Contrary to counsel's email, the magnitude of documents involved in the litigation is highly relevant when determining what constitutes a reasonably specific privilege log. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (instructing district courts to consider "the magnitude of the document production" and "other particular circumstances that make responding to discovery unusually easy . . . or unusually hard" when evaluating a privilege log's adequacy). As we informed you during our September 4th confer call, the sheer volume of documents coupled with the logistical challenges (explained above) mean that production of a highly detailed privilege log would be incredibly burdensome—especially in contrast to the limited (if any) expected benefits of those documents to this lawsuit. *See id.* (instructing courts evaluating privilege logs to conduct a "holistic reasonableness analysis[] intended to forestall needless waste of time and resources").

On that call, we said that we would provide a more detailed privilege log for attorney-client correspondence and asked you to let us know what information you felt would be sufficient and/or if you had any other issues with the privilege log. Your email of October 12th was the first time you provided such specifics.

In responding, we are mindful of the Court's guidance that some additional detail is necessary but that the Court is "unlikely" to require the level of detail outlined by *In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992). In that case, the Ninth Circuit relied on *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989), an earlier case wherein the court found a privilege log sufficient for identifying: (1) the attorney and client involved, (2) "the nature of the document (i.e., letter, memorandum)," (3) all persons who sent or received the document, (4) all persons who knew about the document, and (5) the date it was generated. *Id.* 888 n.3. The *Grand Jury* court then noted that the privilege log in the instant case "went beyond the *Dole* standards to provide information on the subject matter of each document." *Grand Jury Investigation*, 974 F.2d at 1071. Clearly, then, a summary of the subject matter of each document is <u>not</u>required for a privilege log to be sufficient. We therefore do not agree that we should have to produce a generalized description of each letter between Plaintiff and Ken Ray or Kirk Fowler—particularly as the Court has already indicated it is unlikely to require a privilege log as detailed as the one in *In re Grand Jury Investigation*. (Moreover, we have already reviewed these letters for any

content bearing on the defense team's knowledge of *Brady/Giglio* material, and you have no other basis on which to pierce the privilege; thus, the other subject matter of those letters is irrelevant).

We will, however, produce a more detailed privilege log as requested for the correspondence between Plaintiff and Ken Ray and Kirk Fowler, as well as for their scanned notes and recordings. Specifically, we can agree for these documents to indicate: the sender, the nature of the document (i.e., letter, notes), the number of pages, and the date generated (if indicated).  For correspondence with and materials from post-conviction counsel (Anders Rosenquist, Mike Kimerer, Lori Voepel, etc.), it is our position that a very basic privilege log is sufficient. For this subset of documents, we will agree to produce a privilege log in keeping with your requested level of specificity for Mr. Kimerer's materials: date range, number of letters/pages, sender/author.

**Please let us know ASAP whether or not you agree with our positions on these outstanding issues. If disagreement remains, we will submit briefing to the Court in accordance with what we've articulated above.**

Thanks,

Katie

On Sun, Oct 14, 2018 at 3:35 AM Lori Berke <Lori@berkelawfirm.com> wrote:

Attached is the list of questions for Ken Ray.


Lori

*********************PRIVATE AND CONFIDENTIAL*********************

This electronic message transmission and any files transmitted with it, are a communication from Berke Law Firm, PLLC. This message contains information protected by the attorney/client privilege and is confidential or otherwise the exclusive property of the intended recipient or Berke Law Firm, PLLC. This information is solely for the use of the individual or entity that is the intended recipient. If you are not the designated recipient, or the person responsible for delivering the communication to its intended recipient, please be aware that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this electronic transmission in error, please notify by telephone (602-254-8800) or by reply email and promptly destroy the original transmission. Thank you for your assistance.

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Saturday, October 13, 2018 4:37 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Lori Berke <Lori@berkelawfirm.com>; Amelia Green <amelia@nsbcivilrights.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Laine Roberts <Laine@berkelawfirm.com>; Nancy N. Romo-Lopez <nancy.romo-lopez@sandersparks.com>; Nick Brustin <nick@nsbcivilrights.com>; Bruce Corey <bcorey@dubinconsulting.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Langston Glaude <langston@nsbcivilrights.com>; Jody Corbett <Jody@berkelawfirm.com>
**Subject:** Re: Milke: Discovery Disputes

Counsel:

We still have not received any proposed questions for Mr. Ray, which the Court ordered Defendants to provide on October 9, 2018. Our objections and responses are now due in two days. As I already informed counsel, I will be in a deposition on Monday and cannot respond if you do not send us any questions within the next few hours to ensure we have sufficient time to review and respond.

Thanks,

Katie

On Fri, Oct 12, 2018 at 10:56 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

This correspondence will provide our position on the issues relating to the privilege log and the expert production.

As an initial matter, it is Defendants' position that—consistent with the Court's recent Order—Plaintiff is required to review all materials claimed to be privileged and produce any material that relates to the Brady/Giglio claims in this litigation.  This is particularly important given Plaintiff's attempt to rely upon the Ninth Circuit's Order.  While Defendants dispute that the Ninth Circuit's decision is binding in this case, the Ninth Circuit did not have the benefit of knowing that Plaintiff had knowledge about Saldate's actions in other investigations.  Plaintiff's explicit knowledge of the RunningEagle case and Saldate's testimony at the Voluntariness Hearing in Debra Milke's criminal case and at her criminal trial about his interrogation practices were concealed by Debra Milke and her defense team and therefore were not addressed at the oral argument before the Ninth Circuit.  Similarly, Plaintiff did not provide her multiple

letters wherein she references her knowledge about Saldate, the two other lawyers who would testify in her criminal case, and the various other references to his background—to the Ninth Circuit either.  Yet, this knowledge is directly relevant and may have changed the outcome of the Ninth Circuit's decision.   Defendants were not parties to the briefing that led to the Ninth Circuit's decision, were not parties to discovery, and were not in privity with the parties who did brief the issues before the Ninth Circuit.  As parties in this civil litigation, Defendants are entitled to this discovery and to litigate this specific issue.

In this litigation, Plaintiff has directly put her and her criminal counsel's knowledge at issue by claiming a lack of knowledge.  Thus, claiming privilege is inconsistent and unfair to Defendants.  Any materials that have been withheld from production that reference Saldate, any documents (notes, audio tapes, etc.) that reference any of the Monell cases or any conversations with other attorneys about Saldate, and anything documenting efforts to uncover this type of information, must be produced.  This includes information in Kenneth Ray's file, Kirk Fowler's file, and Anders Rosenquist's file.  This information is responsive to discovery requests and there is no privilege that can be asserted.

Similarly, it is Defendants' position that all of Plaintiff's letters to and from Ken Ray should also be produced. Plaintiff took actions in her criminal case that are inconsistent with the assertion of any privilege, including the attorney-client privilege.  She claimed ineffective assistance of counsel, attached numerous letters to habeas pleadings, and wrote/told third-parties about her conversations and letters with Kenneth Ray and Kirk Fowler.  Disclosing privileged information to third-parties waives the privilege.   Included within this third party disclosed material (specifically discussed in Ms. Milke's letters) are documents from individuals and experts that prepared Ms. Milke for her criminal trial testimony—as referenced in her numerous letters.  These include the MMPI and purported lie detector test, and any other tests/documents/materials.  Mr. Fowler made it a point in his media relations tour to specifically reference the lie detector test and the fact that Ms. Milke passed it.  If such test results are in existence, they must be produced.

Throughout her incarceration, Plaintiff also made numerous voice tape recordings that she sent to various people.  If she made such recordings to Ken Ray/Kirk Fowler/Anders Rosenquist and they relate to the Brady/Giglio claims, then that material must be produced.  Indeed, from the conversations we have had, it seems like Plaintiff's counsel has not even reviewed all of the documents that Plaintiff claims are privileged.  Perhaps this is not the case, but our impression is that Plaintiff's counsel has simply looked at bulk documents and claimed privilege.  In order to claim privilege and to fulfill Plaintiff's obligation to fully and accurately respond to discovery, all documents must be reviewed—page by page, and audio tape by audio tape.  That Plaintiff's counsel did not originally have an efficient document management system (and now does) is not a basis for asserting burden.  Counsel are required to utilize systems that are commensurate to the size of the case.

The explicit and implicit waiver of the privilege should substantially narrow the scope of the privilege log issues—if not eliminate them altogether.  To the extent that Plaintiff still intends to argue privilege exists, we next address the required specificity for the privilege log.

First, as it relates to the privilege log, although the total number of documents produced in this litigation may be voluminous, there has not been any information provided regarding the size of the material deemed to be privileged.  The total volume of documents produced in the case does not establish burden for the privilege review that must occur.  Plaintiff has not provided any estimate of time that it would take to review the documents and provide a comprehensive privilege log.  Notably, Plaintiff has numerous lawyers that are working on this case and, in most cases, multiple lawyers attend every deposition.   At times, four lawyers from Plaintiff's side have been present at certain depositions.  Plaintiff's lawyers are certainly willing to spend significant resources and attorney time for activities they deem to be important in the case.  That Plaintiff may not want to expend the effort to undertake such a review does not establish undue burden nor does it excuse the requirement to comply with the civil rules and discovery requests.   In other words, Plaintiff is not represented by a solo practitioner. Plaintiff's counsel have taken numerous depositions and in nearly every case, have taken every minute of the 7 hours allotted.  The conduct employed by

Plaintiff's counsel during these depositions also unnecessarily expanded the case for Defendants.   Plaintiff has also hired three expert witnesses.

Further, two of the lawyers who are representing Debra Milke in this matter were involved in the criminal case and, thus, it is anticipated that the burden for them to review the materials is less than if Plaintiff was only represented by new civil counsel who never had any involvement in the criminal trial.   We have never heard from Plaintiff's criminal lawyers that it would be unduly burdensome for them to look through the criminal case materials and undertake a privilege review.

Moreover, the amount of damages claimed by Plaintiff mitigates against the burden claimed.   If this case proceeds to a jury trial, Plaintiff will request many millions of dollars in damages.  Thus, the amount in controversy mitigates against any claimed non-specific burden in reviewing documents for privilege.

Prior to the Court's most recent Order, Plaintiff's counsel agreed to review the letters exchanged between Kenneth Ray and Debra Milke in more detail.  Since that discussion, nothing more has been produced and no detailed privilege log has been produced.   If Plaintiff is going to still attempt to claim privilege (which Defendants contend has been waived as outlined above), it is Defendants' position that the privilege log with respect to any of Kenneth Ray's file materials must be more detailed than with respect to any other material.   It is Defendants' position that for the letters, each privilege log entry must contain a date, sender, number of pages, and a generalized description of the content.   Similar treatment must be provided for notes and recordings.

For Kirk Fowler's materials, the same detail should apply.

For any materials generated by Mr. Kimmerer's office/attorneys who worked with him on the case, we agree that the amount of detail can be less. We can agree to this information:
Date range, number of letters, sender.  In practice, a hypothetical entries would be:
1996-2003, 15 letters, Mike Kimmerer to Debra Milke.
1993-2003, 10 pages of notes, Mike Kimmerer.

Our expectation for a privilege log does not include any correspondence/materials exchanged with Ms. Milke and her current counsel in this civil lawsuit.  We agree that a privilege log is not required for this material.

Ms. Milke did write to various other civil attorneys and criminal attorneys during her
incarceration.  Ms. Milke's unsolicited letters to attorneys that did not agree to any representation are similarly not privileged and must be produced, to the extent any such documents exist.  Any such letters that also discuss Debra Milke's and/or her attorneys' knowledge of Saldate, his interrogation practices, or anything related to the Brady/Giglio claim must also be produced.

Next, as it relates to the expert reports, we disagree with Plaintiff's position on production of the draft report Plaintiff's counsel prepared and provided to Drooyan.  Plaintiff's position is not consistent with Drooyan's testimony.  He testified that the initial draft was provided and written by Plaintiff's counsel and that he specifically relied upon the summary of the factual material contained therein.  If Plaintiff maintains the position that was communicated to Defendants today, we will ask that the Court conduct an in camera review of this draft.

Defendants' position in the Joint Discovery Dispute filing was also that Plaintiff is required to produce drafts of the other expert reports that were initially authored by Plaintiff's counsel.  If Plaintiff will not produce such material, we will ask the Court to review it in camera.

I am available all day on Monday for any discussions.  Otherwise, if Plaintiff cannot agree, we intend to prepare our statement to be consistent with what is outlined above.

Tina

Sent from my iPad


On Oct 12, 2018, at 11:30 AM, Lori Berke <Lori@berkelawfirm.com> wrote:

> We will not be able to get you the list of questions for Ken Ray until later today or tomorrow.  If you want to ask the Court to give you until Tuesday to respond, Defendants have no objection to that.
>
>
> Lori

<image001.png>


                    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*PRIVATE AND CONFIDENTIAL\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This electronic message transmission and any files transmitted with it, are a communication from Berke Law Firm, PLLC. This message contains information protected by the attorney/client privilege and is confidential or otherwise the exclusive property of the intended recipient or Berke Law Firm, PLLC. This information is solely for the use of the individual or entity that is the intended recipient. If you are not the designated recipient, or the person responsible for delivering the communication to its intended recipient, please be aware that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this electronic transmission in error, please notify by telephone (602-254-8800) or by reply email and promptly destroy the original transmission. Thank you for your assistance.

**From:** Christina Retts <cretts@wienekelawgroup.com>
**Sent:** Friday, October 12, 2018 11:09 AM
**To:** Katie McCarthy <katie@nsbcivilrights.com>

**Cc:** Lori Berke <Lori@berkelawfirm.com>; Amelia Green <amelia@nsbcivilrights.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Laine Roberts <Laine@berkelawfirm.com>; Nancy N. Romo-Lopez <nancy.romo-lopez@sandersparks.com>; Nick Brustin <nick@nsbcivilrights.com>; Bruce Corey <bcorey@dubinconsulting.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Langston Glaude <langston@nsbcivilrights.com>; Jody Corbett <Jody@berkelawfirm.com>
**Subject:** Re: Milke: Discovery Disputes


Counsel,

I am out of town and do not have the ability to have reliable cell service today. I am returning late tonight and will send a comprehensive email outlining our expectation on the privilege log and the expert production.


Tina

Sent from my iPhone


On Oct 12, 2018, at 9:45 AM, Katie McCarthy <katie@nsbcivilrights.com> wrote:

> Counsel:
>
>
> The Judge has ordered you to produce a list of questions for Ken Ray's continued deposition and that we confer regarding Plaintiff's privilege log. Our joint briefing on these issues is due Monday, and you have not sent us your list of questions or requested a confer call. We need to receive your questions today so that we have time to review them and respond for Monday's filing -- especially as Nick and I will both be in depositions that day. Also, to the extent you have issues you'd still like to raise regarding the privilege log, we will need to confer about that today as well.
>
>
> Thanks,
>
>
> Katie

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC
normally contain confidential and privileged material, and are for the sole use of the
intended recipient. Use or distribution by an unintended recipient is prohibited, and
may be a violation of law. If you believe that you received this e-mail in error, please
do not read this e-mail or any attached items. Please delete the e-mail and all
attachments, including any copies thereof, and inform the sender that you have
deleted the e-mail, all attachments and any copies thereof. Thank you. Please be
advised that the Firm does not give tax advice.

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

## Kim Penny

**From:** Christina Retts
**Sent:** Tuesday, November 6, 2018 1:29 PM
**To:** Katie McCarthy; Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Mary Felder; Lori Berke; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

I am writing to follow up on some outstanding issues relating to the privilege log, recent untimely production of documents, Plaintiff's position on privilege, and the Ken Ray deposition.

The records that were just produced—the original jail file, employment records, and letters—are directly responsive to Defendant's Requests for Production which were served nearly two years ago.   Despite Plaintiff's attempt to downplay the new discoveries as a "small subset" of materials reviewed, these materials are critical and unavailable from the third-parties because of the passage of time.  These records also are relevant to many of the depositions that have already occurred—including Carmen Santana, Gail Lipshultz, Ken Ray, Kirk Fowler, Anders Rosenquist, Karen Smith, and Maureen Sadiek. These records are also relevant to the expert opinions and also the expert depositions.   Plaintiff repeatedly complained about the fact that Defendants did not schedule depositions earlier, but Plaintiff trickled out documents over an extended period of time instead of properly getting the file in order in the first instance.   There would not have been any necessity for Plaintiff's counsel to recently work over the weekend if the files had been reviewed before filing the litigation—in the two years between Ms. Milke's release and the filing of the Complaint—or in the nearly two years since the Request for Production was served.  The fact that Plaintiff served Five Supplemental Reponses to the Requests for Production is evidence of the same.  Indeed, as it relates to the audio tapes, it took Plaintiff almost 10 months—until November 8, 2017—to produce what was proffered as a complete production.  Throughout the course of the litigation Plaintiff frequently produced documents shortly before depositions—even though those documents were directly responsive to Requests for Production.  Near what was to be the close of discovery before the deadlines were changed, Plaintiff also produced documents related to Belinda Reynolds that appear to have been in the possession of the Plaintiffs for nearly a year.   Defendants have been severely prejudiced by this new late disclosure and Plaintiff's untimely production.   Please confirm that in the review of boxes of documents that Plaintiff's also cross-referenced the Defendants Requests for Production to ensure complete production.

Next, Defendants continue to maintain their position that there has been a waiver of the privilege, but before outlining additional bases for that position, additional information is sought (below).

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

### Privilege Log
We have reviewed the privilege log and have additional comments/questions below.

1. What is the factual and legal basis for assertion of the "common interest rule."   Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?   What Ninth Circuit opinion supports this?

2. It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

3. Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

4. Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.   The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

5. Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes" from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.   Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

6. In the habeas privilege log there is an entry with "medical records with attorney notations."  Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2. Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.   Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

7. In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

8. In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in binders. Simply because counsel put them in a binder does not make them privileged.  Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

9.  In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes."   And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases.  Is this the same material?  If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before?  Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

10. In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

11. The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.  Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

12. In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

13. In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.  This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.   Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?


**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also present?  If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file.  Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?


Tina

---

**From:** Christina Retts
**Sent:** Monday, November 5, 2018 12:43 PM
**To:** Katie McCarthy <katie@nsbcivilrights.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We intend to proceed with the deposition of Ms. Milke on November 14 and 15, 2018.  We will cross the bridge of additional deposition questioning after the resolution of the attorney privilege waiver issues by the Court.

We will be sending a more comprehensive response as it relates to the privilege log, production, etc., in the near future, but wanted to address the deposition issue now as we understand that travel plans need to be made.

Tina

---

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Thursday, November 1, 2018 11:58 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sanderssparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sanderssparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sanderssparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

We inadvertently sent the wrong version of the Ray/Fowler privilege log. Please find a corrected version attached.

Thanks,

Katie

On Wed, Oct 31, 2018 at 8:26 PM Katie McCarthy <katie@nsbcivilrights.com> wrote:

Counsel:

Per the Court's instructions at the October 19, 2018 status conference, counsel has undertaken a painstaking review of the copious records in this case to complete a detailed privilege log and identify any responsive materials.

Updated Responses to RFPs

Plaintiff's counsel has gone back through the "Milke room" (containing 31 boxes, over 60 binders, and stacks of loose papers) to segregate out as best we could what would have been Ken Ray's file and identify any other potentially relevant documents for review. It has always been counsel's understanding that these documents--stored at Mike Kimerer's office--constituted the universe of original documents in this case. However, out of an abundance of caution, Plaintiff's counsel last week contacted Lori Voepel to examine the 51 boxes of materials stored at her office. It was the understanding of Plaintiff's counsel, Mike, and Lori that Lori's files contained <u>only</u> multiple copies of documents stored in the "Milke room" at Mike's office. Upon painstaking review of those 51 boxes, however, counsel identified a small subset of original, responsive documents (most of which are covered by privilege, but a few of which are not). Namely, Plaintiff's original Maricopa County Jail medical file (MILKE_NSB032898-033072); Plaintiff's personnel files from Farmers Insurance Group (MILKE_NSB033073-033151) and Lincoln National (MILKE_NSB033152-33182); three binders containing some correspondence and work product from Ken Ray, Kirk Fowler, and Anders Rosenquist; and a cassette tape of a recording of Ken Ray's answering machine. Until last Friday, Plaintiff's counsel, Mike's office, and Lori were all unaware that these originals were in Lori's possession.

Of note, counsel listened to the Ken Ray cassette tape but has not yet transcribed that tape (which has very poor sound quality and requires an old microcassette player to play). It sounds like a message from either Jean Pugh, Jerry Pugh, or Alan Swanson (the caller does not identify himself) saying that the State was wrong regarding the number of shots fired on December 2, 1989. Nothing on the recording relates to any knowledge on the part of Ken Ray about Saldate's prior misconduct.

Within the 51 boxes, Plaintiff's counsel also identified a small subset of non-privileged documents that were sent directly to Gary Stuart by Lori Voepel in August 2014 (MILKE_NSB0333183-033385). It is Plaintiff's understanding and belief that those documents were also present in the "Milke room" and thus would have been available to Gary Stuart upon his review of the non-privileged documents present there, as Plaintiff disclosed to Defendants in her earlier RFP responses.

Plaintiff is producing all responsive, non-privileged documents referenced above and has updated her responses and privilege log accordingly.

Privilege Log & Pre-Conviction *Brady* Knowledge

Relatedly, Plaintiff's counsel has conducted a line-by-line review of all correspondence between Plaintiff and Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team) as well as all pre-trial third party correspondence to/from Ken or Kirk for any information pertaining to Ken Ray's pre-conviction knowledge of Detective Saldate's prior misconduct. Plaintiff has identified and is producing the two communications that are covered by implied waiver on this subject (MILKE_NSB0333386 & MILKE_NSB033387-033398).

As noted on the privilege log for Ray/Fowler, Plaintiff has also identified two additional communications that make some mention of Saldate's prior misconduct. However, it is our position that these letters are not covered by implied waiver because they were written post-conviction and the context indicates that they are referring to knowledge gained post-conviction about Saldate's prior misconduct (as Anders had already been retained and begun looking into Saldate's history at the time these were written). Although we do not believe privilege has been implicitly waived for these two letters, we are willing to produce redacted versions of both if you agree that such production does not waive attorney client, work product, or any other privilege.

In reviewing the privileged communications between Plaintiff and counsel, Plaintiff also identified a few enclosures to counsel of non-privileged communications between Plaintiff and third-parties, which we have produced. (MILKE_NSB032878-032897). And, although we believe it outside the scope of Defendants' reasonable requests, as indicated in our prior RFP responses, we are further producing Mr. Ray's correspondence with third-parties (and third party correspondence in his possession) during the course of his representation. (MILKE_NSB033300-033537).

Plaintiff's counsel has also segregated and reviewed all work product created by Ken Ray, Kirk Fowler, and Anders Rosenquist although it is not possible (given the history of the litigation and the frequent disaggregation/reorganization of the file) to exactly reconstruct the working file of any prior counsel. For Kirk Fowler, Plaintiff has identified four witness interview summaries: Carmen Santana, Harold Milke, Wilma Scott, and a composite summary (Evelyn & Phil Linderborg, Richard, Maureen, and Karen Sadiek). Per our meet-and-confer, because these witnesses appeared on Mr. Ray's R15 witness list for trial, we are willing to assume that he provided these summaries to Mr. Levy. As such, we are producing them (MILKE_NSB033538-033545).

As explained in more detail in Plaintiff's forthcoming Court filing, Plaintiff has reached out to Ken Ray and attempted to coordinate with him to review his file (which was sent to him electronically on October 26th). Mr. Ray at this point has taken the position that he will neither review his file nor communicate with even Plaintiff's counsel regarding his answers (if any) to Defendants' proposed questions absent a Court order or the opportunity to consult further with the state bar and/or ethics counsel, which he has not had time to do. Plaintiff is not in a position to compel Mr. Ray to take any particular action but will be advising the Court of his position.

Finally, with respect to the privilege log, Plaintiff has produced detailed privilege logs for: Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team including attorney Terry Capozzi), and habeas counsel (Mike Kimerer and Lori Voepel and their legal team/staff). We have also noted privileged correspondence with various post-conviction counsel that represented Plaintiff for only a short duration: James Kemper (plaintiff's state-appointed appellate public defender before Anders Rosenquist soon took over post-conviction litigation); James Liebman (a professor at Columbia Law School who worked with Anders Rosenquist on Plaintiff's cert petition to the Supreme Court); and John Charland (who was automatically appointed as Plaintiff's federal habeas counsel though Anders Rosenquist actually represented her until Mike/Lori took over the habeas litigation).

I have attached these privilege logs along with Plaintiff's Fifth Supplemental Response to Defendant City of Phoenix's First Request for Production of Documents and Plaintiff's Second Supplemental Response to Defendant Saldate's First Request for Production of Documents.

Referenced documents are available for download at the following
Dropbox: https://www.dropbox.com/sh/hqvg6mgc86o691j/AAB1f2_VKX8meYj56vP0HhK3a?dl=0

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order entered by the Court on March 22, 2017:
    MILKE_NSB033073-033151
    MILKE_NSB033152-033182
    MILKE_NSB03878-032897
    MILKE_NSB033387-033398
    MILKE_NSB033386
    MILKE_NSB032898-033072

Thanks,

Katie

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com


--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the

sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

## Kim Penny

| | |
|---|---|
| **From:** | Christina Retts |
| **Sent:** | Tuesday, November 13, 2018 12:23 PM |
| **To:** | Katie McCarthy; Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Mary Felder; Lori Berke; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude |
| **Subject:** | RE: Milke: Plaintiff's Updated Responses and Privilege Log |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counsel,

The Court has ordered us to submit to our position on the Ken Ray questions by November 16, 2018.   The information requested below is necessary for us to formulate our response and was requested even before the Court's Order was issued. Please provide the requested information as soon as possible.

Tina

**From:** Christina Retts
**Sent:** Tuesday, November 6, 2018 1:29 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Mary Felder' <mary@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

I am writing to follow up on some outstanding issues relating to the privilege log, recent untimely production of documents, Plaintiff's position on privilege, and the Ken Ray deposition.

The records that were just produced—the original jail file, employment records, and letters—are directly responsive to Defendant's Requests for Production which were served nearly two years ago.   Despite Plaintiff's attempt to downplay the new discoveries as a "small subset" of materials reviewed, these materials are critical and unavailable from the third-parties because of the passage of time.   These records also are relevant to many of the depositions that have already occurred—including Carmen Santana, Gail Lipshultz, Ken Ray, Kirk Fowler, Anders Rosenquist, Karen Smith, and Maureen Sadiek. These records are also relevant to the expert opinions and also the expert depositions.   Plaintiff repeatedly complained about the fact that Defendants did not schedule depositions earlier, but Plaintiff trickled out documents over an extended period of time instead of properly getting the file in order in the first instance.   There would not have been any necessity for Plaintiff's counsel to recently work over the weekend if the files had been reviewed before filing the litigation—in the two years between Ms. Milke's release and the filing of the Complaint—or in

the nearly two years since the Request for Production was served.  The fact that Plaintiff served Five Supplemental Reponses to the Requests for Production is evidence of the same.  Indeed, as it relates to the audio tapes, it took Plaintiff almost 10 months—until November 8, 2017—to produce what was proffered as a complete production.  Throughout the course of the litigation Plaintiff frequently produced documents shortly before depositions—even though those documents were directly responsive to Requests for Production.  Near what was to be the close of discovery before the deadlines were changed, Plaintiff also produced documents related to Belinda Reynolds that appear to have been in the possession of the Plaintiffs for nearly a year.   Defendants have been severely prejudiced by this new late disclosure and Plaintiff's untimely production.   Please confirm that in the review of boxes of documents that Plaintiff's also cross-referenced the Defendants Requests for Production to ensure complete production.

Next, Defendants continue to maintain their position that there has been a waiver of the privilege, but before outlining additional bases for that position, additional information is sought (below).

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

**Privilege Log**
We have reviewed the privilege log and have additional comments/questions below.

1.  What is the factual and legal basis for assertion of the "common interest rule."  Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?  What Ninth Circuit opinion supports this?

2.  It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

3.  Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

4.  Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.  The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

5.  Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes" from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.  Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

6.  In the habeas privilege log there is an entry with "medical records with attorney notations." Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2. Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.   Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

7.  In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

8.  In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in binders. Simply because counsel put them in a binder does not make them privileged.  Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

9.  In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes."   And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases.  Is this the same material?  If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before?  Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

10. In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

11. The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.  Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.  By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

12. In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.  The letters should be produced.

13. In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.  This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.   Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?


**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also present?  If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file.  Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?


Tina

---

**From:** Christina Retts
**Sent:** Monday, November 5, 2018 12:43 PM
**To:** Katie McCarthy <katie@nsbcivilrights.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log


Counsel,


We intend to proceed with the deposition of Ms. Milke on November 14 and 15, 2018.  We will cross the bridge of additional deposition questioning after the resolution of the attorney privilege waiver issues by the Court.


We will be sending a more comprehensive response as it relates to the privilege log, production, etc., in the near future, but wanted to address the deposition issue now as we understand that travel plans need to be made.


Tina

---

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Thursday, November 1, 2018 11:58 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log


Counsel:


We inadvertently sent the wrong version of the Ray/Fowler privilege log. Please find a corrected version attached.


Thanks,

Katie

On Wed, Oct 31, 2018 at 8:26 PM Katie McCarthy <katie@nsbcivilrights.com> wrote:

Counsel:

Per the Court's instructions at the October 19, 2018 status conference, counsel has undertaken a painstaking review of the copious records in this case to complete a detailed privilege log and identify any responsive materials.

Updated Responses to RFPs

Plaintiff's counsel has gone back through the "Milke room" (containing 31 boxes, over 60 binders, and stacks of loose papers) to segregate out as best we could what would have been Ken Ray's file and identify any other potentially relevant documents for review. It has always been counsel's understanding that these documents--stored at Mike Kimerer's office--constituted the universe of original documents in this case. However, out of an abundance of caution, Plaintiff's counsel last week contacted Lori Voepel to examine the 51 boxes of materials stored at her office. It was the understanding of Plaintiff's counsel, Mike, and Lori that Lori's files contained only multiple copies of documents stored in the "Milke room" at Mike's office. Upon painstaking review of those 51 boxes, however, counsel identified a small subset of original, responsive documents (most of which are covered by privilege, but a few of which are not). Namely, Plaintiff's original Maricopa County Jail medical file (MILKE_NSB032898-033072); Plaintiff's personnel files from Farmers Insurance Group (MILKE_NSB033073-033151) and Lincoln National (MILKE_NSB033152-33182); three binders containing some correspondence and work product from Ken Ray, Kirk Fowler, and Anders Rosenquist; and a cassette tape of a recording of Ken Ray's answering machine. Until last Friday, Plaintiff's counsel, Mike's office, and Lori were all unaware that these originals were in Lori's possession.

Of note, counsel listened to the Ken Ray cassette tape but has not yet transcribed that tape (which has very poor sound quality and requires an old microcassette player to play). It sounds like a message from either Jean Pugh, Jerry Pugh, or Alan Swanson (the caller does not identify himself) saying that the State was wrong regarding the number of shots fired on December 2, 1989. Nothing on the recording relates to any knowledge on the part of Ken Ray about Saldate's prior misconduct.

Within the 51 boxes, Plaintiff's counsel also identified a small subset of non-privileged documents that were sent directly to Gary Stuart by Lori Voepel in August 2014 (MILKE_NSB0333183-033385). It is Plaintiff's understanding and belief that those documents were also present in the "Milke room" and thus would have been available to Gary Stuart upon his review of the non-privileged documents present there, as Plaintiff disclosed to Defendants in her earlier RFP responses.

Plaintiff is producing all responsive, non-privileged documents referenced above and has updated her responses and privilege log accordingly.

Privilege Log & Pre-Conviction *Brady* Knowledge

Relatedly, Plaintiff's counsel has conducted a line-by-line review of all correspondence between Plaintiff and Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team) as well as all pre-trial third party correspondence to/from Ken or Kirk for any information pertaining to Ken Ray's pre-conviction knowledge of Detective Saldate's prior misconduct. Plaintiff has identified and is producing the two communications that are covered by implied waiver on this subject (MILKE_NSB0333386 & MILKE_NSB033387-033398).

As noted on the privilege log for Ray/Fowler, Plaintiff has also identified two additional communications that make some mention of Saldate's prior misconduct. However, it is our position that these letters are not covered by implied waiver because they were written post-conviction and the context indicates that they are referring to knowledge gained post-conviction about Saldate's prior misconduct (as Anders had already been retained and begun looking into

6

Saldate's history at the time these were written). Although we do not believe privilege has been implicitly waived for these two letters, we are willing to produce redacted versions of both if you agree that such production <u>does not</u> waive attorney client, work product, or any other privilege.

In reviewing the privileged communications between Plaintiff and counsel, Plaintiff also identified a few enclosures to counsel of non-privileged communications between Plaintiff and third-parties, which we have produced. (MILKE_NSB032878-032897). And, although we believe it outside the scope of Defendants' reasonable requests, as indicated in our prior RFP responses, we are further producing Mr. Ray's correspondence with third-parties (and third party correspondence in his possession) during the course of his representation. (MILKE_NSB033300-033537).

Plaintiff's counsel has also segregated and reviewed all work product created by Ken Ray, Kirk Fowler, and Anders Rosenquist although it is not possible (given the history of the litigation and the frequent disaggregation/reorganization of the file) to exactly reconstruct the working file of any prior counsel. For Kirk Fowler, Plaintiff has identified four witness interview summaries: Carmen Santana, Harold Milke, Wilma Scott, and a composite summary (Evelyn & Phil Linderborg, Richard, Maureen, and Karen Sadiek). Per our meet-and-confer, because these witnesses appeared on Mr. Ray's R15 witness list for trial, we are willing to assume that he provided these summaries to Mr. Levy. As such, we are producing them (MILKE_NSB033538-033545).

As explained in more detail in Plaintiff's forthcoming Court filing, Plaintiff has reached out to Ken Ray and attempted to coordinate with him to review his file (which was sent to him electronically on October 26th). Mr. Ray at this point has taken the position that he will neither review his file nor communicate with even Plaintiff's counsel regarding his answers (if any) to Defendants' proposed questions absent a Court order or the opportunity to consult further with the state bar and/or ethics counsel, which he has not had time to do. Plaintiff is not in a position to compel Mr. Ray to take any particular action but will be advising the Court of his position.

Finally, with respect to the privilege log, Plaintiff has produced detailed privilege logs for: Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team including attorney Terry Capozzi), and habeas counsel (Mike Kimerer and Lori Voepel and their legal team/staff). We have also noted privileged correspondence with various post-conviction counsel that represented Plaintiff for only a short duration: James Kemper (plaintiff's state-appointed appellate public defender before Anders Rosenquist soon took over post-conviction litigation); James Liebman (a professor at Columbia Law School who worked with Anders Rosenquist on Plaintiff's cert petition to the Supreme Court); and John Charland (who was automatically appointed as Plaintiff's federal habeas counsel though Anders Rosenquist actually represented her until Mike/Lori took over the habeas litigation).

I have attached these privilege logs along with Plaintiff's Fifth Supplemental Response to Defendant City of Phoenix's First Request for Production of Documents and Plaintiff's Second Supplemental Response to Defendant Saldate's First Request for Production of Documents.

Referenced documents are available for download at the following
Dropbox: https://www.dropbox.com/sh/hqvg6mgc86o691j/AAB1f2_VKX8meYj56vP0HhK3a?dl=0

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order entered by the Court on March 22, 2017:
> MILKE_NSB033073-033151
> MILKE_NSB033152-033182
> MILKE_NSB03878-032897
> MILKE_NSB033387-033398
> MILKE_NSB033386
> MILKE_NSB032898-033072

Thanks,

Katie

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com


--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

## Kim Penny

| | |
|---|---|
| **From:** | Katie McCarthy <katie@nsbcivilrights.com> |
| **Sent:** | Tuesday, November 13, 2018 7:13 PM |
| **To:** | Christina Retts |
| **Cc:** | Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Mary Felder; Lori Berke; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude |
| **Subject:** | Re: Milke: Plaintiff's Updated Responses and Privilege Log |

Counsel:

Your prior correspondence contains several gross misstatements regarding Plaintiff's discovery production in this case. As you're well aware, both sides have made multiple disclosures throughout this litigation. Indeed, the City has also produced five supplemental disclosures to Plaintiff's first request for production--including producing *thousands* of pages of responsive PPD documents on June 5, 2018, which were relevant to the City 30(b)(6) deposition held on November 17, 2017, and April 26, 2018. Given the massive volume of documents spanning back over thirty years, both sides have necessarily encountered difficulties or delays in productions, but Plaintiff has always made good faith efforts to produce documents as quickly as practicable while prioritizing areas you've raised as concerns in our many meet and confer calls. For example, with respect to the audiotapes, Plaintiff's counsel realized at the outset that production of these tapes would require listening to *hundreds of hours* of recordings. We promptly informed you of the situation, had the tapes digitized, kept you updated regarding our review process, and produced responsive recordings on a rolling basis. All responsive recordings were produced by November 8, 2017-- well in advance of Plaintiff's deposition and over a year before the close of discovery.

For the only new documents produced by Plaintiff--two employer personnel files and her Maricopa County jail records-- the delay in production was obviously inadvertent. As explained in Lori Voepel's declaration, neither Plaintiff's counsel nor Ms. Voepel had any idea until two weeks ago that any originals were present in Ms. Voepel's file. Had Plaintiff known, she never would have sought those same documents through subpoenas at the outset of this litigation and would have produced them previously. Plaintiff does not agree that Defendants have suffered any prejudice as a result of these limited new disclosures--which occurred before the close of Plaintiff's deposition. But to the extent Defendants have suffered any prejudice, Plaintiff has suffered the same if not greater. Plaintiff similarly could not use these records at depositions nor could she provide these records to her experts (including the records from Dr. Garcia-Brunnel which extensively discuss her grief while awaiting trial).

In sum, Plaintiff's counsel has been entirely up front about what we were and were not doing in terms of our responsiveness review of this voluminous record. To the extent you had any objections, you had ample opportunity to raise them but never did so until now. As for the more specific issues raised in your recent email, Plaintiff addresses each below (Defendants statements are in blue).

Letters

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

Plaintiff agrees to these terms and has produced redacted versions of these two letters at: **MILKE_NSB033546-335548** and **MILKE_NSB033549-33555**. Plaintiff will update the privilege log accordingly.

**Privilege Log**

We have reviewed the privilege log and have additional comments/questions below.

1. What is the factual and legal basis for assertion of the "common interest rule."   Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?   What Ninth Circuit opinion supports this?

Plaintiff is asserting a common interest between her current counsel and her prior legal team (from trial through habeas). The common interest doctrine recognizes that there is "no waiver of the privilege where a party discloses privileged material to another with which it shares common interests." *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003). And courts in the Ninth Circuit have observed that "common interests are not construed so narrowly as to limit the exception only to co-parties." *Cal. Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638 (E.D. Cal. 2014); *see also U.S.  v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980) ("So long as the transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary."). Here, Plaintiff's current counsel clearly shares a common interest with past criminal defense counsel, and neither past nor current counsel has or will share privileged information with Defendants (a common adversary). Because their interests are aligned, Plaintiff properly asserted common interest protection for privileged materials shared between current and past counsel.

2. It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

As an investigator, Kirk Fowler was a member of Plaintiff's legal team and an agent of her attorney. As such, communications between Plaintiff and Mr. Fowler are protected by both attorney-client and work-product privilege. *See, e.g.*, *Visa U.S.A., Inc. v. First Data Corp.*, No. 02-cv-1786(JSW)(EMC), 2004 WL 1878209, at *5 (N.D. Cal. Aug. 23, 2004) (the key inquiry for attorney-client privilege is whether "a nominal third party is an agent of the attorney"); *see also* 1 Rice, *Attorney-Client Privilege* § 3.3, at 13-21 (noting that courts have extended the attorney-client privilege to substantive advice and assistance of, *e.g.*, investigators, interviewers, technical experts, and other specialists)). Plaintiff thus properly asserted attorney-client privilege for communications with Mr. Fowler who was a member of the legal team communicating with Plaintiff for purposes of her legal representation.

3. Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

Ninth Circuit precedent makes clear that the work product privilege belongs to <u>both</u> the attorney and the client and so necessarily continues past representation by a particular attorney. *See, e.g., Lopes v. Vieira*, 719 F. Supp. 2d 1199, 1201 (E.D. Cal. 2010) ("The work-product privilege belongs to both the attorney and the client. The work-product protection continues even after the litigation is completed. (citation omitted)); *Schmidt v. Levi Strauss & Co.*, 2007 WL 628660 (N.D. Cal. Feb. 28, 2007) (same); *see also In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 63 (7th Cir. 1980) ("[T]he work product doctrine may be asserted by both the client and the attorney . . . ."). Thus, Plaintiff is entitled to assert work product privilege even though her criminal proceeding has ended.

4. Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.   The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

Plaintiff disagrees with Defendants' characterization of the privilege. To the extent Plaintiff shared articles with her legal team to further her representation, Plaintiff believes those communications are privileged. But, assuming your agreement that production of these documents does not by itself constitute a waiver of any privilege (as with the two Kirk Fowler letters produced above), we are producing the few articles that were enclosed in letters to Ken Ray and Kirk Fowler at: **MILKE_NSB033556-33563**.

Plaintiff is not producing any statements that were shared solely with her legal team and never disclosed to third parties as those remain protected by attorney-client privilege.

5. Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes"  from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.  Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

Plaintiff strongly disagrees that her extensive, line-by-line privilege log lacks sufficient detail. Indeed, Plaintiff's log goes well beyond what courts have required in the vast majority of cases, especially in light of the volume of documents that had to be reviewed and cataloged in this case. *See, e.g., In re Imperial Corp. of Am.*, 174 F.R.D. 475, 477 (S.D. Cal. 1997) ("[N]o where in Fed. R. Civ. Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required if a party seeks to withhold documents based on privilege or work product. In fact, the Advisory Committee Notes following Rule 26 indicate that a document-by-document privilege log is *not* required [if it would be] unduly burdensome when

voluminous documents are claimed to be privileged . . . ."). That said, Plaintiff warrants that there were no police reports from cases <u>other than</u> the Christopher Milke case with notes made by Ken Ray or Kirk Fowler. Without waiving Plaintiff's unduly burdensome objection, Plaintiff will update the privilege log accordingly.

6.  In the habeas privilege log there is an entry with "medical records with attorney notations."  Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2.  Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.  Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

The medical records referenced in the privilege log have either already been produced or are not responsive to Defendants' RFP No. 2. Although not responsive and without waiving any prior objections, out of an abundance of caution, Plaintiff is producing the following medical records: **MILKE_NSB033624-33694** (Debra Milke 1985 medical records, outside the scope of Defs' RFP No. 2); and **MILKE_NSB0033564-33623** (Debra Milke DOC medical records, previously produced beginning at: MILKE_AZDOCHealth 00193).

7.  In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

Plaintiff does not agree with Defendants' unsupported assertion that these witness binders including their indices are not protected by work-product privilege. These binders--which were indisputably prepared in anticipation of litigation including several evidentiary hearings and Plaintiff's capital retrial--reflect the mental processes of counsel with respect to each witness. The work-product doctrine is specifically intended to protect these mental processes, including when reflected in the compilation of documents, raw data, or legal research. *See, e.g.*, *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ("The work-product doctrine covers documents or *the compilation of materials* prepared by agents of the attorney in preparation for litigation." (citing *United States v. Nobles*; 422 U.S. 225, 238 (1975)(emphasis added)); *see also Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (observing that the work product doctrine protects "from discovery documents and *tangible things* prepared by a party or his representative in anticipation of litigation" (emphasis added)). As such, Plaintiff continues to object to the production of any portion of these binders as privileged.

Plaintiff's counsel can, however, represent that every binder was reviewed to determine whether any original or newly responsive materials were contained within them, including any criminal defense interview notes. All defense interview notes and other responsive materials were disclosed in Plaintiff's last supplemental disclosure.

8.  In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in

binders. Simply because counsel put them in a binder does not make them privileged. Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

Plaintiff has the same objection as raised above: counsels' compilation of articles and news media in advance of litigation reflects mental processes protected by the work-product privilege. Moreover, all published articles compiled by counsel are public record and equally available to Defendants. Subject to these objections, and assuming agreement that such production does not itself waive privilege, Plaintiff has identified and is producing a few additional articles pursuant to the parties' prior agreement that Plaintiff would produce any published news media in her possession. Those articles can be found at **MILKE_NSB033695-033719.**

9.  In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes." And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases. Is this the same material? If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before? Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege. If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

Plaintiff believes these entries inadvertently refer to the same bankers boxes that Defendants were offered access to previously. It's also Plaintiff's understanding that the City retrieved these boxes and copies their contents. If Defendants would like to confirm that understanding, photographs of these boxes and their general contents can be found here: **MILKE_NSB033720-033730**.

Plaintiff will update the privilege log accordingly.

10.  In the Anders Rosenquist work product log, there are two listings for mitigation materials. The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

Plaintiff disagrees with Defendants' assertion (notably unsupported by any legal citation) that work product generated by a mitigation specialist -- working at the direction of counsel in conjunction with the legal team for purposes of Plaintiff's capital representation -- is not protected by work product privilege. *See United States v. Nobles*, 422 U.S. at 239 ("[The work-product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation of trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ("The work-product doctrine covers documents or *the compilation of materials* prepared by agents of the attorney in preparation for litigation." (emphasis added)). It's indisputable that any work product generated by the mitigation specialist (including in the form of compiled documents) was done so in anticipation of capital post-conviction litigation and as an agent of Anders Rosenquist. As such, Plaintiff has properly asserted work product privilege for all of those documents.

However, out of an abundance of caution, Plaintiff also reviewed those materials to ensure no original or responsive documents were included. These mitigation materials do not contain independent records that have not already been produced (including the mitigation specialist's final product, a lengthy social history of the Plaintiff, which was produced to Defendants a long time ago).

11.  The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.   Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

Plaintiff's good faith assertions of privilege incorporate Plaintiff's understanding that privilege has not been waived, based on Plaintiff's reasonable investigation to date. Obviously, the scope of the documents at issue and the time span involved limits what investigation is reasonable or even possible (for example, Plaintiff's counsel -- like Defendants -- has no idea where Joe Marino is currently located or indeed whether he is still alive). Plaintiff is not required under Ninth Circuit law to investigate and then indicate whether there was disclosure to a third-party for each and every document listed on her forty-page privilege log across the last thirty years. *See* Fed. R. Civ. P. 26(b)(5)(A); *In re Imperial Corp. of Am.*, 174 F.R.D. at 477 (no line-by-line privilege log required).

Defendants' request is unreasonable and requires an inquiry well beyond the scope required by any court in the context of creating a privilege log. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (instructing courts to employ a "holistic reasonableness analysis" when evaluating a privilege log's sufficiency in order to "forestall needless waste of time and resources"). Where apparent, Plaintiff has indicated or agreed with Defendants regarding limited express waivers in letters to various third parties. And, whenever a specific issue has been raised, Plaintiff has made a good faith effort to determine if such information was disclosed. For example, after Defendants raised that Mr. Ray may have disclosed Mr. Fowler's witness interview notes to Mr. Levy, Plaintiff identified those notes in her possession, cross-checked them with Mr. Ray's witness list, and turned over all such notes to Defendants. With respect to Mr. Krone, to Plaintiff's knowledge, no further material or communications were exchanged with Mr. Krone or his attorney.

12.  In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

Defense counsel appears to be mistaken; no such entry exists on Plaintiff's privilege log nor would Plaintiff have claimed privilege over such correspondence.

13.  In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items

on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.   This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

As laid out in Plaintiff's briefing, under Ninth Circuit law, Plaintiff's waiver with respect to the ineffective assistance of counsel claim (including proffers of documentary evidence to support that claim) is limited to Plaintiff's habeas proceeding. *See Bittaker*, 331 F.3d at 722 (finding waiver limited "to adjudicating the ineffective assistance of counsel claim"); *Lambright v. Ryan*, 698 F.3d 808, 818 (9th Cir. 2012) ("We held [in *Bittaker*] that, although that petitioner impliedly waives his attorney-client privilege, such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim . . . "); *see also id* at 819 n.3 ("The privilege was impliedly waived when Lambright filed his ineffective assistance claim, so he could not later expressly waive the privilege simply by disclosing privileged documents without objection."); *United States v. Gray*, 2007 WL 1848030, at *5 (N.D. Cal. June 27, 2007) ("In accordance with *Bittaker*, Cohan's privilege is not waived for subsequent or different IRS investigations or prosecutions."). We are also confused by the reference to Rule 502, which does not appear applicable.

In the event the Court rules otherwise, Plaintiff will take appropriate action at that time in accordance with the Court's ruling.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

Plaintiff provides that same answer as to #13 above.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

The Court has given the parties specific instructions on how to proceed on the issue of express waiver, including the effect of any disclosure to third parties. As the parties are still engaged in that process, the scope of any waiver has not yet been decided. Plaintiff will comply with the Court's instructions and will take action, if appropriate, as decided by the Court.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

Plaintiff did not claim this answering machine tape as privileged nor does Plaintiff believe that this tape is responsive to any RFP. Still, out of an abundance of caution, we informed you of its discovery. Though we do not agree its responsive, Plaintiff is willing to produce a copy of the tape if Defendants would like.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.   Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

Plaintiff's counsel never represented that privileged materials were intermingled in all boxes. As we've stated to you before, based on conversations with Gary Stuart, it is our understanding that certain clearly designated privileged materials were removed from the file before he was given access; that Mr. Stuart (himself a lawyer) was specifically instructed not to look at privileged materials should he encounter them and so agreed; that Mr. Stuart was never seeking privileged materials but instead sought to review publicly available materials (i.e., pleadings, rulings, etc); and that he did not in fact review any privileged materials in the file. Defendants have had the opportunity since the outset of this litigation to subpoena and/or depose Mr. Stuart--we also invited you to speak with him when this issue first arose--but you never did so until now. It is our understanding that counsel for the City of Phoenix has been in contact with Mr. Stuart and is in receipt of materials from him. Mr. Stuart remains best positioned to explain his review of the file, and it's our understanding that he already informed defense counsel that neither Mike Kimerer nor Lori Voepel ever gave him any information or documents they considered confidential under ER 1.6, or any work product privilege.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?

Plaintiff provides the same answer that the parties should follow the Court's prescribed process as for #15 above.

**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

Plaintiff has never been in possession of any taped sessions between Dr. Garcia-Brunnel and Ms. Milke. Plaintiff is further unaware if any such tapes ever existed. As such, Plaintiff cannot provide explanation for, if there ever were such tapes, where they are now or if they were destroyed, when, and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also present?  If so,

please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

It is Plaintiff's best recollection that Dr. Garcia-Brunnel never sat in on any meetings with Ken Ray and/or Kirk Fowler. It is Plaintiff's counsel's understanding that Dr. Garcia-Brunnel is now deceased.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file. Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file? He obtained the file from Mr. Ray and may also possess a recollection of its construction. Similarly, Mr. Fowler may also possess information. Was Mr. Fowler contacted?

Plaintiff complied with the Court's instructions and has made every effort to keep Mr. Ray informed regarding the Court's newest order. The Court did not instruct Plaintiff to reach out to Mr. Rosenquist or Mr. Fowler; however, it's Plaintiff's understanding based on prior conversations (and their deposition testimony) that neither would have a specific recollection of what was in Ken Ray's file either at the time of trial or when it was transferred to Mr. Rosenquist in the early 1990s -- over 25 years ago.

**November 12th Document Requests**

In preparation for Ms. Milke's continued deposition, we have been reviewing the records produced recently.   In those records there is a reference to the following documents that have not been produced: (1) photocollage of Milke/Christopher; and (2) a journal. Please produce these items immediately as they are responsive to discovery. If they no longer exist, please identify the date of their destruction.

Plaintiff did create a photocollage of herself and her son, Christopher Milke. Plaintiff does not agree that this photocollage is responsive to any of Defendants' RFPs. Subject to and without waiving that objection, Plaintiff is producing photographs of the collage at: **MILKE_NSB33731-33733**.

At no time has Plaintiff kept a journal, either while incarcerated or since her release.

-----

As indicated, Plaintiff will produce an updated privilege log shortly. The referenced documents are available at the following Dropbox link: https://www.dropbox.com/sh/8a1j3pdbbp57cmp/AADXXPk6q5J3fFizodihHEGRa

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order entered by the Court on March 22, 2017:

    MILKE_NSB033546-335548
    MILKE_NSB033549-33555
    MILKE_NSB0033564-33623
    MILKE_NSB033624-33694
    MILKE_NSB33731-33733

Thanks,

Katie

On Tue, Nov 13, 2018 at 2:23 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,


The Court has ordered us to submit to our position on the Ken Ray questions by November 16, 2018.   The information requested below is necessary for us to formulate our response and was requested even before the Court's Order was issued. Please provide the requested information as soon as possible.


Tina

---

**From:** Christina Retts
**Sent:** Tuesday, November 6, 2018 1:29 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Mary Felder' <mary@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log


Counsel,


I am writing to follow up on some outstanding issues relating to the privilege log, recent untimely production of documents, Plaintiff's position on privilege, and the Ken Ray deposition.


The records that were just produced—the original jail file, employment records, and letters—are directly responsive to Defendant's Requests for Production which were served nearly two years ago.   Despite Plaintiff's attempt to downplay the new discoveries as a "small subset" of materials reviewed, these materials are critical and unavailable from the third-parties because of the passage of time.  These records also are relevant to many of the depositions that have already occurred—including Carmen Santana, Gail Lipshultz, Ken Ray, Kirk Fowler, Anders Rosenquist, Karen Smith, and Maureen Sadiek. These records are also relevant to the expert opinions and also the expert depositions.  Plaintiff repeatedly complained about the fact that Defendants did not schedule depositions earlier, but Plaintiff trickled out documents over an extended period of time instead of properly getting the file in order in the first instance.   There would not have been any necessity for Plaintiff's counsel to recently work over the weekend if the files had been

reviewed before filing the litigation—in the two years between Ms. Milke's release and the filing of the Complaint—or in the nearly two years since the Request for Production was served.  The fact that Plaintiff served Five Supplemental Reponses to the Requests for Production is evidence of the same.  Indeed, as it relates to the audio tapes, it took Plaintiff almost 10 months—until November 8, 2017—to produce what was proffered as a complete production.  Throughout the course of the litigation Plaintiff frequently produced documents shortly before depositions—even though those documents were directly responsive to Requests for Production.  Near what was to be the close of discovery before the deadlines were changed, Plaintiff also produced documents related to Belinda Reynolds that appear to have been in the possession of the Plaintiffs for nearly a year.   Defendants have been severely prejudiced by this new late disclosure and Plaintiff's untimely production.   Please confirm that in the review of boxes of documents that Plaintiff's also cross-referenced the Defendants Requests for Production to ensure complete production.

Next, Defendants continue to maintain their position that there has been a waiver of the privilege, but before outlining additional bases for that position, additional information is sought (below).

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

**Privilege Log**

We have reviewed the privilege log and have additional comments/questions below.

1.  What is the factual and legal basis for assertion of the "common interest rule."   Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?   What Ninth Circuit opinion supports this?

2.  It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

3.  Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

4. Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.   The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

5. Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes" from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.   Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

6. In the habeas privilege log there is an entry with "medical records with attorney notations."  Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2.  Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.   Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

7. In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

8. In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in binders. Simply because counsel put them in a binder does not make them privileged.  Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

9.  In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes."   And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases.  Is this the same material?  If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before?  Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

10. In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

11. The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.   Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

12. In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

13. In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.   This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.  Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?

**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also present?  If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel

sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file.  Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?

Tina

---

**From:** Christina Retts
**Sent:** Monday, November 5, 2018 12:43 PM
**To:** Katie McCarthy <katie@nsbcivilrights.com>; Robin E. Burgess <Robin.Burgess@sanderssparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sanderssparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sanderssparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We intend to proceed with the deposition of Ms. Milke on November 14 and 15, 2018.  We will cross the bridge of additional deposition questioning after the resolution of the attorney privilege waiver issues by the Court.

We will be sending a more comprehensive response as it relates to the privilege log, production, etc., in the near future, but wanted to address the deposition issue now as we understand that travel plans need to be made.

Tina

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Thursday, November 1, 2018 11:58 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

We inadvertently sent the wrong version of the Ray/Fowler privilege log. Please find a corrected version attached.

Thanks,

Katie

On Wed, Oct 31, 2018 at 8:26 PM Katie McCarthy <katie@nsbcivilrights.com> wrote:

Counsel:

Per the Court's instructions at the October 19, 2018 status conference, counsel has undertaken a painstaking review of the copious records in this case to complete a detailed privilege log and identify any responsive materials.

Updated Responses to RFPs

Plaintiff's counsel has gone back through the "Milke room" (containing 31 boxes, over 60 binders, and stacks of loose papers) to segregate out as best we could what would have been Ken Ray's file and identify any other potentially

relevant documents for review. It has always been counsel's understanding that these documents--stored at Mike Kimerer's office--constituted the universe of original documents in this case. However, out of an abundance of caution, Plaintiff's counsel last week contacted Lori Voepel to examine the 51 boxes of materials stored at her office. It was the understanding of Plaintiff's counsel, Mike, and Lori that Lori's files contained <u>only</u> multiple copies of documents stored in the "Milke room" at Mike's office. Upon painstaking review of those 51 boxes, however, counsel identified a small subset of original, responsive documents (most of which are covered by privilege, but a few of which are not). Namely, Plaintiff's original Maricopa County Jail medical file (MILKE_NSB032898-033072); Plaintiff's personnel files from Farmers Insurance Group (MILKE_NSB033073-033151) and Lincoln National (MILKE_NSB033152-33182); three binders containing some correspondence and work product from Ken Ray, Kirk Fowler, and Anders Rosenquist; and a cassette tape of a recording of Ken Ray's answering machine. Until last Friday, Plaintiff's counsel, Mike's office, and Lori were all unaware that these originals were in Lori's possession.

Of note, counsel listened to the Ken Ray cassette tape but has not yet transcribed that tape (which has very poor sound quality and requires an old microcassette player to play). It sounds like a message from either Jean Pugh, Jerry Pugh, or Alan Swanson (the caller does not identify himself) saying that the State was wrong regarding the number of shots fired on December 2, 1989. Nothing on the recording relates to any knowledge on the part of Ken Ray about Saldate's prior misconduct.

Within the 51 boxes, Plaintiff's counsel also identified a small subset of non-privileged documents that were sent directly to Gary Stuart by Lori Voepel in August 2014 (MILKE_NSB0333183-033385). It is Plaintiff's understanding and belief that those documents were also present in the "Milke room" and thus would have been available to Gary Stuart upon his review of the non-privileged documents present there, as Plaintiff disclosed to Defendants in her earlier RFP responses.

Plaintiff is producing all responsive, non-privileged documents referenced above and has updated her responses and privilege log accordingly.

<u>Privilege Log & Pre-Conviction *Brady* Knowledge</u>

Relatedly, Plaintiff's counsel has conducted a line-by-line review of all correspondence between Plaintiff and Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team) as well as all pre-trial third party correspondence to/from Ken or Kirk for any information pertaining to Ken Ray's pre-conviction knowledge of Detective Saldate's prior misconduct. Plaintiff has identified and is producing the two communications that are covered by implied waiver on this subject (MILKE_NSB0333386 & MILKE_NSB033387-033398).

As noted on the privilege log for Ray/Fowler, Plaintiff has also identified two additional communications that make some mention of Saldate's prior misconduct. However, it is our position that these letters are <u>not</u> covered by implied waiver because they were written post-conviction and the context indicates that they are referring to <u>knowledge gained post-conviction</u> about Saldate's prior misconduct (as Anders had already been retained and begun looking into Saldate's history at the time these were written). Although we do not believe privilege has been implicitly waived for

17

these two letters, we are willing to produce redacted versions of both if you agree that such production <u>does not</u> waive attorney client, work product, or any other privilege.

In reviewing the privileged communications between Plaintiff and counsel, Plaintiff also identified a few enclosures to counsel of non-privileged communications between Plaintiff and third-parties, which we have produced. (MILKE_NSB032878-032897). And, although we believe it outside the scope of Defendants' reasonable requests, as indicated in our prior RFP responses, we are further producing Mr. Ray's correspondence with third-parties (and third party correspondence in his possession) during the course of his representation. (MILKE_NSB033300-033537).

Plaintiff's counsel has also segregated and reviewed all work product created by Ken Ray, Kirk Fowler, and Anders Rosenquist although it is not possible (given the history of the litigation and the frequent disaggregation/reorganization of the file) to exactly reconstruct the working file of any prior counsel. For Kirk Fowler, Plaintiff has identified four witness interview summaries: Carmen Santana, Harold Milke, Wilma Scott, and a composite summary (Evelyn & Phil Linderborg, Richard, Maureen, and Karen Sadiek). Per our meet-and-confer, because these witnesses appeared on Mr. Ray's R15 witness list for trial, we are willing to assume that he provided these summaries to Mr. Levy. As such, we are producing them (MILKE_NSB033538-033545).

As explained in more detail in Plaintiff's forthcoming Court filing, Plaintiff has reached out to Ken Ray and attempted to coordinate with him to review his file (which was sent to him electronically on October 26th). Mr. Ray at this point has taken the position that he will neither review his file nor communicate with even Plaintiff's counsel regarding his answers (if any) to Defendants' proposed questions absent a Court order or the opportunity to consult further with the state bar and/or ethics counsel, which he has not had time to do. Plaintiff is not in a position to compel Mr. Ray to take any particular action but will be advising the Court of his position.

Finally, with respect to the privilege log, Plaintiff has produced detailed privilege logs for: Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team including attorney Terry Capozzi), and habeas counsel (Mike Kimerer and Lori Voepel and their legal team/staff). We have also noted privileged correspondence with various post-conviction counsel that represented Plaintiff for only a short duration: James Kemper (plaintiff's state-appointed appellate public defender before Anders Rosenquist soon took over post-conviction litigation); James Liebman (a professor at Columbia Law School who worked with Anders Rosenquist on Plaintiff's cert petition to the Supreme Court); and John Charland (who was automatically appointed as Plaintiff's federal habeas counsel though Anders Rosenquist actually represented her until Mike/Lori took over the habeas litigation).

I have attached these privilege logs along with Plaintiff's Fifth Supplemental Response to Defendant City of Phoenix's First Request for Production of Documents and Plaintiff's Second Supplemental Response to Defendant Saldate's First Request for Production of Documents.

Referenced documents are available for download at the following Dropbox: https://www.dropbox.com/sh/hqvg6mgc86o691j/AAB1f2_VKX8meYj56vP0HhK3a?dl=0

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order entered by the Court on March 22, 2017:

    MILKE_NSB033073-033151

    MILKE_NSB033152-033182

    MILKE_NSB03878-032897

    MILKE_NSB033387-033398

    MILKE_NSB033386

    MILKE_NSB032898-033072


Thanks,


Katie


--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com




--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013

T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

**Kim Penny**

---

| | |
|---|---|
| **From:** | Christina Retts |
| **Sent:** | Friday, November 16, 2018 5:27 PM |
| **To:** | Katie McCarthy |
| **Cc:** | Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Mary Felder; Lori Berke; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude |
| **Subject:** | RE: Milke: Plaintiff's Updated Responses and Privilege Log |

Counsel,

The following will provide Defendants' position on the Ken Ray deposition questions. We will also address some of Plaintiff's responses to our letter requesting clarification about Plaintiff's efforts connected with the privilege log and the log itself.  At the outset, it should be noted that the Ken Ray deposition questions were developed based upon the documents Plaintiff disclosed in this case.  This includes the documents recently produced, which contain more material relating to Detective Saldate that should have been disclosed nearly two years ago in response to Defendants' Requests for Production, but was not.  Additional questions have been added to the original list based upon this recent disclosure.  Further, Plaintiff continues to withhold additional documents as evidenced by the privilege logs. It is Defendants' position that Plaintiff has waived all privilege such that additional material should be produced to Defendants.  It is highly likely that the materials being withheld by Plaintiff contain additional information that would generate additional questions to Ken Ray.  As a result, the Defendants will be asking the Court to rule on waiver as it relates to all of the materials withheld and will request that any additional material be produced before Ray's second deposition, and will request the opportunity to submit additional deposition questions to be asked of Mr. Ray at his deposition following Defendants' receipt of these additional materials

Defendants continue to be concerned over the incomplete nature of Plaintiff's productions, which are ongoing to this day, and with Plaintiff's privilege log.  This includes untimely recent production of the original jail records from Maricopa County Jail, employment records, documentation of Ken Ray's knowledge of  allegations made by others concerning Detective Saldate's history through a phone call and affidavit, witness summaries of Kirk Fowler's interviews, and the new English translation of the German book about Debra Milke which was just produced yesterday notwithstanding that it was responsive to a Request for Production served more than two years ago.

There are additional issues surrounding Plaintiff's destruction of documents with Mr. Aue and Milke's recent shredding of multiple containers of documents in Germany.  Plaintiff sent numerous letters out to third-parties for storage and banking of her letters, and used third-parties to send letters out of the prison.  It appears that Plaintiff has not identified all of these third-parties and taken appropriate efforts to retrieve and produce the responsive information.  Plaintiff cannot avoid discovery by stating that documents she sent to third-parties for storage are not in her "custody and control."  From the time she reasonably anticipated this litigation, Plaintiff had s an obligation to preserve potentially relevant documents, and once served with Defendants' discovery, she had an obligation to contact every third party she sent material to in order to inquire whether they had responsive information and if so, produce them—especially since she specifically sent out documents for the purpose of storing them.   The evidence shows that Ms. Milke was planning on filing a civil lawsuit as far back as 1990, as documented in her letters to  both Joe Marino and Vince Felix.  She told them numerous times she was going to file a lawsuit.  In 1996, her mother wrote about contacting Mr. Scheck, her current civil counsel, for the purposes of advancing a civil lawsuit.

But Plaintiff need not just take our suggestions regarding her obligations for satisfying her production and disclosure obligations, she has been under Court Order to do so. Last month the Court Ordered Plaintiff and her counsel to review the entirety of her file and produce documents responsive to all of Defendants' outstanding Requests for Production, not just documents related to Ken Ray.  Notwithstanding this Court directive, somehow Plaintiff missed the English Version of the Book that Janna Bommersbach wrote which was responsive to Defendants' Request for Production Number 5.  This book, which was written in German, not in English, was written by a well-known local *journalist,* yet never mentioned in response to the Request for Production.  Nor was the English manuscript ever produced until after the completion of Plaintiff's deposition.  Plaintiff did not produce the translation, despite possessing it long before this. A review of the first three pages demonstrates that there was impeachment information that would have been used in Plaintiff's deposition.  In recently and untimely producing this material, Plaintiff appears to blame Defendants for failing to bring to Plaintiff's attention to the fact that they did not produce the book.  It is Plaintiff's responsibility to ensure complete disclosure and production, particularly after the Court's hearing.  Further, Plaintiff is withholding significant documents under the privilege log that are difficult to identify what they are and Plaintiff's discovery responses are far from clear on what is being withheld.  In fact, at Ms. Milke's deposition, Nick Brustin initially appeared to take the position that the book transcript was not responsive to Defendants' Requests for Production because Ms. Bommersbach was not a journalist.   After we then pointed out that she was aa journalist, Plaintiff changed her position claiming the English version was inadvertently not produced.  Notably, Ms. Milke was well aware of Ms. Bommersbach's status of a journalist before this time.

As for the privilege logs, Plaintiff's carelessness in her preparation has given Defendants no confidence in the assertion of the privilege.  For example, Plaintiff was forced to revise the privilege log, after it was pointed out by Defendants that Plaintiff included materials on the privilege log that were already produced in the case.  Additionally, documents we obtained from Gary Stuart via our subpoena, which we were forced to serve because Plaintiff stated she was unable to determine what documents were provided to him, also apparated on Plaintiff's privilege log as attorney client and work product materials.  And this was even after counsel's avowal to the court that Mr. Stuart had been provided no privileged documents.

Had Plaintiff properly reached out to Gary Stuart—who wrote a book about Debra Milke—when she received the Request for Production in 2016, she would have found the original jail records and employment records that were only recently (and untimely) produced by Plaintiff.   And despite being told that the file materials were in disarray and unorganized, Gary Stuart had eight binders of meticulously organized materials that Plaintiff never previously obtained and produced in response to Defendants' 2016 Request for Production.  Instead, she put the burden on Defendants to incur the additional cost and inconvenience to subpoena Mr. Stuart.  The new jail and employment records just produced were in a witness binder for Ms. Milke and not hidden in boxes of materials.  The binder even has an index—which was generated electronically—so could have been searched electronically.  We know this because Mr. Stuart had a copy of the witness binder—which was a duplicate of binders that seem to appear on the privilege log just produced.   Minimal efforts would have uncovered these materials that are Plaintiff's own file materials.   These are critical records relating to key issues in the case—such as the existence of bullets in Ms. Milke's purse, which at her last deposition she originally denied going into her purse, then equivocated about whether she took her birth control that was in her purse.  The jail records just produced clearly establish that she did take her birth control on Sunday and thus, went into her purse where the bullets were.  The employment records impeach other areas of her testimony.  It is only because the Court ordered Plaintiff to go back and review the file that Plaintiff "found" these materials.

The Gary Stuart records also raise additional issues with Plaintiff's position on privilege, as outlined more fully below.  Plaintiff's continue to dig in on her position that all of the witness binders on the habeas counsel privilege log are protected by work product privilege, yet Mr. Stuart possessed several of these privileged binders that continue to appear on Plaintiff's privilege log and that she continues to staunchly argue are privileged.  They are not.  Giving Mr. Stuart material that appears on the privilege log waives the privilege.