Katie

On Tue, Nov 13, 2018 at 2:23 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

The Court has ordered us to submit to our position on the Ken Ray questions by November 16, 2018.   The information requested below is necessary for us to formulate our response and was requested even before the Court's Order was issued. Please provide the requested information as soon as possible.

Tina

**From:** Christina Retts
**Sent:** Tuesday, November 6, 2018 1:29 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Mary Felder' <mary@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

I am writing to follow up on some outstanding issues relating to the privilege log, recent untimely production of documents, Plaintiff's position on privilege, and the Ken Ray deposition.

The records that were just produced—the original jail file, employment records, and letters—are directly responsive to Defendant's Requests for Production which were served nearly two years ago.   Despite Plaintiff's attempt to downplay the new discoveries as a "small subset" of materials reviewed, these materials are critical and unavailable from the third-parties because of the passage of time.  These records also are relevant to many of the depositions that have already occurred—including Carmen Santana, Gail Lipshultz, Ken Ray, Kirk Fowler, Anders Rosenquist, Karen Smith, and Maureen Sadiek. These records are also relevant to the expert opinions and also the expert

depositions.   Plaintiff repeatedly complained about the fact that Defendants did not schedule depositions earlier, but Plaintiff trickled out documents over an extended period of time instead of properly getting the file in order in the first instance.   There would not have been any necessity for Plaintiff's counsel to recently work over the weekend if the files had been reviewed before filing the litigation—in the two years between Ms. Milke's release and the filing of the Complaint—or in the nearly two years since the Request for Production was served.   The fact that Plaintiff served Five Supplemental Reponses to the Requests for Production is evidence of the same.   Indeed, as it relates to the audio tapes, it took Plaintiff almost 10 months—until November 8, 2017—to produce what was proffered as a complete production.   Throughout the course of the litigation Plaintiff frequently produced documents shortly before depositions—even though those documents were directly responsive to Requests for Production.   Near what was to be the close of discovery before the deadlines were changed, Plaintiff also produced documents related to Belinda Reynolds that appear to have been in the possession of the Plaintiffs for nearly a year.   Defendants have been severely prejudiced by this new late disclosure and Plaintiff's untimely production.   Please confirm that in the review of boxes of documents that Plaintiff's also cross-referenced the Defendants Requests for Production to ensure complete production.

Next, Defendants continue to maintain their position that there has been a waiver of the privilege, but before outlining additional bases for that position, additional information is sought (below).

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

**Privilege Log**

We have reviewed the privilege log and have additional comments/questions below.

1. What is the factual and legal basis for assertion of the "common interest rule."   Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?   What Ninth Circuit opinion supports this?

2. It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

3. Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

4. Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.   The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

5. Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes"  from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.   Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

6. In the habeas privilege log there is an entry with "medical records with attorney notations."  Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2.  Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.   Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

7. In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

8. In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in binders. Simply because counsel put them in a binder does not make them privileged.  Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

9. In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes."   And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases.  Is this the same material?  If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before?  Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

10. In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

11. The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_ NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.  Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

12. In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

13. In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.   This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.   Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?

**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also

present?  If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file.  Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?

Tina

---

**From:** Christina Retts
**Sent:** Monday, November 5, 2018 12:43 PM
**To:** Katie McCarthy <katie@nsbcivilrights.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We intend to proceed with the deposition of Ms. Milke on November 14 and 15, 2018.  We will cross the bridge of additional deposition questioning after the resolution of the attorney privilege waiver issues by the Court.

We will be sending a more comprehensive response as it relates to the privilege log, production, etc., in the near future, but wanted to address the deposition issue now as we understand that travel plans need to be made.

Tina

---

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Thursday, November 1, 2018 11:58 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

We inadvertently sent the wrong version of the Ray/Fowler privilege log. Please find a corrected version attached.

Thanks,

Katie

On Wed, Oct 31, 2018 at 8:26 PM Katie McCarthy <katie@nsbcivilrights.com> wrote:

Counsel:

Per the Court's instructions at the October 19, 2018 status conference, counsel has undertaken a painstaking review of the copious records in this case to complete a detailed privilege log and identify any responsive materials.

Updated Responses to RFPs

Plaintiff's counsel has gone back through the "Milke room" (containing 31 boxes, over 60 binders, and stacks of loose papers) to segregate out as best we could what would have been Ken Ray's file and identify any other potentially relevant documents for review. It has always been counsel's understanding that these documents--stored at Mike Kimerer's office--constituted the universe of original documents in this case. However, out of an abundance of caution, Plaintiff's counsel last week contacted Lori Voepel to examine the 51 boxes of materials stored at her office. It was the understanding of Plaintiff's counsel, Mike, and Lori that Lori's files contained only multiple copies of documents stored in the "Milke room" at Mike's office. Upon painstaking review of those 51 boxes, however, counsel identified a small subset of original, responsive documents (most of which are covered by privilege, but a few of which are not). Namely, Plaintiff's original Maricopa County Jail medical file (MILKE_NSB032898-033072); Plaintiff's personnel files from Farmers Insurance Group (MILKE_NSB033073-033151) and Lincoln National (MILKE_NSB033152-33182); three binders containing some correspondence and work product from Ken Ray, Kirk Fowler, and Anders Rosenquist; and a cassette tape of a recording of Ken Ray's answering machine. Until last Friday, Plaintiff's counsel, Mike's office, and Lori were all unaware that these originals were in Lori's possession.

Of note, counsel listened to the Ken Ray cassette tape but has not yet transcribed that tape (which has very poor sound quality and requires an old microcassette player to play). It sounds like a message from either Jean Pugh, Jerry Pugh, or Alan Swanson (the caller does not identify himself) saying that the State was wrong regarding the number of shots fired on December 2, 1989. Nothing on the recording relates to any knowledge on the part of Ken Ray about Saldate's prior misconduct.

Within the 51 boxes, Plaintiff's counsel also identified a small subset of non-privileged documents that were sent directly to Gary Stuart by Lori Voepel in August 2014 (MILKE_NSB0333183-033385). It is Plaintiff's understanding and belief that those documents were also present in the "Milke room" and thus would have been available to Gary Stuart upon his review of the non-privileged documents present there, as Plaintiff disclosed to Defendants in her earlier RFP responses.

Plaintiff is producing all responsive, non-privileged documents referenced above and has updated her responses and privilege log accordingly.

Privilege Log & Pre-Conviction *Brady* Knowledge

Relatedly, Plaintiff's counsel has conducted a line-by-line review of all correspondence between Plaintiff and Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team) as well as all pre-trial third party correspondence to/from Ken or Kirk for any information pertaining to Ken Ray's pre-conviction knowledge of Detective Saldate's prior misconduct. Plaintiff has identified and is producing the two communications that are covered by implied waiver on this subject (MILKE_NSB0333386 & MILKE_NSB033387-033398).

As noted on the privilege log for Ray/Fowler, Plaintiff has also identified two additional communications that make some mention of Saldate's prior misconduct. However, it is our position that these letters are not covered by implied waiver because they were written post-conviction and the context indicates that they are referring to knowledge

gained post-conviction about Saldate's prior misconduct (as Anders had already been retained and begun looking into Saldate's history at the time these were written). Although we do not believe privilege has been implicitly waived for these two letters, we are willing to produce redacted versions of both if you agree that such production does not waive attorney client, work product, or any other privilege.

In reviewing the privileged communications between Plaintiff and counsel, Plaintiff also identified a few enclosures to counsel of non-privileged communications between Plaintiff and third-parties, which we have produced. (MILKE_NSB032878-032897). And, although we believe it outside the scope of Defendants' reasonable requests, as indicated in our prior RFP responses, we are further producing Mr. Ray's correspondence with third-parties (and third party correspondence in his possession) during the course of his representation. (MILKE_NSB033300-033537).

Plaintiff's counsel has also segregated and reviewed all work product created by Ken Ray, Kirk Fowler, and Anders Rosenquist although it is not possible (given the history of the litigation and the frequent disaggregation/reorganization of the file) to exactly reconstruct the working file of any prior counsel. For Kirk Fowler, Plaintiff has identified four witness interview summaries: Carmen Santana, Harold Milke, Wilma Scott, and a composite summary (Evelyn & Phil Linderborg, Richard, Maureen, and Karen Sadiek). Per our meet-and-confer, because these witnesses appeared on Mr. Ray's R15 witness list for trial, we are willing to assume that he provided these summaries to Mr. Levy. As such, we are producing them (MILKE_NSB033538-033545).

As explained in more detail in Plaintiff's forthcoming Court filing, Plaintiff has reached out to Ken Ray and attempted to coordinate with him to review his file (which was sent to him electronically on October 26th). Mr. Ray at this point has taken the position that he will neither review his file nor communicate with even Plaintiff's counsel regarding his answers (if any) to Defendants' proposed questions absent a Court order or the opportunity to consult further with the state bar and/or ethics counsel, which he has not had time to do. Plaintiff is not in a position to compel Mr. Ray to take any particular action but will be advising the Court of his position.

Finally, with respect to the privilege log, Plaintiff has produced detailed privilege logs for: Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team including attorney Terry Capozzi), and habeas counsel (Mike Kimerer and Lori Voepel and their legal team/staff). We have also noted privileged correspondence with various post-conviction counsel that represented Plaintiff for only a short duration: James Kemper (plaintiff's state-appointed appellate public defender before Anders Rosenquist soon took over post-conviction litigation); James Liebman (a professor at Columbia Law School who worked with Anders Rosenquist on Plaintiff's cert petition to the Supreme Court); and John Charland (who was automatically appointed as Plaintiff's federal habeas counsel though Anders Rosenquist actually represented her until Mike/Lori took over the habeas litigation).

I have attached these privilege logs along with Plaintiff's Fifth Supplemental Response to Defendant City of Phoenix's First Request for Production of Documents and Plaintiff's Second Supplemental Response to Defendant Saldate's First Request for Production of Documents.

Referenced documents are available for download at the following
Dropbox: https://www.dropbox.com/sh/hqvg6mgc86o691j/AAB1f2_VKX8meYj56vP0HhK3a?dl=0

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and
financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order
entered by the Court on March 22, 2017:

MILKE_NSB033073-033151

MILKE_NSB033152-033182

MILKE_NSB03878-032897

MILKE_NSB033387-033398

MILKE_NSB033386

MILKE_NSB032898-033072

Thanks,

Katie

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

## Kim Penny

| | |
|---|---|
| **From:** | Christina Retts |
| **Sent:** | Tuesday, November 20, 2018 1:03 PM |
| **To:** | 'Katie McCarthy' |
| **Cc:** | Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Mary Felder; Lori Berke; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude |
| **Subject:** | RE: Milke: Plaintiff's Updated Responses and Privilege Log |

Counsel,

The Court did not Order the Defendants to identify the bates numbers for each question, rather it is sufficient for the Defendants to identify that the information comes from the letters.  These letters were written by Plaintiff and have been in her possession for years.
Based upon her therapist's notes, it is clear that she has been through some of them.  It is not Defendants' burden to prove that there is privilege, it is Plaintiff's burden.  This seems to be yet another instance where—rather than go through Plaintiff's own file—Plaintiff throws the burden back on Defendants to do it for her at Defendants' expense.  It should not be Defendants who spend attorney fees to find the information that Plaintiff has equally available to her to review specifically because Ms. Milke wrote these letters herself and has intimate knowledge of the waivers that she has made.  These letters were cited to Ms. Milke in her deposition and all of the letters were attached as exhibits.

Plaintiff needed to have reviewed all of the letters before undertaking to put together the recent privilege log to determine where there has been third party disclosure.  This response suggests that Plaintiff did not review the letters before producing the recent privilege log to cross check the letters with the claims of privilege.   A threshold issue for claiming privilege is that there be no third-party disclosure.  If Plaintiff is unaware of what the contents of these letters are and every place that there has been third-party disclosure, then sufficient efforts were not undertaken to organize the file to comply with the Court's Order and determine the scope of every explicit waiver that Ms. Milke made.   Plaintiff cannot claim that material remains privileged if efforts were not undertaken to ensure that there has not been third-party disclosure.  Since the Court's first hearing, the Plaintiff's have had almost a month within which they could have reviewed the letters as Defendants have always maintained that the letters form the basis for waiver.   Plaintiff made the choice to bring this litigation and seek an extremely large amount for damages.  Thus, it is not burdensome or unreasonable to contend that Plaintiff should be required to develop an understanding of the explicit waiver issue if she maintains claims of privilege.  This is also not unreasonable given the requirement that Plaintiff must present arguments to the Court known to be supported by the facts.

Defendants have comprehensively outlined each and every basis on which they believe the privilege was waived for each question.  Are Plaintiffs willing to pay Defendants' additional attorney fees for reviewing the letters that Plaintiff wrote?

Tina

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Tuesday, November 20, 2018 11:19 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sanderspparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan

<Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder
<mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann
<anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody
Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin
<jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>;
Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke
<kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny
<kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude
<langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

Your email indicated that we should reach out for additional clarification if necessary. Despite your incredibly lengthy
correspondence, and our prior requests, you still have not given us citations to the specific letters you allege provide a
basis for express waiver. Your email states that "the following questions come directly from letters to Joe Marino/Vince
Felix/Jim Styers," so it's evident you were looking at specific letters and could easily have directed Plaintiff's counsel to
those citations. In fact, the Court's order expressly directed you to do so, as you were ordered to provide the basis for
waiver for each question. While we've attempted to search for these references, there are a number that we do not see
anywhere. We're happy to evaluate whether there has been an express waiver for all the questions you allege (3-5, 7-18,
22-24, 27-37, 39-48, 50-78, 85-92, 97-99) but cannot do so without knowing the basis.

Please provide us by tomorrow with the letters (by date and/or bates) that you allege provide the basis for express
waiver for each question listed above so we have sufficient time to evaluate them before our response next Monday.

Thanks,

Katie


On Fri, Nov 16, 2018 at 7:26 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

The following will provide Defendants' position on the Ken Ray deposition questions. We will also address
some of Plaintiff's responses to our letter requesting clarification about Plaintiff's efforts connected with the
privilege log and the log itself.  At the outset, it should be noted that the Ken Ray deposition questions were
developed based upon the documents Plaintiff disclosed in this case.  This includes the documents recently
produced, which contain more material relating to Detective Saldate that should have been disclosed nearly
two years ago in response to Defendants' Requests for Production, but was not.  Additional questions have
been added to the original list based upon this recent disclosure.  Further, Plaintiff continues to withhold
additional documents as evidenced by the privilege logs. It is Defendants' position that Plaintiff has waived all
privilege such that additional material should be produced to Defendants.  It is highly likely that the materials
being withheld by Plaintiff contain additional information that would generate additional questions to Ken
Ray.  As a result, the Defendants will be asking the Court to rule on waiver as it relates to all of the materials
withheld and will request that any additional material be produced before Ray's second deposition, and will
request the opportunity to submit additional deposition questions to be asked of Mr. Ray at his deposition
following Defendants' receipt of these additional materials

Defendants continue to be concerned over the incomplete nature of Plaintiff's productions, which are ongoing
to this day, and with Plaintiff's privilege log.  This includes untimely recent production of the original jail
records from Maricopa County Jail, employment records, documentation of Ken Ray's knowledge

of allegations made by others concerning Detective Saldate's history through a phone call and affidavit, witness summaries of Kirk Fowler's interviews, and the new English translation of the German book about Debra Milke which was just produced yesterday notwithstanding that it was responsive to a Request for Production served more than two years ago.

There are additional issues surrounding Plaintiff's destruction of documents with Mr. Aue and Milke's recent shredding of multiple containers of documents in Germany.  Plaintiff sent numerous letters out to third-parties for storage and banking of her letters, and used third-parties to send letters out of the prison.  It appears that Plaintiff has not identified all of these third-parties and taken appropriate efforts to retrieve and produce the responsive information.  Plaintiff cannot avoid discovery by stating that documents she sent to third-parties for storage are not in her "custody and control."  From the time she reasonably anticipated this litigation, Plaintiff had s an obligation to preserve potentially relevant documents, and once served with Defendants' discovery, she had an obligation to contact every third party she sent material to in order to inquire whether they had responsive information and if so, produce them—especially since she specifically sent out documents for the purpose of storing them.   The evidence shows that Ms. Milke was planning on filing a civil lawsuit as far back as 1990, as documented in her letters to  both Joe Marino and Vince Felix.  She told them numerous times she was going to file a lawsuit.  In 1996, her mother wrote about contacting Mr. Scheck, her current civil counsel, for the purposes of advancing a civil lawsuit.

But Plaintiff need not just take our suggestions regarding her obligations for satisfying her production and disclosure obligations, she has been under Court Order to do so. Last month the Court Ordered Plaintiff and her counsel to review the entirety of her file and produce documents responsive to all of Defendants' outstanding Requests for Production, not just documents related to Ken Ray.  Notwithstanding this Court directive, somehow Plaintiff missed the English Version of the Book that Janna Bommersbach wrote which was responsive to Defendants' Request for Production Number 5.  This book, which was written in German, not in English, was written by a well-known local *journalist,* yet never mentioned in response to the Request for Production.  Nor was the English manuscript ever produced until after the completion of Plaintiff's deposition.  Plaintiff did not produce the translation, despite possessing it long before this. A review of the first three pages demonstrates that there was impeachment information that would have been used in Plaintiff's deposition.  In recently and untimely producing this material, Plaintiff appears to blame Defendants for failing to bring to Plaintiff's attention to the fact that they did not produce the book.  It is Plaintiff's responsibility to ensure complete disclosure and production, particularly after the Court's hearing.  Further, Plaintiff is withholding significant documents under the privilege log that are difficult to identify what they are and Plaintiff's discovery responses are far from clear on what is being withheld.  In fact, at Ms. Milke's deposition, Nick Brustin initially appeared to take the position that the book transcript was not responsive to Defendants' Requests for Production because Ms. Bommersbach was not a journalist.   After we then pointed out that she was aa journalist, Plaintiff changed her position claiming the English version was inadvertently not produced.  Notably, Ms. Milke was well aware of Ms. Bommersbach's status of a journalist before this time.

As for the privilege logs, Plaintiff's carelessness in her preparation has given Defendants no confidence in the assertion of the privilege.  For example, Plaintiff was forced to revise the privilege log, after it was pointed out by Defendants that Plaintiff included materials on the privilege log that were already produced in the case.  Additionally, documents we obtained from Gary Stuart via our subpoena, which we were forced to serve because Plaintiff stated she was unable to determine what documents were provided to him, also apparated on Plaintiff's privilege log as attorney client and work product materials.  And this was even after counsel's avowal to the court that Mr. Stuart had been provided no privileged documents.

Had Plaintiff properly reached out to Gary Stuart—who wrote a book about Debra Milke—when she received the Request for Production in 2016, she would have found the original jail records and employment records that were only recently (and untimely) produced by Plaintiff.    And despite being told that the file materials were in disarray and unorganized, Gary Stuart had eight binders of meticulously organized materials that

Plaintiff never previously obtained and produced in response to Defendants' 2016 Request for Production. Instead, she put the burden on Defendants to incur the additional cost and inconvenience to subpoena Mr. Stuart. The new jail and employment records just produced were in a witness binder for Ms. Milke and not hidden in boxes of materials. The binder even has an index—which was generated electronically—so could have been searched electronically. We know this because Mr. Stuart had a copy of the witness binder—which was a duplicate of binders that seem to appear on the privilege log just produced. Minimal efforts would have uncovered these materials that are Plaintiff's own file materials. These are critical records relating to key issues in the case—such as the existence of bullets in Ms. Milke's purse, which at her last deposition she originally denied going into her purse, then equivocated about whether she took her birth control that was in her purse. The jail records just produced clearly establish that she did take her birth control on Sunday and thus, went into her purse where the bullets were. The employment records impeach other areas of her testimony. It is only because the Court ordered Plaintiff to go back and review the file that Plaintiff "found" these materials.

The Gary Stuart records also raise additional issues with Plaintiff's position on privilege, as outlined more fully below. Plaintiff's continue to dig in on her position that all of the witness binders on the habeas counsel privilege log are protected by work product privilege, yet Mr. Stuart possessed several of these privileged binders that continue to appear on Plaintiff's privilege log and that she continues to staunchly argue are privileged. They are not. Giving Mr. Stuart material that appears on the privilege log waives the privilege.

In Plaintiff's latest correspondence Plaintiff seeks to divert attention from the latest issues by going back in time to long past depositions, such as the production of documents before Commander Van Dorn's second deposition. Although not relevant, if Plaintiff really wants to compare these two situations, we will gladly do so. Without the necessity of a Court Order, and entirely on our own without prodding from Plaintiff, in an effort to obtain documents from over 30 years ago, Defendants spent two days looking through unorganized boxes of documents donated by past law enforcement officers at the Police Museum, which is not in the custody or control of the City of Phoenix. Defendants also exhaustively reached out to police officers no longer employed by the City to look for documents that were not in the Defendants' custody and control. We tracked down long retired personnel to have them search their personal documents and sought information from them about what other third parties might possess documents—such as AZPOST and the museum. These third parties were equally within Plaintiff's ability to issue a subpoena to, but Plaintiff chose not to do so. As another example, this is not unlike the fact that there remained sealed records involving Saldate at the Court— yet Plaintiff did not know they existed and had not uncovered their existence. It was Defendants' efforts that resulted in this discovery—yet another area where Plaintiff could and should have searched prior to filing the Complaint. The City exhausted third party avenues--Plaintiff did not even organize and search her own files and also had two separate shredding incidents where she testified that she destroyed documents. And, Commander Van Dorn's deposition was finished in August, months later. If Plaintiff wished to ask additional questions about the third-party documents, they could have done so. Or, they could have asked Defendants for more time to question Commander Van Dorn on these third party documents, they did not. It is telling that Plaintiff brings up Defendants' appropriate and exhaustive efforts to identify these third-party documents after multiple problems have surfaced with Plaintiff's productions. An exhaustive search like that undertaken by Defendants would have turned up the documents Plaintiff untimely disclosed.

Additionally, Plaintiff has selectively chosen to waive work product throughout this case to her benefit. In Ms. Stinson's deposition, Plaintiff's counsel used email correspondence between Ms. Voepel and Ms. Stinson to substantively question Ms. Stinson. These emails were not timely produced in response to Defendants' Requests for Production, instead they were produced for the first time during the deposition. Was Plaintiff accessing the witness binders that now appear on the privilege log to pick and choose what documents to use with witnesses? This is yet another instance of Plaintiff failing to timely search through documents in her custody and control to timely produce documents before a deposition. It is also evidence of Plaintiff using

work product privilege as a sword and a shield by selectively using that which benefits them and waiving the privilege, but withholding what does not and preventing Defendants' access to the same.

**Areas to Be Addressed In Ken Ray Deposition**

Defendants will address the following subjects before the individual questions:  (1) In Camera Inspection; (2) Problems with Plaintiff's Privilege Log; (3) Gary Stuart Access to Materials/Failure to Protect the Privilege; (4) Explicit Waiver; (5) Implicit Waiver and Vital to the Defense; (6) Crime Fraud Exception.  This will provide the foundation for Defendants' positions.  For each question that is posed to Ken Ray, Defendants will refer back to each applicable section.  At the outset, Defendants note that Plaintiff bears the burden of proving that there has not been a waiver and that burden has not been met.

*In Camera* Inspection

Given the threshold showing that Defendants have made regarding waiver of privilege, at a minimum, an *in camera* inspection by the Court is appropriate.  This includes in camera review of documents, as well as questioning Mr. Ray.

Problems with Plaintiff's Privilege Log

Defendants recently sent comprehensive correspondence to Plaintiff's counsel addressing questions raised by Plaintiff's recent production and the privilege log. One primary issue is Plaintiff's failure to undertake an appropriate investigation to determine what materials were accessed, or available to be accessed, by third parties.  Plaintiff's response does not outline any such efforts. Instead, Plaintiff seems to suggest that it is Defendants' burden to identify the third-party disclosure.  It is Plaintiff's responsibility and, given Plaintiff's active efforts to destroy evidence in this case—beginning with advising Joe Marino to destroy letters and lie about her following a Court hearing where Noel Levy raised the issue of subpoenaing her letters—it is Plaintiff who is in the best position to determine who else she sent materials to and requested them to destroy materials.  The Joe Marino letters that Plaintiff requested Joe Marino destroy, contain critical and extremely relevant information disclosing Plaintiff's knowledge of Saldate's history and impeachment of her claims in this case.  Indeed, as you know, Defendants devoted hours at Plaintiff's deposition to questioning her about information contained in the Joe Marino letters.  These letters directly impact Plaintiff's credibility and also establish that she was sharing her confidential communications with Mr. Ray with Mr. Marino.  Defendants only have the letters because Mr. Marino did not heed Ms. Milke's request to burn them and destroy evidence.  Ms. Milke also directed Joe Marino to send letters to another third-party, Rick Scavone, to avoid detection.  Ms. Milke did not contact Mr. Scavone to search his records for the materials she directed to be sent to him.  To the contrary, Plaintiff accused Defendant of harassing Mr. Scavone for the lawful and appropriate attempt to locate information that Ms. Milke failed to obtain and provide to Defendants.

The documents disclosed also reveal that Ms. Milke was sending documents and materials to her mother—who resided out of the country, perhaps also to avoid the subpoena power.   It is unknown what materials were in Ms. Milke's mother's possession.  This is because—years after determining that she would initiate this lawsuit and years after Defendants' discovery requests were served—Ms. Milke **actively** destroyed boxes of documents relating to her criminal case that were located at her mother's house. These documents included letters that Ms. Milke read from to her therapist, as there are quotes from these letters appearing in the therapist's notes.  These documents were in Ms. Milke's possession and control because her mother was deceased at the time of the destruction and Ms. Milke was a surviving heir with direct access to the materials.  This intentional destruction severely prejudices Defendants' ability to determine what was included in those materials and further support the factual basis for a wholesale waiver of privilege. **The fact that Ms. Milke may have sent some of these letters to Plaintiff's counsel and they were produced far from demonstrates that she sent all of them to counsel.  She did not photograph what she destroyed, index it, look through it to**

determine if it had notes on it, etc.  Prior to this, Ms. Milke was sending her letters and file materials out to Carolyn for storage, but there appears to be no effort to search for what Carolyn possesses.  It also appears that she was doing the same with Pat Gailbraith, and we know she was using him as a go between to send letters to Ingo.  No effort was made by Ms. Milke to contact Pat's wife to see what materials she has.

Plaintiff's privilege log also clearly contains materials that are not privileged.  As noted by the Court in the most recent Order (which supports Defendants' prior position), factual material learned from third-parties is not privileged.  Plaintiff has produced an inappropriately broad privilege log and continues to withhold documents that are not privileged, in the face of a Court Order that required production.

<u>Gary Stuart Materials/Failure to Protect the Privilege</u>

One of the essential elements of the **attorney-client privilege and work product privilege** is the intent that the communication be kept confidential.  *See <u>United States v. Miller</u>, 874 F.2d 1255 (9th Cir. 1989).*  Thus, reasonable steps must be taken to protect the privilege.  Disclosing materials to third parties, or allowing third-parties access to privileged information without appropriately safeguarding it results in waiver. There are multiple instances of Plaintiff's failure to protect privileged information—including disclosure to her inmate boyfriends (Marinp and Felix), sending materials to others (her mother, Carolyn, Pat), attaching materials and affidavits to habeas proceedings, and allowing access to information as set forth below.

Plaintiff's privilege logs include over 30 boxes of documents stored in Milke Kimmerer's office.  While writing his book, Mr. Stuart was given to <u>all</u> of these materials.  Plaintiff has maintained that these boxes were poorly organized and not indexed.  Thus, Mr. Stuart when opening a box to review its contents would have had no idea of whether it contained privileged material.  Plaintiff did not go through the boxes and segregate out the material that was privileged, or ensure that it was not included.  That Mr. Stuart may not have reviewed privileged material from Mr. Kimerer is of no moment, as the boxes included other materials relating to Ken Ray and Kirk Fowler.  If Plaintiff cannot determine what boxes Mr. Stuart reviewed and there were no restrictions on his review, Plaintiff has not proven and cannot prove that the privilege was not waived.

Notably, almost two years ago, Defendants sent a specific discovery request to Plaintiff seeking the material that Mr. Stuart reviewed.  Plaintiff responded as follows:

> Request for Production No 12:  Produce any and all documents, materials, files, exhibits, transcripts, photographs, psychological reports and records, interviews, audio and/or any other materials that were provided to Attorney Gary L. Stuart, who wrote the book: Anatomy of a Confession?
>
>> Response:  Plaintiff objects to this request as vague, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiving these and the above-stated objections, Plaintiff responds that, upon information and belief, Gary Stuart was permitted to review materials from the trial, appeal, post-conviction, and federal habeas proceedings, but he did not review files containing documents or things that are protected under the attorney work-product doctrine, the attorney-client privilege, and or any other applicable privileges.  It would be unduly burdensome for Plaintiff to determine and specifically identify all the documents and materials that Mr. Stuart reviewed, as the records that Mr. Stuart was permitted to access have been intermingled with other records and are no longer maintained in the same form. The information Defendants seek regarding the material Mr. Stuart reviewed would be more appropriately addressed by taking his deposition.  Plaintiff further responds that she is currently reviewing the file to identify responsive documents and will make them available for inspection at Plaintiff's counsel's office at a reasonable time in the future.

Rather than reach out to Mr. Stuart to enlist his assistance in identifying what materials were made available for his review and to inquire into what materials he possessed, Plaintiff required Defendants to serve a

subpoena.  Based upon Defendants' contact with Mr. Stuart, the unduly burdensome objection is without merit.  Interestingly, at the hearing, Plaintiff's counsel misrepresented to the Court that they had contacted Mr. Stuart to inquire into what he had reviewed, and confirmed that he did not review any privileged material.  In fact, Plaintiff's counsel had not contacted Mr. Stuart.  Even after the hearing where the Court ordered production, Plaintiff did not contact Mr. Stuart to confirm that this was the case.  Plaintiff produced material that Ms. Voepel thought was sent to Mr. Stuart, but never contacted Mr. Stuart to determine whether he possessed materials.  Defendants have now obtained from Mr. Stuart the materials he had in his possession that are responsive to the subpoena they served.  Mr. Stuart provided **eight** meticulously organized notebooks, which are a duplicate or triplicate set of what was put together by Plaintiff's counsel.   In other words, these materials were organized by Plaintiff, not Mr. Stuart.  Critically, these notebooks seem to be the same notebooks that are on the habeas counsel privilege log that Plaintiff just produced.  Plaintiff represented to the Defendants and the Court that Mr. Stuart did not review privileged material.  Yet, after these representations, Plaintiff produced a privilege log listing binders bearing the same titles as those produced by Mr. Stuart, and did not produce the binders, claiming they are protected based upon work-product and attorney-client privilege.  **Plaintiff dug into her position on work product for witness binders in the latest correspondence.**  Yet, based on the privilege log produced, Plaintiff is claiming that the materials bearing the same titles as those that Mr. Stuart reviewed, are privileged.  Thus, Mr. Stuart either has privileged material contrary to Plaintiff's representations, or Plaintiff inappropriately included material on the privilege log that is not privileged, AND when preparing the privilege log Plaintiff did not undertake any efforts to determine whether there had been a disclosure Mr. Stuart.  **Given that Mr. Stuart's review of materials is** directly at issue to the scope of waiver of work-product and attorney-client privilege **and was a matter the Judge wanted specifically addressed, this should have received careful attention.  All witness binders should be produced.**

Explicit Waiver/Subject Matter Waiver

Voluntary disclosure to third-parties operates as a waiver of privilege.  Defendants maintain that Plaintiff has explicitly waived all privileges and that the Court need not even address the issue of implied waiver.  This is because the breadth of the explicit waiver covers all relevant subjects.  Plaintiff may not merely maintain that the privilege that attaches to a given communication is waived.  Rather, privilege as to all subjects appearing in that communication are waived.  **Voluntary disclosure operates as a waiver on everything on this same subject.**  Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject. *Nobles*, 422 U.S. at 239-40; *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981).  **Waiver extends and applies to all other communications relating to the same subject matter.  The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.  Fed.R.Evid. 502 explicitly endorses this approach.**

Explicit waiver is found in Plaintiff's letters between herself and Mr. Ray attached to the habeas proceedings.  These letters don't only address knowledge of Saldate's **history**.  To the contrary, they address every subject at issue in this litigation---what occurred during Detective Saldate's interview of Debra Milke, Ernie Sweat, Chris Landry, subpoenas for documents, insurance, Dr. Bendheim, Dr. Garcia, Mark, dropping her charges, the state's main witnesses, the thirty witnesses, why Roger and Jim won't testify, Jim Styers' guilt, Jim Styers' mental health history, stashed letters, handwriting analysis, the seminar Ray was attending and how it effects the case, Robert Johnson, Wada, closed trial and sequestered jury, psychologically examining Saldate, Ilse Milke and what she said about Debra Milke, boyfriends and relationships, anything related to Detective Saldate's report, evaluations by the doctors and the lie detector/polygraph tests.  **Rule 502 does not permit Plaintiff to produce select correspondence on these topics and then guard the rest on the basis of privilege.**

Explicit waiver is also found in the affidavits prepared by Kirk Fowler and Ken Ray for the ineffective assistance of counsel claims.  Subject matter waiver applies to every subject raised in those affidavits to include: Dorothy Markwell and all information known about her; impeachment of Saldate relating to his campaign and all information known; all facts contained in Sections I, II, and II of the Post-Conviction Relief petition that were avowed to as being true; Ray and Fowler's inability to investigate properly or cross-examine witnesses and what he would have done differently; all contact and communications between Fowler and Debra Milke based upon the contents of the affidavit.  Kirk Fowler, in his multiple affidavits, stated that in his communications with Ms. Milke he found her to be honest and forthright and that she never tried to lie or deceive him.  Plaintiff cannot rely upon such a statement by Mr. Fowler and then refuse to disclose the communications so that this claim can be tested.  Plaintiff put her credibility at issue by Kirk Fowler avowing that Ms. Milke was always honest and forthright with him.

Explicit waiver is found in Plaintiff's letters to Joe Marino and Vince Felix.  Of note, both Marino and Felix were men who were unknown to Plaintiff before her arrest.  Yet she shared intimate details about her conversations with her counsel relating what her lawyer told her.  Ms. Milke also shared privileged information with her co-conspirator, Jim Styers.   She told Jim Styers about the conversations she had with Ken Ray about his disability, the facts of the crime and his involvement. Ms. Milke cannot disclose privileged information to her co-conspirator, who was accused of murdering her son, and then claim that the privilege has not been waived, or that she took appropriate measures to protect the privilege.  She did not.

Plaintiff's explicit waiver also includes the media tour that Kirk Fowler engaged in. This includes print media and radio shows.  Kirk Fowler appeared on radio broadcasts and claimed that Ms. Milke was innocent based upon his investigative activities and disclosed specifics about the same.  Ms. Milke also participated in at least one interview where Mr. Fowler was present and spoke about his work product protected activities in the investigation of her case.  Plaintiff herself also disclosed information about a claimed lie detector test and information she learned about the test and its results. Plaintiff may not appear on media shows and selectively disclose work product and potentially attorney client privileged information and then refuse to produce information that relates to those same topics. Ms. Milke testified that prior to the Straus's place interview she did not limit Kirk Fowler's ability to disclose information.  Waiver relates to all topics addressed in the Straus's Place interview as well as all other radio broadcasts.  *See* C_031014-C_031061.

Similarly, explicit waiver also involves all content on the Debra Milke Website.  In the May 30 letter to her mother, Ms. Milke states that she made changes to content drafted by Kirk Fowler and mailed to her for input for the website. She is specifically addressing her interrogation in this letter.  Certainly, the information provided by Mr. Fowler was based upon his investigation into her case—the work product that Plaintiff is withholding.  Plaintiff cannot enlist her investigator in her criminal case to publicly put forth facts about the crime and investigation and then refuse to produce the underlying work product that was generated therefrom—particularly if that work product is contrary to what is being represented now.   Indeed, in this May 30 letter, Plaintiff contradicts her prior statements about what she supposedly said to Detective Saldate in terms of allegedly requesting an attorney.  It does not appear that the mailed content drafted by Kirk Fowler has been produced.  If it exists, it should be identified as either produced or withheld.  If it no longer exists, an explanation should be given for when, why and by whom it was destroyed.

<u>Implicit Waiver and Vital to the Defense</u>

In the Court's recent Order, the Court outlined the claims that could put at issue the entirety of Plaintiff's claimed privileged materials.  Defendants agree that by claiming that the confession was coerced and fabricated, that Plaintiff has put at issue all matters touching upon the same and agrees with the Court's analysis.  In addition, Defendants note that "at issue" also includes Plaintiff's actual innocence.  Based upon the nature of the claims asserted, Plaintiff must prove actual innocence.   Thus, all evidence concerning guilt and participation in Christopher's murder is vital to the defense.  In other words, if Plaintiff would have been

convicted notwithstanding any claimed confession, Plaintiff has suffered no damages and her claim fails.   This is also the case because Plaintiff claims—repeatedly and in multiple pleadings—that there was no other evidence against her.   She cannot claim that there is no other evidence and hide potential sources of other evidence—including her own statements contrary to these assertions. This also ties to the media campaign that her investigator and others engaged in with following her conviction.  Plaintiff authorized others to speak on her behalf or engaged in contact with multiple media outlets herself where she or her advocates discussed the claimed lack of any other evidence of guilt and discussed the same.  Plaintiff may not put forward a very public media campaign—including books—that puts other sources of guilt at issue by claiming there are none, but block Defendants' access to the same.

Also vital to the defense is information relevant to Plaintiff's spoliation of evidence and efforts to conceal relevant information, such as the Joe Marino letters.  This may also fall under the crime fraud exception to attorney client privilege.  At the time of the trial, prosecutor Levy did not have access to the Joe Marino letters because—upon hearing Levy state in open court that he was seeking a subpoena—Plaintiff immediately provided written instructions to Joe Marino to burn or otherwise get rid of the letters.  These letters provide information—completely separate from the confession—corroborating the confession as well as providing information that was never disclosed by Plaintiff at trial.  Indeed, the letters contain information directly contrary to Plaintiff's testimony at trial.  The letters would have provided a basis for Levy to cross-examine Ms. Milke and expose the same. It is Defendants' position that the content of the letters also is directly relevant to guilt.   Thus, any claimed privileged information that falls into this category is vital to the defense.

As outlined above, Ms. Milke's credibility is vital to the defense.

Implicit waiver includes those materials put at issue in this civil case, as well as the ineffective assistance of counsel claim made in the criminal case.  Plaintiff's citation to *Bittaker* is unavailing, as that case dealt with the policy implications of waiver as it applied in a habeas proceeding.  This case involves Plaintiff's seeking of money damages, not habeas relief. Her ineffective assistance of counsel claim transcends the habeas case and reaches into the damages of this civil case.  A case cited by Defendants highlights this distinction and rejects the precise argument Plaintiff is making.  *See Patrick v. City of Chicago*, 154 F.Supp. 3d 705 (N.D.Ill 2015) (finding that waiver applied to all topics raised in ineffective assistance of counsel petition based upon Rule 502).  The reasoning of *Patrick* is logical and persuasive:

> "But accepting *Bittaker's* hypothesis in the context of a criminal case does not mean that it should apply in a federal civil rights case like Mr. Patrick's.  If, absent a "narrow" waiver, there is not a reasonable likelihood or danger that a criminal defense lawyer will curtail his efforts on behalf of his client as *Bittaker* predicts, merely because at some point in the indeterminate future he might be a witness in a civil rights case—*Bittaker* alleviates any concern that defense counsel might have about being a witness in a retrial of the criminal case—*Bittaker* should not be extended outside the criminal context. . . . But experience and logic teach that no criminal defense lawyer in a state court criminal case would allow his fidelity to his client to be affected because of the speculative possibility that years in the future he might be a witness in a federal civil rights case, and consciously (and unethically) curtail his efforts in the criminal case. . . Thus, it is apparent that the argument for extending *Bittaker* beyond its criminal case origins to a federal civil rights case like Mr. Patrick's is bottomed on an unsupported and illogical assumption about how criminal defense lawyers think and act.  It is thus unacceptable, since analysis should be 'guided by "common sense and ordinary human experience."'"

This ineffective assistance of counsel claim also relates to liability and Plaintiff's claim that there was "no other evidence" against her to support a conviction. This proposition is expressly contrary to her ineffective assistance of counsel claim. This ineffective assistance claim rebuts her claim that there was no other evidence, as it addresses other reasons for the conviction to include: Plaintiff's lack of affect and remorse while testifying; failure to investigate and address the testimony of witnesses who testified that Plaintiff did not want Christopher and treated him poorly; failure to investigate mitigation evidence; and all other issues raised in the ineffective assistance of counsel claim. The ineffective assistance claim reveals that it is not true that the only evidence against Plaintiff was Detective Saldate's testimony. If that was the case, there would not have been a Rule 11 basis for making an ineffective assistance claim. *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, [the petitioner] put at issue and thereby waived--any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys' strategic choices.").

Taking Mr. Ray's deposition alone does not provide a sufficient avenue of obtaining the information relating to all of the areas of waiver. Plaintiff must also be required to produce the documents withheld on the privilege log. As the Court noted in *Tennison v. City & County of San Francisco*, 226 F.R.D. 615 (N.D.Ca. 2005):

> "As to the third prong, Mr. Adachi's documents, to the extent they disclose knowledge of evidence suppressed or falsity of the testimony procured by Defendants herein, are vital to the defense given their materiality to the substantive constitutional claims asserted by Mr. Tennison and to the question of causation. Although Mr. Tennison argues they are not vital because Mr. Adachi may be deposed on these matters, the contention lacks merit. While a deposition may be useful and informative, documentary evidence is often necessary to assist in the examination of a witness, either to show inconsistencies or to refresh the witness' recollection. Discovery under the Federal Rules of Civil Procedure affords litigants an array of tools which are often complimentary; documents and depositions are two such complementary tools."

This explanation by the *Tennison* Court is especially poignant here inasmuch as Mr. Ray understandably claims to have a very poor recollection of many of the details of Plaintiff's criminal case.

Communications for the Purpose of Securing Legal Advice

A party seeking to withhold discovery based upon **attorney client privilege** must prove that all of the communications it seeks to protect were made **"primarily** for the purpose of generating legal advice." *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D.Cal. 1990)(emphasis in original). No privilege can attach to any communication as to which a business purpose would have served as a **sufficient cause,** i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice. *McCaugherty,* 1332 F.R.D. at 238 (emphasis added). Not all correspondence exchanged with an attorney, or communications, are privileged simply because the correspondence is by/between a client and counsel. For example, requesting a loan is not securing legal advice, nor are communications that are made for the purpose of sending letters to third-parties. As evidenced by letters disclosed, Ms. Milke was also sending letters to third parties through counsel to avoid the mail because jail and prison officials were not permitted to open legal mail. Ms. Milke's letters to third-parties do not become privileged simply because they were in an envelope addressed to counsel. To the contrary, this shows active efforts to use her counsel as a conduit to conceal information and was something Ms. Milke admits she knew to be a violation of the disciplinary rules of the jail and prison.

Defendants are entitled to ask any questions that relate to matters that are not necessary for securing legal advice, or that might relate to any concealment or destruction of evidence.

<u>Additional Questions</u>

Defendants intend to ask additional questions about the recently disclosed affidavit of Kirk Fowler and the phone message that was left for Ken Ray. *See* Ex. A. This material should have been produced before Kirk Fowler and Anders' Rosenquist's depositions and before expert Drooyan's deposition. Defendants would have questioned these witnesses about their knowledge of these items on this crucial issue of Plaintiff's prior knowledge about Detective Saldate.   Particularly because the law on Brady is that there is no Brady violation if the "defendant knew of or should have known of the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to the defendant from another source."  *United States v. Dupuy*, 760 F.2d 1492, 1502 (9th Cir. 1985); *United States v. Gaggi*, 811 F.2d 47 (2nd Cir. 1987) ("No Brady violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of the exculpatory evidence."   As the *Tennison* Court recognized, this information is relevant to not only whether a constitutional violation occurred, but causation on any damages claim.

Defendants will also ask:

1. Who was the man who called and left the message?
2. What efforts did you undertake to follow up on the information?
3. Did you bring it it to the attention of the Phoenix Police Department?
4. Did you bring it to the attention of the Maricopa County Attorney's Office and/or Noel Levy?
5. Did you discuss this with Debra Milke?
6. What discussions did you have with Kirk Fowler about the information and what was the substance of all conversations?
7. Why did you believe it was not necessary to bring the material to the Court's attention?
8. Did you make a strategic decision to not use material you had obtained and/or received about Detective Saldate in Ms. Milke's criminal case?
9. Did you have a conversation with Anders Rosenquist about this conversation/phone call that you had with this unidentified person?
10. Were you aware that Ms. Milke was writing letters to Joe Marino?
11. Did you ever counsel Ms. Milke to destroy evidence?
12. Did you ever counsel Ms. Milke to retain documents or other evidence?
13. Did you ever counsel Ms. Milke to destroy Joe Marino's letters?
14. Did you ever counsel Ms. Mike to instruct Joe Marino to lie about her and/or their relationship?
15. Were there any other people that you were aware of who were writing to Ms. Milke?

<u>Position on Questions</u>

The following questions come directly from letters to Joe Marino/VinceFelix/Jim Styers and relate to confidential information disclosed in those letters. Therefore, there has been explicit waiver. Ms. Milke was confronted with many of these letters at her deposition and has been in possession of them for years:

3
4
5
7-18
22-24
27-37
39-48
50-78
85-92
97-99

Implicit waiver applies to the following questions that seek information vital to Defendants' case. Plaintiff has put her confession directly at issue in this case and she bears the burden of proving actual innocence:  1, 2, 19, 20, 21, 100-147.  Further, if Plaintiff testified differently than what she told her attorney, there was an obligation to correct her testimony in the first instance at the time the testimony was elicited.  Plaintiff has also publicly spoken about these issues and cannot use the privilege as a sword and a shield.   Explicit waiver also applies as Plaintiff put her credibility and honesty at issue in the affidavits submitted by Ken Ray and Kirk Fowler for her habeas proceedings.

Questions 25 & 26 do not contain privileged information. The Court has ruled that Ken Ray's knowledge is factual and not privileged.  Further, Styers and Scott were co-conspirators and there was no joint defense—particularly where Ms. Milke asserts innocence.  Third-party discussions are not privileged.  Explicit waiver would also apply to any conversations about Saldate and his history and Ken Ray's efforts to investigate (raised in the habeas proceedings).

Question 38 is not privileged.   It relates to factual information.  Explicit waiver also applies as Plaintiff raised ineffective assistance of counsel relating to Ken Ray's lack of investigation.

Question 49 relates in part to factual information. Information about Mr. Styers giving money to Debra Milke appears in the letters exchanged between Mr. Styers and Ms. Milke, which is not privileged.   Ms. Milke's receipt of money from Mr. Styers is also not related to securing legal advice.  Implicit waiver also applies as this relates directly to Ms. Milke's credibility put at issue in the habeas affidavits.

Explicit waiver applies to Question 80 based upon Ken Ray's affidavit disclosed regarding ineffective assistance of counsel.

Implicit waiver applies to Question 81 based upon the Brady claim and claims of a coerced and/or fabricated confession.

Explicit waiver applies to Question 83. *See* Milke letter from Ken Ray regarding trial witnesses and Rule 502 as to subject matter.

Explicit waiver applies to Question 84, disclosure through letters, including the letter to Ken Ray disclosed as part of the habeas proceeding, where Ms. Milke discusses Chris Landry.  Rule 502 operates to waive on all subjects.

If Plaintiff has any additional questions or needs clarification, please reach out to us.

Tina

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Tuesday, November 13, 2018 7:13 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

Your prior correspondence contains several gross misstatements regarding Plaintiff's discovery production in this case. As you're well aware, both sides have made multiple disclosures throughout this litigation. Indeed, the City has also

produced five supplemental disclosures to Plaintiff's first request for production--including producing *thousands* of pages of responsive PPD documents on June 5, 2018, which were relevant to the City 30(b)(6) deposition held on November 17, 2017, and April 26, 2018. Given the massive volume of documents spanning back over thirty years, both sides have necessarily encountered difficulties or delays in productions, but Plaintiff has always made good faith efforts to produce documents as quickly as practicable while prioritizing areas you've raised as concerns in our many meet and confer calls. For example, with respect to the audiotapes, Plaintiff's counsel realized at the outset that production of these tapes would require listening to *hundreds of hours* of recordings. We promptly informed you of the situation, had the tapes digitized, kept you updated regarding our review process, and produced responsive recordings on a rolling basis. All responsive recordings were produced by November 8, 2017-- well in advance of Plaintiff's deposition and over a year before the close of discovery.

For the only new documents produced by Plaintiff--two employer personnel files and her Maricopa County jail records--the delay in production was obviously inadvertent. As explained in Lori Voepel's declaration, neither Plaintiff's counsel nor Ms. Voepel had any idea until two weeks ago that any originals were present in Ms. Voepel's file. Had Plaintiff known, she never would have sought those same documents through subpoenas at the outset of this litigation and would have produced them previously. Plaintiff does not agree that Defendants have suffered any prejudice as a result of these limited new disclosures--which occurred before the close of Plaintiff's deposition. But to the extent Defendants have suffered any prejudice, Plaintiff has suffered the same if not greater. Plaintiff similarly could not use these records at depositions nor could she provide these records to her experts (including the records from Dr. Garcia-Brunnel which extensively discuss her grief while awaiting trial).

In sum, Plaintiff's counsel has been entirely up front about what we were and were not doing in terms of our responsiveness review of this voluminous record. To the extent you had any objections, you had ample opportunity to raise them but never did so until now. As for the more specific issues raised in your recent email, Plaintiff addresses each below (Defendants statements are in blue).

**Letters**

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

Plaintiff agrees to these terms and has produced redacted versions of these two letters at: **MILKE_NSB033546-335548** and **MILKE_NSB033549-33555**. Plaintiff will update the privilege log accordingly.

**Privilege Log**

We have reviewed the privilege log and have additional comments/questions below.

1.  What is the factual and legal basis for assertion of the "common interest rule."  Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?  What Ninth Circuit opinion supports this?

Plaintiff is asserting a common interest between her current counsel and her prior legal team (from trial through habeas). The common interest doctrine recognizes that there is "no waiver of the privilege where a party discloses privileged material to another with which it shares common interests." *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003). And courts in the Ninth Circuit have observed that "common interests are not construed so narrowly as to limit the exception only to co-parties." *Cal. Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638 (E.D. Cal. 2014); *see also U.S.  v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980) ("So long as the transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary."). Here, Plaintiff's current counsel clearly shares a common interest with past criminal defense counsel, and neither past nor current counsel has or will share privileged information with Defendants (a common adversary). Because their interests are aligned, Plaintiff properly asserted common interest protection for privileged materials shared between current and past counsel.

2.  It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

As an investigator, Kirk Fowler was a member of Plaintiff's legal team and an agent of her attorney. As such, communications between Plaintiff and Mr. Fowler are protected by both attorney-client and work-product privilege. *See, e.g.*, *Visa U.S.A., Inc. v. First Data Corp.*, No. 02-cv-1786(JSW)(EMC), 2004 WL 1878209, at *5 (N.D. Cal. Aug. 23, 2004) (the key inquiry for attorney-client privilege is whether "a nominal third party is an agent of the attorney"); *see also* 1 Rice, *Attorney-Client Privilege* § 3.3, at 13-21 (noting that courts have extended the attorney-client privilege to substantive advice and assistance of, *e.g.*, investigators, interviewers, technical experts, and other specialists)). Plaintiff thus properly asserted attorney-client privilege for communications with Mr. Fowler who was a member of the legal team communicating with Plaintiff for purposes of her legal representation.

3.  Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

Ninth Circuit precedent makes clear that the work product privilege belongs to <u>both</u> the attorney and the client and so necessarily continues past representation by a particular attorney. *See, e.g.*, *Lopes v. Vieira*, 719 F. Supp. 2d 1199, 1201 (E.D. Cal. 2010) ("The work-product privilege belongs to both the attorney and the client. The work-product protection continues even after the litigation is completed. (citation omitted)); *Schmidt v. Levi Strauss & Co.*, 2007 WL 628660 (N.D. Cal. Feb. 28, 2007) (same); *see also In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 63 (7th Cir. 1980)

("[T]he work product doctrine may be asserted by both the client and the attorney . . . ."). Thus, Plaintiff is entitled to assert work product privilege even though her criminal proceeding has ended.

4.   Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.   The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

Plaintiff disagrees with Defendants' characterization of the privilege. To the extent Plaintiff shared articles with her legal team to further her representation, Plaintiff believes those communications are privileged. But, assuming your agreement that production of these documents does not by itself constitute a waiver of any privilege (as with the two Kirk Fowler letters produced above), we are producing the few articles that were enclosed in letters to Ken Ray and Kirk Fowler at: **MILKE_NSB033556-33563**.

Plaintiff is not producing any statements that were shared solely with her legal team and never disclosed to third parties as those remain protected by attorney-client privilege.

5.   Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes" from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.   Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

Plaintiff strongly disagrees that her extensive, line-by-line privilege log lacks sufficient detail. Indeed, Plaintiff's log goes well beyond what courts have required in the vast majority of cases, especially in light of the volume of documents that had to be reviewed and cataloged in this case. *See, e.g.*, *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 477 (S.D. Cal. 1997) ("[N]o where in Fed. R. Civ. Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required if a party seeks to withhold documents based on privilege or work product. In fact, the Advisory Committee Notes following Rule 26 indicate that a document-by-document privilege log is *not* required [if it would be] unduly burdensome when voluminous documents are claimed to be privileged . . . ."). That said, Plaintiff warrants that there were no police reports from cases other than the Christopher Milke case with notes made by Ken Ray or Kirk Fowler. Without waiving Plaintiff's unduly burdensome objection, Plaintiff will update the privilege log accordingly.

6.    In the habeas privilege log there is an entry with "medical records with attorney notations."  Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2.  Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.   Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

The medical records referenced in the privilege log have either already been produced or are not responsive to Defendants' RFP No. 2. Although not responsive and without waiving any prior objections, out of an abundance of caution, Plaintiff is producing the following medical records: **MILKE_NSB033624-33694** (Debra Milke 1985 medical records, outside the scope of Defs' RFP No. 2); and **MILKE_NSB0033564-33623** (Debra Milke DOC medical records, previously produced beginning at: MILKE_AZDOCHealth 00193).

7.    In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

Plaintiff does not agree with Defendants' unsupported assertion that these witness binders including their indices are not protected by work-product privilege. These binders--which were indisputably prepared in anticipation of litigation including several evidentiary hearings and Plaintiff's capital retrial--reflect the mental processes of counsel with respect to each witness. The work-product doctrine is specifically intended to protect these mental processes, including when reflected in the compilation of documents, raw data, or legal research. *See, e.g.*, *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ("The work-product doctrine covers documents or *the compilation of materials* prepared by agents of the attorney in preparation for litigation." (citing *United States v. Nobles*; 422 U.S. 225, 238 (1975)(emphasis added)); *see also Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (observing that the work product doctrine protects "from discovery documents and *tangible things* prepared by a party or his representative in anticipation of litigation" (emphasis added)). As such, Plaintiff continues to object to the production of any portion of these binders as privileged.

Plaintiff's counsel can, however, represent that every binder was reviewed to determine whether any original or newly responsive materials were contained within them, including any criminal defense interview notes. All defense interview notes and other responsive materials were disclosed in Plaintiff's last supplemental disclosure.

8.    In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are

17

responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in binders.  Simply because counsel put them in a binder does not make them privileged.  Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

Plaintiff has the same objection as raised above: counsels' compilation of articles and news media in advance of litigation reflects mental processes protected by the work-product privilege. Moreover, all published articles compiled by counsel are public record and equally available to Defendants. Subject to these objections, and assuming agreement that such production does not itself waive privilege, Plaintiff has identified and is producing a few additional articles pursuant to the parties' prior agreement that Plaintiff would produce any published news media in her possession. Those articles can be found at **MILKE_NSB033695-033719.**

9.   In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes."  And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases.  Is this the same material?  If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before?  Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

Plaintiff believes these entries inadvertently refer to the same bankers boxes that Defendants were offered access to previously. It's also Plaintiff's understanding that the City retrieved these boxes and copies their contents. If Defendants would like to confirm that understanding, photographs of these boxes and their general contents can be found here: **MILKE_NSB033720-033730**.

Plaintiff will update the privilege log accordingly.

10.   In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

Plaintiff disagrees with Defendants' assertion (notably unsupported by any legal citation) that work product generated by a mitigation specialist -- working at the direction of counsel in conjunction with the legal team for purposes of Plaintiff's capital representation -- is not protected by work product privilege. *See United States v. Nobles*, 422 U.S. at 239 ("[The work-product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in

the compilation of materials in preparation of trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ("The work-product doctrine covers documents or *the compilation of materials* prepared by agents of the attorney in preparation for litigation." (emphasis added)). It's indisputable that any work product generated by the mitigation specialist (including in the form of compiled documents) was done so in anticipation of capital post-conviction litigation and as an agent of Anders Rosenquist. As such, Plaintiff has properly asserted work product privilege for all of those documents.

However, out of an abundance of caution, Plaintiff also reviewed those materials to ensure no original or responsive documents were included. These mitigation materials do not contain independent records that have not already been produced (including the mitigation specialist's final product, a lengthy social history of the Plaintiff, which was produced to Defendants a long time ago).

11.  The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.   Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

Plaintiff's good faith assertions of privilege incorporate Plaintiff's understanding that privilege has not been waived, based on Plaintiff's reasonable investigation to date. Obviously, the scope of the documents at issue and the time span involved limits what investigation is reasonable or even possible (for example, Plaintiff's counsel -- like Defendants -- has no idea where Joe Marino is currently located or indeed whether he is still alive). Plaintiff is not required under Ninth Circuit law to investigate and then indicate whether there was disclosure to a third-party for each and every document listed on her forty-page privilege log across the last thirty years. *See* Fed. R. Civ. P. 26(b)(5)(A); *In re Imperial Corp. of Am.*, 174 F.R.D. at 477 (no line-by-line privilege log required).

Defendants' request is unreasonable and requires an inquiry well beyond the scope required by any court in the context of creating a privilege log. *See, e.g., Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (instructing courts to employ a "holistic reasonableness analysis" when evaluating a privilege log's sufficiency in order to "forestall needless waste of time and resources"). Where apparent, Plaintiff has indicated or agreed with Defendants regarding limited express waivers in letters to various third parties. And, whenever a specific issue has been raised, Plaintiff has made a good faith effort to determine if such information was disclosed. For example, after Defendants raised that Mr. Ray may have disclosed Mr. Fowler's witness interview notes to Mr. Levy, Plaintiff identified those notes in her possession, cross-checked them with Mr. Ray's witness list, and

turned over all such notes to Defendants. With respect to Mr. Krone, to Plaintiff's knowledge, no further material or communications were exchanged with Mr. Krone or his attorney.

    12.  In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

Defense counsel appears to be mistaken; no such entry exists on Plaintiff's privilege log nor would Plaintiff have claimed privilege over such correspondence.

    13.  In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.   This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

As laid out in Plaintiff's briefing, under Ninth Circuit law, Plaintiff's waiver with respect to the ineffective assistance of counsel claim (including proffers of documentary evidence to support that claim) is limited to Plaintiff's habeas proceeding. *See Bittaker*, 331 F.3d at 722 (finding waiver limited "to adjudicating the ineffective assistance of counsel claim"); *Lambright v. Ryan*, 698 F.3d 808, 818 (9th Cir. 2012) ("We held [in *Bittaker*] that, although that petitioner impliedly waives his attorney-client privilege, such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim . . . "); *see also id* at 819 n.3 ("The privilege was impliedly waived when Lambright filed his ineffective assistance claim, so he could not later expressly waive the privilege simply by disclosing privileged documents without objection."); *United States v. Gray*, 2007 WL 1848030, at *5 (N.D. Cal. June 27, 2007) ("In accordance with *Bittaker*, Cohan's privilege is not waived for subsequent or different IRS investigations or prosecutions."). We are also confused by the reference to Rule 502, which does not appear applicable.

In the event the Court rules otherwise, Plaintiff will take appropriate action at that time in accordance with the Court's ruling.

    14.  In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

Plaintiff provides that same answer as to #13 above.

15.  Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

The Court has given the parties specific instructions on how to proceed on the issue of express waiver, including the effect of any disclosure to third parties. As the parties are still engaged in that process, the scope of any waiver has not yet been decided. Plaintiff will comply with the Court's instructions and will take action, if appropriate, as decided by the Court.

16.  In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

Plaintiff did not claim this answering machine tape as privileged nor does Plaintiff believe that this tape is responsive to any RFP. Still, out of an abundance of caution, we informed you of its discovery. Though we do not agree its responsive, Plaintiff is willing to produce a copy of the tape if Defendants would like.

17.  As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.   Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

Plaintiff's counsel never represented that privileged materials were intermingled in all boxes. As we've stated to you before, based on conversations with Gary Stuart, it is our understanding that certain clearly designated privileged materials were removed from the file before he was given access; that Mr. Stuart (himself a lawyer) was specifically instructed not to look at privileged materials should he encounter them and so agreed; that Mr. Stuart was never seeking privileged materials but instead sought to review publicly available materials (i.e., pleadings, rulings, etc); and that he did not in fact review any privileged materials in the file. Defendants have had the opportunity since the outset of this litigation to subpoena and/or depose Mr. Stuart--we also invited you to speak with him when this issue first arose--but you never did so until now. It is our understanding that counsel for the City of Phoenix has been in contact with Mr. Stuart and is in receipt of materials from him. Mr. Stuart remains best positioned to explain his review of the file, and it's our understanding that he already informed defense counsel that neither Mike Kimerer nor Lori Voepel ever gave him any information or documents they considered confidential under ER 1.6, or any work product privilege.

18.  Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?

Plaintiff provides the same answer that the parties should follow the Court's prescribed process as for #15 above.

**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

Plaintiff has never been in possession of any taped sessions between Dr. Garcia-Brunnel and Ms. Milke. Plaintiff is further unaware if any such tapes ever existed. As such, Plaintiff cannot provide explanation for, if there ever were such tapes, where they are now or if they were destroyed, when, and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also present?  If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

It is Plaintiff's best recollection that Dr. Garcia-Brunnel never sat in on any meetings with Ken Ray and/or Kirk Fowler. It is Plaintiff's counsel's understanding that Dr. Garcia-Brunnel is now deceased.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file.  Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?

Plaintiff complied with the Court's instructions and has made every effort to keep Mr. Ray informed regarding the Court's newest order. The Court did not instruct Plaintiff to reach out to Mr. Rosenquist or Mr. Fowler; however, it's Plaintiff's understanding based on prior conversations (and their deposition testimony) that neither would have a specific recollection of what was in Ken Ray's file either at the time of trial or when it was transferred to Mr. Rosenquist in the early 1990s -- over 25 years ago.

**November 12th Document Requests**

In preparation for Ms. Milke's continued deposition, we have been reviewing the records produced recently.   In those records there is a reference to the following documents that have not been produced: (1) photocollage of Milke/Christopher; and (2) a journal.  Please produce these items immediately as they are responsive to discovery. If they no longer exist, please identify the date of their destruction.

Plaintiff did create a photocollage of herself and her son, Christopher Milke. Plaintiff does not agree that this photocollage is responsive to any of Defendants' RFPs. Subject to and without waiving that objection, Plaintiff is producing photographs of the collage at: **MILKE_NSB33731-33733**.

At no time has Plaintiff kept a journal, either while incarcerated or since her release.

-----

As indicated, Plaintiff will produce an updated privilege log shortly. The referenced documents are available at the following Dropbox link: https://www.dropbox.com/sh/8a1j3pdbbp57cmp/AADXXPk6q5J3fFizodihHEGRa

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order entered by the Court on March 22, 2017:

    MILKE_NSB033546-335548

    MILKE_NSB033549-33555

    MILKE_NSB0033564-33623

    MILKE_NSB033624-33694

    MILKE_NSB33731-33733

Thanks,

Katie

On Tue, Nov 13, 2018 at 2:23 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

The Court has ordered us to submit to our position on the Ken Ray questions by November 16, 2018.   The information requested below is necessary for us to formulate our response and was requested even before the Court's Order was issued. Please provide the requested information as soon as possible.

Tina

**From:** Christina Retts
**Sent:** Tuesday, November 6, 2018 1:29 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Mary Felder' <mary@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

I am writing to follow up on some outstanding issues relating to the privilege log, recent untimely production of documents, Plaintiff's position on privilege, and the Ken Ray deposition.

The records that were just produced—the original jail file, employment records, and letters—are directly responsive to Defendant's Requests for Production which were served nearly two years ago.   Despite Plaintiff's attempt to downplay the new discoveries as a "small subset" of materials reviewed, these materials are critical and unavailable from the third-parties because of the passage of time.  These records also are relevant to many of the depositions that have already occurred—including Carmen Santana, Gail Lipshultz, Ken Ray, Kirk Fowler, Anders Rosenquist, Karen Smith, and Maureen Sadiek. These records are also relevant to the expert opinions and also the expert

depositions.   Plaintiff repeatedly complained about the fact that Defendants did not schedule depositions earlier, but Plaintiff trickled out documents over an extended period of time instead of properly getting the file in order in the first instance.   There would not have been any necessity for Plaintiff's counsel to recently work over the weekend if the files had been reviewed before filing the litigation—in the two years between Ms. Milke's release and the filing of the Complaint—or in the nearly two years since the Request for Production was served.   The fact that Plaintiff served Five Supplemental Reponses to the Requests for Production is evidence of the same.   Indeed, as it relates to the audio tapes, it took Plaintiff almost 10 months—until November 8, 2017—to produce what was proffered as a complete production.   Throughout the course of the litigation Plaintiff frequently produced documents shortly before depositions—even though those documents were directly responsive to Requests for Production.   Near what was to be the close of discovery before the deadlines were changed, Plaintiff also produced documents related to Belinda Reynolds that appear to have been in the possession of the Plaintiffs for nearly a year.   Defendants have been severely prejudiced by this new late disclosure and Plaintiff's untimely production.   Please confirm that in the review of boxes of documents that Plaintiff's also cross-referenced the Defendants Requests for Production to ensure complete production.

Next, Defendants continue to maintain their position that there has been a waiver of the privilege, but before outlining additional bases for that position, additional information is sought (below).

As it relates to the two letters that Plaintiff has not produced, but is willing to produce if Defendants agree there is no waiver, we will agree that the production does not itself amount to waiver.  But, if the communications evidence information that further supports Defendants' waiver argument, Defendants will not agree that they will not argue that the content of the letters does not evidence prior waiver.

**Privilege Log**

We have reviewed the privilege log and have additional comments/questions below.

1. What is the factual and legal basis for assertion of the "common interest rule."   Who is Plaintiff claiming a common interest with?  Current counsel, Styers, Scott, etc.?   What Ninth Circuit opinion supports this?

2. It is my understanding the Kirk Fowler is not an attorney, yet Plaintiff asserts attorney-client privilege as to her communications with Kirk Fowler.  Please set forth the legal and factual basis supporting your assertion that attorney-client privilege exists as it relates to investigator Fowler.

3. Please set forth the legal basis for your position that work product continues after termination of the representation. As the Court noted, it was her understanding that work product terminates at the conclusion of the representation. In the privilege logs, Plaintiff lumps together attorney client privilege and work product for each entry.   Please clarify what documents are attorney client privileged and what documents Plaintiff contends are work product.

4.Factual material is not protected by privilege.  For example, in the Fowler/Ray privilege log, there is an entry that includes an article.  The article is not privileged simply because it is attached to a letter to Kirk Fowler.   The article and any other enclosures (such as taped statements) that are responsive to Defendants' Requests for Productions and contain factual material should be produced and have no basis to be withheld.

5.Plaintiff's privilege log for Ken Ray/Kirk Fowler lacks the necessary specificity in the description of "document type," in many instances.  For example, Plaintiff claims that "police reports with notes"  from Ken Fowler are privileged.  At issue in this litigation is whether Plaintiff possessed any other police reports other than from Saldate's interrogation of her, which is also responsive to Defendants' Request for Production No.1 & 13-14.  Plaintiff should therefore, at the very least, state from what criminal case these police reports are from: I.e. police reports with notes from the investigation of Christopher Milke.  Notably, the detail in the privilege log provided for habeas counsel is appropriate and far more detailed than the privilege log for Fowler/Ray, when the Fowler/Ray materials are most directly at issue in this litigation.  Habeas counsel provided an appropriately detailed log that provides sufficient information to determine whether the information is privileged, while not revealing confidential communications.  The same is not true for the Fowler/Ray privilege log and it should be supplemented accordingly.

6.In the habeas privilege log there is an entry with "medical records with attorney notations."  Please confirm that you cross-checked each page of these medical records with the records already produced and that all records have been previously produced as medical records are directly responsive to Request for Production No. 2.  Defendants have an outstanding RFP related to medical records and Plaintiff has put these at issue in claiming damages.   Thus, if these records are the only copy that exists, the attorney notes can be redacted and the records have to be produced.  Similarly, to the extent that there are attorney notes on other documents, please confirm that you have cross-checked these attorney note documents with those already produced to ensure complete production related to the Request for Production Defendants sent seeking trial related materials.

7.In the habeas privilege log there are numerous witness binders that are listed.  It is anticipated that these binders likely have indexes outlining the materials that are included.  Please produce the indexes so that we may cross-check the information in the witness binders with that produced in this litigation as this information is responsive to Requests for Production No. 6 & 11.  Simply because factual information is in a witness binder created by counsel, does not bestow upon it privileged status.  For example, if there was a criminal defense interview transcript in a binder, that transcript would not be privileged and it would be required to be produced.

8.In the habeas privilege log, there is "binder on media coverage created by counsel."  Counsel's placement of news articles into a binder does not protect the articles from disclosure.  News articles are responsive to Defendants' Requests for Production and should be produced.  The same is true for any pleadings that are in binders. Simply because counsel put them in a binder does not make them privileged.  Please confirm that all materials of this type were cross-checked to ensure that they had been previously produced as this information is directly responsive to Request for Production No. 5.

9. In the Anders Rosenquist work product log, there is an entry "raw case research on other Saldate cases (pulled case files), four banker boxes."  And, there is 1 banker's box filled with raw research on PPD homicide cases during Saldate's tenure. These materials are not privileged and must be turned over as responsive to Defendants' discovery requests as they form the basis for Plaintiff's litigation. Notably, at one point in this case, Plaintiff invited Defendants to come collect four bankers boxes related to some of the underlying cases.  Is this the same material?  If so, why is it now being included in a privilege log when Plaintiff voluntarily turned it over before?  Inclusion of this material in the privilege log—if it has already been produced—causes concern regarding the appropriateness of the privilege review and the overbreadth of Plaintiff's assertions of privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

10. In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

11. The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.  Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

12. In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

13. In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.   This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties?  If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine.  Please specify if this was his home or office phone.  If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication.  Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct.  Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized.   Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed.  Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?

**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me."  As these are treatment sessions that relate to damages, these tapes need to be produced.  If they are no longer in existence, please provide an explanation for when and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke.  Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray?  Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also

present?  If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file.  Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?

Tina

---

**From:** Christina Retts
**Sent:** Monday, November 5, 2018 12:43 PM
**To:** Katie McCarthy <katie@nsbcivilrights.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We intend to proceed with the deposition of Ms. Milke on November 14 and 15, 2018.  We will cross the bridge of additional deposition questioning after the resolution of the attorney privilege waiver issues by the Court.

We will be sending a more comprehensive response as it relates to the privilege log, production, etc., in the near future, but wanted to address the deposition issue now as we understand that travel plans need to be made.

Tina

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Thursday, November 1, 2018 11:58 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

We inadvertently sent the wrong version of the Ray/Fowler privilege log. Please find a corrected version attached.

Thanks,

Katie

On Wed, Oct 31, 2018 at 8:26 PM Katie McCarthy <katie@nsbcivilrights.com> wrote:

Counsel:

Per the Court's instructions at the October 19, 2018 status conference, counsel has undertaken a painstaking review of the copious records in this case to complete a detailed privilege log and identify any responsive materials.

Updated Responses to RFPs

Plaintiff's counsel has gone back through the "Milke room" (containing 31 boxes, over 60 binders, and stacks of loose papers) to segregate out as best we could what would have been Ken Ray's file and identify any other potentially relevant documents for review. It has always been counsel's understanding that these documents--stored at Mike Kimerer's office--constituted the universe of original documents in this case. However, out of an abundance of caution, Plaintiff's counsel last week contacted Lori Voepel to examine the 51 boxes of materials stored at her office. It was the understanding of Plaintiff's counsel, Mike, and Lori that Lori's files contained only multiple copies of documents stored in the "Milke room" at Mike's office. Upon painstaking review of those 51 boxes, however, counsel identified a small subset of original, responsive documents (most of which are covered by privilege, but a few of which are not). Namely, Plaintiff's original Maricopa County Jail medical file (MILKE_NSB032898-033072); Plaintiff's personnel files from Farmers Insurance Group (MILKE_NSB033073-033151) and Lincoln National (MILKE_NSB033152-33182); three binders containing some correspondence and work product from Ken Ray, Kirk Fowler, and Anders Rosenquist; and a cassette tape of a recording of Ken Ray's answering machine. Until last Friday, Plaintiff's counsel, Mike's office, and Lori were all unaware that these originals were in Lori's possession.

Of note, counsel listened to the Ken Ray cassette tape but has not yet transcribed that tape (which has very poor sound quality and requires an old microcassette player to play). It sounds like a message from either Jean Pugh, Jerry Pugh, or Alan Swanson (the caller does not identify himself) saying that the State was wrong regarding the number of shots fired on December 2, 1989. Nothing on the recording relates to any knowledge on the part of Ken Ray about Saldate's prior misconduct.

Within the 51 boxes, Plaintiff's counsel also identified a small subset of non-privileged documents that were sent directly to Gary Stuart by Lori Voepel in August 2014 (MILKE_NSB0333183-033385). It is Plaintiff's understanding and belief that those documents were also present in the "Milke room" and thus would have been available to Gary Stuart upon his review of the non-privileged documents present there, as Plaintiff disclosed to Defendants in her earlier RFP responses.

Plaintiff is producing all responsive, non-privileged documents referenced above and has updated her responses and privilege log accordingly.

Privilege Log & Pre-Conviction *Brady* Knowledge

Relatedly, Plaintiff's counsel has conducted a line-by-line review of all correspondence between Plaintiff and Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team) as well as all pre-trial third party correspondence to/from Ken or Kirk for any information pertaining to Ken Ray's pre-conviction knowledge of Detective Saldate's prior misconduct. Plaintiff has identified and is producing the two communications that are covered by implied waiver on this subject (MILKE_NSB0333386 & MILKE_NSB033387-033398).

As noted on the privilege log for Ray/Fowler, Plaintiff has also identified two additional communications that make some mention of Saldate's prior misconduct. However, it is our position that these letters are not covered by implied waiver because they were written post-conviction and the context indicates that they are referring to knowledge

gained post-conviction about Saldate's prior misconduct (as Anders had already been retained and begun looking into Saldate's history at the time these were written). Although we do not believe privilege has been implicitly waived for these two letters, we are willing to produce redacted versions of both if you agree that such production does not waive attorney client, work product, or any other privilege.

In reviewing the privileged communications between Plaintiff and counsel, Plaintiff also identified a few enclosures to counsel of non-privileged communications between Plaintiff and third-parties, which we have produced. (MILKE_NSB032878-032897). And, although we believe it outside the scope of Defendants' reasonable requests, as indicated in our prior RFP responses, we are further producing Mr. Ray's correspondence with third-parties (and third party correspondence in his possession) during the course of his representation. (MILKE_NSB033300-033537).

Plaintiff's counsel has also segregated and reviewed all work product created by Ken Ray, Kirk Fowler, and Anders Rosenquist although it is not possible (given the history of the litigation and the frequent disaggregation/reorganization of the file) to exactly reconstruct the working file of any prior counsel. For Kirk Fowler, Plaintiff has identified four witness interview summaries: Carmen Santana, Harold Milke, Wilma Scott, and a composite summary (Evelyn & Phil Linderborg, Richard, Maureen, and Karen Sadiek). Per our meet-and-confer, because these witnesses appeared on Mr. Ray's R15 witness list for trial, we are willing to assume that he provided these summaries to Mr. Levy. As such, we are producing them (MILKE_NSB033538-033545).

As explained in more detail in Plaintiff's forthcoming Court filing, Plaintiff has reached out to Ken Ray and attempted to coordinate with him to review his file (which was sent to him electronically on October 26th). Mr. Ray at this point has taken the position that he will neither review his file nor communicate with even Plaintiff's counsel regarding his answers (if any) to Defendants' proposed questions absent a Court order or the opportunity to consult further with the state bar and/or ethics counsel, which he has not had time to do. Plaintiff is not in a position to compel Mr. Ray to take any particular action but will be advising the Court of his position.

Finally, with respect to the privilege log, Plaintiff has produced detailed privilege logs for: Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team including attorney Terry Capozzi), and habeas counsel (Mike Kimerer and Lori Voepel and their legal team/staff). We have also noted privileged correspondence with various post-conviction counsel that represented Plaintiff for only a short duration: James Kemper (plaintiff's state-appointed appellate public defender before Anders Rosenquist soon took over post-conviction litigation); James Liebman (a professor at Columbia Law School who worked with Anders Rosenquist on Plaintiff's cert petition to the Supreme Court); and John Charland (who was automatically appointed as Plaintiff's federal habeas counsel though Anders Rosenquist actually represented her until Mike/Lori took over the habeas litigation).

I have attached these privilege logs along with Plaintiff's Fifth Supplemental Response to Defendant City of Phoenix's First Request for Production of Documents and Plaintiff's Second Supplemental Response to Defendant Saldate's First Request for Production of Documents.

Referenced documents are available for download at the following
Dropbox: https://www.dropbox.com/sh/hqvg6mgc86o691j/AAB1f2_VKX8meYj56vP0HhK3a?dl=0


Please note that given this production includes documents with Plaintiff's confidential personal, medical, and
financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order
entered by the Court on March 22, 2017:

      MILKE_NSB033073-033151

      MILKE_NSB033152-033182

      MILKE_NSB03878-032897

      MILKE_NSB033387-033398

      MILKE_NSB033386

      MILKE_NSB032898-033072


Thanks,


Katie


--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com




--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

## Kim Penny

| | |
|---|---|
| **From:** | Lori Berke <Lori@berkelawfirm.com> |
| **Sent:** | Monday, November 26, 2018 1:00 PM |
| **To:** | Christina Retts; Katie McCarthy |
| **Cc:** | Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Mary Felder; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude |
| **Subject:** | RE: Milke: Plaintiff's Updated Responses and Privilege Log |
| **Attachments:** | Ken Ray Express Waiver Bates Numbers (supplemental).doc |

Attached is an updated list of letters that support Defendants' position regarding express waiver.  Additions are in bold and italicized.

Lori



********************PRIVATE AND CONFIDENTIAL********************

This electronic message transmission and any files transmitted with it, are a communication from Berke Law Firm, PLLC. This message contains information protected by the attorney/client privilege and is confidential or otherwise the exclusive property of the intended recipient or Berke Law Firm, PLLC. This information is solely for the use of the individual or entity that is the intended recipient. If you are not the designated recipient, or the person responsible for delivering the communication to its intended recipient, please be aware that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this electronic transmission in error, please notify by telephone (602-254-8800) or by reply email and promptly destroy the original transmission. Thank you for your assistance.

**From:** Lori Berke <Lori@berkelawfirm.com>
**Sent:** Monday, November 26, 2018 4:26 AM

**To:** Christina Retts <cretts@wienekelawgroup.com>; Katie McCarthy <katie@nsbcivilrights.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

I agree with Tina's email from last Tuesday.  Notwithstanding, attached is a Word document containing bates numbers of Marino, Styers, Felix and Ray letters and that support Defendants' position as to express waiver.  I anticipate we will be sending additional bates numbers later this morning.

Lori



*********************PRIVATE AND CONFIDENTIAL*********************

This electronic message transmission and any files transmitted with it, are a communication from Berke Law Firm, PLLC. This message contains information protected by the attorney/client privilege and is confidential or otherwise the exclusive property of the intended recipient or Berke Law Firm, PLLC. This information is solely for the use of the individual or entity that is the intended recipient. If you are not the designated recipient, or the person responsible for delivering the communication to its intended recipient, please be aware that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this electronic transmission in error, please notify by telephone (602-254-8800) or by reply email and promptly destroy the original transmission. Thank you for your assistance.

**From:** Christina Retts <cretts@wienekelawgroup.com>
**Sent:** Tuesday, November 20, 2018 1:03 PM

**To:** Katie McCarthy <katie@nsbcivilrights.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

The Court did not Order the Defendants to identify the bates numbers for each question, rather it is sufficient for the Defendants to identify that the information comes from the letters.  These letters were written by Plaintiff and have been in her possession for years.
Based upon her therapist's notes, it is clear that she has been through some of them.  It is not Defendants' burden to prove that there is privilege, it is Plaintiff's burden.  This seems to be yet another instance where—rather than go through Plaintiff's own file—Plaintiff throws the burden back on Defendants to do it for <u>her at Defendants' expense.</u>  It should not be Defendants who spend attorney fees to find the information that Plaintiff has equally available to her to review specifically because Ms. Milke wrote these letters herself and has intimate knowledge of the waivers that she has made.  These letters were cited to Ms. Milke in her deposition and all of the letters were attached as exhibits.

Plaintiff needed to have reviewed all of the letters before undertaking to put together the recent privilege log to determine where there has been third party disclosure.  This response suggests that Plaintiff did not review the letters before producing the recent privilege log to cross check the letters with the claims of privilege.   A threshold issue for claiming privilege is that there be no third-party disclosure.  If Plaintiff is unaware of what the contents of these letters are and every place that there has been third-party disclosure, then sufficient efforts were not undertaken to organize the file to comply with the Court's Order and determine the scope of every explicit waiver that Ms. Milke made.   Plaintiff cannot claim that material remains privileged if efforts were not undertaken to ensure that there has not been third-party disclosure.  Since the Court's first hearing, the Plaintiff's have had almost a month within which they could have reviewed the letters as Defendants have always maintained that the letters form the basis for waiver.   Plaintiff made the choice to bring this litigation and seek an extremely large amount for damages.  Thus, it is not burdensome or unreasonable to contend that Plaintiff should be required to develop an understanding of the explicit waiver issue if she maintains claims of privilege.  This is also not unreasonable given the requirement that Plaintiff must present arguments to the Court known to be supported by the facts.

Defendants have comprehensively outlined each and every basis on which they believe the privilege was waived for each question.  Are Plaintiffs willing to pay Defendants' additional attorney fees for reviewing the letters that Plaintiff wrote?

Tina

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Tuesday, November 20, 2018 11:19 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan

<Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>

**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

Your email indicated that we should reach out for additional clarification if necessary. Despite your incredibly lengthy correspondence, and our prior requests, you still have not given us citations to the specific letters you allege provide a basis for express waiver. Your email states that "the following questions come directly from letters to Joe Marino/Vince Felix/Jim Styers," so it's evident you were looking at specific letters and could easily have directed Plaintiff's counsel to those citations. In fact, the Court's order expressly directed you to do so, as you were ordered to provide the basis for waiver for <u>each</u> question. While we've attempted to search for these references, there are a number that we do not see anywhere. We're happy to evaluate whether there has been an express waiver for all the questions you allege (3-5, 7-18, 22-24, 27-37, 39-48, 50-78, 85-92, 97-99) but cannot do so without knowing the basis.

Please provide us <u>by tomorrow</u> with the letters (by date and/or bates) that you allege provide the basis for express waiver for each question listed above so we have sufficient time to evaluate them before our response next Monday.

Thanks,

Katie


On Fri, Nov 16, 2018 at 7:26 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

The following will provide Defendants' position on the Ken Ray deposition questions. We will also address some of Plaintiff's responses to our letter requesting clarification about Plaintiff's efforts connected with the privilege log and the log itself. At the outset, it should be noted that the Ken Ray deposition questions were developed based upon the documents Plaintiff disclosed in this case. This includes the documents recently produced, which contain more material relating to Detective Saldate that should have been disclosed nearly two years ago in response to Defendants' Requests for Production, but was not. Additional questions have been added to the original list based upon this recent disclosure. Further, Plaintiff continues to withhold additional documents as evidenced by the privilege logs. It is Defendants' position that Plaintiff has waived all privilege such that additional material should be produced to Defendants. It is highly likely that the materials being withheld by Plaintiff contain additional information that would generate additional questions to Ken Ray. As a result, the Defendants will be asking the Court to rule on waiver as it relates to all of the materials withheld and will request that any additional material be produced before Ray's second deposition, and will request the opportunity to submit additional deposition questions to be asked of Mr. Ray at his deposition following Defendants' receipt of these additional materials

Defendants continue to be concerned over the incomplete nature of Plaintiff's productions, which are ongoing to this day, and with Plaintiff's privilege log. This includes untimely recent production of the original jail records from Maricopa County Jail, employment records, documentation of Ken Ray's knowledge

of allegations made by others concerning Detective Saldate's history through a phone call and affidavit, witness summaries of Kirk Fowler's interviews, and the new English translation of the German book about Debra Milke which was just produced yesterday notwithstanding that it was responsive to a Request for Production served more than two years ago.

There are additional issues surrounding Plaintiff's destruction of documents with Mr. Aue and Milke's recent shredding of multiple containers of documents in Germany. Plaintiff sent numerous letters out to third-parties for storage and banking of her letters, and used third-parties to send letters out of the prison. It appears that Plaintiff has not identified all of these third-parties and taken appropriate efforts to retrieve and produce the responsive information. Plaintiff cannot avoid discovery by stating that documents she sent to third-parties for storage are not in her "custody and control." From the time she reasonably anticipated this litigation, Plaintiff had s an obligation to preserve potentially relevant documents, and once served with Defendants' discovery, she had an obligation to contact every third party she sent material to in order to inquire whether they had responsive information and if so, produce them—especially since she specifically sent out documents for the purpose of storing them. The evidence shows that Ms. Milke was planning on filing a civil lawsuit as far back as 1990, as documented in her letters to both Joe Marino and Vince Felix. She told them numerous times she was going to file a lawsuit. In 1996, her mother wrote about contacting Mr. Scheck, her current civil counsel, for the purposes of advancing a civil lawsuit.

But Plaintiff need not just take our suggestions regarding her obligations for satisfying her production and disclosure obligations, she has been under Court Order to do so. Last month the Court Ordered Plaintiff and her counsel to review the entirety of her file and produce documents responsive to all of Defendants' outstanding Requests for Production, not just documents related to Ken Ray. Notwithstanding this Court directive, somehow Plaintiff missed the English Version of the Book that Janna Bommersbach wrote which was responsive to Defendants' Request for Production Number 5. This book, which was written in German, not in English, was written by a well-known local *journalist,* yet never mentioned in response to the Request for Production. Nor was the English manuscript ever produced until after the completion of Plaintiff's deposition. Plaintiff did not produce the translation, despite possessing it long before this. A review of the first three pages demonstrates that there was impeachment information that would have been used in Plaintiff's deposition. In recently and untimely producing this material, Plaintiff appears to blame Defendants for failing to bring to Plaintiff's attention to the fact that they did not produce the book. It is Plaintiff's responsibility to ensure complete disclosure and production, particularly after the Court's hearing. Further, Plaintiff is withholding significant documents under the privilege log that are difficult to identify what they are and Plaintiff's discovery responses are far from clear on what is being withheld. In fact, at Ms. Milke's deposition, Nick Brustin initially appeared to take the position that the book transcript was not responsive to Defendants' Requests for Production because Ms. Bommersbach was not a journalist. After we then pointed out that she was aa journalist, Plaintiff changed her position claiming the English version was inadvertently not produced. Notably, Ms. Milke was well aware of Ms. Bommersbach's status of a journalist before this time.

As for the privilege logs, Plaintiff's carelessness in her preparation has given Defendants no confidence in the assertion of the privilege. For example, Plaintiff was forced to revise the privilege log, after it was pointed out by Defendants that Plaintiff included materials on the privilege log that were already produced in the case. Additionally, documents we obtained from Gary Stuart via our subpoena, which we were forced to serve because Plaintiff stated she was unable to determine what documents were provided to him, also apparated on Plaintiff's privilege log as attorney client and work product materials. And this was even after counsel's avowal to the court that Mr. Stuart had been provided no privileged documents.

Had Plaintiff properly reached out to Gary Stuart—who wrote a book about Debra Milke—when she received the Request for Production in 2016, she would have found the original jail records and employment records that were only recently (and untimely) produced by Plaintiff. And despite being told that the file materials were in disarray and unorganized, Gary Stuart had eight binders of meticulously organized materials that