privilege.  If this is not the same material that has been produced, there is no basis for asserting privilege and it should be produced as it is directly responsive to Request for Production No. 1 & 10, and possibly 13-14.

10. In the Anders Rosenquist work product log, there are two listings for mitigation materials.  The factual materials gathered are relevant to damages and Defendants' Requests for Production (Nos. 1 & 7) and are not privileged.

11. The privilege logs are not clear as to whether there was any disclosure to any third-party.  In the materials that have been produced to date, it is clear that Ms. Milke was sharing privileged materials with third-parties.  Were efforts taken to cross-check and ensure that the material claimed to be privileged was not sent to a third-party?  Did Plaintiff contact the third parties that Ms. Milke was routinely in contact with and stated that she sent materials to in order to determine if they ever received any material from Ms. Milke?  Was transmission correspondence reviewed for this purpose?  One example of this is the new letter, dated September 15, 1995, that Ms. Milke wrote to Ray Krone encouraging him to contact her lawyer for information.  Did Plaintiff seek to determine whether any materials had been provided to Mr. Krone's attorney, and if so, what was provided?  *See* MILKE_NSB032891-2.  Ms. Milke gave Mr. Krone the phone numbers of Mr. Rosenquist and Mr. Fowler.   Notably, had Plaintiff timely produced this document, which is responsive to Defendant's Requests for Production, Defendants would have questioned both Mr. Rosenquist and Mr. Fowler about the letter and the topic areas.   By failing to timely produce the letter, Defendants have been deprived of the opportunity to conduct this discovery.

12. In the privilege log for habeas counsel, there is an entry for letters exchanged with Gary Stuart and Lori Voepel.  Those letters are not privileged and are responsive to Request for Production No. 12.   The letters should be produced.

13. In the letters that Ms. Milke attached to her habeas proceedings—between her and Ken Ray—there are more topics addressed than simply knowledge of Saldate.  Did Plaintiff cross-reference those topics with the items on the privilege log, as required by Rule 502, and produce all correspondence on the topics that were waived by Ms. Milke attaching the letters to her pleadings?  If not, please provide legal authority for the proposition that there has not been a subject matter waiver on those specific topics.  *See*, for example, C_055515-5518 and C_06067.  This letter addresses ten topics, Chris Landry, Mark's threats, Ernie Sweat, and other men that Ms. Milke dated.   If Plaintiff contends that there is not a waiver as to these subject matters, please provide legal support for the same.

14. In the affidavits for ineffective assistance of counsel, did Plaintiff cross-reference those topics with the materials reviewed and produce material on all of those topics, as required by Rule 502?  If not, please provide the legal support for the proposition that there is not a waiver of all subjects raised in the Affidavit by Kirk Fowler and Ken Ray.

15. Did Plaintiff cross-reference the Joe Marino and Vince Felix letters with the materials claimed to be privileged to determine whether or not there was a waiver because Ms. Milke disclosed information to these third-parties? If not, please cite to the legal authority supporting the position that Plaintiff need not determine whether there has been-third party disclosure before claiming privilege.

16. In the correspondence sent on October 31, 2018, Plaintiff references a recording on Ken Ray's answering machine. Please specify if this was his home or office phone. If a message was left on his home phone, privilege would be waived as there is no expectation of privacy in that communication. Additionally, Plaintiff states that this recording has nothing to do with Saldate's prior misconduct. Yet, this is not the only material requested in Defendants' Requests for Production and this recording appears to be responsive.

17. As it relates to Gary Stuart, Plaintiff previously stated that the boxes are all intermingled, not indexed, and not organized. Plaintiff stated it would be unduly burdensome to determine what Gary Stuart reviewed. Please explain how Mr. Stuart would have been able to ensure that he did not review privileged material if privileged material was intermingled in all of the boxes.

18. Did Plaintiff cross-check the questions that Defendants have posed to Mr. Ray with the disclosures made to third-parties to determine if there was a waiver?

**Production**

In the letter produced as MILKE_NSB032939, Kenneth Ray wrote to Dr. Garcia that all counseling sessions with Debra Milke must "be tape recorded with the recordings given to me." As these are treatment sessions that relate to damages, these tapes need to be produced. If they are no longer in existence, please provide an explanation for when and why they were destroyed.

In the new materials produced, MILKE_NSB032939, there is an affidavit from Dr. Garcia-Bunnel who states that he offered to sit in on the interviews with Ken Ray and Ms. Milke. Did Dr. Garcia-Bunnel sit in on the meetings between Ms. Milke and Ken Ray? Were there meetings between Kirk Fowler and Ms. Milke where Dr. Garcia was also present? If so, please identify how this was factored into the privilege log and recent production. If Dr. Garcia-Bunnel sat through any meetings, please identify the dates of the meetings he attended and the topics discussed at those meetings.

In the Notice to the Court, Plaintiff has indicated that Mr. Ray is not cooperating regarding his file. Given this development, did Plaintiff make contact with Attorney Rosenquist to determine his recollection of the contents of the

file?  He obtained the file from Mr. Ray and may also possess a recollection of its construction.  Similarly, Mr. Fowler may also possess information.  Was Mr. Fowler contacted?

Tina

---

**From:** Christina Retts
**Sent:** Monday, November 5, 2018 12:43 PM
**To:** Katie McCarthy <katie@nsbcivilrights.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We intend to proceed with the deposition of Ms. Milke on November 14 and 15, 2018.  We will cross the bridge of additional deposition questioning after the resolution of the attorney privilege waiver issues by the Court.

We will be sending a more comprehensive response as it relates to the privilege log, production, etc., in the near future, but wanted to address the deposition issue now as we understand that travel plans need to be made.

Tina

---

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Thursday, November 1, 2018 11:58 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green

<amelia@nsbcivilrights.com>; Mary Felder <mary@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Anna
Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia
<gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua
Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael
<MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen
Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny
<kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude
<langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

We inadvertently sent the wrong version of the Ray/Fowler privilege log. Please find a corrected version attached.

Thanks,

Katie

On Wed, Oct 31, 2018 at 8:26 PM Katie McCarthy <katie@nsbcivilrights.com> wrote:

Counsel:

Per the Court's instructions at the October 19, 2018 status conference, counsel has undertaken a painstaking review
of the copious records in this case to complete a detailed privilege log and identify any responsive materials.

Updated Responses to RFPs

Plaintiff's counsel has gone back through the "Milke room" (containing 31 boxes, over 60 binders, and stacks of loose
papers) to segregate out as best we could what would have been Ken Ray's file and identify any other potentially
relevant documents for review. It has always been counsel's understanding that these documents--stored at Mike
Kimerer's office--constituted the universe of original documents in this case. However, out of an abundance of
caution, Plaintiff's counsel last week contacted Lori Voepel to examine the 51 boxes of materials stored at her office.
It was the understanding of Plaintiff's counsel, Mike, and Lori that Lori's files contained <u>only</u> multiple copies of
documents stored in the "Milke room" at Mike's office. Upon painstaking review of those 51 boxes, however, counsel
identified a small subset of original, responsive documents (most of which are covered by privilege, but a few of
which are not). Namely, Plaintiff's original Maricopa County Jail medical file (MILKE_NSB032898-033072); Plaintiff's

personnel files from Farmers Insurance Group (MILKE_NSB033073-033151) and Lincoln National (MILKE_NSB033152-33182); three binders containing some correspondence and work product from Ken Ray, Kirk Fowler, and Anders Rosenquist; and a cassette tape of a recording of Ken Ray's answering machine. Until last Friday, Plaintiff's counsel, Mike's office, and Lori were all unaware that these originals were in Lori's possession.

Of note, counsel listened to the Ken Ray cassette tape but has not yet transcribed that tape (which has very poor sound quality and requires an old microcassette player to play). It sounds like a message from either Jean Pugh, Jerry Pugh, or Alan Swanson (the caller does not identify himself) saying that the State was wrong regarding the number of shots fired on December 2, 1989. Nothing on the recording relates to any knowledge on the part of Ken Ray about Saldate's prior misconduct.

Within the 51 boxes, Plaintiff's counsel also identified a small subset of non-privileged documents that were sent directly to Gary Stuart by Lori Voepel in August 2014 (MILKE_NSB0333183-033385). It is Plaintiff's understanding and belief that those documents were also present in the "Milke room" and thus would have been available to Gary Stuart upon his review of the non-privileged documents present there, as Plaintiff disclosed to Defendants in her earlier RFP responses.

Plaintiff is producing all responsive, non-privileged documents referenced above and has updated her responses and privilege log accordingly.

Privilege Log & Pre-Conviction *Brady* Knowledge

Relatedly, Plaintiff's counsel has conducted a line-by-line review of all correspondence between Plaintiff and Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team) as well as all pre-trial third party correspondence to/from Ken or Kirk for any information pertaining to Ken Ray's pre-conviction knowledge of Detective Saldate's prior misconduct. Plaintiff has identified and is producing the two communications that are covered by implied waiver on this subject (MILKE_NSB0333386 & MILKE_NSB033387-033398).

As noted on the privilege log for Ray/Fowler, Plaintiff has also identified two additional communications that make some mention of Saldate's prior misconduct. However, it is our position that these letters are <u>not</u> covered by implied waiver because they were written post-conviction and the context indicates that they are referring to <u>knowledge gained post-conviction</u> about Saldate's prior misconduct (as Anders had already been retained and begun looking into Saldate's history at the time these were written). Although we do not believe privilege has been implicitly waived for these two letters, we are willing to produce redacted versions of both if you agree that such production <u>does not</u> waive attorney client, work product, or any other privilege.

In reviewing the privileged communications between Plaintiff and counsel, Plaintiff also identified a few enclosures to counsel of non-privileged communications between Plaintiff and third-parties, which we have produced.

(MILKE_NSB032878-032897). And, although we believe it outside the scope of Defendants' reasonable requests, as indicated in our prior RFP responses, we are further producing Mr. Ray's correspondence with third-parties (and third party correspondence in his possession) during the course of his representation. (MILKE_NSB033300-033537).

Plaintiff's counsel has also segregated and reviewed all work product created by Ken Ray, Kirk Fowler, and Anders Rosenquist although it is not possible (given the history of the litigation and the frequent disaggregation/reorganization of the file) to exactly reconstruct the working file of any prior counsel. For Kirk Fowler, Plaintiff has identified four witness interview summaries: Carmen Santana, Harold Milke, Wilma Scott, and a composite summary (Evelyn & Phil Linderborg, Richard, Maureen, and Karen Sadiek). Per our meet-and-confer, because these witnesses appeared on Mr. Ray's R15 witness list for trial, we are willing to assume that he provided these summaries to Mr. Levy. As such, we are producing them (MILKE_NSB033538-033545).

As explained in more detail in Plaintiff's forthcoming Court filing, Plaintiff has reached out to Ken Ray and attempted to coordinate with him to review his file (which was sent to him electronically on October 26th). Mr. Ray at this point has taken the position that he will neither review his file nor communicate with even Plaintiff's counsel regarding his answers (if any) to Defendants' proposed questions absent a Court order or the opportunity to consult further with the state bar and/or ethics counsel, which he has not had time to do. Plaintiff is not in a position to compel Mr. Ray to take any particular action but will be advising the Court of his position.

Finally, with respect to the privilege log, Plaintiff has produced detailed privilege logs for: Ken Ray, Kirk Fowler, Anders Rosenquist (and his legal team including attorney Terry Capozzi), and habeas counsel (Mike Kimerer and Lori Voepel and their legal team/staff). We have also noted privileged correspondence with various post-conviction counsel that represented Plaintiff for only a short duration: James Kemper (plaintiff's state-appointed appellate public defender before Anders Rosenquist soon took over post-conviction litigation); James Liebman (a professor at Columbia Law School who worked with Anders Rosenquist on Plaintiff's cert petition to the Supreme Court); and John Charland (who was automatically appointed as Plaintiff's federal habeas counsel though Anders Rosenquist actually represented her until Mike/Lori took over the habeas litigation).

I have attached these privilege logs along with Plaintiff's Fifth Supplemental Response to Defendant City of Phoenix's First Request for Production of Documents and Plaintiff's Second Supplemental Response to Defendant Saldate's First Request for Production of Documents.

Referenced documents are available for download at the following Dropbox: https://www.dropbox.com/sh/hqvg6mgc86o691j/AAB1f2_VKX8meYj56vP0HhK3a?dl=0

Please note that given this production includes documents with Plaintiff's confidential personal, medical, and financial information, we are designating the following documents CONFIDENTIAL and subject to the protective order entered by the Court on March 22, 2017:

MILKE_NSB033073-033151

MILKE_NSB033152-033182

MILKE_NSB03878-032897

MILKE_NSB033387-033398

MILKE_NSB033386

MILKE_NSB032898-033072

Thanks,

Katie

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform

the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

**Kim Penny**

| | |
|---|---|
| **From:** | Christina Retts |
| **Sent:** | Tuesday, December 4, 2018 11:41 AM |
| **To:** | Katie McCarthy; Lori Berke |
| **Cc:** | Robin E. Burgess; Sally Odegard; Michele N. Logan; Amelia Green; Anna Benvenutti Hoffmann; Artie Eaves; Genna Zappia; Jody Corbett; Laine Roberts; Joshua Dubin; Rhonda Neff; MDK Kimerer, Michael; Vanessa Buch; Nick Brustin; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; Bruce Corey; Langston Glaude |
| **Subject:** | RE: Milke: Plaintiff's Updated Responses and Privilege Log |

Counsel,
Per Plaintiff's request, I have conferred with co-Defendants regarding Plaintiff's request of a four week stay for Plaintiff to address the issues raised by Defendants (outlined below and in prior correspondence).
Defendants are agreeable to Plaintiff's requested stay.   Will Plaintiff please circulate a draft.
I would note that we may have to request additional time on the back end, as deemed necessary, as I start a trial from January 15-31, 2018.  Four weeks would place us at January 14.

Thanks,
Tina

---

**From:** Christina Retts
**Sent:** Wednesday, November 28, 2018 11:05 AM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>
**Cc:** 'Robin E. Burgess' <Robin.Burgess@sanderssparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sanderssparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sanderssparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

On NSB034101-102, Janna Bommersbach writes about the letters that Debra exchanged with Lori Voepel, in fact, she cites, in quotes, to a September 10, 2002, letter Debbie wrote to Lori Voepel about the case and plans moving forward. If you have produced this letter, please identify the bates labels for this document.   If you have not produced this letter, please produce it immediately as there has been an express waiver.  If it is on the privilege log, it needs to be removed.  Plaintiff has made certain representations about how attorney client privileged information has been protected in this case.  This reference puts Plaintiff on notice of a duty to investigate the extent to which Janna Bommersbach was provided attorney client privileged information by Ms. Milke before making any assertions about express waiver in the next pleading due on December 7, 2018.  The reference to Ms. Milke's long letters and the content of those letters is suggestive that additional attorney client communications were provided to Janna Bommersbach.

Additionally, on June 27, 2018, at 1:30 pm we sent correspondence to Plaintiff's counsel requesting supplementation of outstanding discovery as follows:  **Also, Plaintiff's responses to Request for Production Numbers 4  and 5 are**

**deficient.  Please supplement Plaintiff's response to produce any and all letters, etc. received from Ingo Hasselbach, Frank Aue, Chris Passelti, Pat and Danny Endsley and C. Pacheco.  In addition to any and all letters/correspondence, produce any and all audio tapes exchanged between Plaintiff and all of the aforementioned individuals.  If these letters and/or tapes have been destroyed or are no longer in Plaintiff's custody and control, please identify the date and reason for destruction and/or identify the custodian of these materials.  Please supplement these responses immediately.**

Janna Bommersbach also quotes from many other letters in the book.  To the extent that Plaintiff has claimed confidentiality over any of these letters, the confidential designation must be removed.   Publication of the letters destroys any confidentiality.

All of the materials provided by Plaintiff to Janna Bommersbach are responsive to outstanding discovery requests notwithstanding the subpoena issued. If Plaintiff knows what was sent to Janna Bommersbach, it needs to be provided immediately as responsive to the discovery requests served two years ago.   This information is critical to our ability to fully brief the privilege issue before the Court for the December 7, 2018 deadline, particularly where there are multiple references in the book to material appearing to otherwise be privileged that has lost any privileged status it may have enjoyed due to review by Ms. Bommersbach and publication.

This book also suggests that Ms. Milke has saved all letters from her sister, Sandy Pickenpaugh.   It cites to the letters, particularly places where it states that Sandy maintained that she had not lied in any of her testimony.   Please confirm that all letters from Sandy Pickenpaugh have been produced.  If they have not, please produce them as they are responsive to discovery.

Please let us know when the boxes from the Milke room will be available for our third party vendor to pick up.

Tina

---

**From:** Christina Retts
**Sent:** Tuesday, November 27, 2018 5:12 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>
**Cc:** 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

On another note,  Plaintiff has contended that various letters exchanged by Ms. Milke during the course of her incarceration are confidential.
It is our position that the Joe Marino letters should not be maintained as confidential.   These letters were disclosed by Joe to his boss, whose wife then maintained the letters before they were turned over to the state.  From there they were viewed by multiple different people before ultimately being part of the retrial documents.

The Ninth Circuit has a high burden for confidential documents, these letters do not meet the Ninth Circuit's standard given their circulation before the civil case.

Please provide your position on whether you intend to assert that the Joe Marino letters are confidential and the basis for the same.  We would like to resolve this issue with the Court before the December 7, 2018, filing to avoid unnecessary sealing of documents.

Tina

---

**From:** Christina Retts
**Sent:** Tuesday, November 27, 2018 4:44 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>
**Cc:** 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

On NSB033889, the Bommersbach English Translation recently produced, there is a summary of Debra Milke's first meeting with Ken Ray and there are quotes that purportedly come from that meeting.  The transcript states: "Kenneth Ray saw immediately that she was clueless.  He'd report that he was stunned with Debra Milke—already the most vilified woman in the nation—asked him, 'Is it true my son is dead?' He said he stared at her in disbelief and then told her, 'yes, according to this report, you ordered his murder.'"

What Ms. Milke said during this meeting and what occurred would be privileged, but now it appears in a book.  This is another form of express waiver.   Defendants are thus entitled to explore everything that was said in this meeting given the quotes disclosed in this book.  Ms. Milke has not taken active steps to protect the information and it is in the public domain through this book.

Please also verify with Ms. Bommersbach whether she spoke to Mr. Ray, or where this quote comes from.  If there is written material from Mr. Ray to Ms. Bommersbach that has not been produced, we believe that it is responsive to our discovery requests.   If there is a recording, it should be produced.

Tina

---

**From:** Christina Retts
**Sent:** Tuesday, November 27, 2018 1:05 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude

<langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We disagree with your contention of inaccuracies.   At the outset, we would note that Plaintiff's voluminous productions in this case have been far from organized, leading to Defendants spending significant resources identifying what is in the hundreds of PDFs produced that have only bates labels and no descriptions.  This is a case where Plaintiff is seeking multiple upon multiple millions of damages and has more than twice the number of lawyers representing just her than the City Defendants have representing them.  These PDFs produced by Plaintiff are not organized—such as all the habeas filings together, or all of the trial testimony together.  Bates numbers are not similarly grouped—such that bates numbers for all of the habeas filings are not sequential.  Rather a PDF of a court single court filing for the Special Action will follow a PDF of portions of the police report.  Select exhibits from the habeas proceeding will not be grouped with the filing itself (ex. Exhibits 11a to 17 to the habeas are completely separated from the other exhibits and the filing itself, which does not even appear to be produced by Plaintiff in its entirety).  For some of the Court files, Plaintiff produced single page TIFF's, with no labels, which had to be opened individually to determine what they were.  This single TIFF manner of production has been routinely disfavored by Courts.  On the disclosure statement itself, these documents were grouped into massive generic categories such as:  "certain documents and transcripts relating to the pre-trial and post-trial motions and proceedings in The People of the State of New Arizona v. Debra Milke, Criminal case CR89-12631, including transcripts, post-conviction petitions, and judicial opinions (MILKE NSB006127-8330, MILKE_NSB0011798-12387)," or "various court filings from Debra Milke's post-conviction proceedings (Milke_NSB00023-318, Milke NSB004464-4736, MILKE_NSB04886-87, MILKE_NSB00488-4920, MILKE_NSB005991-6014)."  That Plaintiff did not scan and OCR the documents at the outset was her choice.   That Plaintiff chose a manner of organization of the file that is not productive, streamlined, or conducive to responding to discovery, is not a problem that should be shifted to Defendants.  Defendants have had to live with this file disorganization while Plaintiff repeatedly uses it to complain about a burden that is self-created.

Despite the manner of production and Plaintiff's counsel's continued statements regarding their own acknowledgement of lack of organization of the file, Plaintiff continues to seek to place blame on Defendants for not bringing missing documents and needles in the haystack to Plaintiff's attention sooner.  Plaintiff could have simply made a mea culpa, agreed that the new Ken Ray questions based upon this new information were allowable and moved on.  Instead, Plaintiff first seeks to fault Defendants for her discovery transgressions.   For example, Plaintiff seeks to shift blame to Defendants regarding the new affidavit disclosed by Kirk Fowler pertaining to knowledge of an alleged fabricated confession in another Saldate case, which was directly responsive to Requests for Production No. 13 and 14.  Plaintiff states that this information was somewhere in post-trial filings, but does not identify the bates number for the filing or when it was produced.  Notably, Plaintiff stated on the meet and confer, repeatedly, that it was impossible for Plaintiff to know the contents of every document in the file as there was simply too much information.  Yet, Plaintiff turns around in what appears to be an attempt at "gotcha" to claim that Defendants are at fault for not asking Ken Ray or Kirk Fowler about some obscure reference buried in thousands of pages somewhere in Plaintiff's disorganized disclosures.

This reference in a pleading is not the same as the affidavit that Plaintiff's recently produced from Kirk Fowler, which was in her custody and control.  Asking Ken Ray about his knowledge <u>without</u> the new document is far different than asking about his knowledge <u>with</u> the document, as recognized by the *Tennison* court.  As Plaintiff is aware, Ken Ray had far from perfect recall of these topics.  This affidavit is important to refreshing his recollection and there is no dispute that the affidavit was only identified after the Court ordered Plaintiff to organize her files—something the Court noted should have been done before the case was even filed.  Timely organization and review of the Milke boxes would have revealed not only this affidavit, but the other documents that Plaintiff just found—jail records, employment records, witness summaries.  Of note, the City specifically asked for the witness summaries that were just located after Ken Ray's deposition—in August.  Yet, it took a Court Order to find those summaries and provide them to Defendants months later.   Similarly, Plaintiff claimed that she would look for additional Ken Ray correspondence relating to Saldate, but only got around to doing it after the Court's Order and after discovery had technically closed (but for the Court extending it at the hearing).   These new summaries found in the Court Ordered review were also directly responsive to Request for

Production No. 6.   Plaintiff did not make reasonable inquiry to find the responsive records and identify them in response to Defendants' Requests for Production and now seek to rely upon other references that they did not identify in response to Defendants' requests.   Indeed, even after the Court's Order, additional materials are being produced—such as the English Version of the transcript of Debra Milke's second book.   Defendants still do not know what the author of this second book possesses, which may further reveal waiver.

Plaintiff's statements about Defendants' purported knowledge of the Kirk Fowler affidavit based upon a reference in a sea of thousands of pages of pleadings is more than frustrating in light of the specific discovery sent to Plaintiff on this very issue.   Defendants asked Plaintiff to identify this very specific information to avoid Defendants search for the proverbial needle—particularly as this information relates to a key claim in Plaintiff's case.   In Request for Production No. 13, Defendants requested:

> Produce all materials (including but not limited to police reports, transcripts, audio recordings, and/or witness statements) that Plaintiff or her criminal trial counsel, Ken Ray and.or his paralegal/office staff, possessed between December 2, 1989, and December 2, 1991, regarding any other criminal investigation that Detective Saldate was involved in, including but not limited to, the reference made by Ken Ray, in Plaintiff's criminal trial, to an interrogation occurring on December 19, 1987 at 3:40 in the afternoon.  See COP11692-3.

Plaintiff responded as follows:

> Plaintiff objects to this request as vague and unduly burdensome.  Plaintiff's file is no longer maintained in the form that it was created and maintained by Ken Ray between 1989 and 1991.  The information Defendant seeks would be more appropriately addressed by way of deposition testimony.  Subject to and without waiving these and the above-stated objections, Plaintiff responds that it is her belief and understanding that the reference made by Ken Ray was to the case State v. Running Eagle, CR 87-11508.  Plaintiff further responds that discovery is ongoing and she therefore reserves the right to supplement and/or amend her response.

In Request for Production No. 14, Defendants also requested:

> Produce all materials (including but not limited to police reports, transcripts, audio recordings, and/or witness statements) that Plaintiff or her criminal trial counsel, Ken Ray and/or his paralegal/office staff, possessed between December 2, 1989, and December 2, 1991, that pertain to the following statement in Plaintiff's letter to Ken Ray:  "Anyhow—as far as I see—the only thing we have to work out is Saldate's report.  That pig cop should be reprimanded for what he did and I don't understand how he got away with it before."  See C_05518.

Plaintiff responded as follows:

> Plaintiff objects to this request as vague ("pertain to"), unduly burdensome, not calculated to lead to the discovery of admissible evidence, and seeking documents or things that are protected under the attorney work product doctrine and/or the attorney-client privilege.

Plaintiff never identified this new phone call, any habeas pleadings, or any affidavit, as responsive in four supplemental responses to these discovery requests.   Indeed, the affidavit itself was only identified <u>after</u> the Court's Order.   No mention is made of habeas proceedings and pleadings Plaintiff now cites to, although it appears to potentially be directly responsive.  If Plaintiff possessed this information, it was required to be identified in response to the discovery and it was a discovery violation to have not done so.  If Plaintiff just found this information in the habeas filings, it is disingenuous to claim that Defendants should have found this needle when Plaintiff herself did not find/identify it in response to specific discovery requests—despite the fact that some of her habeas counsel remains involved in this case.

It does not appear that adequate inquiry was made to respond to Defendants' discovery requests.   Plaintiff did not contact Ken Ray before the filing of the case, or before his deposition, to ask him to determine what were his file

materials or obtain his assistance in responding to this discovery—this is the reasonable inquiry required by the rules.  Indeed, Plaintiff even listed Ken Ray as a witness on her disclosure statement stating that "represented Debra Milke during her criminal trial in 1990 and is likely to have discoverable knowledge of the facts concerning these proceedings."  In listing Ken Ray as a witness and responding to Requests for Production, basic inquiries should have been made.  Instead, Plaintiff placed the burden back on Defendants to depose Ken Ray without the benefit of Plaintiff's identification of the responsive records.  Indeed, Plaintiff made no attempt to have Ken Ray reconstruct parts of his file before his deposition.  And, since Ken Ray no longer possesses his file, he was unable to prepare before coming to the deposition by reviewing it.  Plaintiff went on to list lawyers Kemper, Rosenquist, Pulver, Chermack, Voepel, and Wake as witnesses in her disclosure, yet does not appear to have contacted them for information responsive to Requests for Production No. 13 and 14.

Plaintiff also raised a conflict of interest issue with counsel Lori Voepel, yet she lists Ms. Voepel as a witness.  To avoid any issue, Plaintiff should have simply obtained copies of all of the boxes that were in Ms. Voepel's possession and reviewed them, which appears was never fully attempted until after the Court's Order.  We do know, however, that at least some of Ms. Voepel's materials were obtained as demonstrated by the disclosure at Ms. Stinson's deposition.  Materials cannot be sought from Ms. Voepel when they are helpful, but an claim of conflict raised as a defense to seeking information when it is not.  Further, as has been demonstrated in this case, reliance on individual memories is not sufficient to identify responsive documents.  This occurred with the original documents in Ms. Voepel's possession.  This also occurred with the Gary Stuart materials.   Unlike Plaintiff's approach, Defendants hand searched through boxes of documents from  third-parties, had retired personnel search their personal files, and searched closets and cabinets at the City to ensure that individual memories were correct.  Defendants searched, and re-searched, despite the fact that City had already been under a Court order to conduct an exhaustive search far before this litigation as part of the habeas process.

Notably, it is also worth mentioning that Plaintiff's initial response to Request for Production No. 14 is not supported by the case law and is a boilerplate objection—one that persists today.   Ken Ray's knowledge of Saldate's history is a critical issue in this case as Plaintiff has now had to acknowledge. The attorney client privilege and work-product objections have also been revealed to be without merit given Plaintiff's admission that they have put at issue information related to the Brady/Giglio and concession that information on this topic is responsive.  The Court even ruled that there was a waiver on these issues based on Plaintiff's concession.  Yet, these objections still appear in Plaintiff's most recent supplemental response.  They should be removed.

Next, in the meet and confer call, Plaintiff's counsel suggested that they had responded to written discovery offering to allow Defendants to look through the Milke room of boxes.  Of note, until the Court's Order Plaintiff took the position that privilege material was intermingled in the boxes.  Thus, it is unknown how Defendants could have inspected the boxes at any earlier time if such an offer had been made.  Defendants have reviewed the discovery again and can find no such reference to an offer to review all of the remaining boxes (except for attorney client privilege).  Plaintiff did agree to make a certain number of limited boxes available, which Defendants did take advantage of and copied at their own expense—even though these boxes were responsive to specific discovery requests made by Defendants.  Defendants also inspected and obtained copies of the scrapbooks.  If Plaintiff intends to rely upon an offer to inspect all of the Milke boxes in the room please provide a specific reference to where this offer to review was made and when it was made.

*Expanded Questions and Prior Questions*

As explained in Defendants' correspondence, questions to Mr. Ray were expanded because of events coming to light after the Court's Order, including new documents being produced by Plaintiff.   The Court did not suggest in its Order that Defendants could not add questions based upon new information as this was specifically raised by Defendants as a potential at the hearing. These events also include Ms. Milke's continued deposition and her testimony, lack of memory, and related issues, which make Mr. Ray's testimony more critical in certain areas.

Plaintiff also claims that there are duplicate questions of what has already been asked in Mr. Ray's deposition. The questions, however, are not identical, and relate to Mr. Ray's general practice rather than specific information relative

to Plaintiff. Moreover, Defendants are entitled to repeat any questions that they can now refresh or challenge Mr. Ray's recollection with new documents that were disclosed—these include jail records, employment records, witness summaries, and the new English transcript of Debra Milke's book.  It is unfair for Plaintiff to insist that Ken Ray not be asked any questions where there is now a new source that might be used to refresh his recollection.

*In Camera Inspection*

Plaintiff's production of the Joe Marino letters and limited Ken Ray letters, establish the factual predicate for in camera inspection.  These letters identify areas of direct relevance to the litigation of this case.

*Gary Stuart*

The situation concerning Gary Stuart's file highlights the failures surrounding reliance on memory instead of retrieval and review of records.   Based upon Plaintiff's removal of the binders of material that Mr. Stuart possessed, it is clear that Mr. Stuart possessed information that Plaintiff's counsel believed to be protected by privilege.   Asking Mr. Stuart if he believed information was privileged, rather than reviewing it, is what appears to have lead to this failure.   This is what calls into question the entirety of Plaintiff's privilege log.  The log has been made without appropriate consideration of what documents third-parties actually have had in their possession.  Plaintiff was aware—before the Court's hearing—that the Defendants were challenging claims of privilege based upon Gary Stuart's materials, yet only made superficial efforts to determine the materials he had.

Notably, Gary Stuart did have email exchanges between Plaintiff's habeas team that related to tactics and case law on admissibility of the "other" Saldate cases.  He also had handwritten notes on testimony—testimony previously produced by Plaintiff with redactions.   This is material that Plaintiff had claimed to be privileged before it was discovered that Mr. Stuart had this material. As raised initially by Defendants, perhaps Mr. Stuart (a 50 year lawyer and expert on these matters) responded to Plaintiff's inquiry about privileged material with a negative response because he correctly endorses this Court's view that work product privilege ends when the representation ends.  Thus, it would be reasonable for him---as a experienced lawyer—to contend that he did not possess any privileged material because *there is no surviving work product privilege*.  If this is the case, it is not reasonable for Plaintiff to have failed to explore Mr. Stuart's understanding of the law and actually review the documents he possessed to ensure that what she was claiming was privileged on her privilege log actually was so.   Significant resources and Court time have already been wasted on this issue, which could have been resolved if Plaintiff had reviewed the material possessed by Mr. Stuart and carefully prepared the privilege log.

Rather than follow Defendants' repeated attempts to get Plaintiff do this work without the subpoena, Plaintiff persisted to make Defendants responsible for finding this information.   If not for the subpoena, Plaintiff would not have discovered the faulty inclusion of the Stuart documents on the privilege log and the inaccuracies about the information he possessed.   Plaintiff had numerous opportunities to discover this information, heed Defendants' suggestions that Plaintiff do a more complete job of responding to the Request for Production, but Plaintiff chose the path of avowing with certainy that Mr. Stuart had nothing that was privileged.  This was not the path Defendants suggested, it was the path Plaintiff chose rather than refusing Defendants' reasonable requests.

*Letters*

Plaintiff has known about the letters at issue since the 1990s—she wrote them.  She has had them in her possession for years longer than Defendants have. Plaintiff stands in the most knowledgeable position about the letters because she penned them.   As part of her initiation of this lawsuit, these letters should have been reviewed to ensure accurate information in the Complaint.  They should have been reviewed to determine if there was any third-party disclosure for the privilege log—specifically since Plaintiff has long been aware of these as a source of the same.  They should have been reviewed before the Court's hearing to address the Ken Ray questions.   If the letters were not reviewed, it is unknown how Plaintiff could advance an educated position that materials on the privilege log maintained their privileged status.  Plaintiff also should have reviewed the letters before putting forth their position statement to the

Court on waiver. It remains unclear if Plaintiff has reviewed the letters due to the insistence that Defendants provide specific citations to letters before Plaintiff will consider explicit waiver. At tremendous expense in terms of time and effort, Defendants did so even though it is Plaintiff's burden to prove the existence of a privilege and no waiver. Plaintiff has an independent obligation to know the contents of her own letters, notwithstanding their importance to the issues before the Court. If Plaintiff has not carefully reviewed the letters, she fails to meet her burden.

Defendants supplemented their lengthy response and provided additional bates labeled citations as review was continuing and Plaintiff declined to do this herself and declined to respond to Defendants' inquiry about cost-shifting. Further, Defendants believed that the meet and confer was to discuss the letters, but Plaintiff then indicated it was not. In fact, Plaintiff absolutely declined to address the letters in the telephonic meet and confer.

*Sword and Shield*

Plaintiff has selectively disclosed privileged information as a sword and shield. For example, during Susie Stinson's deposition, Plaintiff disclosed correspondence between Susie Stinson and Lori Voepel. Plaintiff selected certain material to disclose, while withholding other material. This is selective disclosure. Plaintiff also—as part of her habeas proceeding—selectively chose to disclose attorney client privileged information in the form of letters to Ken Ray, while withholding others.

Defendants stand on their lengthy citation of case law and discussion regarding explicit and implicit waiver as outlined in previous correspondence. We will await Plaintiff's further review of the bates labeled documents. Defendants further request that, if it has not been done, that Plaintiff review all of the letters disclosed in this matter to determine whether the items on the privilege log were disclosed to third-parties thereby eviscerating the privilege. If Plaintiff has not undertaken a review of documents for this express purpose, Defendants request that Plaintiff identify by bates labels the documents that were not reviewed to determine if there was express waiver. Defendants have raised this issue repeatedly surrounding the privilege log including after its production.

Tina

---

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Monday, November 26, 2018 4:53 PM
**To:** Lori Berke <Lori@berkelawfirm.com>
**Cc:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

Your extremely lengthy correspondence on November 16, 2018, contained numerous inaccuracies and covered many topics beyond the Court's order. We have already discussed many of these issues during our meet-and-confer call today. In any event, as indicated in our November 19th correspondence and on our phone call today, we respond here solely with respect to your proposed questions for Ken Ray and the scope of privilege.

**(1) _In Camera_ Review**

First, you purport to have made the threshold showing necessary to justify *in camera* inspection by the Court but do not cite any legal authority to that effect, indicate which documents you'd have the Court review, or provide any basis for why *in camera* review of those documents is reasonably likely to reveal evidence that information in those documents is not privileged. We therefore do not agree that you have established a sufficient factual basis for *in camera* review under Ninth Circuit law. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992) (requiring the party seeking *in camera* review to establish "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged").

**(2) Explicit Waiver**

Before discussing specifics, we note that the Court's order expressly directed you to *narrow* your questions to only those vital to your defense. In spite of this clear order, you not only *expanded* your questions, you didn't even remove the many questions that were already asked and answered by Mr. Ray in his deposition, specifically questions 4-5, 14, 22, 24, 38, 44-46, 49, 52, 56, 68, 77, 86, 89 & 92. For your reference, here are the citations from his deposition for each question:

Q4: pg. 112
Q5: pg. 112
Q14: pg. 112
Q22: pgs. 123-24
Q24: pg. 113
Q38: pg. 121
Q44: pg. 191
Q45-46: pgs. 127-28
Q49: pg. 166
Q52: pgs. 155-56
Q56: pgs. 127-28
Q68: pg. 133
Q77: pg. 133 (also duplicative with Q68)
Q86: pgs. 120-21
Q89: pg. 183
Q92: pgs. 127-28

We object to all these questions on the basis that you've already had the opportunity to ask them, and Mr. Ray has already provided answers. We note also that we've already agreed Mr. Ray can answer on the basis of express waiver for the following questions: 69-72, 74, and 91.

**(a) Letters**

According to your last correspondence, the vast majority of your proposed questions are purportedly justified on the basis of express waiver (3-5, 7-18, 22-24, 27-37, 39-48, 50-78, 85-92, 97-99). But despite our several requests -- and the Court's order directing you to provide a basis for *each* question -- you refused to provide us with citations for those questions. As we indicated in our November 19th email, we'd begun searching for a basis for waiver for each question but could identify an arguable basis for only a few questions. We further indicated that we were happy to evaluate whether there'd been express waiver for additional questions but could not do so without knowing the basis on which you'd asserted waiver. In your November 20th response, you explicitly rejected our request and asserted that you would not be providing any citations. As a result, we spent time over the Thanksgiving holiday continuing to review letters and attempting to figure out any potential basis for waiver of your questions. We did not hear anything further from you until this morning -- the date on which our response to your questions was due, per the Court's order -- when you provided an incomplete list of citations for your proposed questions. You then supplemented your list of citations twice throughout the day, including most recently at 3:00 p.m. EST when you knew the parties were scheduled to begin a lengthy meet-and-confer call that ended up lasting over two hours. Because you provided citations for dozens of

questions at the very last minute, we are unable to respond to you today with our position on each. We will try our best to let you know by end of day Wednesday once we've had a fair opportunity to review them.

(b) Habeas Exhibits

As outlined in our briefing and prior correspondence, we do not agree that the attachment of letters or affidavits in Plaintiff's habeas proceeding waives privilege beyond the scope of that proceeding. Per the Federal Rule of Evidence, the scope of waiver of attorney-client privilege is a matter of federal law when the court is a federal court, Fed. R. Evid. 501, as is true in this litigation. Under Ninth Circuit law, Plaintiff's waiver with respect to the ineffective assistance of counsel claim (including proffers of documentary evidence to support that claim) is limited to Plaintiff's habeas proceeding. *See Bittaker*, 331 F.3d at 722 (finding waiver limited "to adjudicating the ineffective assistance of counsel claim"); *Lambright v. Ryan*, 698 F.3d 808, 818 (9th Cir. 2012) ("We held [in *Bittaker*] that, although that petitioner impliedly waives his attorney-client privilege, such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim . . . "); *see also id* at 819 n.3 ("The privilege was impliedly waived when Lambright filed his ineffective assistance claim, so he could not later expressly waive the privilege simply by disclosing privileged documents without objection."). Indeed, courts in the Ninth Circuit have applied *Bittaker*'s logic even outside this context. *See, e.g., United States v. Gray*, 2007 WL 1848030, at *5 (N.D. Cal. June 27, 2007) ("In accordance with *Bittaker*, Cohan's privilege is not waived for subsequent or different IRS investigations or prosecutions."). We are also confused by the reference to Rule 502, which does not appear applicable.

(c) Gary Stuart

We do not agree that attorney-client or work product privilege has been waived for purposes of your proposed Ken Ray questions on the basis of Gary Stuart's access to certain materials in Plaintiff's file. Contrary to your assertion, Plaintiff's counsel *did* reach out to Gary Stuart back in 2016 (via Mike Kimerer) to determine whether he'd had access to the entire file or viewed any privileged materials. Mr. Stuart told us then -- as we relayed to you and accurately represented to the Court -- that he had conversations with Mike Kimerer and Lori Voepel about not accessing privileged materials, that Mike removed boxes containing privileged materials before granting Mr. Stuart access to the Milke room, that Mr. Stuart (himself a lawyer and officer of the court) still made a point to avoid anything he perceived could even possibly be privileged, and that he did not in fact view any privileged materials. Mr. Stuart has now relayed the same message directly to you in his November 2nd email to Kathleen Wieneke, in which he stated: "They [Mike and Lori] never gave me any information or documents they considered confidential under ER 1.6, or any work product privilege.. . . I did spend several long days in a conference room in his office thumbing through non-confidential documents relating to the case." It is our understanding that Mr. Stuart also told Ms. Wieneke the same in a telephone conversation. Defendants therefore do not have any good faith basis to claim that steps were not taken to protect the privilege or that Plaintiff's counsel has somehow misrepresented the course of these events to the Court.

With respect to the eight binders in Mr. Stuart's possession, Plaintiff's assertion of work-product privilege over those binders was appropriate as the composition of the binders reflects the mental processes of habeas counsel and many pages contain minor notations by counsel.  *See, e.g., United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ("The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation." (citing *United States v. Nobles*; 422 U.S. 225, 238 (1975)); *see also Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (observing that the work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation"). Nor do we agree that work product privilege was waived simply by the binders having been loaned to or viewed by Mr. Stuart. *See, e.g., Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D 575, 580 (N.D. Cal. 2007) ("[D]isclosure to a third party does not necessarily constitute a waiver of the work product privilege. For work product, protection is waived where disclosure of the otherwise privileged documents is made to a third party, *and* that disclosure enables an adversary to gain access to the information." (emphasis added)). But as Mr. Stuart has since provided you with copies of these binders, we can agree that work product privilege is now waived *solely* for those binders. To be clear, however, neither the binders themselves nor their contents constitute significant work product by habeas counsel; for example, they do not contain internal memoranda detailing case strategy or handwritten attorney notes. Nor do the binders contain *any* attorney-client privileged information.

In sum, neither Gary Stuart's review of non-confidential, non-privileged information in the Milke room nor the eight binders in his possession provide any basis for waiver to justify your proposed questions for Ken Ray -- particularly any basis to claim that attorney-client privilege has been waived.

(d) Misc.

To the extent you claim there's been an express waiver on the basis of a media tour in which Kirk Fowler was involved or through participation in interviews at which Mr. Fowler may have been present, we also do not agree. For one, as you're aware, attorneys and their legal teams may speak to the media regarding cases -- privilege is not waived on that basis alone so long as no privileged communications are shared. You have not provided any specific citations or support for your assertion that Kirk Fowler was speaking about his "work product protected activities" in a manner that in fact breached privilege. Moreover, even if some privilege were breached on that basis, it appears by your own characterization that it would be work-product privilege, *not* attorney-client privilege -- and so would not provide a basis for you asking Mr. Ray questions about his privileged communications with Plaintiff.

We also do not agree with your statement of the law when you assert that communications are protected as privileged only when a plaintiff proves they were made "primarily for the purpose of legal advice." The sole district court case you cite is in a patently different context -- where the plaintiff was claiming privilege over communications with *third-party consultants*, not his attorney. Clearly, communications between a capital defendant and her attorney in the context of representation are all protected by attorney-client privilege.

Finally, we reject your contention that Plaintiff here has endeavored to use any privileged communications or work product as both "a shield and a sword." Plaintiff has not relied on or attempted to use any privileged information to her benefit *in this litigation;* quite the opposite, Plaintiff has consistently asserted her privilege and argued against the disclosure of any privileged materials. The "fundamental fairness" concerns implicated in cases where a plaintiff uses some privileged material offensively while attempting to withhold the rest (in that same litigation) are therefore not implicated here.

**(3) Implicit Waiver**

We do not agree that Plaintiff has implicitly waived with respect to any issue beyond her legal team's pretrial knowledge of *Brady/Giglio* material relating to Detective Saldate. For an implicit waiver to occur, the attorney's knowledge -- *not* the underlying facts -- must be "vital to" the defense. In other words, implicit waiver occurs *only* "when the client tenders an issue touching directly upon the substance or content of an attorney-client communication—not when the testimony sought would be only one of several forms of indirect evidence about an issue." *In re Geothermal Res. Int'l, Inc.*, 93 F.3d 648, 652-53 (9th Cir. 1996) (quotation omitted); *see also Amlani*, 169 F.3d at 1195 ("[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation."); *Home Indem. Co. v. Lane Powell Moss & Miller,* 43 F.3d 1322, 1326 (9th Cir. 1995) (holding "even if plaintiffs affirmatively put into issue privileged information[,] . . . we are not convinced that the information was sufficiently vital to [the] defense to fulfill the third prong of the test"); *see also Cervantes v. CEMEX, Inc.*, No. 12-cv-1932 (LJO)(JLT), 2014 WL 4104200, at *9 (E.D. Cal. Aug. 18, 2014) ("[I]f mere showing" that privileged information would be "helpful" to a party "was deemed sufficient, the privilege would be completely eviscerated and clients would no longer be permitted to seek advice of counsel in confidence."). If a party has other means available for obtaining the information -- such as by document discovery, depositions, or cross-examination at trial -- than such information is not vital to the defense, and no implicit waiver has occurred. *See, e.g., In re Geothermal Res. Int'l*, 93 F.3d at 653 ("Since [counsel's] advice . . . would be only one form of indirect evidence regarding appellants' good faith, GEO did not waive the privilege by filing the breach of fiduciary duty claim."); *United States v. Sanchez*, No. 14-cr-429 (JAK)(SSX), 2016 WL 10651085, at *5 (C.D. Cal. Sept. 12, 2016) (finding no implicit waiver because the government had "alternative means of responding," including "present[ing] direct testimony from [the individual at issue] and crossexam[ining] the Defendant and others about their testimony").

Indeed, if mere usefulness or relevancy were the standard, then attorney-client privilege would be wholly eviscerated because in every case, every party would argue that privileged communications would aid in their prosecution or defense. For example, under Defendants' standard, counsels' communications with Saldate would not be protected by

privilege -- as whether Saldate ever told counsel that he fabricated police reports would be useful and relevant to Plaintiff's lawsuit. Such a rule is obviously not correct.

In sum, Plaintiff continues to object to any questions that Defendants propose to ask on the basis of implied waiver except for those that implicate her trial team's pretrial knowledge of any *Brady* material relating to Detective Saldate.

**(4) Additional / Other Questions**

Despite the Court's order to narrow your questions, you've now proposed asking 15 additional questions on top of your 147 original questions. Some of these questions relate to a phone message that Ken Ray received from an individual alleging that Saldate fabricated his confession. This is not new information, as that phone message was discussed in two of Plaintiff's habeas pleadings: her habeas brief on the merits filed in June 2002 and her Ninth Circuit opening brief filed in December 2007 -- both of which are in the public domain and have been in your possession since the outset of this litigation. Given that, you had every opportunity to ask Mr. Ray about his recollection of this message in his first deposition. That said, we do not object to you asking Mr. Ray the following new questions that do not implicate privileged communications: Questions 1-4. The remaining questions (Questions 5-9) *do* implicate privileged communications and/or attorney work product (in the form of mental processes and strategy). However, because this voicemail message arguably concerns *Brady* material about Detective Saldate's misconduct known to Mr. Ray before or during trial, we will consent to you asking those questions on the basis of implied waiver.

We object to your other new questions (Questions 10-15) as those implicate privileged communications and are not vital to any defense (see above discussion of implied waiver (3)).

Finally, for several of your original questions, you provide a basis other than waiver of privilege as justification for asking them. To the extent you believe these questions do not implicate privileged communications, you were free to have asked them at Mr. Ray's first deposition. Indeed, some of these questions *were* asked of Mr. Ray, and he answered (specifically, Questions 38 and 49). We thus object on the basis that these questions have been asked and answered. For the other questions -- namely, Questions 25 and 26 -- we do not agree that those questions do not contain privileged information, as they may implicate attorney-client communications and also involve attorney work-product. We therefore object on that basis.

We also do not agree that there has been express waiver for questions 80, 83, and 84 on the basis of any exhibits/affidavits filed in Plaintiff's habeas proceeding, as discussed in 2(b) *supra*.

For the other questions you contend are justified on the basis of express waiver, as mentioned above, we will make our best effort to respond to each with our position by end of day Wednesday. However, it seems clear at this juncture that the parties will not be able to reach agreement on the majority of these questions, and so we anticipate filing briefing according to the Court's schedule.

Thanks,

Katie


--
Katie McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013
T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.