# Exhibit 7

**Kim Penny**

| | |
|---|---|
| **From:** | Christina Retts |
| **Sent:** | Tuesday, January 29, 2019 4:33 PM |
| **To:** | Elizabeth Wang |
| **Cc:** | lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff; Michael Kimerer; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; bcorey@dubinconsulting.com; Jon Loevy; Brian Swift |
| **Subject:** | RE: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday |

Counsel,

That was not our understanding at all from prior communications as we expressly discussed having a third party vendor come and get documents.
To resolve this, if documents have already been produced, please identify what documents are in the room that have already been produced.  If the documents have not been produced, please identify what hasn't been produced.  It is not our obligation to undertake this review at our clients expense.  It is Plaintiff's obligation to undertake an appropriate review, get the file in Order, and produce what is responsive to outstanding discovery and new discovery. This is what the Judge Ordered back in October.
We want copies of everything that has not been produced.  When can those copies be provided?  If Plaintiff cannot identify what has and what has not been produced, it is our position that there is continued non-compliance with the Court's Order.

If Plaintiff is unwilling to identify what has not been produced and produce it, please let us know your availability for a meet and confer between counsel followed by a discovery dispute conference with the Court.

Tina

**From:** Elizabeth Wang <elizabethw@loevy.com>
**Sent:** Tuesday, January 29, 2019 4:25 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com; Jon Loevy <Jon@loevy.com>; Brian Swift <brians@loevy.com>
**Subject:** Re: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday

Counsel,

It was not Plaintiff's counsel's understanding that you would be going to Kimerer & Derrick and taking all of the boxes (over 30) and binders (over 20), which include original documents, and taking them offsite to be copied. Our understanding was that you wanted to inspect the room to see if there are documents that you don't already have that you want copies of. We are not comfortable with you taking all of the boxes and binders out of the possession of Kimerer & Derrick.

You can come to inspect the documents and if there is anything that you don't already have that you want to get copied or scanned, you can mark those with a tab or a sticky note and set them aside for a third-party copy service to copy. (Or if it's not voluminous, Mr. Kimerer's assistant can scan or copy it and send it to you.) But you will need to note which boxes the documents were taken from so that they can be put back the way that they were.

-Liz

Elizabeth Wang
Loevy & Loevy
2060 Broadway | Ste. 460
Boulder | CO 80302
T 720.328.5642
F 312.243.5902
www.loevy.com

On Tue, Jan 29, 2019 at 4:04 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

Our previous discussions with prior counsel involved an agreement with us to pick up and copy the boxes from the Milke room.  We just tried to arrange the same and were advised that the boxes were going to be inspected, not available for pickup for scanning and copying.

Is it now Plaintiff's position that the boxes will not be available to be copied and scanned?

Tina

**From:** Christina Retts
**Sent:** Tuesday, January 29, 2019 3:55 PM
**To:** 'Elizabeth Wang' <elizabethw@loevy.com>
**Cc:** lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com; Jon Loevy <Jon@loevy.com>; Brian Swift <brians@loevy.com>
**Subject:** RE: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday

Counsel,

Although we consider it to be Plaintiff's obligation to fully respond to discovery and determine what information is outstanding or has not been produced, we undertaken the effort to obtain this information and provide it below.  Additionally, we note that prior responses to discovery are insufficient and refer to massive bates ranges of documents (which do not indicate what is being withheld, if anything)—essentially data dumps that were poorly organized.  As a result, we request that Plaintiff review all prior discovery to ensure that all responsive information has been provided.  As we go through documents obtained from Ms. Bommersbach and items just disclosed, we have located additional material outlined below that we believe is responsive to discovery and has not been produced.  Additionally, we have gone through prior correspondence that was not addressed by prior counsel and identified what we believe to be outstanding issues.

As an initial matter, in the recently produced documents, it appears that there are no letters from Ken Ray to Debra Milke.  Will you please confirm whether such letters exist and have been withheld, or do not exist.  Similarly, there are limited letters authored by Anders Rosenquist and Kirk Fowler.  Will you please confirm whether such letters exist and have been withheld, or do not exist.

In a letter written from Ms. Milke to Mr. Ray, Ms. Milke quotes extensively from letters written from Mr. Styers to her and states that she kept all the letters.  These letters are responsive to a number of Defendants' discovery requests.  Will you please confirm that these letters have been searched for.  If they no longer exist, please identify the date of destruction. If they are/were being held by a third-party, please identify the third-party as third parties are within Ms. Milke's reasonable control for the purposes of responding to discovery and production of the same.

As it relates to the list of individuals below, the following individuals were not disclosed by Plaintiff in a disclosure statement or discovery response.  The relevant discovery responses are the City's RFP 4, 15; and COP Inerrogatories 1 & 10.

Billy Gumm

Linda Thompson

Richard de Uriate

Susan Smith

Pete Aleshire

Dr. Leonardo Garcia-Bunuel

Paul Huebl

Gary Bowen

Frankie Aue

Katrina Bland

Michael H. Fox

Ariane Milke

Mike Kiefer

Michael Burke

Randy Sukor

Irmy Richardson

Stephanie Thompson


As it relates to Mr. Aue, it is troubling that Mr. Aue was never disclosed in response to discovery requests as documents that have been produced show his extensive correspondence with Ms. Milke specifically about this case.  On June 27, 2018, at 1:30 p.m., we specifically asked Plaintiff to supplement her discovery responses as follows:  **Also, Plaintiff's responses to Request for Production Numbers 4 and 5 are deficient.  Please supplement Plaintiff's response to produce any and all letters, etc. received from Ingo Hasselbach, Frank Aue, Chris Passelti, Pat and Danny Endsley and C. Pacheco.  In addition to any and all letters/correspondence, produce any and all audio tapes exchanged between Plaintiff and all of the aforementioned individuals.  If these letters and/or tapes have been destroyed or are no longer in Plaintiff's custody and control, please identify the date and reason for destruction and/or identify the custodian of these materials.  Please supplement these responses immediately.**


We have not received a response to this request, which was again made on 11/27/2018.  Notably, the untimely produced Janna Bommersbach Transcript also revealed new information about the extensiveness of Mr. Aue's involvement in all aspects of Ms. Milke's life.  Now, it is our understanding that even though Ms. Milke provided Mr. Aue with numerous documents such that he intimately involved in all of her life activities, Mr. Aue takes the position that he is outside the subpoena power and the Debra Milke website is his work product.  The website is responsive to discovery requests and was authorized by Ms. Milke, part of the PR campaign, Ms. Milke contributed content, and it was taken down at some point.  Mr. Aue's efforts with the website were only undertaken because they were authorized by Ms. Milke.  As a result, we request that Ms. Milke ask for the materials back from Mr. Aue.  If she is unwilling to do so, or Mr. Aue will not provide documents if a request is made, please let us know as we would like to address this with the Court.


Next, we previously set forth—in lengthy email correspondences—our position on work product privilege and waiver—informed by the Court's inclination to find that there was no privilege that still exists as the privilege terminates at the end of the criminal representation.  Do you have access to that correspondence?  We previously asked for Plaintiff to provide any citation to case law that holds differently, but no such citation was provided.  Additionally, we previously extensively outlined all of the explicit waiver that occurred related to both work product and attorney client privilege.

In the privilege logs previously produced by Ms. Milke, there were news articles and factual material that was included. We raised an objection to including such articles on the privilege log as no privilege exists to underlying non-privileged matter and those matters do not become privileged simply because they are sent to a lawyer. This includes inmate correspondence that was piggybacked—i.e. sent as legal mail (mixed in with legal mail) even though it was not. Is Plaintiff still taking the position that material is privileged simply because it is attached to an attorney correspondence? If not, has that material been identified as part of the Milke room boxes that will be produced?

During the course of her incarceration, Ms. Milke also wrote many unsolicited letters to lawyers asking them to take her case. We previously requested that these materials be turned over. Plaintiff took the position that "such letters would be covered by attorney-client privilege and so not discoverable." We disagree that Ms. Milke had any attorney-client relationship with lawyers who she sent letters to simply as a result of the fact that she sent the letters. It is well established that receiving an unsolicited letter does not create an attorney client relationship. If these letters exist, they should be produced as responsive to Defendants' discovery requests.

In the new documents produced, Ms. Milke also writes about a book that she wrote that is 300 pages. Has this been produced?

Have there been any efforts made to determine what material still is in Germany and was not shredded by Ms. Milke?

The Bommersbach book also suggests that Ms. Milke saved all letters from Ms. Pickenpaugh, have these been produced?

Does the answering machine tape still exist from Ken Ray? If so, is it part of the Milke materials that are being made available?

In Ms. Bommersbah's book, there is a reference to a rebuttal to the Saldate report that was written in purple ink by Ms. Milke. We have not located this in the materials produced by Ms. Bommersbach. Does Plaintiff still possess a copy and, if so, is it part of the Milke materials that will be made available—it is our understanding that this effort was undertaken for the website?

Regarding the Kenneth Ray deposition questions, Plaintiff has not provided her response to each of the proposed questions and whether the privilege has been waived (either expressly or impliedly), as promised in the Katie McCarthy e-mail of 11/26/18. Plaintiff has still not addressed how the citations to the Joe Marino letters that we provided does not express waive her privilege as to the areas discussed. Is Plaintiff withdrawing any objection given the agreement to produce the Ken Ray letters?

Plaintiff needs to verify with Ms. Bommersbach whether she spoke to Kenneth Ray or where the quote regarding Plaintiff's first meeting with him on NSB033889 come from. If there is written material from Mr. Ray to Ms. Bommersbach that has not been produced, we believe that it is responsive to our discovery requests. If there is a recording, it should be produced. Plaintiff has made certain representations about how attorney client privileged information has been protected in this case. The numerous references in Bommerbach's book to attorney client privileged information puts Plaintiff on notice of a duty to investigate the extent to which Janna Bommersbach was provided attorney client privileged information by Ms. Milke before making any assertions about express waiver.

Finally, we continue to have grave concerns about Ms. Milke's ability to recall who she shared attorney client communications with for the purposes of evaluation of third-party disclosure. The previous privilege logs did not include any category of whether there had been third-party disclosure. Indeed, there were several instances where things were on the privilege log that were provided to third-parties—such as the 8 Gary Stuart binders and the box of raw data for the Saldate files (which was previously produced_. People that Ms. Milke corresponded regularly with were left out of discovery responses. Now, information disclosed shows that these individuals were copied on communications with Ms. Milke's legal team and she sent her attorney letters to them. This directly impacts the extent of the waiver of privilege as it relates to Mr. Kimmerer and Ms. Voepel. We request that Mr. Kimmerer and Ms. Voepel's email be searched to identify all email where third-parties were copied and that those emails be produced. Ms. Bommersbach's materials include attorney client privileged letters to/from Mr. Kimmerer and Ms. Voepel, which were also quoted in a published book. The waiver relates not only to those letters, but the subject matter of those letters—which based upon the breadth of those letters, leaves nothing behind. Moreover, Ms. Milke made no efforts to protect the privilege and shared letters with many different people. Please let us know what your position is as to whether Plaintiff will continue to assert privilege as to the communications with Mr. Kimmerer and Ms. Voepel.

Tina

**From:** Elizabeth Wang <elizabethw@loevy.com>
**Sent:** Wednesday, January 23, 2019 4:34 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com; Jon Loevy <Jon@loevy.com>; Brian Swift <brians@loevy.com>
**Subject:** Re: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday

Dear Christina,

With respect to the list of names that you received from Jana Bommersbach, in order for us to understand or respond to your request, could you please:

(1) identify which names are not familiar or who you believe have not appeared in the discovery, and

(2) which outstanding Requests for Production (RFP) you believe these names or individuals are responsive to.

Thanks,

Liz

Elizabeth Wang

Loevy & Loevy

2060 Broadway | Ste. 460

Boulder | CO 80302

T 720.328.5642

F 312.243.5902

www.loevy.com

On Wed, Jan 23, 2019 at 2:56 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

Plaintiff agreed to produce all correspondence between Mr. Ray, Mr. Rosenquist, and Mr. Fowler when January 4, 2019 status report was submitted to the Court.  Plaintiff also agreed to allow us access to the 31 boxes that remain in the Milke room once the work product documentation has been removed (as Plaintiff is still maintaining the position that work product is privileged).

It was represented that the correspondence would be easy to identify and produce within a week.  And it was our understanding that the Milke boxes could be made available shortly thereafter.  It has now been almost three weeks

and we have no materials.  The proposal of briefing—for March 8 being the deadline—was based upon Plaintiff's representations as to when documents would be produced.

When will these materials be produced? We need them ASAP to be able to comply with the March 8 deadline.  The Court issued an Order in October relating to the organization of the file materials.  Based upon that, the Defendants see no basis for this delay.

Additionally, Ms. Bommersbach identified the following individuals as those she interviewed:

- Debra Milke
- Anders Rosenquist
- Billy Gumm
- Susan Stodola
- Lori Voepel
- Mike Kimerer
- Linda Thompson
- Richard deUriarte
- Pat Galbraith
- Rick Romley
- Mark Milke
- Susan Smith
- Ernie Sweat
- Kirk Fowler
- Pete Aleshire
- Dr. Leonado Garcia-Bunuel
- Michele Milke
- Patricia Bacon Prust
- Noel Levy
- Don and Josephine Jones
- Paul Huebel
- Robin Ziluck
- Gary Bowen
- Frankie Aue
- Katrina Bland
- Michael H. Fox
- Ariane Milke
- Mike Kiefer
- Michael Burke
- Randy Sukor
- Gary Stuart
- Irmy Richardson
- Stephanie Thompson

Several of these names have not been disclosed before and we contend are responsive to outstanding RFPs.  Please identify the last known contact for these individuals and whether they are deceased as that relates to outstanding issues of whether journalist privilege applies to Ms. Bommersbach's materials she has held back. Please also supplement the discovery responses as necessary.   This is our second request as the first was made on 1/9/2019 and is attached.  We would also request that all outstanding items in the attached correspondence be addressed.

Next, in the materials disclosed recently in a supplemental disclosure statement as those possessed by Ms. Bommersbach, there are at first glance multiple letters from Mr. Kimmerer and Ms. Voepel.   Based upon just the brief review (which I am certain we will find more), we will be taking the position that all attorney client privileged material between Mr. Kimmerer and Ms. Voepel has been waived.  Additionally, based upon the procedural posture, we request that Plaintiff identify each and every person third party disclosure was made to of attorney client privileged information.  It is, however, not sufficient for Ms. Milke to rely upon her own memory.  To the extent that the lawyers who represented Ms. Milke are aware of third-party disclosure—such as to Mr. Aue or Mr. Galbraith—we request that those individuals specifically be identified and the scope of the disclosure identified as well.

Finally, there are multiple outstanding requests for information made before Plaintiff's new lawyers joined this case.  We would request that those be answered as well.

I am in trial now, but we will finish next week.  If there is disagreement, please let us know immediately so that we can schedule a meet and confer and bring this to the attention of the Court.

Tina

Tina

**From:** Elizabeth Wang <elizabethw@loevy.com>
**Sent:** Wednesday, January 9, 2019 3:47 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>; lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com
**Cc:** Jon Loevy <Jon@loevy.com>; David Owens <david@loevy.com>; Elizabeth Troyer <troyer@loevy.com>; Brian Swift <brians@loevy.com>
**Subject:** Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday

Dear Counsel,

As you know, NSB and Vanessa Buch are withdrawing from the case. The attorneys from my firm, Loevy & Loevy (specifically, Jon Loevy, David Owens, and myself) are substituting in for them on behalf of Plaintiff Debra Milke. I have copied Jon, David, and our paralegals Liz Troyer and Brian Swift on this email. Please include them in future correspondence.)

We will be submitting our PHV applications soon.

Given that we have just become involved in this case, we would like to file a motion for a short continuance of the status hearing currently set for Friday.

Do you have any objection to such a motion?

If not, please let me know what dates next week (or the following week, if you have no availability next week) you would be available to have the status hearing reset to.

Thank you.

Sincerely,

Liz

Elizabeth Wang

Loevy & Loevy

2060 Broadway | Ste. 460

Boulder | CO 80302

T 720.328.5642

F 312.243.5902

www.loevy.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.


---------- Forwarded message ----------
From: Christina Retts <cretts@wienekelawgroup.com>
To: Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>
Cc: Katie McCarthy <katie@nsbcivilrights.com>, Lori Berke <Lori@berkelawfirm.com>, "Robin E. Burgess" <Robin.Burgess@sandersparks.com>, Sally Odegard <sodegard@hoklaw.com>, "Michele N. Logan" <Michele.Logan@sandersparks.com>, Amelia Green <amelia@nsbcivilrights.com>, Artie Eaves <Artie.Eaves@sandersparks.com>, Genna Zappia <gzappia@hoklaw.com>, Jody Corbett <Jody@berkelawfirm.com>, Laine Roberts <Laine@berkelawfirm.com>, Joshua Dubin <jdubin@dubinconsulting.com>, Rhonda Neff <rneff@kimerer.com>, "MDK Kimerer, Michael" <MDK@kimerer.com>, Vanessa Buch <vanessabuch2@gmail.com>, Nick Brustin <nick@nsbcivilrights.com>, Kathleen Wieneke <kwieneke@wienekelawgroup.com>, Lindsey Piasecki <lpiasecki@wienekelawgroup.com>, Kim Penny <kpenny@wienekelawgroup.com>, Bruce Corey <bcorey@dubinconsulting.com>, Langston Glaude <langston@nsbcivilrights.com>
Bcc:
Date: Wed, 9 Jan 2019 17:39:46 +0000
Subject: RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,


Given the volume of material that was produced by Ms. Bommersbach and how some of it is maintained (on backers), we have yet to receive any copies of any of the materials from the vendor.   They will be rolling it out to us, but even receiving it will take time.


We received the following list of people who Ms. Bommersbach spoke with:

- Debra Milke
- Anders Rosenquist
- Billy Gumm
- Susan Stodola
- Lori Voepel
- Mike Kimerer
- Linda Thompson
- Richard deUriarte
- Pat Galbraith
- Rick Romley
- Mark Milke
- Susan Smith
- Ernie Sweat
- Kirk Fowler
- Pete Aleshire
- Dr. Leonado Garcia-Bunuel
- Michele Milke
- Patricia Bacon Prust
- Noel Levy
- Don and Josephine Jones
- Paul Huebel
- Robin Ziluck
- Gary Bowen
- Frankie Aue
- Katrina Bland
- Michael H. Fox
- Ariane Milke
- Mike Kiefer
- Michael Burke
- Randy Sukor
- Gary Stuart
- Irmy Richardson
- Stephanie Thompson

Some of these names are on Plaintiff's disclosures/responses to written discovery, some are not.  Note that although Ms. Bommersbach's counsel represented that the number was likely around 50, this list contains less individuals.  As a result, we will be carefully reviewing the materials that Ms. Bommersbach has to confirm that the above list is complete and will identify any additional names found after that review.  As there is some discrepancy between the number or names originally estimated by Ms. Bommersbach and the names provided, we want to ensure that the list is complete and that people have not been inadvertently left off because of failure to remember them.

To the extent that these names are not on Plaintiff's disclosure statements, please identify who these individuals are, the last contact information for them, and a summary of the information that they possess related to this

case. Please also confirm whether any individuals not previously identified (or previously identified) have been contacted and whether it has been determined that they held documents/acted as custodians of record for Ms. Milke. If any of these individuals are deceased, please let us know as that impacts additional material possessed by Ms. Bommersbach that has not been turned over and whether journalist privilege will protect those materials due to the unavailability of the materials from another source (such as contacting the person directly).

It is my understanding from our last conversation that you have made contact with Mr. Aue, who takes the position that any material he may have is beyond the scope of any subpoena as he is located outside the United States and that his work on the Debra Milke website is work product. Based upon this, Mr. Aue appears "unavailable." If this understanding is incorrect, please let us know.

If Ms. Bommersbach's conversations with Ms. Voepel and Mr. Kimmerer (or any other legal representative on this list) were recorded by them and any recording is in their possession, we would request that this material be turned over as it is directly relates to the privilege issue.

Thanks,

Tina

**From:** Christina Retts
**Sent:** Friday, December 21, 2018 1:19 PM
**To:** 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>
**Cc:** Katie McCarthy <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

The City Defendants cannot agree to the proposal regarding the privilege issue.

Note that we have made contact with Janna Bommersbach's counsel. She will be producing the materials that Ms. Milke provided to her, but not until January 4th. We have asked that this occur earlier, but she is out of town. We have suggested this occur on a rolling basis given our time constraints which were made clear to her counsel, but we believe that January 4th is the first time the documents will be made available. Her counsel has represented that the production will be voluminous. We further expect that there may be additional documents produced after this time as well.

Tina

**From:** Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>
**Sent:** Thursday, December 20, 2018 10:51 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Katie McCarthy <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Tina:

As Renata is deceased, we obviously cannot ask her. But from our review of documents and investigation so far, we are not aware of anything to substantiate this claim. If you have a specific source that you'd like to point us to, we can investigate further. But as it stands, we have no reason to believe this ever happened.

Anna

On Wed, Dec 19, 2018 at 5:48 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

It has just now come to our attention that Renata may have obtained a fake ID for the purpose of visiting Mr. Styers in prison.  Please identify the name that was used, if such ID was obtained, and whether the ID or any documentation related to it was destroyed by Ms. Milke when she went to Germany.   Please also confirm that any letters discussing or proposing the fake ID to be use as a means to thwart tracking Mr. Styers' visitation have been produced.

Tina

**From:** Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>
**Sent:** Wednesday, December 19, 2018 2:16 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Katie McCarthy <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Tina,

With respect to Ms. Bommersbach, we have not received or reviewed any documents she may have in her possession and so have no personal knowledge regarding their contents. We have, however, informed her lawyer in writing that it is our position she should respond to the subpoena with any responsive materials in her possession that were given to her by Debra. It is our understanding that she intends to comply but that her lawyer will be reaching out to you to coordinate timing and the means of production. It is also our understanding that Ms. Bommersbach is currently traveling and so may not be available to comply before the new year.

As for the Milke room, the documents that we make available there necessarily depend on the scope of privilege. Our efforts in ensuring the room is properly segregated would thus be affected by any agreement the parties reach on privilege. We're still happy to provide you with access -- and can do so in stages if you'd prefer -- but it was our understanding given the stay (and that you have not raised this issue since we gave your our proposal), that this would be dealt with once the parties reached agreement on privilege. If you'd like to move forward in the meantime, we can get back to you on timing for access to some of the documents. But we're now running up against the holidays and we will have to ensure someone is available to segregate out all privileged materials -- an effort that may be unnecessarily duplicative if the parties are able to reach an agreement on privilege.

Finally, you raised the confidentiality issue in the context of anticipated briefing on the privilege issue and your desire to avoid unnecessary sealed filings. But there is currently no briefing schedule in effect, and the need to file such briefing will be mooted if the parties reach agreement on privilege. We therefore do not believe this an issue that needs to be addressed immediately.

We understand that you will be meeting with your client tomorrow. Given that the January 4th deadline is fast approaching (and that most of our office will be out on vacation next week through the new year), we would appreciate hearing back from you tomorrow with an update on your position on the privilege issue so that we can determine whether it will be possible to resolve this issue by January 4 or if it would be preferable to request more time.

Thanks,

Anna

On Wed, Dec 19, 2018 at 1:02 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

This is a decision to be made by my client. I have a meeting tomorrow to discuss. As I am sure you can appreciate, the end of the year is a busy time for my client. I also raised the issue of preparing for a trial and the pretrial filings and hearings in our last discussion. Although we have been litigating this issue for months at considerable and unnecessary expense to my client (given the fact that these issues should have been investigated before Plaintiff even filed suit), Plaintiff only offered this proposal less than two weeks ago.

As a preliminary matter, prior to the stay, I sent multiple email correspondences requesting additional information to further evaluate the waiver issue. Plaintiff has not responded to any of those substantively. Plaintiff has made a proposal, but without answering any of the questions posed, which puts us at an severe information disadvantage. It is our position that the Plaintiff's proposal does not affect the necessity of Plaintiff's investigation on the issues raised because that investigation is likely to lead to information directly related to the Mike Kimmerer/Lori Voepel issue and could reveal that there is no basis for Plaintiff to assert any privilege for the Kirk Fowler/Ken Ray/Rosenquist information (notwithstanding the fact that we maintain that the material should be produced for Kirk Fowler/Ken Ray/Rosenquist--and should have long ago-- regardless of any new proposal because of explicit and implicit waiver).

Our understanding of the stay was that it was for Plaintiff to further investigate responsibility the issues raised by the Defendants—to include whether additional production of documents is necessary in response to Defendants' Requests for Production of Documents that were served years ago, as well as the new requests. There is an

obligation to investigate to determine complete responses to discovery given the new information and questions raised by the Bommersbach book that exists separate and apart from the privilege issue.   And, when this waiver issue was first raised and throughout the course of the proceedings related to it, there was a duty to investigate to determine the scope of third-party disclosures.  That duty also continues regardless of any proposal.

Additionally, we had asked when we would be able to pick up the boxes from the Milke room, which do not contain claimed privileged material, as Plaintiff offered.  Please let us know when we can send a runner to do that.   This is an issue that also exists separate from Plaintiff's proposal.

Next, has Ms. Milke directed Ms. Bommersbach to give her back the materials that she sent to her?  Ms. Milke owns the materials sent to Ms. Bommersbach and should ask for them back to be produced.  The book quotes from letters sent to Lori Voepel, discusses what appear to be interviews with Kirk Fowler and potentially also Ken Ray, and discusses what specifically was discussed at Ken Ray's first meeting with Debra Milke and quotes from what was said, among other things.  Materials sent to third parties are not privileged and should have been produced long ago.

Finally, several weeks ago we had asked for Plaintiff's position on the Joe Marino, Vince Felix letters, and all letters referenced in Janna's book and whether Plaintiff is contending they are covered by the confidentiality order.  It is our position that these letters fall outside because they were disclosed to third parties.  In some cases, multiple parties. These letters also do not fit the Ninth Circuit's test for confidentiality.   Please let us know your position as soon as possible as we intend to raise this with the Court.

Tina

**From:** Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>
**Sent:** Wednesday, December 19, 2018 10:32 AM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Katie McCarthy <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Tina,

During our phone call on December 7th, we proposed resolving the dispute over attorney-client privilege by voluntarily producing all privileged communications between Debra and Ken Ray, Kirk Fowler, and Anders Rosenquist -- and withdrawing our privilege objections to your proposed Ken Ray questions -- if Defendants would agree that such production did not constitute a further waiver of attorney-client privilege, including with respect to Mike Kimerer, Lori Voepel, and current civil counsel. You said you'd speak to the other Defendants and get back to us the following week with your position.

It's now been nearly two weeks, and we still haven't heard from you. Especially in light of the holidays next week, we are concerned that we will not be able to resolve these issues by January 4th when the current stay ends and we are required to provide a status update to the Court, let alone coordinate access to any documents to the extent necessary. If you want to jointly ask the Court to extend the stay and the deadline for providing a status update we would not oppose that, but until any such request is granted we are concerned about the impending deadline. Whatever your position, please update us ASAP so that we can take any necessary steps this week, before many in our office (and presumably yours) are out for the holidays.

Thanks,

Anna

On Tue, Dec 4, 2018 at 5:02 PM Anna Benvenutti Hoffmann <anna@nsbcivilrights.com> wrote:

That's fine. We will accept the edits and file.

Anna

On Tue, Dec 4, 2018 at 4:03 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Anna,

A proposed redlined version of the stay attached.  The order is fine as drafted.

As it was drafted, the stay came across more sounding like a request for an extension. It is our understanding that the Plaintiff specifically wants a stay, not an extension, so we have revised it to fit that vein.

Additionally, we have made some proposed revisions relating to discovery that will need to be completed.

Tina

**From:** Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>
**Sent:** Tuesday, December 4, 2018 12:04 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** Katie McCarthy <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

This is what we drafted. We proposed a month stay of all existing deadlines and then that we propose a new schedule for remaining deadlines when that is up. That should leave us open to addressing any time you need for your trial, etc. But let me know if you would prefer to style it differently.

Thanks,

Anna

On Tue, Dec 4, 2018 at 1:40 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

Per Plaintiff's request, I have conferred with co-Defendants regarding Plaintiff's request of a four week stay for Plaintiff to address the issues raised by Defendants (outlined below and in prior correspondence).

Defendants are agreeable to Plaintiff's requested stay.   Will Plaintiff please circulate a draft.

I would note that we may have to request additional time on the back end, as deemed necessary, as I start a trial from January 15-31, 2018.  Four weeks would place us at January 14.


Thanks,

Tina


**From:** Christina Retts
**Sent:** Wednesday, November 28, 2018 11:05 AM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>
**Cc:** 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log


Counsel,


On NSB034101-102, Janna Bommersbach writes about the letters that Debra exchanged with Lori Voepel, in fact, she cites, in quotes, to a September 10, 2002, letter Debbie wrote to Lori Voepel about the case and plans moving forward.

If you have produced this letter, please identify the bates labels for this document.   If you have not produced this letter, please produce it immediately as there has been an express waiver.  If it is on the privilege log, it needs to be removed.  Plaintiff has made certain representations about how attorney client privileged information has been protected in this case.  This reference puts Plaintiff on notice of a duty to investigate the extent to which Janna Bommersbach was provided attorney client privileged information by Ms. Milke before making any assertions about express waiver in the next pleading due on December 7, 2018.  The reference to Ms. Milke's long letters and the content of those letters is suggestive that additional attorney client communications were provided to Janna Bommersbach.


Additionally, on June 27, 2018, at 1:30 pm we sent correspondence to Plaintiff's counsel requesting supplementation of outstanding discovery as follows:  **Also, Plaintiff's responses to Request for Production Numbers 4  and 5 are deficient.  Please supplement Plaintiff's response to produce any and all letters, etc.**

**received from Ingo Hasselbach, Frank Aue, Chris Passelti, Pat and Danny Endsley and C. Pacheco. In addition to any and all letters/correspondence, produce any and all audio tapes exchanged between Plaintiff and all of the aforementioned individuals. If these letters and/or tapes have been destroyed or are no longer in Plaintiff's custody and control, please identify the date and reason for destruction and/or identify the custodian of these materials. Please supplement these responses immediately.**

Janna Bommersbach also quotes from many other letters in the book. To the extent that Plaintiff has claimed confidentiality over any of these letters, the confidential designation must be removed. Publication of the letters destroys any confidentiality.

All of the materials provided by Plaintiff to Janna Bommersbach are responsive to outstanding discovery requests notwithstanding the subpoena issued. If Plaintiff knows what was sent to Janna Bommersbach, it needs to be provided immediately as responsive to the discovery requests served two years ago. This information is critical to our ability to fully brief the privilege issue before the Court for the December 7, 2018 deadline, particularly where there are multiple references in the book to material appearing to otherwise be privileged that has lost any privileged status it may have enjoyed due to review by Ms. Bommersbach and publication.

This book also suggests that Ms. Milke has saved all letters from her sister, Sandy Pickenpaugh. It cites to the letters, particularly places where it states that Sandy maintained that she had not lied in any of her testimony. Please confirm that all letters from Sandy Pickenpaugh have been produced. If they have not, please produce them as they are responsive to discovery.

Please let us know when the boxes from the Milke room will be available for our third party vendor to pick up.

Tina

**From:** Christina Retts
**Sent:** Tuesday, November 27, 2018 5:12 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>
**Cc:** 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>;

'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

On another note,  Plaintiff has contended that various letters exchanged by Ms. Milke during the course of her incarceration are confidential.

It is our position that the Joe Marino letters should not be maintained as confidential.   These letters were disclosed by Joe to his boss, whose wife then maintained the letters before they were turned over to the state. From there they were viewed by multiple different people before ultimately being part of the retrial documents.

The Ninth Circuit has a high burden for confidential documents, these letters do not meet the Ninth Circuit's standard given their circulation before the civil case.

Please provide your position on whether you intend to assert that the Joe Marino letters are confidential and the basis for the same.  We would like to resolve this issue with the Court before the December 7, 2018, filing to avoid unnecessary sealing of documents.

Tina

**From:** Christina Retts
**Sent:** Tuesday, November 27, 2018 4:44 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; 'Lori Berke' <Lori@berkelawfirm.com>
**Cc:** 'Robin E. Burgess' <Robin.Burgess@sandersparks.com>; 'Sally Odegard' <sodegard@hoklaw.com>; 'Michele N. Logan' <Michele.Logan@sandersparks.com>; 'Amelia Green' <amelia@nsbcivilrights.com>; 'Anna Benvenutti Hoffmann' <anna@nsbcivilrights.com>; 'Artie Eaves' <Artie.Eaves@sandersparks.com>; 'Genna Zappia' <gzappia@hoklaw.com>; 'Jody Corbett' <Jody@berkelawfirm.com>; 'Laine Roberts' <Laine@berkelawfirm.com>; 'Joshua Dubin' <jdubin@dubinconsulting.com>; 'Rhonda Neff' <rneff@kimerer.com>; 'MDK Kimerer, Michael' <MDK@kimerer.com>; 'Vanessa Buch' <vanessabuch2@gmail.com>; 'Nick Brustin' <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; 'Bruce Corey' <bcorey@dubinconsulting.com>; 'Langston Glaude' <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

On NSB033889, the Bommersbach English Translation recently produced, there is a summary of Debra Milke's first meeting with Ken Ray and there are quotes that purportedly come from that meeting. The transcript states: "Kenneth Ray saw immediately that she was clueless. He'd report that he was stunned with Debra Milke— already the most vilified woman in the nation—asked him, 'Is it true my son is dead?' He said he stared at her in disbelief and then told her, 'yes, according to this report, you ordered his murder.'"

What Ms. Milke said during this meeting and what occurred would be privileged, but now it appears in a book. This is another form of express waiver.  Defendants are thus entitled to explore everything that was said in this meeting given the quotes disclosed in this book. Ms. Milke has not taken active steps to protect the information and it is in the public domain through this book.

Please also verify with Ms. Bommersbach whether she spoke to Mr. Ray, or where this quote comes from. If there is written material from Mr. Ray to Ms. Bommersbach that has not been produced, we believe that it is responsive to our discovery requests.  If there is a recording, it should be produced.

Tina

---

**From:** Christina Retts
**Sent:** Tuesday, November 27, 2018 1:05 PM
**To:** 'Katie McCarthy' <katie@nsbcivilrights.com>; Lori Berke <Lori@berkelawfirm.com>
**Cc:** Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green <amelia@nsbcivilrights.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves <Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett <Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael <MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude <langston@nsbcivilrights.com>
**Subject:** RE: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel,

We disagree with your contention of inaccuracies.   At the outset, we would note that Plaintiff's voluminous productions in this case have been far from organized, leading to Defendants spending significant resources identifying what is in the hundreds of PDFs produced that have only bates labels and no descriptions.  This is a case where Plaintiff is seeking multiple upon multiple millions of damages and has more than twice the number

of lawyers representing just her than the City Defendants have representing them. These PDFs produced by Plaintiff are not organized—such as all the habeas filings together, or all of the trial testimony together. Bates numbers are not similarly grouped—such that bates numbers for all of the habeas filings are not sequential. Rather a PDF of a court single court filing for the Special Action will follow a PDF of portions of the police report. Select exhibits from the habeas proceeding will not be grouped with the filing itself (ex. Exhibits 11a to 17 to the habeas are completely separated from the other exhibits and the filing itself, which does not even appear to be produced by Plaintiff in its entirety). For some of the Court files, Plaintiff produced single page TIFF's, with no labels, which had to be opened individually to determine what they were. This single TIFF manner of production has been routinely disfavored by Courts. On the disclosure statement itself, these documents were grouped into massive generic categories such as: "certain documents and transcripts relating to the pre-trial and post-trial motions and proceedings in The People of the State of New Arizona v. Debra Milke, Criminal case CR89-12631, including transcripts, post-conviction petitions, and judicial opinions (MILKE NSB006127-8330, MILKE_NSB0011798-12387)," or "various court filings from Debra Milke's post-conviction proceedings (Milke_NSB00023-318, Milke NSB004464-4736, MILKE_NSB04886-87, MILKE_NSB00488-4920, MILKE_NSB005991-6014)." That Plaintiff did not scan and OCR the documents at the outset was her choice. That Plaintiff chose a manner of organization of the file that is not productive, streamlined, or conducive to responding to discovery, is not a problem that should be shifted to Defendants. Defendants have had to live with this file disorganization while Plaintiff repeatedly uses it to complain about a burden that is self-created.

Despite the manner of production and Plaintiff's counsel's continued statements regarding their own acknowledgement of lack of organization of the file, Plaintiff continues to seek to place blame on Defendants for not bringing missing documents and needles in the haystack to Plaintiff's attention sooner. Plaintiff could have simply made a mea culpa, agreed that the new Ken Ray questions based upon this new information were allowable and moved on. Instead, Plaintiff first seeks to fault Defendants for her discovery transgressions. For example, Plaintiff seeks to shift blame to Defendants regarding the new affidavit disclosed by Kirk Fowler pertaining to knowledge of an alleged fabricated confession in another Saldate case, which was directly responsive to Requests for Production No. 13 and 14. Plaintiff states that this information was somewhere in post-trial filings, but does not identify the bates number for the filing or when it was produced. Notably, Plaintiff stated on the meet and confer, repeatedly, that it was impossible for Plaintiff to know the contents of every document in the file as there was simply too much information. Yet, Plaintiff turns around in what appears to be an attempt at "gotcha" to claim that Defendants are at fault for not asking Ken Ray or Kirk Fowler about some obscure reference buried in thousands of pages somewhere in Plaintiff's disorganized disclosures.

This reference in a pleading is not the same as the affidavit that Plaintiff's recently produced from Kirk Fowler, which was in her custody and control. Asking Ken Ray about his knowledge without the new document is far different than asking about his knowledge with the document, as recognized by the *Tennison* court. As Plaintiff is aware, Ken Ray had far from perfect recall of these topics. This affidavit is important to refreshing his recollection and there is no dispute that the affidavit was only identified after the Court ordered Plaintiff to organize her files—something the Court noted should have been done before the case was even filed. Timely organization and review of the Milke boxes would have revealed not only this affidavit, but the other documents that Plaintiff just found—jail records, employment records, witness summaries. Of note, the City specifically asked for the witness summaries that were just located after Ken Ray's deposition—in August. Yet, it took a Court Order to find those summaries and provide them to Defendants months later. Similarly, Plaintiff claimed that she would look for additional Ken Ray correspondence relating to Saldate, but only got around to doing it after the Court's Order and after discovery had technically closed (but for the Court extending it at the hearing). These new summaries found in the Court Ordered review were also directly responsive to Request for Production No. 6. Plaintiff did not make reasonable inquiry to find the responsive records and identify them in response to Defendants' Requests for Production and now seek to rely upon other references that they did not

identify in response to Defendants' requests.   Indeed, even after the Court's Order, additional materials are being produced—such as the English Version of the transcript of Debra Milke's second book.   Defendants still do not know what the author of this second book possesses, which may further reveal waiver.

Plaintiff's statements about Defendants' purported knowledge of the Kirk Fowler affidavit based upon a reference in a sea of thousands of pages of pleadings is more than frustrating in light of the specific discovery sent to Plaintiff on this very issue.  Defendants asked Plaintiff to identify this very specific information to avoid Defendants search for the proverbial needle—particularly as this information relates to a key claim in Plaintiff's case.  In Request for Production No. 13, Defendants requested:

> Produce all materials (including but not limited to police reports, transcripts, audio recordings, and/or witness statements) that Plaintiff or her criminal trial counsel, Ken Ray and.or his paralegal/office staff, possessed between December 2, 1989, and December 2, 1991, regarding any other criminal investigation that Detective Saldate was involved in, including but not limited to, the reference made by Ken Ray, in Plaintiff's criminal trial, to an interrogation occurring on December 19, 1987 at 3:40 in the afternoon.  See COP11692-3.

Plaintiff responded as follows:

> Plaintiff objects to this request as vague and unduly burdensome.  Plaintiff's file is no longer maintained in the form that it was created and maintained by Ken Ray between 1989 and 1991.  The information Defendant seeks would be more appropriately addressed by way of deposition testimony.  Subject to and without waiving these and the above-stated objections, Plaintiff responds that it is her belief and understanding that the reference made by Ken Ray was to the case State v. Running Eagle, CR 87-11508.  Plaintiff further responds that discovery is ongoing and she therefore reserves the right to supplement and/or amend her response.

In Request for Production No. 14, Defendants also requested:

> Produce all materials (including but not limited to police reports, transcripts, audio recordings, and/or witness statements) that Plaintiff or her criminal trial counsel, Ken Ray and/or his paralegal/office staff, possessed between December 2, 1989, and December 2, 1991, that pertain to the following statement in Plaintiff's letter to Ken Ray:  "Anyhow—as far as I see—the only thing we have to work out is Saldate's report.  That pig cop should be reprimanded for what he did and I don't understand how he got away with it before."  See C_05518.

Plaintiff responded as follows:

Plaintiff objects to this request as vague ("pertain to"), unduly burdensome, not calculated to lead to the discovery of admissible evidence, and seeking documents or things that are protected under the attorney work product doctrine and/or the attorney-client privilege.

Plaintiff never identified this new phone call, any habeas pleadings, or any affidavit, as responsive in four supplemental responses to these discovery requests.   Indeed, the affidavit itself was only identified <u>after</u> the Court's Order.   No mention is made of habeas proceedings and pleadings Plaintiff now cites to, although it appears to potentially be directly responsive. If Plaintiff possessed this information, it was required to be identified in response to the discovery and it was a discovery violation to have not done so.  If Plaintiff just found this information in the habeas filings, it is disingenuous to claim that Defendants should have found this needle when Plaintiff herself did not find/identify it in response to specific discovery requests—despite the fact that some of her habeas counsel remains involved in this case.

It does not appear that adequate inquiry was made to respond to Defendants' discovery requests.   Plaintiff did not contact Ken Ray before the filing of the case, or before his deposition, to ask him to determine what were his file materials or obtain his assistance in responding to this discovery—this is the reasonable inquiry required by the rules.   Indeed, Plaintiff even listed Ken Ray as a witness on her disclosure statement stating that "represented Debra Milke during her criminal trial in 1990 and is likely to have discoverable knowledge of the facts concerning these proceedings."   In listing Ken Ray as a witness and responding to Requests for Production, basic inquiries should have been made.   Instead, Plaintiff placed the burden back on Defendants to depose Ken Ray without the benefit of Plaintiff's identification of the responsive records. Indeed, Plaintiff made no attempt to have Ken Ray reconstruct parts of his file before his deposition.  And, since Ken Ray no longer possesses his file, he was unable to prepare before coming to the deposition by reviewing it.  Plaintiff went on to list lawyers Kemper, Rosenquist, Pulver, Chermack, Voepel, and Wake as witnesses in her disclosure, yet does not appear to have contacted them for information responsive to Requests for Production No. 13 and 14.

Plaintiff also raised a conflict of interest issue with counsel Lori Voepel, yet she lists Ms. Voepel as a witness.  To avoid any issue, Plaintiff should have simply obtained copies of all of the boxes that were in Ms. Voepel's possession and reviewed them, which appears was never fully attempted until after the Court's Order.  We do know, however, that at least some of Ms. Voepel's materials were obtained as demonstrated by the disclosure at Ms. Stinson's deposition. Materials cannot be sought from Ms. Voepel when they are helpful, but an claim of conflict raised as a defense to seeking information when it is not.   Further, as has been demonstrated in this case, reliance on individual memories is not sufficient to identify responsive documents.  This occurred with the original documents in Ms. Voepel's possession. This also occurred with the Gary Stuart materials.   Unlike Plaintiff's approach, Defendants hand searched through boxes of documents from  third-parties, had retired personnel search their personal files, and searched closets and cabinets at the City to ensure that individual memories were correct.  Defendants searched, and re-searched, despite the fact that City had already been under a Court order to conduct an exhaustive search far before this litigation as part of the habeas process.

Notably, it is also worth mentioning that Plaintiff's initial response to Request for Production No. 14 is not supported by the case law and is a boilerplate objection—one that persists today.  Ken Ray's knowledge of Saldate's history is a critical issue in this case as Plaintiff has now had to acknowledge. The attorney client privilege and work-product objections have also been revealed to be without merit given Plaintiff's admission that they have put at issue information related to the Brady/Giglio and concession that information on this topic is responsive.  The Court even ruled that there was a waiver on these issues based on Plaintiff's concession.  Yet, these objections still appear in Plaintiff's most recent supplemental response.   They should be removed.

Next, in the meet and confer call, Plaintiff's counsel suggested that they had responded to written discovery offering to allow Defendants to look through the Milke room of boxes.  Of note, until the Court's Order Plaintiff took the position that privilege material was intermingled in the boxes.  Thus, it is unknown how Defendants could have inspected the boxes at any earlier time if such an offer had been made.  Defendants have reviewed the discovery again and can find no such reference to an offer to review all of the remaining boxes (except for attorney client privilege).  Plaintiff did agree to make a certain number of limited boxes available, which Defendants did take advantage of and copied at their own expense—even though these boxes were responsive to specific discovery requests made by Defendants.  Defendants also inspected and obtained copies of the scrapbooks.  If Plaintiff intends to rely upon an offer to inspect all of the Milke boxes in the room please provide a specific reference to where this offer to review was made and when it was made.

*Expanded Questions and Prior Questions*

As explained in Defendants' correspondence, questions to Mr. Ray were expanded because of events coming to light after the Court's Order, including new documents being produced by Plaintiff.  The Court did not suggest in its Order that Defendants could not add questions based upon new information as this was specifically raised by Defendants as a potential at the hearing. These events also include Ms. Milke's continued deposition and her testimony, lack of memory, and related issues, which make Mr. Ray's testimony more critical in certain areas.

Plaintiff also claims that there are duplicate questions of what has already been asked in Mr. Ray's deposition. The questions, however, are not identical, and relate to Mr. Ray's general practice rather than specific information relative to Plaintiff. Moreover, Defendants are entitled to repeat any questions that they can now refresh or challenge Mr. Ray's recollection with new documents that were disclosed—these include jail records, employment records, witness summaries, and the new English transcript of Debra Milke's book.  It is unfair for Plaintiff to insist that Ken Ray not be asked any questions where there is now a new source that might be used to refresh his recollection.

*In Camera Inspection*

Plaintiff's production of the Joe Marino letters and limited Ken Ray letters, establish the factual predicate for in camera inspection.  These letters identify areas of direct relevance to the litigation of this case.

*Gary Stuart*

The situation concerning Gary Stuart's file highlights the failures surrounding reliance on memory instead of retrieval and review of records.   Based upon Plaintiff's removal of the binders of material that Mr. Stuart possessed, it is clear that Mr. Stuart possessed information that Plaintiff's counsel believed to be protected by privilege.   Asking Mr. Stuart if he believed information was privileged, rather than reviewing it, is what appears to have lead to this failure.   This is what calls into question the entirety of Plaintiff's privilege log.  The log has been made without appropriate consideration of what documents third-parties actually have had in their possession.   Plaintiff was aware—before the Court's hearing—that the Defendants were challenging claims of privilege based upon Gary Stuart's materials, yet only made superficial efforts to determine the materials he had.

Notably, Gary Stuart did have email exchanges between Plaintiff's habeas team that related to tactics and case law on admissibility of the "other" Saldate cases.  He also had handwritten notes on testimony—testimony previously produced by Plaintiff with redactions.   This is material that Plaintiff had claimed to be privileged before it was discovered that Mr. Stuart had this material. As raised initially by Defendants, perhaps Mr. Stuart (a 50 year lawyer and expert on these matters) responded to Plaintiff's inquiry about privileged material with a negative response because he correctly endorses this Court's view that work product privilege ends when the representation ends.  Thus, it would be reasonable for him---as a experienced lawyer—to contend that he did not possess any privileged material because *there is no surviving work product privilege*.  If this is the case, it is not reasonable for Plaintiff to have failed to explore Mr. Stuart's understanding of the law and actually review the documents he possessed to ensure that what she was claiming was privileged on her privilege log actually was so.   Significant resources and Court time have already been wasted on this issue, which could have been resolved if Plaintiff had reviewed the material possessed by Mr. Stuart and carefully prepared the privilege log.

Rather than follow Defendants' repeated attempts to get Plaintiff do this work without the subpoena, Plaintiff persisted to make Defendants responsible for finding this information.   If not for the subpoena, Plaintiff would not have discovered the faulty inclusion of the Stuart documents on the privilege log and the inaccuracies about the information he possessed.   Plaintiff had numerous opportunities to discover this information, heed Defendants' suggestions that Plaintiff do a more complete job of responding to the Request for Production, but Plaintiff chose the path of avowing with certainy that Mr. Stuart had nothing that was privileged.  This was not the path Defendants suggested, it was the path Plaintiff chose rather than refusing Defendants' reasonable requests.

*Letters*

Plaintiff has known about the letters at issue since the 1990s—she wrote them.  She has had them in her possession for years longer than Defendants have. Plaintiff stands in the most knowledgeable position about the letters because she penned them.   As part of her initiation of this lawsuit, these letters should have been reviewed to ensure accurate information in the Complaint.  They should have been reviewed to determine if

there was any third-party disclosure for the privilege log—specifically since Plaintiff has long been aware of these as a source of the same.  They should have been reviewed before the Court's hearing to address the Ken Ray questions.  If the letters were not reviewed, it is unknown how Plaintiff could advance an educated position that materials on the privilege log maintained their privileged status.  Plaintiff also should have reviewed the letters before putting forth their position statement to the Court on waiver.  It remains unclear if Plaintiff has reviewed the letters due to the insistence that Defendants provide specific citations to letters before Plaintiff will consider explicit waiver.  At tremendous expense in terms of time and effort, Defendants did so even though it is Plaintiff's burden to prove the existence of a privilege and no waiver.  Plaintiff has an independent obligation to know the contents of her own letters, notwithstanding their importance to the issues before the Court.  If Plaintiff has not carefully reviewed the letters, she fails to meet her burden.

Defendants supplemented their lengthy response and provided additional bates labeled citations as review was continuing and Plaintiff declined to do this herself and declined to respond to Defendants' inquiry about cost-shifting.  Further, Defendants believed that the meet and confer was to discuss the letters, but Plaintiff then indicated it was not.  In fact, Plaintiff absolutely declined to address the letters in the telephonic meet and confer.

*Sword and Shield*

Plaintiff has selectively disclosed privileged information as a sword and shield.  For example, during Susie Stinson's deposition, Plaintiff disclosed correspondence between Susie Stinson and Lori Voepel.  Plaintiff selected certain material to disclose, while withholding other material.  This is selective disclosure.  Plaintiff also—as part of her habeas proceeding—selectively chose to disclose attorney client privileged information in the form of letters to Ken Ray, while withholding others.

Defendants stand on their lengthy citation of case law and discussion regarding explicit and implicit waiver as outlined in previous correspondence.  We will await Plaintiff's further review of the bates labeled documents.  Defendants further request that, if it has not been done, that Plaintiff review all of the letters disclosed in this matter to determine whether the items on the privilege log were disclosed to third-parties thereby eviscerating the privilege.  If Plaintiff has not undertaken a review of documents for this express purpose, Defendants request that Plaintiff identify by bates labels the documents that were not reviewed to determine if there was express waiver.  Defendants have raised this issue repeatedly surrounding the privilege log including after its production.

Tina

**From:** Katie McCarthy <katie@nsbcivilrights.com>
**Sent:** Monday, November 26, 2018 4:53 PM
**To:** Lori Berke <Lori@berkelawfirm.com>
**Cc:** Christina Retts <cretts@wienekelawgroup.com>; Robin E. Burgess <Robin.Burgess@sandersparks.com>; Sally
Odegard <sodegard@hoklaw.com>; Michele N. Logan <Michele.Logan@sandersparks.com>; Amelia Green
<amelia@nsbcivilrights.com>; Anna Benvenutti Hoffmann <anna@nsbcivilrights.com>; Artie Eaves
<Artie.Eaves@sandersparks.com>; Genna Zappia <gzappia@hoklaw.com>; Jody Corbett
<Jody@berkelawfirm.com>; Laine Roberts <Laine@berkelawfirm.com>; Joshua Dubin
<jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; MDK Kimerer, Michael
<MDK@kimerer.com>; Vanessa Buch <vanessabuch2@gmail.com>; Nick Brustin <nick@nsbcivilrights.com>;
Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>;
Kim Penny <kpenny@wienekelawgroup.com>; Bruce Corey <bcorey@dubinconsulting.com>; Langston Glaude
<langston@nsbcivilrights.com>
**Subject:** Re: Milke: Plaintiff's Updated Responses and Privilege Log

Counsel:

Your extremely lengthy correspondence on November 16, 2018, contained numerous inaccuracies and covered
many topics beyond the Court's order. We have already discussed many of these issues during our meet-and-
confer call today. In any event, as indicated in our November 19th correspondence and on our phone call today,
we respond here solely with respect to your proposed questions for Ken Ray and the scope of privilege.

## (1) *In Camera* Review

First, you purport to have made the threshold showing necessary to justify *in camera* inspection by the Court but
do not cite any legal authority to that effect, indicate which documents you'd have the Court review, or provide
any basis for why *in camera* review of those documents is reasonably likely to reveal evidence that information
in those documents is not privileged. We therefore do not agree that you have established a sufficient factual
basis for *in camera* review under Ninth Circuit law. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th
Cir. 1992) (requiring the party seeking *in camera* review to establish "a factual basis sufficient to support a
reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is
not privileged").

## (2) Explicit Waiver

Before discussing specifics, we note that the Court's order expressly directed you to *narrow* your questions to
only those vital to your defense. In spite of this clear order, you not only *expanded* your questions, you didn't
even remove the many questions that were already asked and answered by Mr. Ray in his deposition, specifically
questions 4-5, 14, 22, 24, 38, 44-46, 49, 52, 56, 68, 77, 86, 89 & 92. For your reference, here are the citations
from his deposition for each question:

Q4: pg. 112

Q5: pg. 112

Q14: pg. 112

Q22: pgs. 123-24

Q24: pg. 113

Q38: pg. 121

Q44: pg. 191

Q45-46: pgs. 127-28

Q49: pg. 166

Q52: pgs. 155-56

Q56: pgs. 127-28

Q68: pg. 133

Q77: pg. 133 (also duplicative with Q68)

Q86: pgs. 120-21

Q89: pg. 183

Q92: pgs. 127-28


We object to all these questions on the basis that you've already had the opportunity to ask them, and Mr. Ray has already provided answers. We note also that we've already agreed Mr. Ray can answer on the basis of express waiver for the following questions: 69-72, 74, and 91.


(a) Letters

According to your last correspondence, the vast majority of your proposed questions are purportedly justified on the basis of express waiver (3-5, 7-18, 22-24, 27-37, 39-48, 50-78, 85-92, 97-99). But despite our several requests -- and the Court's order directing you to provide a basis for *each* question -- you refused to provide us with citations for those questions. As we indicated in our November 19th email, we'd begun searching for a basis for waiver for each question but could identify an arguable basis for only a few questions. We further indicated that we were happy to evaluate whether there'd been express waiver for additional questions but could not do so without knowing the basis on which you'd asserted waiver. In your November 20th response, you explicitly rejected our request and asserted that you would not be providing any citations. As a result, we spent time over the Thanksgiving holiday continuing to review letters and attempting to figure out any potential basis for waiver

of your questions. We did not hear anything further from you until this morning -- the date on which our response to your questions was due, per the Court's order -- when you provided an incomplete list of citations for your proposed questions. You then supplemented your list of citations twice throughout the day, including most recently at 3:00 p.m. EST when you knew the parties were scheduled to begin a lengthy meet-and-confer call that ended up lasting over two hours. Because you provided citations for dozens of questions at the very last minute, we are unable to respond to you today with our position on each. We will try our best to let you know by end of day Wednesday once we've had a fair opportunity to review them.

(b) Habeas Exhibits

As outlined in our briefing and prior correspondence, we do not agree that the attachment of letters or affidavits in Plaintiff's habeas proceeding waives privilege beyond the scope of that proceeding. Per the Federal Rule of Evidence, the scope of waiver of attorney-client privilege is a matter of federal law when the court is a federal court, Fed. R. Evid. 501, as is true in this litigation. Under Ninth Circuit law, Plaintiff's waiver with respect to the ineffective assistance of counsel claim (including proffers of documentary evidence to support that claim) is limited to Plaintiff's habeas proceeding. See Bittaker, 331 F.3d at 722 (finding waiver limited "to adjudicating the ineffective assistance of counsel claim"); Lambright v. Ryan, 698 F.3d 808, 818 (9th Cir. 2012) ("We held [in Bittaker] that, although that petitioner impliedly waives his attorney-client privilege, such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim . . . "); see also id at 819 n.3 ("The privilege was impliedly waived when Lambright filed his ineffective assistance claim, so he could not later expressly waive the privilege simply by disclosing privileged documents without objection."). Indeed, courts in the Ninth Circuit have applied Bittaker's logic even outside this context. See, e.g., United States v. Gray, 2007 WL 1848030, at *5 (N.D. Cal. June 27, 2007) ("In accordance with Bittaker, Cohan's privilege is not waived for subsequent or different IRS investigations or prosecutions."). We are also confused by the reference to Rule 502, which does not appear applicable.

(c) Gary Stuart

We do not agree that attorney-client or work product privilege has been waived for purposes of your proposed Ken Ray questions on the basis of Gary Stuart's access to certain materials in Plaintiff's file. Contrary to your assertion, Plaintiff's counsel did reach out to Gary Stuart back in 2016 (via Mike Kimerer) to determine whether he'd had access to the entire file or viewed any privileged materials. Mr. Stuart told us then -- as we relayed to you and accurately represented to the Court -- that he had conversations with Mike Kimerer and Lori Voepel about not accessing privileged materials, that Mike removed boxes containing privileged materials before granting Mr. Stuart access to the Milke room, that Mr. Stuart (himself a lawyer and officer of the court) still made a point to avoid anything he perceived could even possibly be privileged, and that he did not in fact view any privileged materials. Mr. Stuart has now relayed the same message directly to you in his November 2nd email to Kathleen Wieneke, in which he stated: "They [Mike and Lori] never gave me any information or documents they considered confidential under ER 1.6, or any work product privilege.. . . I did spend several long days in a conference room in his office thumbing through non-confidential documents relating to the case." It is our understanding that Mr. Stuart also told Ms. Wieneke the same in a telephone conversation. Defendants therefore do not have any good faith basis to claim that steps were not taken to protect the privilege or that Plaintiff's counsel has somehow misrepresented the course of these events to the Court.

With respect to the eight binders in Mr. Stuart's possession, Plaintiff's assertion of work-product privilege over those binders was appropriate as the composition of these binders reflects the mental processes of habeas

counsel and many pages contain minor notations by counsel. *See, e.g.*, *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) ("The work-product doctrine covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation." (citing *United States v. Nobles*; 422 U.S. 225, 238 (1975)); *see also Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (observing that the work product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation"). Nor do we agree that work product privilege was waived simply by the binders having been loaned to or viewed by Mr. Stuart. *See, e.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D 575, 580 (N.D. Cal. 2007) ("[D]isclosure to a third party does not necessarily constitute a waiver of the work product privilege. For work product, protection is waived where disclosure of the otherwise privileged documents is made to a third party, *and* that disclosure enables an adversary to gain access to the information." (emphasis added)). But as Mr. Stuart has since provided you with copies of these binders, we can agree that work product privilege is now waived *solely* for those binders. To be clear, however, neither the binders themselves nor their contents constitute significant work product by habeas counsel; for example, they do not contain internal memoranda detailing case strategy or handwritten attorney notes. Nor do the binders contain *any* attorney-client privileged information.

In sum, neither Gary Stuart's review of non-confidential, non-privileged information in the Milke room nor the eight binders in his possession provide any basis for waiver to justify your proposed questions for Ken Ray -- particularly any basis to claim that attorney-client privilege has been waived.

(d) <u>Misc.</u>

To the extent you claim there's been an express waiver on the basis of a media tour in which Kirk Fowler was involved or through participation in interviews at which Mr. Fowler may have been present, we also do not agree. For one, as you're aware, attorneys and their legal teams may speak to the media regarding cases -- privilege is not waived on that basis alone so long as no privileged communications are shared. You have not provided any specific citations or support for your assertion that Kirk Fowler was speaking about his "work product protected activities" in a manner that in fact breached privilege. Moreover, even if some privilege were breached on that basis, it appears by your own characterization that it would be work-product privilege, *not* attorney-client privilege -- and so would not provide a basis for you asking Mr. Ray questions about his privileged communications with Plaintiff.

We also do not agree with your statement of the law when you assert that communications are protected as privileged only when a plaintiff proves they were made "primarily for the purpose of legal advice." The sole district court case you cite is in a patently different context -- where the plaintiff was claiming privilege over communications with *third-party consultants*, not his attorney. Clearly, communications between a capital defendant and her attorney in the context of representation are all protected by attorney-client privilege.

Finally, we reject your contention that Plaintiff here has endeavored to use any privileged communications or work product as both "a shield and a sword." Plaintiff has not relied on or attempted to use any privileged information to her benefit *in this litigation;* quite the opposite, Plaintiff has consistently asserted her privilege and argued against the disclosure of any privileged materials. The "fundamental fairness" concerns implicated in cases where a plaintiff uses some privileged material offensively while attempting to withhold the rest (in that <u>same</u> litigation) are therefore not implicated here.

**(3) Implicit Waiver**

We do not agree that Plaintiff has implicitly waived with respect to any issue beyond her legal team's pretrial knowledge of *Brady/Giglio* material relating to Detective Saldate. For an implicit waiver to occur, the attorney's knowledge -- *not* the underlying facts -- must be "vital to" the defense. In other words, implicit waiver occurs *only* "when the client tenders an issue touching directly upon the substance or content of an attorney-client communication—not when the testimony sought would be only one of several forms of indirect evidence about an issue." *In re Geothermal Res. Int'l, Inc.*, 93 F.3d 648, 652-53 (9th Cir. 1996) (quotation omitted); *see also Amlani*, 169 F.3d at 1195 ("[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation."); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (holding "even if plaintiffs affirmatively put into issue privileged information[,] . . . we are not convinced that the information was sufficiently vital to [the] defense to fulfill the third prong of the test"); *see also Cervantes v. CEMEX, Inc.*, No. 12-cv-1932 (LJO)(JLT), 2014 WL 4104200, at *9 (E.D. Cal. Aug. 18, 2014) ("[If] mere showing" that privileged information would be "helpful" to a party "was deemed sufficient, the privilege would be completely eviscerated and clients would no longer be permitted to seek advice of counsel in confidence."). If a party has other means available for obtaining the information -- such as by document discovery, depositions, or cross-examination at trial -- than such information is not vital to the defense, and no implicit waiver has occurred. *See, e.g., In re Geothermal Res. Int'l*, 93 F.3d at 653 ("Since [counsel's] advice . . . would be only one form of indirect evidence regarding appellants' good faith, GEO did not waive the privilege by filing the breach of fiduciary duty claim."); *United States v. Sanchez*, No. 14-cr-429 (JAK)(SSX), 2016 WL 10651085, at *5 (C.D. Cal. Sept. 12, 2016) (finding no implicit waiver because the government had "alternative means of responding," including "present[ing] direct testimony from [the individual at issue] and crossexam[ining] the Defendant and others about their testimony").

Indeed, if mere usefulness or relevancy were the standard, then attorney-client privilege would be wholly eviscerated because in every case, every party would argue that privileged communications would aid in their prosecution or defense. For example, under Defendants' standard, counsels' communications with Saldate would not be protected by privilege -- as whether Saldate ever told counsel that he fabricated police reports would be useful and relevant to Plaintiff's lawsuit. Such a rule is obviously not correct.

In sum, Plaintiff continues to object to any questions that Defendants propose to ask on the basis of implied waiver except for those that implicate her trial team's pretrial knowledge of any *Brady* material relating to Detective Saldate.

**(4) Additional / Other Questions**

Despite the Court's order to narrow your questions, you've now proposed asking 15 additional questions on top of your 147 original questions. Some of these questions relate to a phone message that Ken Ray received from an individual alleging that Saldate fabricated his confession. This is not new information, as that phone message was discussed in two of Plaintiff's habeas pleadings: her habeas brief on the merits filed in June 2002 and her Ninth Circuit opening brief filed in December 2007 -- both of which are in the public domain and have been in your possession since the outset of this litigation. Given that, you had every opportunity to ask Mr. Ray about his recollection of this message in his first deposition. That said, we do not object to you asking Mr. Ray the following new questions that do not implicate privileged communications: Questions 1-4. The remaining

questions (Questions 5-9) *do* implicate privileged communications and/or attorney work product (in the form of mental processes and strategy). However, because this voicemail message arguably concerns *Brady* material about Detective Saldate's misconduct known to Mr. Ray before or during trial, we will consent to you asking those questions on the basis of implied waiver.

We object to your other new questions (Questions 10-15) as those implicate privileged communications and are <u>not</u> vital to any defense (see above discussion of implied waiver (3)).

Finally, for several of your original questions, you provide a basis other than waiver of privilege as justification for asking them. To the extent you believe these questions do not implicate privileged communications, you were free to have asked them at Mr. Ray's first deposition. Indeed, some of these questions *were* asked of Mr. Ray, and he answered (specifically, Questions 38 and 49). We thus object on the basis that these questions have been asked and answered. For the other questions -- namely, Questions 25 and 26 -- we do <u>not</u> agree that those questions do not contain privileged information, as they may implicate attorney-client communications and also involve attorney work-product. We therefore object on that basis.

We also do not agree that there has been express waiver for questions 80, 83, and 84 on the basis of any exhibits/affidavits filed in Plaintiff's habeas proceeding, as discussed in 2(b) *supra*.

For the other questions you contend are justified on the basis of express waiver, as mentioned above, we will make our best effort to respond to each with our position by end of day Wednesday. However, it seems clear at this juncture that the parties will not be able to reach agreement on the majority of these questions, and so we anticipate filing briefing according to the Court's schedule.

Thanks,

Katie

--

Katie McCarthy

Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor | NYC 10013

T: (212) 965-9081 | F: (212) 965-9084
www.nsbcivilrights.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

--

Anna Benvenutti Hoffmann

Neufeld Scheck & Brustin, LLP

99 Hudson St, 8th floor

New York, NY 10013

212-965-9081

212-965-9084 (fax)

www.nsbcivilrights.com

--

Anna Benvenutti Hoffmann

Neufeld Scheck & Brustin, LLP

99 Hudson St, 8th floor

New York, NY 10013

212-965-9081

212-965-9084 (fax)

www.nsbcivilrights.com

--

Anna Benvenutti Hoffmann

Neufeld Scheck & Brustin, LLP

99 Hudson St, 8th floor

New York, NY 10013

212-965-9081

212-965-9084 (fax)

www.nsbcivilrights.com

--

Anna Benvenutti Hoffmann

Neufeld Scheck & Brustin, LLP

99 Hudson St, 8th floor

New York, NY 10013

212-965-9081

212-965-9084 (fax)

www.nsbcivilrights.com

--

Anna Benvenutti Hoffmann

Neufeld Scheck & Brustin, LLP

99 Hudson St, 8th floor

New York, NY 10013

212-965-9081

212-965-9084 (fax)

www.nsbcivilrights.com

**Kim Penny**

| | |
|---|---|
| **From:** | Elizabeth Wang <elizabethw@loevy.com> |
| **Sent:** | Thursday, January 31, 2019 9:11 AM |
| **To:** | Christina Retts |
| **Cc:** | Lori Berke; robin.burgess@sanderssparks.com; Sally Odegard; Michele N. Logan; Artie.Eaves@SandersParks.com; Genna Zappia; Joshua Dubin (JDubin@dubinconsulting.com); Rhonda Neff; Michael Kimerer; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; bcorey@dubinconsulting.com; Melissa Wallingsford; Jon Loevy; Brian Swift; Rachel Brady |
| **Subject:** | Re: Milke v. City of Phoenix, et al - Plaintiff's second set of requests for admission |

You are incorrect. These Requests for Admission refer to the letters that have been produced, of which there are thousands of pages, including letters between Plaintiff and Ken Ray, Kirk Fowler and Anders Rosenquist.

None of that has any effect on the attorney-client privilege with respect to Lori Voepel and Michael Kimerer.

You have repeatedly made legal assertions that you have not provided any legal authority for. If you want to provide legal authority for your position that discovery requests relating to discovery that has been produced results in a waiver of attorney-client privilege with respect to an entirely different set of attorneys who represented Plaintiff at a different point in time, I am, as always, happy to consider it. If you don't provide any, then I assume that you have no legal authority supporting your position.

-Liz

Elizabeth Wang
Loevy & Loevy
2060 Broadway | Ste. 460
Boulder | CO 80302
T 720.328.5642
F 312.243.5902
www.loevy.com


On Thu, Jan 31, 2019 at 8:56 AM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,


You have put directly at issue every letter that Ms. Milke ever wrote to anyone by virtue of these RFAs, including all letters written to all counsel—including Mr. Kimmerer and Ms. Voepel.  These RFAs reference "in her letters" repeatedly.  Plaintiff is using Ms. Milke's letters as a sword and a shield by seeking RFAs on select letters produced, when not all letters have been produced.  Plaintiff cannot cherry pick letters to produce and then seek admissions about what the content of her letters are as if they establish the truth of a given fact.  This is exactly what the Court has noted previously with respect to the attorney client privilege—i.e. Ms. Milke cannot claim that she never confessed, but then potentially withhold letters that say otherwise.

1

As Plaintiff has directly put at issue the content of her letters, all letters written to anyone including counsel should be produced within the week.   If Plaintiff is unwilling to do so, please let us know and we will include this in the issues we will bring before the Court.

There are other issues with these RFAs that we will address later, but this takes prominence now given the rapidly approaching deadline for briefing on the privilege issue.

Tina

**From:** Elizabeth Wang <elizabethw@loevy.com>
**Sent:** Wednesday, January 30, 2019 7:20 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>; Lori Berke <lori@berkelawfirm.com>; robin.burgess@sandersparks.com; Sally Odegard <sodegard@hoklaw.com>; Michele N. Logan <michele.logan@sandersparks.com>; Artie.Eaves@SandersParks.com; Genna Zappia <gzappia@hoklaw.com>; Joshua Dubin (JDubin@dubinconsulting.com) <jdubin@dubinconsulting.com>; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com; Melissa Wallingsford <mwallingsford@kimerer.com>
**Cc:** Jon Loevy <Jon@loevy.com>; Brian Swift <brians@loevy.com>; Rachel Brady <brady@loevy.com>
**Subject:** Milke v. City of Phoenix, et al - Plaintiff's second set of requests for admission

Dear Counsel,

Please see attached Plaintiff's second set of requests for admission to all Defendants.

Elizabeth Wang

Loevy & Loevy

2060 Broadway | Ste. 460

Boulder | CO 80302

T 720.328.5642

F 312.243.5902

www.loevy.com

CONFIDENTIAL COMMUNICATION: E-mails from the WIENEKE LAW GROUP, PLC normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you. Please be advised that the Firm does not give tax advice.

**Kim Penny**

| | |
|---|---|
| **From:** | Christina Retts |
| **Sent:** | Friday, February 1, 2019 12:02 PM |
| **To:** | Elizabeth Wang |
| **Cc:** | lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff; Michael Kimerer; Kathleen Wieneke; Lindsey Piasecki; Kim Penny; bcorey@dubinconsulting.com; Jon Loevy; Brian Swift |
| **Subject:** | RE: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday |

Is everyone available for a meet and confer on the Milke room boxes on Monday?
If so, please provide your available timeframes. I am available all of Monday.  I am also available on Tuesday before 1:00.


**From:** Elizabeth Wang <elizabethw@loevy.com>
**Sent:** Wednesday, January 30, 2019 3:21 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com; Jon Loevy <Jon@loevy.com>; Brian Swift <brians@loevy.com>
**Subject:** Re: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday

Dear Counsel,

I am working on our responses to your requests. I have answered some of the inline, in red, below. I am still working on responses to the others.
I can be available Monday for a phone conference about the inspection of the Milke room so that we can attempt to work out an agreement or compromise.

Elizabeth Wang
Loevy & Loevy
2060 Broadway | Ste. 460
Boulder | CO 80302
T 720.328.5642
F 312.243.5902
www.loevy.com


On Tue, Jan 29, 2019 at 3:55 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,

Although we consider it to be Plaintiff's obligation to fully respond to discovery and determine what information is outstanding or has not been produced, we undertaken the effort to obtain this information and provide it below.   Additionally, we note that prior responses to discovery are insufficient and refer to massive bates ranges of documents (which do not indicate what is being withheld, if anything)—essentially data dumps that were poorly organized.   As a result, we request that Plaintiff review all prior discovery to ensure that all responsive information has been provided.   As we go through documents obtained from Ms. Bommersbach and items just disclosed, we have located additional material outlined below that we believe is responsive to discovery and has not been produced.   Additionally, we have gone through prior correspondence that was not addressed by prior counsel and identified what we believe to be outstanding issues.

As an initial matter, in the recently produced documents, it appears that there are no letters from Ken Ray to Debra Milke.   Will you please confirm whether such letters exist and have been withheld, or do not exist.   Similarly, there are limited letters authored by Anders Rosenquist and Kirk Fowler.   Will you please confirm whether such letters exist and have been withheld, or do not exist.

We have produced all of the letters that we have between (e.g. either to or from) Milke and Ray, Rosenquist or Fowler.

In a letter written from Ms. Milke to Mr. Ray, Ms. Milke quotes extensively from letters written from Mr. Styers to her and states that she kept all the letters.   These letters are responsive to a number of Defendants' discovery requests.   Will you please confirm that these letters have been searched for.   If they no longer exist, please identify the date of destruction. If they are/were being held by a third-party, please identify the third-party as third parties are within Ms. Milke's reasonable control for the purposes of responding to discovery and production of the same.

We have produced all of the letters that we have between Milke and Styers. They were already searched for and produced by Plaintiff's prior counsel.

As it relates to the list of individuals below, the following individuals were not disclosed by Plaintiff in a disclosure statement or discovery response.   The relevant discovery responses are the City's RFP 4, 15; and COP Inerrogatories 1 & 10.

Billy Gumm

Linda Thompson

Richard de Uriate

Susan Smith

Pete Aleshire

Dr. Leonardo Garcia-Bunuel

Paul Huebl

Gary Bowen

Frankie Aue

Katrina Bland

Michael H. Fox

Ariane Milke

Mike Kiefer

Michael Burke

Randy Sukor

Irmy Richardson

Stephanie Thompson


I will have to review this and get back to you on these individuals. You have also not responded to my question about which of these individuals you are not aware of or have no knowledge about from your time litigating this case.

As it relates to Mr. Aue, it is troubling that Mr. Aue was never disclosed in response to discovery requests as documents that have been produced show his extensive correspondence with Ms. Milke specifically about this case.  On June 27, 2018, at 1:30 p.m., we specifically asked Plaintiff to supplement her discovery responses as follows:  **Also, Plaintiff's responses to Request for Production Numbers 4  and 5 are deficient.  Please supplement Plaintiff's response to produce any and all letters, etc. received from Ingo Hasselbach, Frank Aue, Chris Passelti, Pat and Danny Endsley and C. Pacheco.  In addition to any and all letters/correspondence, produce any and all audio tapes exchanged between Plaintiff and all of the aforementioned individuals.  If these letters and/or tapes have been destroyed or are no longer in Plaintiff's custody and control, please identify the date and reason for destruction and/or identify the custodian of these materials.  Please supplement these responses immediately.**


As Ms. Hoffman informed you in your meet and confer with her on November 26, 2018, Plaintiff has already produced all of the letters to Debra Milke or from Debra Milke and third parties, that we are aware of. Over 4,000 pages of letters to/from Debra and others have been produced in this litigation.


We have not received a response to this request, which was again made on 11/27/2018.  Notably, the untimely produced Janna Bommersbach Transcript also revealed new information about the extensiveness of Mr. Aue's involvement in all aspects of Ms. Milke's life.   Now, it is our understanding that even though Ms. Milke provided Mr.

Aue with numerous documents such that he intimately involved in all of her life activities, Mr. Aue takes the position that he is outside the subpoena power and the Debra Milke website is his work product. The website is responsive to discovery requests and was authorized by Ms. Milke, part of the PR campaign, Ms. Milke contributed content, and it was taken down at some point.   Mr. Aue's efforts with the website were only undertaken because they were authorized by Ms. Milke.  As a result, we request that Ms. Milke ask for the materials back from Mr. Aue.  If she is unwilling to do so, or Mr. Aue will not provide documents if a request is made, please let us know as we would like to address this with the Court.

Mr. Aue's work on the website was his own work product, regardless of whether it was "authorized" by Plaintiff. If you have legal authority for your position that Mr. Aue's work is in her possession, custody, or control, please provide it and I will be happy to consider it. I have already asked Mr. Aue for any letters from Plaintiff or from anyone else about the case and he stated that he does not have any. He also informed me that he does not have anything but court records (which Defendants would already have) and a website-related hard drive, which he is asserting is work product. Plaintiff has no control over whether or not Mr. Aue asserts work product over his work on the website.

Next, we previously set forth—in lengthy email correspondences—our position on work product privilege and waiver— informed by the Court's inclination to find that there was no privilege that still exists as the privilege terminates at the end of the criminal representation.   Do you have access to that correspondence?  We previously asked for Plaintiff to provide any citation to case law that holds differently, but no such citation was provided.  Additionally, we previously extensively outlined all of the explicit waiver that occurred related to both work product and attorney client privilege.

Could you please identify the date(s) of the correspondence or email so that I can find the citations. I will get back to you on our position.

In the privilege logs previously produced by Ms. Milke, there were news articles and factual material that was included.  We raised an objection to including such articles on the privilege log as no privilege exists to underlying non-privileged matter and those matters do not become privileged simply because they are sent to a lawyer.  This includes inmate correspondence that was piggybacked—i.e. sent as legal mail (mixed in with legal mail) even though it was not.  Is Plaintiff still taking the position that material is privileged simply because it is attached to an attorney correspondence?  If not, has that material been identified as part of the Milke room boxes that will be produced?

Could you please identify which items or lines on the privilege log you are referring to so I can make a determination.

During the course of her incarceration, Ms. Milke also wrote many unsolicited letters to lawyers asking them to take her case.  We previously requested that these materials be turned over.  Plaintiff took the position that "such letters would be covered by attorney-client privilege and so not discoverable."  We disagree that Ms. Milke had any attorney-client relationship with lawyers who she sent letters to simply as a result of the fact that she sent the letters.  It is well established that receiving an unsolicited letter does not create an attorney client relationship.  If these letters exist, they should be produced as responsive to Defendants' discovery requests.

4

Letters that Plaintiff wrote to attorneys seeking legal representation or legal advice are protected by the attorney-client relationship. If you have any authority to the contrary, please provide it and I will be happy to consider it.

In the new documents produced, Ms. Milke also writes about a book that she wrote that is 300 pages.  Has this been produced?

I am not aware of anything of this nature. If we had it, it would have been produced.

Have there been any efforts made to determine what material still is in Germany and was not shredded by Ms. Milke?

Ms. Milke already testified about this at her deposition. See pp. 500-504, 526-527, 636. There is nothing else.

The Bommersbach book also suggests that Ms. Milke saved all letters from Ms. Pickenpaugh, have these been produced?

Plaintiff's letters to/from Sandy Pickenpaugh have already been produced. See, for instance: MILKE_NSB027132-27486, MILKE_NSB032020-032023.

Does the answering machine tape still exist from Ken Ray?  If so, is it part of the Milke materials that are being made available?

The answering machine tape from Ken Ray is in the Milke room and available for your inspection.

In Ms. Bommersbah's book, there is a reference to a rebuttal to the Saldate report that was written in purple ink by Ms. Milke.  We have not located this in the materials produced by Ms. Bommersbach.  Does Plaintiff still possess a copy and, if so, is it part of the Milke materials that will be made available—it is our understanding that this effort was undertaken for the website?

This is in your own production from Ms. Bommersbach. BOMMERSBACH002368-2375.

Regarding the Kenneth Ray deposition questions, Plaintiff has not provided her response to each of the proposed questions and whether the privilege has been waived (either expressly or impliedly), as promised in the Katie McCarthy e-mail of 11/26/18. Plaintiff has still not addressed how the citations to the Joe Marino letters that we provided does not express waive her privilege as to the areas discussed.  Is Plaintiff withdrawing any objection given the agreement to produce the Ken Ray letters?

I am not sure why you believe this is still an issue. Since that dispute, the parties clearly agreed that the letters with Plaintiff and Ray would be produced, and they have been. Therefore, Plaintiff has waived privilege with Ken Ray by the disclosure of her letters with him.

**Plaintiff needs to verify with Ms. Bommersbach whether she spoke to Kenneth Ray or where the quote regarding Plaintiff's first meeting with him on NSB033889 come from. If there is written material from Mr. Ray to Ms. Bommersbach that has not been produced, we believe that it is responsive to our discovery requests. If there is a recording, it should be produced. Plaintiff has made certain representations about how attorney client privileged information has been protected in this case. The numerous references in Bommerbach's book to attorney client privileged information puts Plaintiff on notice of a duty to investigate the extent to which Janna Bommersbach was provided attorney client privileged information by Ms. Milke before making any assertions about express waiver.**

Likewise, I do not understand why this is an issue. Plaintiff has waived attorney-client privilege with Ken Ray. She has produced her letters with Ken Ray. Plaintiff's counsel previously requested Jana Bommersbach to produce everything that Plaintiff gave her to Defendants. You have also subpoenaed documents from Jana Bommersbach. She produced over 6,000 pages of documents in response to your subpoena. There is nothing further that Plaintiff is obligated to do on this issue.

**Finally, we continue to have grave concerns about Ms. Milke's ability to recall who she shared attorney client communications with for the purposes of evaluation of third-party disclosure. The previous privilege logs did not include any category of whether there had been third-party disclosure. Indeed, there were several instances where things were on the privilege log that were provided to third-parties—such as the 8 Gary Stuart binders and the box of raw data for the Saldate files (which was previously produced_. People that Ms. Milke corresponded regularly with were left out of discovery responses. Now, information disclosed shows that these individuals were copied on communications with Ms. Milke's legal team and she sent her attorney letters to them. This directly impacts the extent of the waiver of privilege as it relates to Mr. Kimmerer and Ms. Voepel. We request that Mr. Kimmerer and Ms. Voepel's email be searched to identify all email where third-parties were copied and that those emails be produced. Ms. Bommersbach's materials include attorney client privileged letters to/from Mr. Kimmerer and Ms. Voepel, which were also quoted in a published book. The waiver relates not only to those letters, but the subject matter of those letters—which based upon the breadth of those letters, leaves nothing behind. Moreover, Ms. Milke made no efforts to protect the privilege and shared letters with many different people. Please let us know what your position is as to whether Plaintiff will continue to assert privilege as to the communications with Mr. Kimmerer and Ms. Voepel.**

I provided my general position in my email from the other day. I will get back to you with a more detailed response.

Tina

**From:** Elizabeth Wang <elizabethw@loevy.com>
**Sent:** Wednesday, January 23, 2019 4:34 PM
**To:** Christina Retts <cretts@wienekelawgroup.com>
**Cc:** lori@berkelawfirm.com; robin.burgess@sandersparks.com; sodegard@hoklaw.com; michele.logan@sandersparks.com; artie.eaves@sandersparks.com; gzappia@hoklaw.com; jdubin@dubinconsulting.com; Rhonda Neff <rneff@kimerer.com>; Michael Kimerer <mdk@kimerer.com>; Kathleen Wieneke <kwieneke@wienekelawgroup.com>; Lindsey Piasecki <lpiasecki@wienekelawgroup.com>; Kim Penny <kpenny@wienekelawgroup.com>; bcorey@dubinconsulting.com; Jon Loevy <Jon@loevy.com>; Brian Swift <brians@loevy.com>
**Subject:** Re: Milke v. City of Phoenix, et al - substitution of counsel and status conference Friday

Dear Christina,

With respect to the list of names that you received from Jana Bommersbach, in order for us to understand or respond to your request, could you please:

(1) identify which names are not familiar or who you believe have not appeared in the discovery, and

(2) which outstanding Requests for Production (RFP) you believe these names or individuals are responsive to.

Thanks,

Liz

Elizabeth Wang

Loevy & Loevy

2060 Broadway | Ste. 460

Boulder | CO 80302

T 720.328.5642

F 312.243.5902

www.loevy.com


On Wed, Jan 23, 2019 at 2:56 PM Christina Retts <cretts@wienekelawgroup.com> wrote:

Counsel,


Plaintiff agreed to produce all correspondence between Mr. Ray, Mr. Rosenquist, and Mr. Fowler when January 4, 2019 status report was submitted to the Court.   Plaintiff also agreed to allow us access to the 31 boxes that remain in the Milke room once the work product documentation has been removed (as Plaintiff is still maintaining the position that work product is privileged).

It was represented that the correspondence would be easy to identify and produce within a week.  And it was our understanding that the Milke boxes could be made available shortly thereafter.   It has now been almost three weeks and we have no materials.  The proposal of briefing—for March 8 being the deadline—was based upon Plaintiff's representations as to when documents would be produced.


When will these materials be produced? We need them ASAP to be able to comply with the March 8 deadline.  The Court issued an Order in October relating to the organization of the file materials.  Based upon that, the Defendants see no basis for this delay.


Additionally, Ms. Bommersbach identified the following individuals as those she interviewed:


- Debra Milke
- Anders Rosenquist
- Billy Gumm
- Susan Stodola
- Lori Voepel
- Mike Kimerer
- Linda Thompson
- Richard deUriarte
- Pat Galbraith
- Rick Romley
- Mark Milke
- Susan Smith
- Ernie Sweat
- Kirk Fowler
- Pete Aleshire
- Dr. Leonado Garcia-Bunuel