1    **WO**

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Debra Jean Milke,                          No. CV-15-00462-PHX-ROS

10            Plaintiff,                         **ORDER**

11   v.

12   City of Phoenix, et al.,

13           Defendants.

14

15          On September 6, 2019, the parties filed a stipulated motion to extend the deadline

16   for completion of discovery.  As explained in that motion, Plaintiff had recently discovered

17   yet more information that should have been produced long ago and Defendants were

18   planning on filing another motion for sanctions.  (Doc. 562 at 2-3).  Not wishing to incur

19   the cost of additional depositions before the motion for sanctions was resolved, the parties

20   proposed vacating "[a]ll currently scheduled depositions" pending resolution of the soon-

21   to-be-filed motion for sanctions.  The parties also proposed that Plaintiff would "produce

22   all remaining responsive materials" by September 13, 2019 and, to the extent the parties

23   disagreed on the scope of that production, they would submit a discovery dispute statement

24   outlining their disagreements.  The Court approved the parties' stipulation and the parties

25   have now submitted a discovery dispute outlining eight disagreements.  (Doc. 575).

26          Before delving into those disputes, the Court notes the parties' recent stipulation

27   seems to indicate the present discovery should be focused on the issue of sanctions, not the

28   merits of Plaintiffs' claims.  That is, the parties agreed to vacate all the depositions they

had noticed—specifically including the deposition of Michael Kimerer—pending resolution of the planned motion for sanctions. Thus, the parties apparently believe at least some of their discovery disputes need not be resolved until after the Court resolves if additional sanctions are appropriate. Even if that was not the parties' intent, it is appropriate to impose such a limitation. In light of recent filings, it now appears possible Plaintiff and her counsel engaged in more misconduct than previously realized or the misconduct previously identified was even more egregious than the Court realized. It would be a waste of the parties' resources to pursue merits-discovery until the Court can determine what, if any, additional sanctions should be imposed. Therefore, the Court will resolve the parties' discovery disputes with the understanding that this discovery should focus on Plaintiff's alleged discovery misconduct.

### 1. Habeas Counsel's Emails

Defendants believe Plaintiff must review all of Michael Kimerer and Lori Voepel's emails that include the word "Milke" and either produce each email or list each email on a privilege log. Plaintiff believes she should only be required to review and produce (or list on a privilege log) those emails containing "Milke" as well as specific additional terms, *e.g.* the name of a journalist. According to Plaintiff, there are likely tens of thousands of emails and, among other objections, it would be "unduly burdensome" and "not proportional to the needs of the case" to produce all the emails. (Doc. 575 at 2). Defendants respond that Plaintiff is seeking $50 million in damages and, given that amount at stake, it is "not disproportionate" to require Plaintiff review and produce all responsive emails.

In the usual case, Defendants' request would not be appropriate. But here, Plaintiff has a long history of not producing documents in a timely manner or making baseless privilege assertions. To bring closure and certainty to this issue, Plaintiff will be required to produce all non-privileged responsive emails and produce a privilege log regarding any withheld emails. The Court realizes this will require a substantial amount of effort by Plaintiff but given the damages Plaintiff is seeking, her own long history of misconduct in

this case, and the repeated pattern of Plaintiff "discovering" responsive documents long after they should have been produced, that effort is proportional to the needs of this particular case. Moreover, these emails may shed light on additional sanctionable conduct as the emails may contain evidence of documents that should have been produced earlier, such as communications with journalists.

### 2. Depositions of Non-Parties

All of the disputes involving depositions of non-parties can be resolved together. Because the focus should be on sanctions, the depositions of Plaintiff's experts, Dr. Agharkar and Richard Drooyan, are not necessary at this point. The Court will resolve the scope of those depositions in the event they are necessary. In addition, the parties explicitly agreed to not pursue the deposition of Michael Kimerer until the motion for sanctions is resolved. Because Michael Kimerer and Lori Voepel are similarly situated, Voepel's deposition should also await resolution of the motion for sanctions. Finally, the depositions of other third parties do not appear necessary for resolution of the motion for sanctions. If Defendants believe any of these depositions *are* necessary for proper resolution of the motion for sanctions, the parties should, if warranted, file another notice of discovery dispute explaining the particular witness's relevance to the matter of sanctions.

### 3. Deposition of Plaintiff

Plaintiff's deposition has obvious relevance to the issue of sanctions and will be allowed. The only dispute is the amount of time. Defendants believe they are entitled to depose Plaintiff for an additional fourteen hours over two days while Plaintiff believes she should be deposed for no more than three-and-a-half hours. Given the additional information that has come to light, Defendants are entitled to depose Plaintiff for an additional two days. The deposition should focus on potential sanctionable conduct but it is likely impossible to completely segregate the questions regarding alleged sanctionable conduct from questions regarding the merits. Therefore, the Court will not limit the scope of this deposition.

### 4. Plaintiff's Emails

Defendants seek every non-privileged email Plaintiff has written. Plaintiff believes she should only be required to produce emails that reference "Defendant Saldate, any of the individuals who were originally named as Defendants in this action, Christopher Milke, Jim Styers, Roger Scott, any of the other cases set forth in Plaintiff's Complaint, and any communications with the media regarding Plaintiff's criminal trial proceedings or civil lawsuit." Defendants believe Plaintiff's proposed criteria are impermissibly narrow and they cite recently produced emails as evidence that Plaintiff cannot be trusted to produce all responsive emails.

The recently produced emails consist of one email from "Jessica Siegel" with "Yahoo! News with Katie Couric" and one with the "German newsmagazine DER SPIEGEL." The email from Ms. Siegel states, in relevant part, that she would "love to connect with [Kimerer] . . . about Ms. Milke." The other email states Der Spiegel will pay Plaintiff $10,000 for an "interview . . . about her case and her life in prison." (Doc. 575-2 at 38). Plaintiff states these emails were not produced earlier because neither contains "any discussion of the criminal or civil case whatsoever." (Doc. 575 at 9). Plaintiff's explanation is hard to take seriously. Both emails *obviously* qualify as communications with the media regarding Plaintiff's criminal trial proceedings or civil lawsuit. Plaintiff's interpretation that communications with the media are not responsive unless they involve substantive discussion of Plaintiff's criminal or civil case has no basis.

In the usual case, requiring a party produce the entirety of her email communications would not be appropriate. Normally, concerns regarding relevance and burden would prevent ordering such broad disclosure. But this is not a usual case where Plaintiff can be trusted to produce a narrowed set of her communications. Here, Plaintiff has engaged in obstructive behavior throughout discovery and, even now, is explaining her failure to produce some emails on patently insufficient grounds. Therefore, Plaintiff must produce all of her non-privileged emails.

### 5. Redactions to Facebook

Plaintiff has redacted certain emails on the basis of the work-product protection.

Defendants believe the redactions may be concealing information regarding the destruction of Plaintiff's Facebook page. Plaintiff has offered to produce the emails for *in camera* review. Plaintiff will be required to do so provided the emails qualify as work-product under the framework the Court previously imposed and Plaintiff has not waived that protection. That is, the emails should be submitted for *in camera* review only if they contain information about counsel's efforts or strategies and the emails must not have been shared with individuals that rendered it likely Defendants would gain access to the email. If the emails do not meet these requirements, they must be produced immediately. For example, if the emails were shared with journalists, such as Frankie Aue, any work-product protection has been waived.

Accordingly,

**IT IS ORDERED** the parties must comply with the discovery rulings set forth above.

**IT IS FURTHER ORDERED** if Plaintiff concludes certain emails are subject to the work-product protection, those emails must be delivered to chambers for *in camera* review no later than **September 25, 2019**.

Dated this 20th day of September, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge