The second component of the analysis into the constitutional adequacy of a *Miranda* waiver focuses upon whether the waiver was knowing and intelligent—that is, whether the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Burbine*, 475 U.S. at 421. In contrast to the mixed nature of the voluntariness inquiry, whether a waiver of *Miranda* rights was knowingly and intelligently made is strictly a question of fact, subject to the AEDPA's presumption of correctness. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 495 (9th Cir. 1997); *Derrick*, 924 F.2d at 823.

An express waiver of *Miranda* rights is not required; rather, a valid waiver of rights may be implied under the circumstances presented. *North Carolina v. Butler*, 441 U.S. 369, 374–375 (1979); *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008).

Because this is an AEDPA case, the Court's inquiry into Milke's *Miranda* waiver is necessarily constrained by 28 U.S.C. § 2254(d), and (e)(1). Additionally, even if Milke's waiver is found constitutionally invalid, she is still not entitled to federal habeas relief unless she proves that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993).

3

L&L046288

## II.   MILKE IS NOT ENTITLED TO HABEAS RELIEF, BECAUSE THE GOVERNMENT PROVED THAT HER *MIRANDA* WAIVER WAS VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY MADE.

### A.   STATE COURT PROCEEDINGS.

Prior to trial, the state court held a suppression hearing regarding Milke's statements to Detective Saldate. Saldate testified that when he informed Milke that her son was dead, she pretended to cry, but that "no tears were visible." (SER A at 50–51.)[1] Saldate told her that he would not tolerate her crying, and asked her to be quiet so she could listen to him read her her *Miranda* rights. (*Id.* at 51.) Milke immediately complied with Saldate's request, and he read Milke her *Miranda* rights from a card he carried. (*Id.* 50, 57–59, 61.) Milke indicated, by nodding her head, and saying "Yes," that she understood her rights. (*Id.* at 58–59.)

According to Saldate, after reading Milke her rights, she began to pretend to cry once more. (*Id.* at 59–60.) Saldate told her that he "wasn't going to tolerate" her crying, and that he "was there to gather the truth." (*Id.* at 60–61.)

---

[1] "SER" refers to the Respondents-Appellees' Supplemental Excerpts of Records, proffered in connection with their Answering Brief.

L&L046289

Once again Milke complied with his request, and Saldate then commenced his questioning.[2] (*Id.* at 60–61, 66.)

Saldate testified that Milke did not have any difficulty comprehending anything that he said to her and, based upon her responses to his questions, Saldate believed that she understood her rights. (*Id.* at 59, 61.) At no time during the questioning did Milke request to speak to a lawyer, and she never invoked her right to remain silent. (*Id.* at 52, 70; SER B at 12, 16.) Saldate found Milke to be "very, very intelligent," and she never exhibited any confusion or disorientation. (SER A at 70–71.) Saldate never made any promises to Milke, nor did he "psychologically or physically" threaten her, or even touch her. (*Id.* at 61–62.)

After Saldate's testimony, Milke chose not to testify, but offered the testimony of Dr. Kassell, Dr. Fritz, and Kirk Fowler:

> Dr. Kassell had interviewed Petitioner about her encounter with Det. Saldate; at the hearing he offered his opinion about the psychological dynamics of the interrogation. He testified that Petitioner told him that Det. Saldate began the interrogation by informing her that her son had been shot to death and that she was under arrest; that she became hysterical; that Det. Saldate demanded that she stop crying and explained that he was there to ascertain the truth; and that Det. Saldate then administered the *Miranda* advisory.

---

[2] Saldate testified that prior to questioning Milke, she requested that the interview not be recorded. (SER A at 52, 57, 65.)

L&L046290

Without challenging the factual contents of Det. Saldate's supplemental report, Dr. Kassell opined that Det. Saldate reached illogical conclusions about Petitioner's involvement in the murder based upon unsupported assumptions; according to Dr. Kassell, these assumptions caused Det. Saldate to misinterpret Petitioner's statements and emotional condition. Dr. Kassell also testified that in his opinion Petitioner heard Det. Saldate advise her of her *Miranda* rights but was too distraught and intimidated by Det. Saldate to "fully comprehend" them.

Dr. John Fritz, a criminologist, also testified for Petitioner at the suppression hearing. Citing what he characterized as implausibilities in Det. Saldate's account of the interrogation, Dr. Fritz testified that Saldate's report was either "altered" or "fabricated." Apart from his opinion that Det. Saldate did not actually inquire of Petitioner whether she would consent to the interrogation being recorded,[3] Dr. Fritz could not, however, identify a specific instance in which the report was altered or fabricated. Dr. Fritz also testified that in his opinion Det. Saldate did not conduct the interrogation as an objective investigator.

Kirk Fowler, who served as Petitioner's court'-appointed investigator, also testified at the hearing. According to Fowler, Petitioner told him that she had asked for an attorney early in her interview with Det. Saldate. Fowler testified that in requesting an attorney, Petitioner used the expression, "'I think I should speak to an attorney,' or words to that effect."

(ER 20–21, internal citations to the suppression hearing transcript omitted.)[4]

---

[3] Contrary to Dr. Fritz' speculations, Milke subsequently testified at trial that Saldate did ask her whether she wanted the interview recorded, and that she told him she did not. (SER J, at 17.)

[4] "ER" refers to Milke's Excerpts of Record, proffered with her Opening Brief.

L&L046291

At the conclusion of the hearing, the court denied Milke's suppression motion:

> The Court finds that the Defendant was properly Mirandized. The Court finds that, notwithstanding the Defendant's emotional state at the time, she understood those rights. The Court finds that at no time did the Defendant request an attorney, either before or after she was advised of her rights. The Defendant was given a free choice to discuss, admit or deny or refuse to answer questions. The Defendant voluntarily, knowing and intelligently relinquished her right to counsel and her right to remain silent. She voluntarily, knowingly and intelligently made statements without any promises being made, without there being any threats or coercion, either psychological or physical.
>
> The Court finds that the State has demonstrated by a preponderance of the evidence, considering the totality of the circumstances, that the statements made by the Defendant were voluntary.

(ER 291–92.)

In summarily rejecting Milke's claims relating to her statements to Saldate in her Amended Petition for Post-Conviction Relief, the state court found that Milke's claims relating to her statements were "precluded" from review. (SER 142–43.) The court went on to deny the claims on their merits:

> [T]he legal standard employed to determine the admissibility of the defendant's statements made during police interrogation is whether the will of the defendant was overcome by coercion or threats or promises. Interviewing techniques are a necessary part of law enforcement, and a confession resulting from the use of the techniques only becomes improper if there are implied promises or improper influence. There is no indication of any implied promise or

7

improper influence in this case. There is no indication the defendant was mentally impaired or hysterical to the point of being unable to comprehend what was being said to her.

The extent to which Ms. Milke may have felt intimidated or coerced to make a statement to Det. Saldate was a jury question. The jury was properly instructed on the law on this issue. (The petition for post-conviction relief makes no claim the jury was improperly instructed on any aspect of the law.) The jurors were told they were not to consider any statements made by the defendant to a police officer unless they first determined, beyond a reasonable doubt, that the statements were made voluntarily.

[T]he only significant difference between Ms. Milke's recollection of the interview and Det. Saldate's recollection is when and how she requested an attorney. The defendant said she asked for an attorney at the beginning of the interview. Her statement was, "I don't want a tape recorder, I want an attorney."[FN] Det. Saldate disputes that the request for an attorney was made at that time. He says that at the conclusion of the interview, when the defendant was told she was going to jail, she asked the detective to call her father so that he could get an attorney for her. The trial court made the factual determination that the defendant did not ask for an attorney at the beginning of the interview.

[FN] The defendant's testimony varied a bit as to exactly what she said to Det. Saldate. At one time she testified she told him, "I think I want an attorney." An unclear request for counsel does not require that police questioning cease.

Petitioner asserts Det. Saldate has lied under oath to obtain convictions. Nothing has been presented to substantiate this declaration. The statements in the affidavits from three "experts" who concluded the confession never occurred do not qualify as admissible evidence because they constitute opinions that Det. Saldate was a liar. A conviction for perjury or false swearing has not been offered. The fact that requests for voluntariness hearings were filed in other

8

L&L046293

cases in which Det. Saldate was the interrogating officer does not establish he has lied under oath to obtain convictions. The information presented in the amended petition would not have been admissible evidence to attack the credibility of the witness. Rule 608(a) Arizona Rules of Evidence.

. . .

The defendant's statements to Det. Saldate were not an unequivocal confession of "Yes, I did it." . . . The jury made the determination of the reliability of the statements and the conclusions to be reached after considering the statements.

Notwithstanding the inflammatory adjectives used to describe Det. Saldate and his conduct (over zealous, rampant overreaching, abusive interrogative techniques, coercive interrogative methods, manipulation of evidence, lying under oath, spurious practices, and oppressive and unprofessional interrogation tactics), the jury heard his version of the interview[5] and they heard the defendant's version of the interview. The jury decided the case.

(ER 143–48, internal citations omitted.) The Arizona Supreme Court summarily denied review. (ER 140.)

On federal habeas review, the district court refused to give effect to the preclusion ruling of the state court. (ER 114–15.) However, the district court subsequently denied Milke's claims on their merits:

As a preliminary matter, the Court notes that there is an obvious tension between various aspects of Petitioner's allegations. Petitioner contends, on one hand, that her

---

[5] Saldate's trial testimony was substantially similar to that given during the suppression hearing. (*See* Second Supplemental Excerpts of Record, appended hereto, at 63–69.)

L&L046294

incriminating statements to Det. Saldate were the involuntary product of his coercion and overreaching. Conversely, she asserts that she did not incriminate herself during the interview and that Det. Saldate "misinterpreted" her comments or "fabricated" her inculpatory statements. It is clear from the Court's review of the record—including Det. Saldate's report and his testimony at the suppression hearing and during trial, and Petitioner's trial testimony—that the gravamen of Petitioner's claim is that Det. Saldate's account of the contents, rather than the circumstances, of the interrogation is false and that she did not, contrary to Det. Saldate's report and testimony, implicate herself in her son's murder. Therefore, the underlying issue presented by this claim is a factual question:   did Petitioner make the incriminating statements attributed to her by Det. Saldate? Similarly, with respect to Petitioner's contention that Det. Saldate violated her rights under *Miranda*, the claim requires the resolution of a factual dispute as to whether or not Petitioner invoked her right to an attorney prior to the interrogation. Based upon these considerations, the Court's analysis of Petitioner's claim focuses on the standard set forth in 28 U.S.C. § 2254(d)(2). . . .

Pursuant to § 2254(d)(2), Petitioner must establish that the state court's factual determinations are "objectively unreasonable" in light of the evidence presented in state court. As the Ninth Circuit explained in *Taylor* [*v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)], federal habeas courts owe particular deference to state court fact finding; thus, a petitioner's burden under § 2254(d)(2) is to convince the habeas court "that an appellate panel, applying normal standards of appellate review, could not reasonably conclude that the finding is supported by the record."

In the present case, additional factors support *Taylor's* prescription for deference to the state court's findings. In addressing the factual questions upon which Petitioner's claim is based, the trial court necessarily assessed the relative credibility of Petitioner's testimony as compared with that of Det. Saldate. Determinations of credibility are entitled to

10

"special deference," even on direct appeal. Thus, habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state court, but not by them."

As previously discussed, the state court, having listened to the testimony of Petitioner and Det. Saldate and observed each witness's demeanor, determined that Petitioner's *Miranda* rights were not violated because she did not request an attorney prior to or during the interrogation. The court also determined that Petitioner was able to comprehend her rights when they were administered. Pursuant to 28 U.S.C. § 2254(e)(1), these factual determinations are entitled to a presumption of correctness. Petitioner has not overcome that presumption by clear and convincing evidence. In fact, the only evidence to support her claim of a *Miranda* violation remains her trial testimony. Further, there is no claim that the fact-finding process before the state court was defective or that the court did not make factual findings. In making its rulings, the court heard and considered the testimony of Petitioner and Det. Saldate, the testimony of Petitioner's expert witnesses at the suppression hearing, and the information presented to support Petitioner's claim that Det. Saldate had engaged in past misconduct of a type similar to that alleged by Petitioner.

For the reasons stated above, the state court's ruling denying the claim is not based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to relief on her claim that her *Miranda* rights were violated.

(ER 28–31, footnotes and internal citations omitted.)

B.   THE GOVERNMENT MET ITS BURDEN OF PROOF BY DEMONSTRATING, BY A PREPONDERNACE OF EVIDENCE, THAT MILKE'S *MIRANDA* WAIVER WAS VOLUNTARY.

Under its burden of proof, the State had to prove that is was more likely

11

L&L046296

than not that Milke's waiver was voluntarily made. *See, e.g., Bourjaily v. United States,* 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration.") The State met this burden of proof through the testimony of Detective Saldate at the suppression hearing. At that hearing, Saldate testified that, during the interview, he never made any promises to Milke, nor did he psychologically or physically threaten her, or even touch her. (SER A at 61–62.) This testimony alone appropriately supports the state court's factual determination that no "promises," "threats or coercion, either psychological or physical,"[6] were made in connection with the taking of Milke's statement. Milke never challenged the conditions underlying her confession, nor did she assert that she was threatned or coerced. Instead, she argued that she did not say what Saldated attributed to her. The state court heard the witnesses presented at the hearing and, based upon the testimony presented, as well as the demeanor of the witnesses, the court was well within its discretion when it found Saldate's testimony more credible than that of the other witnesses. *See Marshall v. Loneberger,* 459 U.S. 422, 434 (1983) (in order to reject a state court factual determination, a habeas court "must conclude" that the state court's

---

[6] *See* ER 21.

12

L&L046297

findings lacked "fair[] support" in the record); *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (trial court's credibility determinations entitled to "special deference" by a habeas court). Additionally, because the suppression hearing provided Milke a full, fair, and adequate hearing in state court, the state court's factual finding that Milke's confession was not coerced in any way is entitled to the presumption of correctness afforded by 28 U.S.C. § 2254(e)(1).

Regardless, any possible defect in the fact-finding process that occurred during the suppression hearing would have been rendered harmless due to the subsequent proceedings in this matter. At trial, the jurors heard testimony from both Saldate and Milke, regarding what occurred during the interview, and they were instructed not to consider any statement made by Milke "unless they first determined, beyond a reasonable doubt, that the statements were made voluntarily." (ER 144.) Even at trial, Milke did not assert that her confession was the result of threats or coercion. Instead, she argued that she did not say what Saldate said she said. Thus, the state court's pre-trial factual finding, that no coercion occurred during the interview, was subjected to verification by the jurors, under a much higher standard of proof than that employed during the suppression hearing.

Moreover, the evidence supporting the voluntariness finding was tested again during Milke's PCR proceedings, after which the trial court found "no

13

L&L046298

indication of any implied promise or improper influence in this case." (ER 144.) As with the state court's earlier factual findings, these factual findings are likewise entitled to deference, as well as a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Yount*, 467 U.S. at 1038; *Loneberger*, 459 U.S. at 434; *Butler*, 441 U.S. at 373, 375–76. Thus, there is no factual basis for this Court to conclude that Milke's *Miranda* waiver was involuntary. *See Connelly*, 479 U.S. at 170 (a waiver cannot be held involuntary absent official compulsion or coercion).

C.   THE GOVERNMENT MET ITS BURDEN OF PROOF BY DEMONSTRATING, BY A PREPONDERANCE OF EVIDENCE, THAT MILKE'S *MIRANDA* WAIVER WAS KNOWING AND INTELLIGENT.

Similarly, the State proved, by a preponderance of the evidence, that Milke's waiver was knowing and intelligent. During the suppression hearing, Saldate testified: (1) he read Milke her *Miranda* rights; (2) Milke nodded her head and answered "Yes" when he asked her if she understood her rights; (3) Milke did not have any difficulty in comprehending anything that Saldate said to her, specifically with regard to her *Miranda* rights; (4) Milke appeared to be "very, very intelligent," and never expressed any confusion or disorientation; and (5) based upon Milke's responses to his questions, Saldate believed that she understood her rights. (SER A at 50–51, 57–59, 61, 70–71.) It was well within the state court's discretion to find Saldate's testimony credible, and this

14

testimony is sufficient to support the court's finding[7] that Milke knowingly and intelligently waived her *Miranda* rights. *See Bourjaily,* 483 U.S. at 175; *Loneberger,* 459 U.S. at 434; *Burbine,* 475 U.S. at 421; *Butler,* 441 U.S. at 373, 375–76. Moreover, the state court's factual findings are entitled to § 2254(e)(1)'s presumption of correctness. *Amaya Ruiz,* 121 F.3d at 495; *Derrick,* 924 F.2d. at 823.

As with the voluntariness issue, Milke was given an opportunity to have the state court reconsider its findings during her post-conviction relief proceedings. However, the state court once more found that "There is no indication the defendant was mentally impaired or hysterical to the point of being unable to comprehend what was being said to her." (ER 144, citation omitted.) This secondary finding, that Milke's waiver was knowing and intelligent, is likewise entitled to § 2254(e)(1)'s presumption of correctness. *Amaya Ruiz,* 121 F.3d at 495; *Derrick,* 924 F.2d. at 823.

D.   THE GOVERNMENT MET ITS BURDEN OF PROOF BY DEMONSTRATING, BY A PREPONDERNACE OF EVIDENCE, THAT MILKE MADE NO REQUEST FOR COUNSEL DURING HER INTERVIEW.

A suspect who invokes his Fifth Amendment right to counsel during a custodial interrogation may not be subjected to further interrogation until

---

[7] ER 21.

15

L&L046300

counsel is made available to him, unless he subsequently initiates communications. *Edwards v. Arizona*, 451 U.S. 477, 484–485 (1981).

During the suppression hearing, Saldate testified that Milke did not ask to speak with an attorney at any time during the interview. (SER A at 52, 70; SER B at 12, 16.) This evidence, in connection with the evidence previously discussed, sufficiently supports the state court's finding that Milke "voluntarily, knowingly and intelligently relinquished her right to counsel . . . ." (ER 21.) *See Bourjaily*, 483 U.S. at 175; *Loneberger*, 459 U.S. at 434; *Burbine*, 475 U.S. at 421; *Butler*, 441 U.S. at 373, 375–76. Moreover, the state court's determination that Milke "knowingly and intelligently relinquished her right to counsel" is a factual finding entitled to §2254(e)(1)'s presumption of correctness.[8] *Amaya Ruiz*, 121 F.3d at 495; *Derrick*, 924 F.2d at 823.

The state court re-visited this issue during post-conviction relief proceedings, and reiterated its "factual determination that the defendant did not ask for an attorney at the beginning of the interview." (ER 145.) This factual determination is likewise entitled to the AEDPA's presumption of correctness. *Amaya Ruiz*, 121 F.3d at 495; *Derrick*, 924 F.2d at 823.

---

[8] Because Milke never requested to speak to counsel during her interview, *Smith v. Illinois*, 469 U.S. 91, 100 (1984), which holds that "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request," has no application to Milke's case.

16

L&L046301

E.    MILKE'S REMANING ARGUMENTS ARE UNPERSUASIVE.

Milke presents a number of unpersuasive arguments to support her contention that the Court should not give effect to her *Miranda* waiver. Relying upon *Shreeves v. United States*, 395 A.2d 774, 781 (D.C. 1978), a 30-year old direct appeal from the superior court of the District of Columbia, Milke contends that, because a "trial court is required to 'make explicit findings of fact' regarding waiver," the trial court's decision, finding her waiver constitutionally adequate is "objectively unreasonable." (SB at 3.)[9] Milke asserts that because "[t]he trial court failed to cite any evidence supporting its finding that [she] 'voluntarily, knowingly and intelligently relinquished her right to counsel and her right to remain silent," "[t]he basis for its waiver finding is thus entirely unclear." (SB at 3.) Aside from the fact that *Shreeves* does not constitute recognizable precedent, the United States Supreme Court has never required courts to specifically cite the evidence supporting their findings of a valid *Miranda* waiver. Regardless, contrary to Milke's assertions, and as previously demonstrated, the trial court made "explicit findings of fact" in support of its ultimate conclusion that Milke's waiver was valid. (*See* ER 144–45, 291–92.) As discussed previously, these findings of fact were adequately supported by Saldate's testimony.

17

L&L046302

Next, Milke summarizes the testimony from the suppression hearing and from trial, and then asserts: "None of this evidence supports a finding that Debra waived her *Miranda* rights." (SB at 3–9.) However, Milke's assertion is contrary to the record. As previously shown, Detective Saldate's testimony during the suppression hearing provides a sufficient factual basis for the court's waiver finding.

Milke next attempts to distinguish the facts of her case from those presented in *Butler*, and other cases, concerning implied waivers, arguing that those cases "involve primarily undisputed or verifiable facts *clearly* showing the suspect waived his rights . . . and wanted to proceed with questioning or spontaneously volunteered information." (SB at 16, emphasis in original.)

Milke is correct that in *Butler*, the defendant did not controvert the evidence presented during the suppression hearing. *See id.*, 441 U.S. at 370–71. However, the Court's decision clearly did not turn on that fact. Instead, as the Court pointed out, the focus in determining whether a defendant has validly waived a constitutional right is not whether or not evidence is uncontroverted, but instead whether the totality of the circumstances support the conclusion that the defendant waived his rights. *Id.* at 374–75. In the nearly 30 years since *Butler*, the Supreme Court has never espoused the *per se* rule Milke now seeks

---

( ... continued)

[9] "SB" refers to Milke's Supplemental Brief Regarding Miranda Waiver.

L&L046303

to apply to her case, that a waiver cannot be implied unless the underlying facts are uncontroverted. Moreover, under the AEDPA, this Court is without authority to promulgate such a new constitutional rule applicable to habeas cases. *See* 28 U.S.C. § 2254(d)(1); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Furthermore, Milke did not controvert the evidence relevant to a waiver of *Miranda* rights at her pre-trial suppression hearing. Again, her argument was simply that the detective lied or misinterpreted her statement.

Additionally, Milke's proposed *per se* rule would all but do away with the Supreme Court's doctrine of implied waiver. A defendant can always argue that he didn't actually hear or understand his rights, even if a recording of the interrogation captures him affirming otherwise. Thus, under the illogic of Milke's argument, the only case in which a waiver could be implied would be a case in which a defendant does not object to the admissions of his statements.

Milke's reliance on the other cases is similarly misplaced. Four of these cases, *United States v. Earle*, 473 F.Supp.2d 131 (D.Mass. 2005), *Jackson v. United States*, 404 A.2d 911 (C.C. Cir. 1979), *United States v. Cazares*, 121 F.3d 1241 (9th Cir. 1997), and *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005), have no application here, because they are direct appeals, rather than

19

L&L046304

habeas cases, and thus their adjudications were not constrained by 28 U.S.C. § 2254 (d)(1), and (e)(1), as is Milke's case.

Milke's citation to *Paulino v. Castro*, 371 F.3d 1083 (9th Cir.2004), an AEDPA case, is unavailing, because in that case this Court actually found that the petitioner, who refused to sign a waiver of his right to counsel, nevertheless waived his right, because he never clearly invoked his right and, in fact, willingly spoke with the detectives. *Id.*, 371 F.3d at 1086–88. Milke attempts to distinguish the ultimate holding in *Paulino* by contending that the underlying facts were undisputed, but, as in *Butler*, that was not the focus of the Court— rather, the Court decided the case, within the framework of the AEDPA, upon the totality of the evidence. *Id.* at 1087. Moreover, unlike the situation in *Paulino*, where the Court was dealing with an ambiguous request for counsel, in Milke's case the state courts determined that Milke never requested counsel during questioning.

Milke's citation to another AEDPA case, *Burket v. Angelone*, 208 F.3d 172 (4th Cir. 2000), is likewise unvailing because, as in *Paulino*, and similar to the facts presented in Milke's own case, the *Burket* court found that the petitioner's "cooperation and desire to speak with [the detective], coupled with his acknowledgement that he understood his rights, constituted an implied waiver. . . ." *Id.*, 208 F.3d at 198.

20

## CONCLUSION

"Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Burbine*, 475 U.S. at 422–423 (footnote omitted).

Respectfully submitted,

Terry Goddard
Attorney General

Kent E. Cattani
Chief Counsel
Criminal Appeals/Capital Litigation Section

J. D. NIELSEN
Assistant Attorney General

Attorneys for Respondents-Appellees

21

L&L046306

## CERTIFICATE OF SERVICE

TWO COPIES of this Brief were deposited for mailing
this 7th day of November, 2008, to:

> LORI L. VOEPEL
> JONES, SKELTON & HOCHULI, P.L.C.
> 2901 N. Central Avenue, Suite 800
> Phoenix, Arizona 85012
>
> MICHAEL D. KIMERER
> KIMERER & DERRICK, P.C.
> 221 E. Indianola Avenue
> Phoenix, Arizona 85012
>
> Attorneys for PETITIONER-APPELLANT

Barbara Lindsay
Legal Secretary
Criminal Appeals/Capital Litigation
Section
1275 West Washington
Phoenix, Arizona  85007–2997

CRM91-0146
315130

22

L&L046307

## CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 32-1, Rules of the Ninth Circuit Court of Appeals, I certify that this brief is proportionately spaced, has a typeface of 14 points or more and contains 4,812 words.

*Kent E. Cattani, for*

J. D. NIELSEN

23

L&L046308

No. 07-99001

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEBRA JEAN MILKE,<br><br>          Petitioner-Appellant,<br><br>—vs—<br><br>DORA B. SCHRIRO, et al.,<br><br>          Respondents-Appelleess. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, No. CIV-98-00060-PHX-RCB<br><br>STATEMENT OF RELATED CASES |

      Pursuant to Circuit Rule 28–2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, Respondents state that they are unaware of any related cases.

      DATED this 7th day of November, 2008.

Terry Goddard
Attorney General

*Kent E. Cattani, for*

J. D. NIELSEN
Assistant Attorney General
Attorneys for RESPONDENTS-
APPELLEESS

24

L&L046309

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEBRA JEAN MILKE, <br><br>        Petitioner/Appellant, <br><br> vs. <br><br> DORA B. SCHRIRO, et al., <br><br>        Respondent/Appellee. | No. 07-99001 <br><br> District Court <br> No. CV-98-00060-PHX-RCB <br><br><br> **<u>DEATH PENALTY CASE</u>** |

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

---

# PETITIONER/APPELLANT'S SUPPLEMENTAL REPLY BRIEF REGARDING MIRANDA WAIVER

---

Lori L. Voepel
JONES, SKELTON & HOCHULI, P.L.C.
2901 No, Central Avenue, Suite 800
Phoenix, Arizona  85012
(602) 263-1700
*Attorneys for Petitioner/Appellant*
*Debra Jean Milke*

Michael D. Kimerer
KIMERER & DERRICK, P.C.
221 E. Indianola Avenue
Phoenix, Arizona 85012
*Co-Counsel for Petitioner/Appellant*

L&L046310

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ......................................................................................1

I.    THE RECORD DOES NOT SUPPORT A FINDING OF
WAIVER .......................................................................................1

    A.    The State Fails to Address What Evidence Shows a
Waiver Occurred...................................................................1

    B.    Debra Doesn't Bear the Burden Under *Miranda* .................2

    C.    The State Admits No Evidence in the Record
Affirmatively Shows Debra Waived Her Rights.................4

    D.    Continued Questioning Following Issuance of
*Miranda* Rights Does Not Support a Finding of
Implied Waiver ...................................................................5

CONCLUSION................................................................................12

CERTIFICATION OF COMPLIANCE ...........................................13

CERTIFICATE OF SERVICE .........................................................14

i

L&L046311

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Burket v. Angelone,*
    208 F.3d 172 (4th Cir. 2000) .......................................................................... 11

*Colorado v. Connelly,*
    479 U.S. 157 (1986) .......................................................................................... 6

*Jackson v. U.S.,*
    404 A.2d 911 (D.C. Cir. 1979) ...................................................................... 10

*Johnson v. Zerbst,*
    304 U.S. 458 (1938) .......................................................................................... 2

*Miranda v. Arizona,*
    384 U.S. 436 (1966) .............................................................................. passim

*North Carolina v. Butler,*
    441 U.S. 369 (1979) .............................................................................. passim

*Paulino v. Castro,*
    371 F.3d 1083 (9th Cir. 2004) ............................................................... 10, 11

*Shreeves v. United States,*
    395 A.2d 774 (D.C. 1978) ............................................................................... 6

*Taylor v. Maddox,*
    366 F.3d 992 (9th Cir. 2004) ................................................................ 7, 8, 9

*United States v. Cazares,*
    121 F.3d 1241 (9th Cir. 1997) ...................................................................... 10

*United States v. Earle,*
    473 F.Supp.2d 131 (D. Mass. 2005) ............................................................ 10

*United States v. Heldt,*
    745 F.2d 1275, 1277 (9th Cir. 1984) ........................................................ 2, 6

L&L046312

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Ramirez,*
  710 F.2d 535 (9th Cir. 1983) ...............................................................3

*United States v. Smith,*
  638 F.2d 131 (9th Cir. 1981) ...............................................................3

*United States v. Younger,*
  398 F.3d 1179 (9th Cir. 2005) ........................................................ 10

*Wiggins v. Smith,*
  539 U.S. 510 (2003)..................................................................... 8, 9

**Statutes**

28 U.S.C. § 2254(e)(1)...........................................................................1

iii

L&L046313

## ARGUMENT

## I.   THE RECORD DOES NOT SUPPORT A FINDING OF WAIVER.

### A.   The State Fails to Address What Evidence Shows a Waiver Occurred.

The purpose of this briefing is to address what evidence supports the state court's waiver finding under *Miranda v. Arizona*, 384 U.S. 436 (1966).   The State focuses instead on the state court's findings of "voluntariness" and "knowing and intelligent." (SAB 11-16).   It says the finding that Debra's "confession" was not coerced is supported by Saldate's testimony that he made no promises or threats.   It says Saldate's testimony that he read Debra's rights and that she acknowledged and seemed to have no difficulty comprehending them supported the finding that any waiver was "knowing and intelligent."   It also claims the finding that Debra failed to assert her rights is sufficiently supported by Saldate's testimony that Debra did not ask for an attorney during the interrogation.[1]   All of these findings, it contends, are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

---

[1] The State's summary of the suppression hearing evidence does not include Dr. Kassell's tape recorded session with Debra where she says she told Saldate, "no, I want an attorney." (ER 2045: Tab 99; RT 9/10/90 at 87, 95, 168-72).   Other than Saldate's testimony, the State also just quotes the district court's order, not the transcript. (SAB 5-6).

1

L&L046314

Missing from the State's brief is any analysis of the facts and circumstances in cases finding implied waiver and how those compare with Debra's case, which is essential to determining whether sufficient evidence shows Debra waived her rights. Focusing on the findings that Debra was not coerced and was intelligent enough to understand and waive her *Miranda* rights, although both part of a waiver analysis, avoids the central question of whether Debra **in fact** waived her rights.

### B. Debra Doesn't Bear the Burden Under *Miranda*.

The State also suggests it was Debra's burden to establish non-compliance with *Miranda*. It asserts Debra did not "controvert" the State's evidence at the suppression hearing and only claimed Saldate misinterpreted or lied about what she said. (SAB at 1). The State bears the burden of proving a waiver of *Miranda* rights. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). This burden is "great" and "we must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Heldt*, 745 F.2d at 1277 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and *Butler*, 441 U.S. at 373). Even when a defendant *concedes* a confession's admissibility, the State must establish a preliminary foundation "that proper *Miranda* warnings were given *and the*

2

L&L046315

*elucidated rights were waived.*" *United States v. Ramirez,* 710 F.2d 535, 542 (9th Cir. 1983); *United States v. Smith,* 638 F.2d 131, 133 (9th Cir. 1981).

Moreover, the State is wrong in claiming Debra did not challenge the evidence of compliance with *Miranda.* After highlighting Dr. Kassell's taped interview of Debra stating she asserted her right to counsel, Debra's attorney argued that the state bore the burden of establishing "that *in all respects* the statement of the Defendant was obtained legally." (RT 9/11/90 at 27-28).  He added, "It is our position, Your Honor, that *the government cannot meet that test* in that ... Detective Saldate [] indicates that he has a history and propensity to go ahead and violate those rules of law and rules of Miranda in order to ascertain the truth." (Id.).  Where the burden is always on the State to prove *Miranda* rights were administered *and waived*, this argument sufficiently challenged the State's evidence regarding waiver.[2]

---

[2] As noted, counsel's failure to raise this issue on appeal is also not determinative.  Debra raised this issue and ineffective assistance of appellate counsel in state post conviction and habeas proceedings, and both courts considered these issues on the merits.

3

L&L046316

C.     <u>The State Admits No Evidence in the Record Affirmatively
        Shows Debra Waived Her Rights.</u>

At oral argument, the State conceded nothing supports the waiver finding

other than the fact that questioning continued after Saldate read Debra's rights

and purportedly obtained verification that she understood:

> **J. Kozinski:**  What is there in the record to support
> the finding of waiver?  What is the evidence that she
> said, yes, I waive.  You don't have a card.  You don't
> have a signed waiver, which we normally have.  So
> what is it that you have that supports that finding?
>
> **Cattani:** I think all we have is *the line of questioning
> that continues ...*
>
> . . . . . . .
>
> **J. Kozinski:** So what is it that anybody said, either
> she said or he said or somebody else who has
> knowledge of what happened there said she waived
> her Constitutional rights?
>
> **Cattani:** The only evidence I'm aware of is simply
> *evidence that's implicit in what transpired ...*
>
> . . . . . . .
>
> **J. Kozinski:** Where does he say she said I understand
> my rights, I give up my rights?   Where is that
> evidence in the record?
>
> **Cattani:** *I don't know that it is in the record* as
> specific ...
>
> . . . . . . .
>
> **J. Kozinski:** Okay, so let me just make sure I
> understand where we stand.   You more or less

4

concede you don't have anything to support the finding.

**Cattani:** *Yes.*

(8/20/08 OA Transcript at 24-26, Appellant's SER 2088: Tab 104).

Thus, the issue is whether evidence that *questioning continued* after Saldate read Debra's rights and obtained an acknowledgement is sufficient to support implied waiver. The cases discussed in Debra's Supplemental Opening Brief show this is not enough.

**D.   Continued Questioning Following Issuance of *Miranda* Rights Does Not Support a Finding of Implied Waiver.**

After failing to address what evidence supports an implied waiver, the State dismisses as "unpersuasive" Debra's analysis of what the implied waiver cases show. Its analysis is faulty, misstates the law, and mischaracterizes Debra's position.

**1.   Findings Involving Waiver of Constitutional Rights Require Evidence Sufficient to Counter the Presumption Against Waiver.**

The State contends that a presumption of correctness applies to the state court's waiver finding just as if it were any other factual finding. Under controlling Supreme Court caselaw, however, there is a ***presumption against*** finding waiver of constitutional rights. *Butler*, 441 U.S. at 373 ("courts must *presume* that a defendant *did not* waive his rights; the prosecution's burden is

5

L&L046318

great …"); *Miranda*, 384 U.S. at 475 (if "the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the [State] to demonstrate that the defendant knowingly and intelligently waived" his rights); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (state must prove waiver of *Miranda* rights by a preponderance of the evidence); *see also Zerbst*, 304 U.S. at 464; *Heldt*, 745 F.2d at 1277 (both discussing presumption against waiver).  Thus, an analysis of whether this record supports the waiver finding begins with a ***presumption against*** finding waiver.

## 2.    The State Court's Failure to Identify a Basis for its Waiver Finding Casts Doubt on its Correctness.

In urging a presumption of correctness, the State expects this Court to ignore the state court's failure to even identify what it relied on in finding waiver.  It criticizes Debra's citation of *Shreeves v. United States,* 395 A.2d 774 (D.C. 1978), for the notion that a cursory ruling undermines its validity, even though this Court has itself noted the difficulty this poses on habeas review:

> In making findings, a judge must acknowledge significant portions of the record …. The process of explaining and reconciling seemingly inconsistent parts of the record lays bare the judicial thinking process, enabling a reviewing court to judge the rationality of the fact-finder's reasoning. … By contrast, failure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding.

6

L&L046319

*Taylor v. Maddox,* 366 F.3d 992, 1007-08 (9th Cir. 2004).  Saldate's failure to obtain an express waiver or to preserve an objective record of this interrogation increased the need for the state court to identify what evidence it relied on in finding waiver.  Its failure to do so "casts doubt on the process by which the finding was reached" and "on the correctness of the finding." *Id.*

The State's claim that the court did indicate what it relied on is also wrong.  It found: 1) Debra was properly Mirandized; 2) notwithstanding her "emotional state at the time," she understood her rights; 3) at no time did she request an attorney, either before or after advisement; 4) she "was given a free choice to discuss, admit or deny or refuse to answer questions"; 5) she "voluntarily, knowingly and intelligently relinquished her right to counsel and her right to remain silent"; 6) she voluntarily, knowingly and intelligently answered questions and made statements without any promises, threats or coercion (psychological or physical); and 7) the State showed by a preponderance of the evidence under the totality of circumstances that Debra's statements were voluntary. (ER 291-92).

The court never indicates *what evidence* formed the basis for its waiver finding.  Whether this is a failure to identify evidence supporting its waiver finding or a failure to make findings of fact supporting waiver, its determination cannot be accorded the deference a well-reasoned, factually supported decision

L&L046320

deserves. *See Wiggins v. Smith,* 539 U.S. 510, 528-29 (2003); *Taylor*, 366 F.3d at 1000-01 (state court's finding is objectively unreasonable where it should have but fails to make findings of fact.   Such findings are perforce unreasonable, as there is nothing to which the presumption of correctness can attach).

### 3. The State Court's Waiver Finding is Objectively Unreasonable Because Evidence of Waiver Cannot Be "Clearly Inferred" from this Record.

As demonstrated in Debra's Supplemental Opening Brief, this record is insufficient to support a waiver finding because unlike the implied waiver cases, waiver cannot be "*clearly inferred* from [Debra's] actions and words." *Butler,* 441 U.S. at 373 (emphasis added).[3]   The evidence of what happened during Debra's interrogation is contested and lacks objective corroboration. Even assuming Saldate's uncorroborated testimony is sufficient, it still only shows Debra: 1) was administered and 2) understood her rights.   As noted during oral argument, there is a difference between understanding one's rights and giving up those rights.   Nothing on this record "clearly infers" Debra *knowingly relinquished* her rights.   Because the state court's waiver finding is

_____

[3] That an implied waiver must be **clearly inferred** from the record is not Debra's standard, as the State suggests.   It is what *Butler* requires.

8

unsupported by sufficient evidence, it is objectively unreasonable. *Wiggins,* 539 U.S. at 526-29; *Taylor,* 366 F.3d at 999-1000.

The State mischaracterizes Debra's argument as promoting a "per se" rule that to find implied waiver, the facts must be uncontroverted.[4]   Debra's position is simply that the disputed nature of these facts (especially regarding her request for counsel), and the lack of any ***objective*** record or corroboration, make it virtually impossible to "clearly infer" waiver from the record.

This is a fundamental difference between Debra's case and those finding an implied waiver based on undisputed, corroborated facts.   Additionally, those cases contain something more than just continuing questioning following issuance and acknowledgement of *Miranda* rights.   *See Butler,* 441 U.S. at 371 (suspect's refusal to sign waiver form was not determinative where he stated, **"I will talk to you but I am not signing any form"** and where he **never even claimed he requested counsel** or attempted to terminate questioning); *United*

---

[4] The State claims Debra's position would only permit implied waiver where the defendant doesn't object to admission of his statements.   This shows the fallacy of the State's characterization of Debra's position, as the defendants in *all* of the implied waiver cases contested admission of their statements. Contesting whether a set of facts supports a finding of implied waiver is different, however, from contesting the underlying facts of *what happened* during an interrogation.   Unquestionably, a waiver is more likely to be "clearly inferred" from a record containing an undisputed, corroborated set of facts regarding the interrogation.

9

L&L046322

*States v. Younger*, 398 F.3d 1179 (9th Cir. 2005) (waiver was implied where suspect was read rights, acknowledged understanding, made **spontaneous inculpatory statements prior to questioning** and responded to further questions without referencing counsel); *United States v. Cazares*, 121 F.3d 1241 (9th Cir. 1997) (**corroborated** evidence showed that despite language difficulties, suspect understood and knowingly waived rights); *United States v. Earle*, 473 F.Supp.2d 131 (D. Mass. 2005) (no waiver where suspect signed form containing *Miranda* warnings and an acknowledgement of understanding, but not containing a place to indicate whether he wished to waive his rights, and agents didn't ask if he wanted to waive); *Jackson v. U.S.*, 404 A.2d 911 (D.C. Cir. 1979) (no waiver where suspect was re-questioned before given another opportunity to consult counsel and where record didn't reflect extensive findings of fact showing intentional, knowing relinquishment; distinguishing *Butler* because suspect claimed he requested an attorney).[5]

The only cases the State addresses also involve undisputed facts with objective records, plus something more supporting waiver than just continued questioning. *See Paulino v. Castro*, 371 F.3d 1083 (9th Cir. 2004) (suspect's

---

[5] The State says *Younger, Earle, Jackson & Cazares* "have no application here" because they are direct appeals. Yet, it contends that *Butler,* which also involved a direct appeal, controls this Court's ruling on waiver. It also cited *Cazares* in its Rule 28 letter as supplemental authority for its position.

10

written and oral statements that he **"wanted to talk," "I want to talk to you,"** and **"I want to talk to Felix"** showed implied waiver even though no signed waiver form); *Burket v. Angelone*, 208 F.3d 172 (4th Cir. 2000) (videotaped interrogation showed suspect was *Mirandized*, initiated a conversation, said he understood his rights **"and wanted to talk to Detective Hoffman."**)

The State argues that *Paulino* supports a finding of implied waiver because it involved an ambiguous request for counsel, whereas this state court determined Debra never requested counsel. This merely reinforces the importance of having an *objective record*, as Paulino's ambiguous request for counsel was documented by a *recorded interrogation* this Court could evaluate. No one can verify whether Debra requested counsel because Saldate failed to make an objective record or to corroborate the interrogation. The state court's finding that Debra didn't ask for counsel is thus based on nothing but its objectively unreasonable decision to believe a law enforcement officer over Debra notwithstanding his track record of disregarding *Miranda* rights.

None of these cases indicate an implied waiver can be found merely where questioning continues after issuance and acknowledgement of *Miranda* rights. Even if such evidence could *arguably* support an implied waiver, one cannot be "clearly inferred" here, as there is no objective record or corroboration, and a material dispute exists regarding whether Debra requested

L&L046324

counsel.  In light of the presumption against waiver, the state court's finding is objectively unreasonable and not entitled to a presumption of correctness.

L&L046325

## CONCLUSION

Because there was no valid *Miranda* waiver, Debra requests this Court to grant her habeas relief.

DATED this 1ˢᵗ day of December, 2008.

JONES, SKELTON & HOCHULI, P.L.C.


By   /s/  Lori L. Voepel
      Lori L. Voepel, AZ Bar #015342
      2901 No. Central Avenue, Suite 800
      Phoenix, Arizona  85012
      *Attorneys for Petitioner/Appellant*
      *Debra Jean Milke*

KIMERER & DERRICK, P.C.


By   /s/  Lori L. Voepel for
      Michael D. Kimerer, AZ Bar #002492
      221 E. Indianola Avenue
      Phoenix, Arizona  85012
      *Co-Counsel for Petitioner/Appellant*
      *Debra Jean Milke*

L&L046326

**CERTIFICATION OF COMPLIANCE**
**FOR CASE NUMBER 07-99001**

I certify that this Supplemental Reply Brief Regarding *Miranda* Waiver is being filed in a capital case in accordance with the limitations set forth by Circuit Rule 32-4 and this Court's September 5, 2008 Order, and is proportionately spaced, has a typeface of 14 points or more and contains 2,500 words.

December 1, 2008 _____                 /s/  Lori L. Voepel _____
Date                                          LORI L. VOEPEL

14

L&L046327

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2008, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

The following participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system:

> J.D. Nielsen, Esq.
> Office of the Attorney General
> 1275 W. Washington
> Phoenix, Arizona 85007
> *Counsel for Respondent/Appellee*

> Larry Hammond, Esq.
> Osborn Maledon, P.A.
> 2929 N. Central, Ste 2100
> Phoenix, Arizona 85012
> Counsel for *Amicus*, AzCLU

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

> Kent E. Cattani, Esq.
> Office of the Attorney General
> 1275 W. Washington
> Phoenix, Arizona 85007
> *Counsel for Respondent/Appellee*

> Daniel Pachoda, Esq.
> ACLU of Arizona
> 77 E. Columbus, Suite 205
> Phoenix, Arizona 85012
> Counsel for *Amicus*, AzCLU

L&L046328

Steven A. Drizin, Esq.
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois 60611
Counsel for *Amicus*, Center on Wrongful Convictions


  /s/  Ginger Stahly                                   


1991090.1

16

L&L046329

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEBRA JEAN MILKE, | No. 07-99001 |
| Petitioner - Appellant, | District Court<br>No. CV-98 00060-PHX-RCB |
| vs. | |
| DORA B. SCHRIRO, | |
| Respondent - Appellee. | **DEATH PENALTY CASE** |

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

---

### SUPPLEMENTAL BRIEF RE: DISTRICT COURT'S
### JANUARY 29, 2010 ORDER AND FINDINGS

---

Lori L. Voepel, AZ Bar #015342
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
(602) 263-1700
lvoepel@jshfirm.com
*Attorneys for Petitioner-Appellant*
*Debra Jean Milke*

Michael D. Kimerer, AZ Bar #002492
Amy L. Nguyen, AZ Bar #023383
KIMERER & DERRICK, P.C.
221 E. Indianola Avenue
Phoenix, Arizona 85012
(602) 279-5900
mdk@kimerer.com/
anguyen@kimerer.com
*Co-Counsel for Petitioner-Appellant*
*Debra Jean Milke*

L&L046330

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION............................................................................1

II.   EVIDENTIARY HEARING...........................................................1

      A.    STATE'S EVIDENCE ..........................................................1

      B.    PETITIONER'S EVIDENCE...............................................7

III.  LEGAL ARGUMENT .................................................................17

      A.    STANDARD OF REVIEW.................................................17

      B.    THE DISTRICT COURT CLEARLY ERRED AND
            EXCEEDED ITS AUTHORITY IN FINDING THE
            STATE MET ITS BURDEN OF PROVING
            WAIVER..............................................................................17

            1.    No New or Additional Evidence Was Presented
                  at the Hearing to Support the District Court's
                  Waiver Finding.........................................................17

            2.    No Evidence Supports a Finding of Implied
                  Waiver .......................................................................20

CONCLUSION...................................................................................31

CERTIFICATE OF COMPLIANCE................................................32

CERTIFICATE OF SERVICE .........................................................34

i

L&L046331

## TABLE OF AUTHORITIES

**Page**

### CASES

*Baskin v. Clark,*
  956 F.2d 142 (7th Cir. 1992) ............................................................. 25, 28, 29

*Bradley v. Meachum,*
  918 F.2d 338 (2nd Cir. 1990) ................................................................ 25, 29

*Bui v. DiPaolo,*
  170 F.3d 232 (1st Cir. 1999) ................................................................. 25, 29

*Canales v. Roe,*
  151 F.3d 1226 (9th Cir.1998) ....................................................................... 17

*Colorado v. Connelly,*
  479 U.S. 157 (1986) ...................................................................................... 20

*Doody v. Schriro,*
  2010 WL 653441 (9th Cir. Feb. 25, 2010)
  (en banc) .................................................................................................. 19, 30

*Edwards v. Arizona,*
  451 U.S. 477 (1981) ............................................................................ 2, 10, 26

*Frantz v. Hazey,*
  533 F.3d 724 (9th Cir. 2008) (en banc) ......................................................... 1

*Gonzalez v. Pliler,*
  341 F.3d 897 (9th Cir. 2003) ........................................................................ 18

*Lott v. Mueller,*
  304 F.3d 918 (9th Cir. 2002) ........................................................................ 17

*Miranda v. Arizona,*
  384 U.S. 436 (1966) ............................................................................... passim

*North Carolina v. Butler,*
  441 U.S. 369 (1979) ............................................................................... 20, 21

ii

L&L046332

## TABLE OF AUTHORITIES
### (continued)

*Reck v. Pate,*
  367 U.S. 433 (1961)...................................................................... 30

*Smith v. Illinois,*
  469 U.S. 91 (1984)......................................................................... 2

*State v. Mazuera,*
  756 F.Supp. 564 (S.D. Fla. 1991) ......................................... 28, 29

*Taylor v. Maddox,*
  366 F.3d 992 (9th Cir. 2004) ................................................ 18, 30

*Terravona v. Kincheloe,*
  912 F.2d 1176 (9th Cir. 1990) ............................... 19, 22, 28, 29

*Thompkins v. Berghuis,*
  547 F.3d 572 (6th Cir. 2008), *cert. granted,*
  130 S.Ct. 48 (2009).............................................................. 26, 29

*United States v. Adams,*
  583 F.3d 457 (6th Cir. 2009) .......................................... 23, 28, 29

*United States v. Binion,*
  570 F.3d 1034 (8th Cir. 2009) ............................................... 24, 29

*United States v. Boon San Chong,*
  829 F.2d 1572 (11th Cir. 1987) ............................................ 24, 29

*United States v. Cardwell,*
  433 F.3d 378 (4th Cir. 2005) ......................................... 24, 28, 29

*United States v. Cazares,*
  121 F.3d 1241 (9th Cir. 1997) ............................................... 23, 29

*United States v. Dagnan,*
  2008 WL 4280024 (4th Cir. 2008) .............................................. 28

L&L046333

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Doe,*
  149 F.3d 634 (7th Cir. 1998) .................................................. 27, 29

*United States v. Gaines,*
  295 F.3d 293 (2nd Cir. 2002) ................................................ 26, 29

*United States v. Heldt,*
  745 F.2d 1275 (9th Cir. 1984) ..................................................... 20

*United States v. Montalvo-Ortiz,*
  983 F.Supp. 78 (D. Puerto Rico 1997) .................................... 28, 29

*United States v. Nelson,*
  137 F.3d 1094 (9th Cir. 1998) ............................................... 27, 29

*United States v. Nichols,*
  512 F.3d 789 (6th Cir. 2008) ........................................... 24, 28, 29

*United States v. Ramirez,*
  710 F.2d 535 (9th Cir. 1983) ................................................ 23, 29

*United States v. Rodriguez-Preciado,*
  399 F.3d 1118 (9th Cir. 2005) ........................................ 23, 28, 29

*United States v. Wallace,*
  848 F.2d 1464 (9th Cir. 1988) ............................................... 26, 28

*United States v. Whitworth,*
  856 F.2d 1268 (9th Cir. 1988) ............................................... 27, 29

*United States v. Younger,*
  398 F.3d 1179 (9th Cir. 2005) .............................................. 22, 29

L&L046334

# TABLE OF AUTHORITIES
## (continued)

## STATUTES

28 U.S.C.A. §2254(d) ........................................................................................ 19

28 U.S.C.A. §2254(d)(2) ................................................................................... 18

28 U.S.C.A. §2254(d), (e)............................................................................. 1, 18

28 U.S.C.A. §2254(e)(1)............................................................................ 18, 19

L&L046335

## I.     INTRODUCTION

This Court's September 28, 2009 Order states:

**A complete review of the record discloses no evidence supporting a finding that petitioner voluntarily, knowingly and intelligently waived her rights under *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). *See* 28 U.S.C.A. §2254(d), (e).** Under these circumstances, an evidentiary hearing in federal court is required. *See Frantz v. Hazey*, 533 F.3d 724, 745 (9th Cir. 2008) (en banc). We therefore remand with instructions to conduct a limited hearing on the sole issue of whether petitioner validly waived her *Miranda* rights; respondent shall have the burden of proof. The district court must conduct the hearing and render its findings within 60 days of this order.

(CR 163)(emphasis added).  Following the evidentiary hearing on January 11-12, 2010,  both parties acknowledged that Saldate's and Debra's testimony was consistent with their testimony in state court.  (CR 190, 191).  The district court also found their hearing testimony "mirrors" that provided in state court.  (CR 195).  Notwithstanding that fact and this Court's September 28 Order, the district court somehow found that the State met its burden of proving Debra waived her *Miranda* rights.  (Id.).  There is no legitimate basis for this finding.

## II.     EVIDENTIARY HEARING

### A.     State's Evidence.

The only "new" evidence from the State were photocopies of two *Miranda* rights' cards (Ex. 51)[1] and pages from witness Paul Huebl's website

---

[1] All hearing exhibits were admitted by stipulation.

L&L046336

used as impeachment.  (Ex. 57(a)).  Its only witness was Detective Saldate, who provided no new testimony on waiver and acknowledged he had nothing to add to what was presented in state court. (RT 1/11/10 at 35).  This was consistent with his prehearing interview.  (Ex. 21 at 5-7).

At the hearing, Saldate confirmed the information in his police report, voluntariness hearing testimony, pretrial interview, and trial testimony. (Exs. 50, 52-56).  He also said he knew the law regarding *Miranda* and had been instructed about it throughout his career.  (RT 1/11/10 at 38).  Yet, he admitted that contrary to law[2] and Phoenix Police Department (PPD) policy,[3] when suspects requested counsel, he would not cease interrogation but would continue to "have a conversation" with them.[4]  (Id. at 38-40).

Saldate testified that on December 3, 1989, he was called to help investigate Christopher Milke's disappearance. (Id. at 9-12, 48-49).  Upon arrival at the police station, he was briefed on the investigation status.  Jim

---

[2] *Edwards v. Arizona*, 451 U.S. 477 (1981); *Smith v. Illinois*, 469 U.S. 91 (1984).

[3] 1989 PPD Operations Order C-5, ¶ 14(E) directs that interrogation must "cease immediately" when a person wishes to remain silent or have an attorney present, and states that if investigation would be furthered by continuing, the officer may seek assistance from PPD's Legal Advisor with a supervisor's permission.  (Ex. 19; ER 930).

[4] Extensive evidence was presented on Saldate's history of ignoring police procedures and defendants' constitutional rights, including his pattern of failing to scrupulously honor *Miranda* invocations. (Exs. 7 through 17).

2

Styers and Roger Scott were there and had been talking with Detective Mills. (Id. at 49-50).   Saldate first spoke with Styers, who gave no incriminating statements. (Id. at 52).   Critical of the way Detective Mills was interrogating Scott, Saldate decided to interrogate him alone. (Id. at 53-54).   Saldate had a "gut suspicion" Scott was involved so he read his rights.   Saldate used his "interrogation style" of getting within 6-12 inches of Scott, said he would not tolerate lies, threatened to question Scott's sick mother, and eventually obtained incriminating statements. (Id. at 55-62).[5]   Scott did not incriminate Debra during the interrogation. (Id. at 63).

Saldate and Mills drove Scott to the crime scene.  While en route, Saldate says Scott mentioned in an offhand remark that Debra was also "involved," but provided no details.  (Id. at 63-64).[6]  With only this vague statement and no physical evidence connecting Debra to the crime, Saldate flew by helicopter to Florence to interrogate her. (Id. at 64-65, 75).  His supervisor, Sgt. Ontiveros, told him to record the interrogation, but he did not bring a recorder or ask for

---

[5] Saldate said his "interrogation style" was always the same.  He takes control, directly confronts his subjects, gets within 6 to 12 inches of them, insists they maintain eye contact, and says he will only listen to the truth and won't  "tolerate lies." (Id. at 55-58).

[6] The district court erroneously claims it is "undisputed" that Scott "provided information implicating Petitioner." (CR 195 at 9).  Even Saldate doesn't claim this.  He says Scott vaguely mentioned Debra was "involved" but didn't provide any supporting information.  (RT 1/11/10 at 63-64, 75).

3

L&L046338

one in Florence.  It was Saldate's practice to not record interrogations because he feels it deters subjects from speaking freely.  (Id. at 66-71).

Before meeting Debra, Saldate decided to arrest her and was confident he would get a confession. (Id. at 76, 77, 82).  Although he quibbled over whether this was an interview or interrogation, he conceded that under PPD procedures, he went to interrogate her.  (Id. at 45-48).  He had decided Debra was guilty based on Scott's offhand comment, even though PPD policy directed officers to keep open minds when conducting interrogations. (Id. at 82-83).

When Saldate arrived in Florence, he went to the Sheriff's Office room where Debra was held.  (Id. at 76).  He introduced himself and asked Debra's friend to leave. (Id. at 80).  He shut the door, wanting a "one-on-one" situation with Debra. (Id. at 79).  He did not ask Phoenix Detective Hamrick, who was just outside the door, to witness the interrogation.  (Id. at 101).  Inside the room, Debra was seated in a chair against the wall.  He pulled up another chair directly in front of her, got within 6-12 inches, and looked at her eye-to-eye. (Id. at 80).  Saldate claims he said her son had been found shot to death and she was under arrest. (Id. at 80-81; 20).  Debra began to scream and make noises. (Id. at 81).  On direct, Saldate said Debra was only "excited," but on cross he conceded having previously described her as "hysterical." (Id. at 26, 81).

4

L&L046339

Saldate said, "I won't tolerate that!" (Id.).  Throughout the interrogation, he said he would not "tolerate lies" and would only "tolerate the truth." (Id. at 84-85).

Saldate then removed a card from his badge case and read the *Miranda* rights as printed. (Id. at 20-22).  He says one of the cards introduced by the State is like the one he used to read Debra's rights.  (Id.).  There is no statement on the card asking if the subject agrees to waive her rights.  (Ex. 51).  There is a place for the interrogating officer to initial, but none for the subject to acknowledge the rights were read. (Id.).  At no time did Saldate ask Debra if she would waive her rights. (Id. at 90).  He claims that asking Debra if she understood her rights was sufficient and he was not required to ask if she waived. (Id. at 24).[7]  Saldate claims Debra acknowledged her understanding by nodding and saying "yes" when he demanded a verbal response. (Id. at 23-24, 85).  He testified that immediately afterward, he asked if Debra wanted the interrogation recorded, but she said no.  (Id. at 17-18, 85-86).[8]

---

[7] The district court seems to suggest Saldate could not ask this question because a PPD policy provided that the rights were to be read verbatim. (CR 195 at 10).  Saldate's admission to routinely ignoring *Miranda* invocations shows he wasn't really worried about complying with PPD policy or the law.  Even assuming he felt so constrained, the policy itself would be problematic, as the law requires more than just to "read the rights."

[8] Saldate claims Debra never requested counsel, and had she done so, he would have noted it in his report. He says he always did this, even when continuing interrogation after invocations. (RT 1/11/10 at 29-31)  In fact, of Saldate's other cases submitted as exhibits or excerpts, only two indicate he

L&L046340

Saldate took control of the interrogation. With his chair directly in front of Debra, he leaned within 6-12 inches of her face. He forced her to make eye-contact and said repeatedly, "I will not tolerate lies." (Id. at 79-83). Whenever she deviated from what he believed was the truth (ie: she's guilty) or reacted emotionally, he said he would "not tolerate" it. (Id. at 84-85, 92-93). Saldate described his interrogation style as being "honest" and "truthful" with subjects. (Id. at 58).[9] He said he told Debra, "I'm going to deal with you honestly and I want you to deal honestly with me." (Id. at 80). In fact, Saldate immediately lied to Debra by saying **both** Styers and Scott had implicated her. (Id. at 94-97; Ex. 50 at 1). At the hearing, he admitted that was untrue. (Id. at 95).

The interrogation lasted around 30 minutes, during which Saldate says Debra confessed and never denied involvement. (Id. at 22, 29, 96). But he conceded that whenever he felt Debra got "off track," he'd say, "I won't

---

made such notations. (Exs. 10, 12). Saldate apparently did not make this claim in the other cases involving *Miranda* invocations. (Exs. 11, 16 & ERs 1442; 1476; 1453; 1449). In one of those, *another officer* made a notation, not Saldate. (ER 1453).

[9] Saldate said he'd never put his position on the line by "intentionally lying" (RT 1/11/10 at 31-32), but he was disciplined for lying during an internal investigation into misconduct involving a female motorist until after taking a polygraph. (Ex. 18; ER 913-15). PPD found Saldate's "image of honesty, competency, and overall reliability must be questioned." (Id.). Although the district court ordered this disciplinary report disclosed to Debra in habeas proceedings, it now virtually ignores the report, which goes directly to Saldate's credibility and reliability. It merely mentions Saldate "was disciplined for misconduct in 1973" and received some commendations. (CR 195 at 8).

6

L&L046341

tolerate that type of behavior.  I just want the truth." (Id. at 96).  He also said he was less tolerant here, as he had worked 12 hours on his day off.  (Id. at 98-99).

Although Saldate was in control, he did not memorialize or corroborate what occurred.  He did not record Debra's statement (during or after interrogation), did not bring Detective Hamrick (or another officer) in to witness/corroborate the interrogation, never had Debra sign or write anything saying she waived her rights or have her write a statement.  (Id. at 100-105). He knew this created a "he said-she said" situation but claims he is "telling the truth" while she "is now denying it."  (Id. at 92).  Saldate said it is "his word as a police officer and investigator of that case," against "her word," revealing his belief that his version would be credited more. (Id. at 92-93).[10]

### B.  **Petitioner's Evidence.**

#### 1.  **Debra Milke.**

Debra's testimony was also the same as at trial.  (Ex. 1).  By the interrogation at 8:00 p.m. Sunday night, she was physically and mentally exhausted and emotionally drained. (RT 1/11/10 at 138).  She had not heard any

---

[10] This is precisely what is wrong with this case.  Saldate did not memorialize or corroborate the interrogation because *he knew* that as a police officer, his version would be viewed as more credible than Debra's.  In stating throughout its findings that Debra's claims are supported by nothing but her "self-serving" testimony, the district court did just that.  (CR 195 at 18-20). Why Saldate's testimony is not also "self-serving" and how Debra could possibly have corroborated her testimony when Saldate ensured this would be a "swearing contest" is not addressed by the district court.

7

news about Chris since Saturday afternoon. She had just 2-3 hours of sleep since Saturday morning, had only eaten one half sandwich since Friday night, and had ingested alcohol and prescription medication. (Id. at 127-138).[11] She then waited 2 hours at the Sherriff's Office for Saldate's arrival and was not allowed to leave the room even for a drink of water. (Id. at 137).

Saldate entered the room, asked her friend to leave, shut the door, sat in a chair at the desk, took out a pen and started writing on a notebook. (Id. at 139; Ex. 1: RT 10/3/90 at 12-13). Debra was in another chair next to the desk and against the wall. (RT 1/11/10 at 136; Ex.22). She asked if he had heard anything, which he ignored. (RT 1/11/10 at 140; Ex. 1: RT 10/3/90 at 13). After a few moments he said, "We found your son, he was murdered and you are under arrest." (Id.). She "screamed," "started crying" and yelled, "what, what?" (Id.). He said he was "not going to tolerate" her crying and she moaned, "Why are you doing this?," but he just "told [her] to be quiet." (Id. at 140-41;

---

[11] The district court claims it is "undisputed" that when Debra was awakened at her father's house and told that deputies wanted to speak with her, she said "what the fuck do they want?" (CR 195 at 8). Aside from being irrelevant to the waiver issue, this is not undisputed. Debra testified at trial that she was disoriented at the time and doesn't know what she said. (RT 10/2/90 at 123). The State did not ask Debra about this at the evidentiary hearing. The district court cites only to a portion of Paul Huebl's testimony where the State asked if he remembered references to this incident at Debra's trial. (RT 1/12/10 at 25). Huebl thought he remembered Debra's sister, Sandra, saying something like that, but Sandra was not even in Florence. (Id.).

L&L046343

13).  He then pulled out a card and read her *Miranda* rights. (Id.).  She heard

him speaking words, but didn't fully comprehend them. (Id. at 176-78).  She

recalled him saying she "had the right to remain silent" and mentioning

"attorney." (Id. at 141; 17).  When he asked if she understood, she said no, as

she had never been in trouble or under arrest. (Id.).  Debra was also "in shock

because of the horror that my son was dead," "disbelief of being accused of his

murder," and confused about why Saldate was reading her rights. (Id. at 141-44;

17).[12]    Saldate ignored her, did not offer to re-read the rights or have her read

them herself, and instead asked, "Do you want this interview recorded?" (Id. at

142-44; 17; Ex: 1; 10/4/90 at 77-80).  Debra said, "No, I need a lawyer," which

Saldate ignored.  (Id.).  Debra testified she was not really saying she didn't want

it recorded, but that she wanted an attorney and for the interrogation to stop.

---

[12] The district court says Debra was aware of *Miranda* based on her ex-husband's drug arrest and her good high school GPA. The fact that Debra may have known generally about *Miranda* and did well 7 years earlier in high school does not negate her claim that she did not fully comprehend her rights because **she** had never been arrested, and due to her confused mental state when Saldate confronted her with Chris' death *and* her arrest for his murder.  The court also claims Debra admitted to having "previously lied under oath," but leaves out details of the domestic violence proceeding where Debra says she denied the incident after her ex-husband (whom she feared) told her to deny it after he was released from jail. (RT 1/11/10 at 175-76).  This behavior is common for domestic violence victims, and not an indicator of Debra's overall veracity.

9

(RT 1/11/10 at 142-45, 153).[13]   She realized she needed an attorney, even though she didn't fully understand her rights, including her right to stop the interrogation when Saldate ignored her invocation and proceeded with questioning. (Id. at 176-80).[14]

After ignoring Debra's invocation, Saldate moved his chair in front of hers so their knees were touching. (RT 1/11/10 at 145-46; Ex. 1: 10/3/90 at 17-18).   He asked Debra's age and said "I have a daughter about your age, so I understand how you feel." (Id. at 146-47; 18).   He leaned forward, put his hands on her knees and said she could trust him, that he was her friend and was there to find out what happened. (Id.).   Saldate was in her face, about 6 to 12 inches away.  (Id. at 147; 18).   Debra just sat there crying.  He said "I'm not going to tolerate this activity," "I'm here to question you about the murder of your son," "this is your opportunity to tell me the truth," and "I won't tolerate any lies."

---

[13]   The district court calls it "unclear" from Debra's testimony whether she was asking for an attorney, for it to not be recorded, or both.   There is nothing unclear about the statement: "I need a lawyer."   And, Debra clearly explained that her focus was not on whether Saldate tape recorded the interview, but on obtaining an attorney, as Saldate had just read her rights *immediately before* asking if she wanted it recorded.  (Id. at 142-45).

[14]   The district court misconstrues this testimony to mean it is "undisputed" that Debra never invoked her right to remain silent and "made no request that the interrogation cease." (CR 195 at 10).   Debra's request for counsel **subsumes** a request that the interrogation cease. *Edwards*, 451 U.S. 477.   When Saldate ignored her request, she became confused and didn't think she could just stop talking to him. (RT 1/11/10 at 178).

10

L&L046345

(Id. at 147-48; 18).   Debra said, "What do you want from me?" and he said, "The truth.  I'm  here to get the truth." (Id. at 148; 19).   Debra said she didn't know anything about Chris' murder because she wasn't involved. (RT 1/11/10 at 149).   She then started defending herself by explaining she wasn't the type of person who would do something like this, but he wouldn't believe her.  (Id. at 149-155).   She was "reeling" and didn't know what he wanted to hear.  (Id. at 149).   Saldate stayed in her face, and kept saying throughout the interrogation, "you're not telling me the truth," "I came here to get the truth," "I'm not going to tolerate any lies." (Id. at 152-154)   Debra didn't know she could stop talking to Saldate because: (1) he ignored her request for an attorney, (2) he kept "badgering" and accusing her of not being truthful, (3) he was a physically imposing man who was right in her face, and (4) she was confused and in shock and felt she had to "defend" herself.  (Id.).[15]

Debra said Saldate never: (1) showed or gave her the *Miranda* card to read, (2) asked her to initial the card or sign anything acknowledging she

_____

[15]   The district court says Debra's claim to have been in shock is "inconsistent" with "her ability to vividly recall its details," but says in the very next paragraph that her "demeanor" showed she was lying because she did **not** "detail[] her version of the facts of the interrogation." (CR 195 at 20).   It also says the "similarities" between Saldate's and Debra's accounts show Saldate was telling the truth, but fails to explain how agreement as to some portions of the interrogation means Saldate is telling the truth as to the disputed portions, or why it couldn't also mean Debra was telling the truth.   The district court's credibility findings defy logic.

11

understood her rights, (3) asked her to sign anything saying she wanted to waive her rights and talk to him, (4) asked if she wanted to waive her rights or talk to him, (5) offered to bring another officer to witness the interrogation, (6) brought a tape recorder or offered to get one, (7) offered to have her write out a statement after the interrogation, or (8) offered to re-interview her on tape. (Id. at 160-62). Although the room had a phone, Saldate never gave Debra any opportunity to speak with a lawyer or make a call. (Id. at 162; Ex. 1: 10/3/90 at 39, 56). Debra testified she did not confess, told Saldate she was not involved, and tried to defend herself after he ignored her invocation. (Id. at 149, 152-53). Whenever she tried to explain why she couldn't have been involved, Saldate would "get in her face" and say he would not "tolerate any lies." (Id. at 154).[16]

After Debra was transported to Phoenix and was being processed in jail, investigative reporter Paul Huebl requested to see her and asked if she had confessed as police claimed. (Id. at 157-58). Debra was shocked, confused and adamantly denied having confessed. (Id.). He then said he understood it had

---

[16] The district court describes Debra's hearing testimony as "rehearsed" and "formulated to support her legal arguments." Yet, it also acknowledges her hearing testimony "mirrors" her trial testimony (which was elicited long before her appeals). Plus, Debra has been on death row for 20 years, so any perception that her testimony was "rehearsed" likely reflects the fact that she has had two decades of incarceration to reflect on what happened at the interrogation.

L&L046347

something to do with insurance money, and she said "I heard that too and that's crazy." (Id.).[17]  She also asked when she could speak to an attorney. (Id. at 167).

Debra also consistently relayed her account to jail psychiatrist, Dr. Kassell, within 3 months of her arrest.  (RT 1/11/10 at 158-60; Exs. 2, 3 52).  Dr. Kassell testified at the voluntariness hearing that when Saldate "Mirandized" Debra, she "did not fully comprehend what was being said because she was too involved with absorbing the information that her son was killed." (Ex. 52: RT 9/10/90 at 82).  It was Dr. Kassell's opinion within a reasonable degree of medical and psychiatric certainty that, at the time, Debra "may have heard what was being said and may have understood to a certain degree what was being said but I doubt that she really fully comprehended what the Mirandizing was  all  about." (Id.  at  94).[18]   Dr. Kassell recorded this session and the tape was admitted into evidence at the voluntariness hearing. (Id. at 87, 95, 168-72; ER 2045).  It was also admitted and played in part at the evidentiary hearing.  (Id. at 159-60; Exs. 2, 3).

---

[17] Debra testified at trial that Saldate indicated Christopher may have been killed for insurance money.

[18] Ignoring Dr. Kassell's uncontroverted opinion, the district court claimed there was "no evidence that Petitioner was incapable of comprehending her rights, and only her self-serving testimony suggested she did not understand them when they were recited by Saldate." (CR 195 at 18-19).

L&L046348

### 2.   Paul Huebl.

Paul Huebl testified regarding his jailhouse interview of Debra. (RT 1/12/10 at 3-46).   His testimony was consistent with Debra's but he also recalled Debra saying she had asked for a lawyer and hadn't seen one yet. (Id. at 11).   Huebl didn't tell Debra's trial attorney about her statements, as he was angry with Huebl for talking to Debra.   Huebl also thought he knew about the interview, as it was taped and played to one million viewers.   (Id. at 11-13).[19] Although Huebl wrote two articles on his website about Debra's case, the district court incorrectly claims one shows he felt Debra was innocent because she "had a new boyfriend and a job at an insurance agency." (CR 195 at 13).[20]

### 3.   Professor Richard Leo.

Interrogations expert Richard Leo testified regarding Saldate's interrogation practices in Debra's case (and others).   His  reports were admitted by stipulation.   (RT 1/12/10 at 48-135; Exs 4, 5, 6).   During his 20 year career, Leo's research has focused on interrogation practices, *Miranda* requirements/practices and false confessions. (Id. at 48-53; Ex. 4).   One of the

---

[19] At the hearing, a broadcast of Huebl's post-trial interview with Debra was played in which he noted that in their initial interview, Debra denied confessing. (RT 1/12/10 at 17-23; Ex. 23).

[20] Huebl's article says nothing about a "new boyfriend." (RT 1/12/10 at 36-37).   It says Debra had found a new job across town, arranged for day care for Christopher, and rented a two-bedroom apartment for the two of them, and that Jim Styers would no longer have the use of Debra's vehicle, etc.  (Id.).

L&L046349

foremost interrogation experts, Leo has numerous publications (including a leading textbook) and has testified in over 185 voluntariness hearings, trials and post-conviction proceedings. (Id. at 51-52, 85-86).

Leo did an extensive evaluation of the materials in this case.[21] He prepared an initial report focused on Saldate's interrogation practices and the unreliability of Saldate's account. (Ex. 5). Leo then reviewed additional materials and prepared a supplemental report on the *Miranda* waiver issue. (Ex. 6). In Leo's opinion, Saldate's practices: (1) in handling *Miranda* waivers and invocations, and (2) in failing to memorialize or corroborate waivers or interrogations in any way, were not consistent with good interrogation practice throughout the country at that time, and were in fact "strikingly bad." (RT 1/12/10 at 70; Ex. 6). Leo explained how easy it is to obtain and document a waiver and said police are trained to do so because they know the State has the burden of proving waiver, and they need more than an officer's subjective account. (Id. at 70-79).

Leo, who has observed/reviewed hundreds of interrogations, opined that what occurred in Debra's case, especially the failure to create any type of objective, independent record of the waiver (or interrogation), was

---

[21] Leo did not interview Debra or Saldate because there is no need in post-conviction cases with complete records and transcripts. (Id. at 85-86).

15

L&L046350

"extraordinary," especially in a capital case. (Id. at 58-65, 70-72, 133-134).   He also testified that in cases he has examined involving implied waiver, there was at least **some** objective memorialization of the interrogation (through recording) and/or of the waiver (through signing a rights card or some other documentation showing they understood their rights and wanted to move forward with interrogation), or the facts of what occurred during the interrogation were undisputed and/or corroborated by the presence of other officers.  (Id.; Ex. 6). But he has never seen a case in which a valid implied waiver was based solely on a "swearing contest" between a single officer and the accused, where critical facts of what occurred during the interrogation were in dispute, including whether the suspect asserted her right to counsel.  (Id.).

Leo also testified that Saldate's practice of continuing to "have a conversation" with suspects after they invoked their right to counsel was (and is) not at all in accordance with general police practices, as it is understood that the "bright line rule" of *Edwards* requires police to "scrupulously honor" invocations by *immediately ceasing* interrogation. (Id. at 73-75).  He also noted that Saldate's practice defied then-existing PPD policies.  (Id. at 75; Ex. 19). According to Leo, Saldate's subjective account of what occurred is not reliable enough to support a finding of implied waiver relative to hundreds of other interrogations he has reviewed.  In reaching this opinion, Leo pointed to: (1)

L&L046351

Sadate's admitted practice of ignoring *Miranda* invocations, (2) Saldate's demonstrated "confirmation bias" (believing Debra was guilty at the outset and misconstruing her statements and body language in inculpatory ways), (3) Saldate's "wildly implausible assertions" regarding what occurred during interrogation, and (4) Saldate's documented tendency to misstate what occurs in interviews when he prepares his reports (ie: his interview with Debra's sister, Sandra).  (RT 1/12/10 testimony; Ex. 5, 6).  Leo's opinion is not merely that Saldate isn't "telling the truth," but that Saldate's account of what occurred is not reliable in light of Leo's expertise, research and experience in the field of police interrogation practices.  (Id. at 90-91, 108-111, 125-26).

III.   **LEGAL ARGUMENT**

A.   **Standard of Review.**

This Court reviews district court findings of fact for clear error and questions of law de novo.  *Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002); *Canales v. Roe*, 151 F.3d 1226, 1228-29 (9th Cir.1998).

B.   **The District Court Clearly Erred and Exceeded its Authority in Finding the State Met Its Burden of Proving Waiver.**

1.   **No New or Additional Evidence Was Presented at the Hearing to Support the District Court's Waiver Finding.**

Nothing in the pre-existing record supports the state court's waiver finding.  After the State conceded as much at oral argument, this Court ordered

17

L&L046352

supplemental briefing, where the State argued that Debra's waiver was "implied." After considering the briefing and reviewing the record, this Court determined that "A complete review of the record discloses no evidence supporting a finding that petitioner voluntarily, knowingly and intelligently waived her rights under *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). *See* 28 U.S.C.A. §2254(d), (e)." (CR 163).

In making this finding under *Miranda* **and §2254(d), (e)**, this Court necessarily determined that: (1) the state court's finding involved an unreasonable application of clearly established federal law; (2) its determinations of fact regarding waiver were "objectively unreasonable;" and/or (3) its findings failed to survive an intrinsic challenge of objective reasonableness and were not entitled to a "presumption of correctness" under §2254(e)(1). *See Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004).[22]

---

[22] The district court's implication that this Court has "sidestepped" the AEDPA by ordering it to hold an evidentiary hearing and make findings "without regard to the state court's rulings" (CR 195 at 15-16) ignores this Court's citation to 28 U.S.C.A. §2254(d), (e) in issuing its determination that the record reveals no evidence of a valid waiver. If there is **no evidence** of a valid waiver in the record, the state court's fact-finding on this issue is necessarily objectively unreasonable under §2254(d)(2), and §2254(e)(1)'s presumption of correctness and clear-and-convincing standard do not come into play. *Gonzalez v. Pliler,* 341 F.3d 897, 903 (9th Cir. 2003) (state court findings of fact are presumed correct unless rebutted by clear and convincing evidence *or* based on an unreasonable evidentiary foundation); *see also Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) (objectively unreasonable state court findings are not entitled to a presumption of correctness under

L&L046353

In ordering an evidentiary hearing pursuant to *Franz,* 533 F.3d at 745, this Court gave the State an opportunity to further develop the record and meet its burden of proving waiver.[23]  Although the State called Saldate at the hearing, it admitted his testimony was "consistent with his prior testimony at both Petitioner's voluntariness hearing and her trial." (CR 190 at 2).  Other than copies of *Miranda* cards, the State offered no new or additional evidence to support a waiver finding.  In its findings and order, the district court agreed that the hearing testimony of both Saldate and Debra "mirrors" their testimony in

---

§2254(e)(1)).  The parties addressed the AEDPA issue in their briefs before this Court issued its September 2009 Order.  This Court also recently noted that "deference" to state court determinations under §2254(d) does not mean "rubber stamping" whatever the state court decides or turning a blind eye to objectively unreasonable state court findings. *Doody v. Schriro,* 2010 WL 653441, Slip. Op. at 2981, 3016 (9th Cir. Feb. 25, 2010) (en banc).

[23] The district court claims that waiver was not raised in Debra's habeas petition. (CR 195 at 15).  Its evaluation of the procedural posture of this issue exceeds the scope of the remand order and is simply inaccurate.  Debra raised the *Miranda* waiver issue both in her habeas brief on the merits (CR 98 at 52, 36-40) and her reply brief. (CR 117 at 12-19, 27-28).  The district court acknowledged as much, stating: "Specifically, Petitioner asserts that her statement was elicited involuntarily **and in violation of her rights under Miranda.**" (CR 150, 151 at 7; ER 00018).  It then discussed the evidence, quoted the state court's post conviction ruling that Debra's *Miranda* rights were not violated, and denied habeas relief on Debra's *Miranda* claim because the state court findings were entitled to a "presumption of correctness." (ER 00018-00030).  The parties already addressed this procedural issue directly with this Court in their Supplemental Briefs prior to the September 28 Order determining that no evidence supports the waiver finding and remanding for a hearing.  Moreover, "a federal court must conduct an independent review of validity of a waiver." *Terravona v. Kincheloe,* 852 F.2d 424427 (9th Cir. 1988).

19

L&L046354

state court.  Because the State's evidence was no different, the district court could not properly have found that the State has now "suddenly" met its burden of proving Debra voluntarily, knowingly and intelligently waived her *Miranda* rights.  This Court should reject its findings on this basis alone.

### 2.    No Evidence Supports a Finding of Implied Waiver.

The State bears a "heavy burden" in proving a voluntary, knowing, intelligent waiver of *Miranda* rights.  *Miranda*, 384 U.S. 436; *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984).    Although this burden has since been equated to a preponderance standard, *Colorado v. Connelly,* 479 U.S. 157, 168 (1986), there is a *presumption against* finding waiver, *Butler*, 441 U.S. at 373, which the district court failed to apply.

The issue of waiver "must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Id.* at 374-75.  "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." *Miranda*, 384 U.S. at 475; *Butler*, 441 U.S. at 373.  "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of [its] validity," but an express waiver "is not inevitably either necessary or

20

L&L046355

sufficient[.]" *Id.* Although courts must presume a defendant did not waive her rights, "in at least **some** cases waiver can be ***clearly inferred*** from the actions and words of the person interrogated." *Id.* However, "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Id.*

What happened during Debra's interrogation is contested and lacks objective memorialization or corroboration. Thus, like the pre-existing record, the facts developed during the evidentiary hearing cannot support a waiver finding because waiver cannot be ***clearly inferred*** from Debra's actions and words.[24] *Id.* These circumstances distinguish Debra's case from those finding implied waivers where: (1) the facts of what happened during the interrogations were uncontroverted or undisputed **and/or** (2) there were objective, independent records of the interrogation; plus (3) they involved conduct by the accused that "clearly inferred" waiver.

The cases cited by the district court are distinct on some or all of these grounds, including *Butler*, where the agent's testimony was **uncontroverted**.

---

[24] Like the State, the district court misconstrues Debra's position as promoting a "per se" rule that "as a matter of law," the State can never prove waiver where there is conflicting testimony between a detective and defendant. Accurately stated, Debra's position is that the disputed nature of the facts in ***this*** case (especially regarding invocation), and the lack of any objective record or corroboration, mean that waiver cannot be "clearly inferred" from ***this*** record.

L&L046356

441 U.S. at 370, 371.   After Butler read an "Advice of Rights" form, he acknowledged his understanding but refused to sign a waiver form.   **Two agents** explained he was not required to speak or sign the form, but they wanted him to talk with them.   He replied, "I will talk to you but I am not signing any form," then made inculpatory statements.   Butler said nothing when advised of his right to counsel and never invoked or attempted to terminate questioning.   Thus, there was "no doubt" Butler was "adequately and effectively apprised of his rights," and his refusal to sign the waiver form did not preclude a finding of waiver on the uncontroverted facts of that case. *Id.* at 374-376.

The other implied waiver cases cited by the district court are similarly distinct.   In *Terravona v. Kincheloe*, 912 F.2d 1176, 1179 (9th Cir. 1990), waiver was implied where **undisputed facts** showed that **two officers** read and explained the *Miranda* rights, the suspect understood his rights, and **he did not request counsel until after making inculpatory statements**.   The suspect also demonstrated experience dealing with police by objecting to the warrantless search and requesting counsel.   In *United States v. Younger*, 398 F.3d 1179, 1184-86 (9th Cir. 2005), waiver was implied where the suspect was read his rights, acknowledged his understanding, **made spontaneous inculpatory statements prior to questioning**, and responded to further questions **without referencing counsel**, which was **memorialized by tape recording**. In *United*

22

States v. Cazares, 121 F.3d 1241, 1244 (9th Cir. 1997), the facts of the interrogation are not set forth in detail but the court found that "the sum of the evidence presented to the district court" (which was **corroborated**) supports the conclusion that despite language difficulties, the suspect understood and knowingly waived his rights.  In United States v. Ramirez, 710 F.2d 535, 542 (9th Cir. 1983), the **suspect agreed** he was administered Miranda rights, said he understood, and **indicated he wanted to speak with the *two* officers**.[25]  In United States v. Rodriguez-Preciado, 399 F.3d 1118, 1125 (9th Cir. 2005), at least **two officers** questioned defendant, who was orally Mirandized and given a card reciting the warnings in English and Spanish, then said he understood. He **did not contest that he waived his rights**, but claimed his waiver was *involuntary* because officers were in his room.

In United States v. Adams, 583 F.3d 457 (6th Cir. 2009), it was **undisputed** that the defendant was read and understood his Miranda rights, and **never asked for a lawyer**.  He continued talking to the officer, then **completed a written questionnaire admitting guilt.**  His argument that he did not waive his rights because the "WAIVER" box on the questionnaire wasn't

---

[25] Ramirez also stands for the proposition that even where the defendant fails to challenge the admissibility of confession evidence, the prosecution must still meet its burden of showing that proper Miranda warnings were given "*and the elucidated rights were waived.*" 710 F.2d at 542.

23

L&L046358

marked was rejected because that only referred to whether a "waiver form" was executed.  In *United States v. Binion*, 570 F.3d 1034, 1041 (8th Cir. 2009), it was **undisputed** that **two officers** read the defendant his *Miranda* rights, which he said he understood.  **He refused to sign a waiver form**, **so the officers did not ask potentially incriminating questions.**  They simply asked whether he had anything else to say, after which **he volunteered incriminating statements and did not ask for an attorney**.  In *United States v. Nichols*, 512 F.3d 789, 798-99 (6th Cir. 2008), it was **undisputed** that after Nichols was informed of his rights and indicated his understanding, he responded to officers' questions by lying about his identity and **did not invoke his rights**.  While the officer was completing arrest paperwork, they engaged in general conversation, at which time Nichols **voluntarily confessed** his identity and made inculpatory statements.  The court rejected Nichols' argument that the "NO WAIVER" box was checked on the paperwork, as that referred to written waivers.

In *United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005), **two agents** questioned the defendant who admitted he was Mirandized, said he understood, and **did not invoke his rights**.  He further agreed he just continued to answer the agents' questions.  In *United States v. Boon San Chong*, 829 F.2d 1572 (11th Cir. 1987), the court rejected defendant's argument that his failure to sign a waiver form automatically rendered questioning improper.  It was **undisputed**

L&L046359

he was advised of his rights in two languages, said he understood and **did not request an attorney**.  **His decision to answer only select questions** after reading the rights form showed he knowingly waived.  In *Bui v. DiPaolo*, 170 F.3d 232 (1st Cir. 1999), it was **undisputed** that the defendant was advised in two languages, said he understood and added "my Constitution will protect me." Then, without questioning, he **spontaneously uttered** "you have nothing," after which the officer asked if he had something to say about the arrest.  The defendant said "no," but immediately asked "who said I did this?," then conversed "back and forth" with police and selectively answered questions.

In *Bradley v. Meachum*, 918 F.2d 338, 342-43 (2nd Cir. 1990), defendant claimed he invoked his right to silence.  The **undisputed facts** show he was advised of his rights and said he was willing to talk to police but unwilling to sign a waiver form.  The court found **his statement that "he wasn't going to say whether he was involved" was not a valid invocation**, as it was part of an ongoing stream of speech which included a denial of involvement.  In *Baskin v. Clark*, 956 F.2d 142, 146 (7th Cir. 1992), the **uncontroverted evidence** showed the defendant was advised of and said he understood his rights, then **immediately responded to and asked questions without requesting counsel**. He then made **spontaneous incriminating statements** during a "back and forth" conversation with officers.

25

L&L046360

As the district court noted, *United States v. Wallace*, 848 F.2d 1464 (9th Cir. 1988), found no waiver because in the face of repeated questioning by the agent, the defendant maintained her silence for up to ten minutes. A valid waiver will not be presumed simply from the silence of the accused after warnings are given. Moreover, this Court found that the agent's ongoing questioning violated *Miranda's* directive to cease interrogation.[26]   Finally, in *Thompkins v. Berghuis*, 547 F.3d 572, 581 (6th Cir. 2008), *cert. granted*, 130 S.Ct. 48 (2009), there was no implied waiver of the right to silence where the defendant was largely uncommunicative for nearly three hours. Like many cases above, **two officers** were present and the facts of what occurred were **undisputed.** Unlike this case, the officers in *Thompkins* provided the defendant an opportunity to sign a *Miranda* waiver form and/or write a statement.

The district court next cites several cases for the proposition that courts have found waivers based on conflicting testimony of suspects and officers. Notably, *none* of these are capital cases where one's life is hanging in the balance based on a swearing contest between one interrogator and suspect. In *United States v. Gaines*, 295 F.3d 293, 298 (2nd Cir. 2002), the defendant didn't claim he failed to waive his rights, but that the officers did not inform

---

[26] Saldate likewise violated *Miranda* and *Edwards* by continuing to question Debra after she requested counsel. Saldate admits he routinely continued questioning after invocations.

L&L046361

him of his rights before taking a statement.  Although there was no signed acknowledgement that Gaines received and understood his rights: (1) **his statement was memorialized (and signed)**; (2) **the detective's credibility was un-impeached**; and (3) there were **no other grounds to evaluate credibility**, so the circuit court had to rely on the district court's findings. *Id.* at 300.  In *United States v. Doe*, 149 F.3d 634, 639 (7th Cir. 1998): (1) the defendant signed a **written waiver**, (2) **multiple officers were present to corroborate** what occurred, (3) the defendant's claim that he signed the waiver because police held a gun to his head was implausible, and (4) the mere setting of the questioning (a car) did not nullify the written waiver.

In *United States v. Whitworth*, 856 F.2d 1268 (9th Cir. 1988):  (1) **two FBI agents were present**, (2) the defendant was not "in custody" when issued warnings, (3) **the defendant signed a written waiver**, and (4) **he did not ask to speak with a lawyer until two hours after signing the waiver** (when agents ceased questioning).  In *United States v. Nelson,* 137 F.3d 1094 (9th Cir. 1998): (1) **multiple officers** interrogated, (2) the **interrogation was recorded**, (3) the defendant's claim that she was impaired by prescription medication and coerced when the recorder was off were uncorroborated (ie: no evidence she was taking medication), and (4) **she never claimed to have invoked** her rights.

27

L&L046362

*United States v. Montalvo-Ortiz*, 983 F.Supp. 78 (D. Puerto Rico 1997): (1) involved **three officers**, (2) the defendant read the *Miranda* form out loud after receiving the warnings, (3) **defendant signed a waiver form** (which was subsequently misplaced by police), (4) **all three officers verified these facts without being impeached**, and (5) the defendant's claim that he invoked was not credible because someone with his experience with law enforcement would not have continued answering questions after invocation.  In *State v. Mazuera*, 756 F.Supp. 564 (S.D. Fla. 1991): (1) **multiple agents** were present, (2) both defendants **signed written statements**, (3) one defendant admitted they were Mirandized at the station, after which he gave his written statement, (4) the other admitted she was present when her husband was Mirandized and **the form on which she provided her written statement contained *Miranda* warnings**, and (5) **two agents testified un-impeached**.

None of these cases support the district court's finding that the State met its burden in Debra's case.[27]  Moreover, at least ten cases cited by the district court involved interrogations in the field, rather than in custodial settings (*Terravona, Rodriguez-Preciado, Adams, Nichols, Cardwell, Baskin, Wallace,*

---

[27] In *United States v. Dagnan,* 2008 WL 4280024 (4th Cir. 2008), an unpublished 2-page decision cited by the district court, it is unclear what evidence was presented regarding waiver.  The defendant said the lower court failed to support its credibility determinations, and the circuit court simply said there was no reason on the record to disturb the lower court's findings.

L&L046363

*Doe*, *Whitworth* and *Mazuera*).  Of these, nine involved multiple officers and/or undisputed facts (*Terravona, Rodriguez-Preciado, Adams, Nichols, Cardwell, Baskin, Doe, Whitworth* and *Mazuera*), two had written waivers (*Doe* and *Whitworth*), and two had written statements/confessions (*Adams* and *Mazuera*).

Only six cases involved interrogations in traditional custodial settings (jails, police stations, prisons) where recording equipment was more readily available, and two of those were, in fact, recorded (*Younger* and *Nelson*).  All others in custodial settings involved multiple officers (*Binion, Thompkins* and *Montalvo-Ortiz*) except one, in which the facts of what occurred were undisputed (*Bradley*).  It is not clear from the remaining cases where the interrogations occurred (*Cazares, Ramirez, Boon San Chong, Bui, Gaines and Dagham*), however, three involved undisputed facts and/or multiple officers (*Ramirez, Boon San Chong and Bui*), and one had a signed statement by defendant (*Gaines*).  The interrogation facts are not detailed in the other two decisions.  (*Cazares* and *Dagnam*).

In addition to relying on cases that are materially distinct from Debra's, the district court ignores the fact that Saldate, who controlled the interrogation, failed to create an objective record, knowing full well that this created a "swearing contest," which "as a police officer and investigator of that case," he knew he would likely win.  (RT 1/11/10 at 92-93).  Nor did it address key Ninth

29

L&L046364

Circuit and Supreme Court cases emphasizing that "swearing contests" created by police are highly suspect relative to other types of credibility determinations. *See Taylor,* 366 F.3d 992 (police officers' claims regarding what happened during interrogation are not entitled to special deference, especially where officers created conditions they knew would result in a "swearing contest"); *Reck v. Pate,* 367 U.S. 433, 446 (1961)("There is the word of the accused against the police. But his voice has little persuasion."); *Miranda,* 384 U.S. at 475 ("the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence…"); *see also Doody,* 2010 WL 653441, Slip. Op. at 2987 (noting that "the audiotapes of Doody's interrogation are dispositive in this case, as we are not consigned to an evaluation of a cold record, or limited to reliance on the detectives' testimony.").

In sum, no case cited by the district court involved a one-on-one interrogation in a traditional custodial setting that was not objectively memorialized or corroborated, and where the facts of what occurred – especially regarding invocation – are in dispute. That is the situation here. The lack of physical evidence and testimony directly linking Debra to the murder further distinguishes her case, as does her capital sentence.

L&L046365

## CONCLUSION

Petitioner/Appellant requests this Court to reject the district court's findings as clearly erroneous and unsupported by facts or law.  There is no evidence supporting a waiver finding, making Debra entitled to habeas relief.

DATED this 17th day of March, 2010.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/  Lori L. Voepel
   Lori L. Voepel
   2901 North Central Avenue, Suite 800
   Phoenix, Arizona  85012
   *Attorneys for Petitioner-Appellant*
   *Debra Jean Milke*

KIMERER & DERRICK, P.C.


By /s/  Lori L. Voepel for
   Michael D. Kimerer
   Amy L. Nguyen
   221 E. Indianola Avenue
   Phoenix, Arizona  85012
   *Co-Counsel for Petitioner-Appellant*
   *Debra Jean Milke*

L&L046366

## CERTIFICATE OF COMPLIANCE
## FOR CASE NUMBER 07-99001

I certify that this Supplemental Brief Re: District Court's January 29, 2010 Order and Findings is being filed in a capital case in accordance with Circuit Rule 32-4 and this Court's February 3, 2010 Order, and is proportionately spaced, has a typeface of 14 points or more and contains 7,959 words.

| March 17, 2010 | /s/ Lori L. Voepel |
| --- | --- |
| Date | Signature of Attorney or Unrepresented Litigant |

L&L046367

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 17, 2010.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system, and are as follows:

> J. D. Nielsen, Esq.
> ARIZONA ATTORNEY GENERAL OFFICE
> 1275 W. Washington
> Phoenix, Arizona 85007
> *Counsel for Respondent/Appellee*

> Kent Cattani, Esq.
> ARIZONA ATTORNEY GENERAL OFFICE
> 1275 W. Washington
> Phoenix, Arizona 85007
> *Counsel for Respondent/Appellee*

> Julie Ann Done, Esq.
> ARIZONA ATTORNEY GENERAL OFFICE
> 1275 W. Washington
> Phoenix, Arizona 85007
> *Counsel for Respondent/Appellee*

> Daniel Pochoda, Esq.
> ACLU OF ARIZONA
> P.O. Box 17148
> Phoenix, Arizona 85011-0148
> Counsel for *Amicus, ACLU*

> Larry Hammond, Esq.
> OSBORN MALEDON, P.A.
> 2929 N. Central Avenue, Ste 2100
> Phoenix, Arizona 85012-2793
> Counsel for *Amicus, ACLU*

L&L046368

Michael D. Kimerer, Esq.
KIMERER & DERRICK, P.C.
221 E. Indianola Avenue
Phoenix, Arizona 85012
*Co-Counsel for Petitioner/Appellant*

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Steven A. Drizin, Esq.
Bluhm Legal Clinic
NORTHWESTERN UNIVERSITY SCHOOL OF LAW
357 E. Chicago Avenue
Chicago, Illinois 60611
Counsel for *Amicus, Center on Wrongful Convictions*


     /s/  Ginger Stahly


2163346.1

34

No. 07–99001

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

DEBRA JEAN MILKE,

   PETITIONER-APPELLANT,

  —VS—

CHARLES L. RYAN, et. al.,

   RESPONDENTS-APPELLEES.

ONAPPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF
ARIZONA,
NO. CIV–98–00060–PHX-RCB

RESPONSE TO PETITIONER'S POST-HEARING SUPPLEMENTAL BRIEF RE:
*MIRANDA* WAIVER

TERRY GODDARD
ATTORNEY GENERAL
( FIRM STATE BAR NO. 14000)

KENT CATTANI
CHIEF COUNSEL
CAPITAL LITIGATION SECTION

JULIE A. DONE
ASSISTANT ATTORNEY GENERAL
CAPITAL LITIGATION SECTION
1275 WEST WASHINGTON
PHOENIX, ARIZONA  85007–2997
TELEPHONE: (602) 542–4686
STATE BAR NUMBER 024370

ATTORNEYS FOR RESPONDENTS-
APPELLEES

L&L046370

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES........................................................................................... ii

PROCEDURAL BACKGROUND.................................................................................. 1

SUMMARY OF ARGUMENT...................................................................................... 2

SUMMARY OF PERTINENT EVIDENCE PRESESNTED AT THE
    EVIDENTIARY HEARING ................................................................................... 3

ARGUMENT ................................................................................................................. 9

CONCLUSION ............................................................................................................ 18

CERTIFICATE OF SERVICE .................................................................................... 19

CERTIFICATE OF COMPLIANCE........................................................................... 20

STATEMENT OF RELATED CASES ....................................................................... 21

i

L&L046371

# TABLE OF AUTHORITIES

CASES                                                                          PAGE

Aiken v. Blodgett, 921 F.2d 214 (9th Cir. 1990)............................................................10

Anderson v. Bessemer City, 470 U.S. 564 (1985) ........................................................11

Carriger v. Stewart, 132 F.3d 463 (9th Cir. 1997).......................................................10

Colorado v. Spring, 479 U.S. 564 (1987).....................................................................16

Delgadillo v. Woodford, 527 F.3d 919 (9th Cir. 2008) ................................................10

Easley v. Cromartie, 532 U.S. 234 (2001) ...................................................................11

In Perri v. Director, Dept. of Corrections, State of Ill., 817 F.2d 448 (7th Cir. 1987)..................18

Jackson v. Virginia, 443 U.S. 307 (1979).....................................................................10

Johnson v. Zerbst, 304 U.S. 458 (1938)........................................................................16

Marshall v. Lonberger, 459 U.S. 422 (1983).................................................................10

McClure v. Thompson, 323 F.3d 1233 (9th Cir. 2003) .................................................11

Miranda v. Arizona, 384 U.S. 436 (1966) ...........................................................1-6, 8-17

Moran v. Burbine, 475 U.S. 412 (1986).........................................................................16

North Carolina v. Butler, 441 U.S. 369 (1979) .........................................................9, 16

Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998)...........................................................11

Terrovona v. Kincheloe, 912 F.2d 1176 (9th Cir. 1990) ..............................................16

United States v. Doe, 155 F.3d 107i0 (9th Cir. 1998) ..................................................11

United States v. Labrada-Bustamante, 428 F.3d 1252 (9th Cir. 2005)........................16

United States v. Nelson, 137 F.3d 1094 (9th Cir. 1998)...............................................17

United States v. Rodriguez-Preciado, 399 F.3d 1118 (9th Cir. 2005) .........................16

United States v. Saya, 247 F.3d 929 (9th Cir. 2001) ...............................................11-12

United States v. Whitworth, 856 F.2d 1268 (9th Cir. 1988).........................................17

United States v. Working, 224 F.3d 1093 (9th Cir. 2000) ............................................12

Zichko v. Idaho, 247 F.3d 1015 (9th Cir. 2001) ...........................................................11

ii

## STATUTES

28 U.S.C. § 2254(d) ................................................................................................... 1, 2, 9, 10, 15

28 U.S.C. § 2254(d)(1)................................................................................................................ 10

28 U.S.C. § 2254(e) ............................................................................................................... 1, 10

28 U.S.C. § 2254(e)(1)................................................................................................................ 10

## RULES

9th Cir. R. 28–2.6 ..................................................................................................................... 21

9th Cir. R. 32–1 ......................................................................................................................... 20

L&L046373

## PROCEDURAL BACKGROUND

On September 5, 2008, this Court ordered the parties to file supplemental briefs addressing the following question: "What evidence is required to prove that a defendant's waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), was made 'voluntarily, knowingly and intelligently,' see id. at 444–45, and is that burden met in this case?" (Doc. #61.)  The parties filed supplemental briefs on this issue.  (Docs. ##75, 81, 84.)

After the supplemental briefs were filed, on September 28, 2009, this Court found that "A complete review of the record discloses no evidence supporting a finding that petitioner voluntarily, knowingly and intelligently waived her rights under *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966), *See* 28 U.S.C. § 2254(d)–(e)."  Based on this finding, this Court remanded "with instructions to conduct a limited hearing on the sole issue of whether petitioner validly waived her *Miranda* rights; respondent shall have the burden of proof." (Doc. #90.)

An evidentiary hearing was held on this issue on January 11, 2010, and January 12, 2010.  Following the hearing, the parties filed written closing memorandum.  On January 29, 2010, in a 21-page decision, the district court issued its findings and order, holding that "Respondents have proven by a preponderance of the evidence that Petitioner knowingly, voluntarily, and

L&L046374