1  time period."), *implied overruling on other ground recognized by Coleman v.*

2  *Calderon*, 210 F.3d 1047, 1055 n.1 (9th Cir. 2000). *Gonzalez v. Wong*, 667 F.3d

3  965 (9th Cir. 2011), is distinguishable because that prisoner had already raised a

4  *Brady* claim in state court and in his federal habeas petition, but presented new

5  evidence to the federal court that made his federal habeas claim "broader" than it

6  had been in state court. *Id.* at 978-79.

7  **IV.   THE *BRADY* CLAIM IS TIME-BARRED UNDER AEDPA AND SO A STAY-AND-**
8  **ABEYANCE WOULD BE FUTILE.**

9  The dissenting Ninth Circuit judge explained why the *Brady* claim is time-

10 barred:

11 > I would find that Gallegos' proposed *Brady* claim is untimely pursuant
12 > to AEDPA's one-year period of limitations. . . . The motion—
> Gallegos' first suggestion that he has a *Brady* claim—was filed in the
13 > Ninth Circuit just one day short of the anniversary of our decision in
14 > *Milke v. Ryan*, 711 F.3d 998, 1020–21 (9th Cir.2013). It does not
> appear that Gallegos has filed such a claim in an Arizona state court,
15 > or in the federal district court. Gallegos appears to be relying on his
16 > motion to somehow stay the time for seeking relief in the state court
> or district court. But the materials before us reveal that even if a *Brady*
17 > claim could be raised for the first time in a motion on appeal, here the
18 > motion is untimely.

19 > A number of factors compel this conclusion. First, Detective Saldate's
20 > misdeeds were recorded in state court decisions that issued in 1989
> and 1990. See *Milke*, 711 F.3d at 1020–21. Thus, the information was
21 > not something that was hidden from, or unavailable to, Gallegos. It
22 > was in the public domain, presumably available to all, years before
> Gallegos filed his motion to remand.
23

24 > Second, the Arizona Federal Public Defender—the office that has
25 > represented Gallegos since at least February 2009—raised similar
> allegations concerning Saldate in *Runningeagle v. Ryan*, 686 F.3d 758
26 > (9th Cir. 2012). The December 2009 opening brief in *Runningeagle*
> indicates that even if Gallegos's counsel did not actually know about
27 > Saldate's misdeeds, they should have known about them well before
28 > the March 2013 opinion in *Milke*. The Arizona Federal Public

GALL 251

EXHIBIT 1j

SALDATE000356

1
2
3
4
5

Defender's Office does excellent work on death penalty cases. It seems incredible to me that in light of the allegation that Saldate had "been repeatedly accused of improper behavior and coercive interrogation," the attorneys representing Gallegos were unaware of Saldate's flaws. Certainly, they could not have been unaware of the relevance of Saldate's character, as the trial court denied the motion to suppress based on his testimony.

6
7
8
9
10
11
12

Third, the motion only represents what defense counsel did after we issued our opinion in Milke. After Milke, counsel attempted to speak to Saldate and requested documents from the Maricopa County Attorney's Office. Counsel alleges that then, in the summer of 2013, they learned that "all of Det. Saldate's files had been destroyed by unknown persons on unknown dates." Motion at 4. However, counsel's efforts in 2013 simply do not excuse the failure to act sooner. [footnote omitted].

13
14

Accordingly, I would deny Gallegos' motion to remand based on an alleged *Brady* claim as untimely pursuant to 28 U.S.C. § 2244(d)(1).

15
16

820 F.3d at 1040. The dissent and the majority's mandate, at the very least, dictate that this Court must first decide the timeliness issue.

17
18
19
20
21
22
23
24
25
26
27
28

A stay would be futile as the *Brady* claim is time-barred pursuant to AEDPA's 1-year statute of limitations. *See generally* 28 U.S.C. §2244(d)(1). The 1-year statute of limitations applies to each habeas claim on an individual basis. *See Mardesich*, 668 F.3d at 1169. With regard to this claim, the applicable part of §2244(d)(1) is subsection (D), which provides that the 1-year period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See also Mardesich*, 668 F.3d at 1173 (applying subsection (D) and finding claim untimely). Pursuant to Section 2254 (d)(1)(D), this Court must determine "the date on which the factual predicate of the claim … could have been discovered through the exercise of due diligence." Under any view of the relevant facts, the new *Brady* claim is time-barred because it was not filed until well over 1 year since Gallegos could have

GALL 252

SALDATE000357

1   discovered and presented the evidence he now adduces in support of his *Brady*

2   claim, consisting of nine instances of alleged misconduct by Detective Saldate.

3        Attached to the Ninth Circuit opinion in *Milke* is an appendix listing nine

4   items of purported misconduct, eight of which are based on judicial rulings

5   regarding statements taken by Saldate.   711 F.3d at 1020-21. Gallegos' current

6   motion cites the very same nine alleged items of misconduct that were cited in the

7   *Milke* appendix.  (Motion, at 4-6.) Therefore, *at the very least*, Gallegos has known

8   about the factual bases for the asserted *Brady* claim since the Ninth Circuit *Milke*

9   opinion issued on March 13, 2013—but has failed to make the claim within the 1

10  year specified by Section 2244(d)(1)(D.)

11       But the FPD has known about the basis for such a claim for much longer

12  than that, having presented such evidence in at least one other federal habeas

13  appeal before the Ninth Circuit: *Runningeagle v. Ryan*, Ninth Circuit No. 07-

14  99026.  In Runningeagle's Opening Brief to the Ninth Circuit, he asserted:

15            Detective Saldate has been repeatedly accused of improper
16       behavior and coercive interrogation. (*See, e.g.,* ROA 448 Exs. R-Y,
         ER 810-883 (the voluminous appendices to Ex. V are omitted from
17       the excerpts of record but are part of the record on appeal).)"

18  (Exhibit A, at footnote 18, pages 18-19.)
19
20       The excerpts of record filed by Runningeagle's Assistant Federal Public

     Defender included Runningeagle's state PCR petition, which had been attached as
21
     Exhibit R to Milke's PCR petition, which in turn alleged that: "Detective Saldate
22
     engaged in a pattern of rampant overreaching in his effort to secure the type of
23
     information that he wanted from suspects under his control" and in some detail
24
     asserted Saldate's history with respect to interrogations.  *See Runningeagle*, Ninth
25
     Circuit Docket # 24, Excerpts of Record, Volume IV, ER 812-814.  Milke's petition
26
     listed 23 other cases in which Saldate had allegedly committed misconduct,
27
     *including State v. Gallegos. Runningeagle*, ER 813-814. Also included in
28

1   Runningeagle's ERs was Exhibit V, an attachment to his PCR petition, which

2   summarized an investigation into Saldate's role in various cases, including

3   *Rodriguez, Reynolds, Rangel,* and *King* (Exhibit B, *Runningeagle* ERs, at Bates

4   Stamp Nos. 855, 858, 861, 862, and 866)—four of the five cases cited in Gallegos'

5   current motion. (Motion, at 4-6.) Exhibit V also cited *Gallegos.* (Exhibit B, Bates

6   Stamp Number 864.) Thus, the factual basis for the *Brady* claim has been within

7   the actual knowledge and possession of the FPD since at least 2009.

8       Gallegos alleges that the State "has never disclosed any of this impeachment

9   evidence to any court or Mr. Gallegos' counsel." (Motion, at 7.) First, the Supreme

10  Court has clarified that, as a matter of federal constitutional law, *Brady* does not

11  apply to post-conviction proceedings. *See District Attorney's Office for the Third*

12  *Judicial District v. Osborne,* 557 U.S. 52, 68-69 (2009). Second, the State's lack of

13  disclosure aside, most of the asserted impeachment is set forth in public judicial

14  rulings, and Milke, represented by private counsel, obtained such evidence to

15  support her claim in both state and federal courts. *Milke,* 711 F.3d at 1003-1005.

16  Any assertion that the FPD, with its immense resources could not obtain the same

17  information as private counsel, would be ludicrous.

18      Third, the relevant legal question for the statute of limitations' analysis is

19  when Gallegos' counsel knew, or reasonably should have known, about the

20  allegations of misconduct regarding Saldate. The FPD clearly knew of such

21  possible impeachment evidence at least as far back as 2009, when that office

22  presented it to the Ninth Circuit in *Runningeagle.* "Time begins when the prisoner

23  knows (or through diligence could discover) the important facts, not when the

24  prisoner realizes their legal significance." *Hasan v. Galaza,* 254 F.3d 1150, 1154

25  n.3 (9th Cir. 2001) (quoting *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000).

26      Even if Gallegos were allowed to amend his petition to include the *Brady*

27  claim, the claim would be time-barred under 2244(d)(1)(D), which began to run at

28

**GALL 254**

SALDATE000359

1   the very latest at the filing of the *Milke* opinion on March 14, 2013. The *Brady*
2   claim does not "relate back" to an original claim, and therefore cannot be timely
3   under AEDPA. *See Mayle*, 545 U.S. at 662-665. This Court may deny a stay when
4   *Mayle's* relation-back doctrine would prevent the prisoner from ever successfully
5   amending his petition to include the new claim. *See King*, 564 F.3d at 1141-1142.

6       *Rhines v. Weber*, 544 U.S. 269, 277 (2005), specifies that a stay-and-abey
7   should be granted "only in limited circumstances." *Rhines* holds that a motion to
8   stay should be denied if the unexhausted claim is "plainly meritless." For the
9   reasons discussed below, this claim is also plainly meritless, and would fail in state
10  post-conviction proceedings, both under a *Brady* analysis and an analysis under
11  Rule 32.1(e), Arizona Rules of Criminal Procedure. Further, *Rhines* concerns what
12  a district court should do when presented with a mixed petition and the prisoner
13  had "good cause" for not properly exhausting the unexhausted claim in a proper
14  fashion. Gallegos did not present this issue in his habeas petition, but has rather
15  delayed until several years later to attempt to amend his petition, during which
16  time he could also have filed a state post-conviction petition.

17      Gallegos' reliance on *Gonzalez* is misplaced, because that prisoner had
18  raised a *Brady* claim in state court and in his federal habeas petition, but presented
19  new evidence to the federal court that made his federal habeas claim "broader"
20  than it had been in state court. 667 F.3d at 978-79. The Ninth Circuit specifically
21  found a stay-and-abey proper in that situation and also found a "potentially
22  meritorious" *Brady* claim. 667 F.3d at 980-81. The Ninth Circuit's mandate here
23  made no such findings, and does not mention a stay-and-abeyance. *Gonzalez* did
24  not involve a statute-of-limitations issue. And Gallegos did not raise this claim to
25  the state courts and in his habeas petition, unlike *Gonzalez*, and also unlike *Milke*,
26  who raised the claim both in state post-conviction proceedings and to the district
27  court, 711 F.3d at 1004-05, & 1010-11. Finally, as discussed the *Brady* claim is not
28

**GALL 255**

EXHIBIT 1j

SALDATE000360

1   potentially meritorious, but rather plainly meritless.

2   **V.   THE MOTION FOR A STAY SHOULD ALSO BE DENIED ON EQUITABLE**
3   **GROUNDS–LACK OF DILIGENCE AND LACK OF LIKELIHOOD OF SUCCESS ON**
    **THE MERITS.**

4   Respondents submit that the issue of timeliness is a necessary predicate for

5   deciding whether to grant a stay and abeyance, and the lack of timeliness

6   necessarily makes a stay-and-abeyance procedure futile.   But Respondents will

7   also address the general factors this Court considers when determining whether to

8   grant a stay and abeyance.

9   **A.   *Background law regarding equitable factors when federal courts***
10   ***consider granting motions for stays in federal habeas proceedings.***

11   A capital petitioner can only obtain a stay of federal appellate proceedings if

12   he has shown "substantial grounds upon which relief might be granted."   *See*

13   *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983); *Gerlaugh v. Stewart*, 167 F.3d 1222,

14   1224 (9th Cir. 1999). "[A] stay of execution is an equitable remedy."   *Hill v.*

15   *McDonough*, 547 U.S. 573, 584 (2006). "It is not available as a matter of right."

16   *Id.*   Federal habeas review is not "a means by which a defendant is entitled to

17   delay an execution indefinitely." *Barefoot*, 463 U.S. at 887.   The Supreme Court

18   has emphasized that: "[E]quity must be sensitive to the State's strong interest in

19   enforcing its criminal judgments without undue interference from the federal

20   courts." *Hill*, 547 at 583.

21   **B.   *Gallegos failed to exercise diligence in presenting this claim.***

22   Gallegos is not entitled to a stay because, as discussed above, he was not

23   diligent in raising his *Brady* claim in this case.   A principle maxim of equity is that

24   one who seeks an equitable remedy must not have slept on his rights.   *See, e.g.,*

25   *Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc.*, 621 F.3d

26   981, 988 (9th Cir. 2010).

27   First, as discussed, the FPD has, at the least, known of allegations and

28   evidence regarding misconduct by Saldate when the Ninth Circuit issued its

11

EXHIBIT 1j

SALDATE000361

1   opinion in *Milke*.   Second, the FPD knew about the allegations and evidence even

2   earlier, when it submitted them in support of the appeal in *Runningeagle*.   Third,

3   Milke showed diligence by pursuing a *Brady* claim in state PCR proceedings,

4   based on alleged misconduct by Saldate in interviewing suspects.   *See Milke*, 711

5   F.3d at 1004-05. This Court said in *Milke*: "And, despite this trove of undisclosed

6   impeachment evidence, the post-conviction court rejected Milke's claim that she'd

7   been denied access to impeachment evidence." *Id.* at 1005.   And, unlike Gallegos,

8   Milke also asked the district court to grant discovery of evidence regarding

9   misconduct by Saldate, and complained on appeal to this Court that she had been

10  denied access to Saldate's files. *Id.* at 1010-11.

11          Gallegos notes his attempts to get Saldate's police files from the City of

12  Phoenix, in 2013.   (Motion, at 8-9.)   He correctly notes that, in *Milke*, the State

13  determined that these files, with one exception, had been destroyed, and filed

14  affidavits from relevant city officials. (*Id.* at 9.)   Respondents are attaching relevant

15  exhibits filed in *Milke*. (Exhibits E, F, and G.)   These explain that the City of

16  Phoenix only retains files for 5 years, "in accordance with the Arizona State

17  Library, Archives and Public Records Retention Schedule." As noted by the Ninth

18  Circuit dissenting judge: "Contrary to the implication raised in the motion to

19  remand, it is not unusual that documents that no one had looked at or requested in

20  over 20 years would no longer be available."   820 F.3d at 1040 fn. 1.

21          Thus, Gallegos could have raised this claim much earlier, and his failure to

22  do so prejudiced the State and evinces a lack of due diligence and failure to

23  exercise reasonable care that should preclude habeas relief, including the requested

24  stay. *See King v. Trujillo*, 638 F.3d 726, 732 (9th Cir. 2011).

25          **C.    *No reasonable likelihood of success.***

26          Gallegos' *Brady* claim clearly lacks merit, as shown by the significant factual

27  differences between this case and *Milke*.

28

GALL 257

EXHIBIT 1j

SALDATE000362

1       In *Brady*, the Supreme Court held that "[t]he suppression by the prosecution
2   of evidence favorable to an accused upon request violates due process where the
3   evidence is material either to guilt or to punishment, irrespective of the good faith
4   or bad faith of the prosecution." 373 U.S. at 87. *Brady* violations have three
5   components: "The evidence at issue must be favorable to the accused, either
6   because it is exculpatory, or because it is impeaching; that evidence must have
7   been suppressed by the State, either willfully or inadvertently; and prejudice must
8   have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).   The terms
9   "material" and "prejudicial" are used interchangeably in *Brady* cases. *See*
10  *Runningeagle*, 686 F.3d at 769.  Evidence is material under *Brady* when there is a
11  reasonable probability that, had the evidence been disclosed, the result of the
12  proceeding would have been different. *Runningeagle*, 686 F.3d at 769.

13      Under the reasoning of *Milke*, the specified items would have been favorable
14  to the defense because they could have been used to impeach Saldate at various
15  phases of the trial.  711 F.3d at 1012-16.  Furthermore, the items asserted in *Milke*
16  and cited now by Gallegos (Motion, at 4-6), occurred before Gallegos' trial in 1991
17  and so existed before trial, and were apparently not actually discovered until after
18  trial. Under the reasoning of *Milke*, therefore, the prosecutor violated *Brady* by not
19  disclosing such evidence before trial. 711 F.3d at 1016-18. But, in contrast to
20  *Milke*, there was substantial evidence against Gallegos other than testimony by
21  Detective Saldate, showing that a claim of prejudice under the third prong of *Brady*
22  is plainly meritless.

23      What is striking about *Milke* is the lack of evidence, other than Saldate's
24  testimony regarding statements by Milke, to prove Milke's guilt. *Milke's* discussion
25  of the *Brady* prejudice component emphasized that the confession as reported by
26  Saldate, "was the only direct evidence linking Milke to the crime," and there was
27  "no . . . other evidence that Milke confessed." 711 F.3d at 1018.  It found both that
28

GALL 258

EXHIBIT 1j

SALDATE000363

1   the non-disclosed evidence would have affected Saldate's credibility and the
2   determination of whether the alleged confession was lawfully obtained.  *Id.* at
3   1019.  Accordingly, it found that the non-disclosure of the evidence was prejudicial
4   under *Brady*. *Id.*

5       Here, by contrast, there was very strong other evidence corroborating
6   Saldate's testimony about what Gallegos told him, including:  Gallegos' recounting
7   his confession to Detective Chambers; Gallegos' testimony at trial; DNA evidence,
8   and the uncontested presence of Gallegos in the home and access to the victim.
9   Gallegos attempts to downplay all of this other evidence, but the evidence is
10  compelling and its very existence puts this case in stark contrast to *Milke*.

11      Unlike *Milke*, Gallegos not only confessed to Saldate, but also repeated the
12  confession to Detective Chambers. *Cf. Scott v. Ryan*, 2011 WL 240746, **3-9 (D.
13  Ariz. Jan. 24, 2011), *aff'd Scott v. Ryan*, 686 F.3d 1130, 1133-1135 (9th Cir. 2012)
14  (upholding voluntariness of statement first made to Saldate, and then to Detective
15  Mills). The impeachment evidence at issue would not have changed that result
16  because Chambers verified Saldate's account of Gallegos' confession, further
17  indicating that the confession was voluntary and truthful.

18      Detective Chambers testified at the suppression hearing. (Exhibit C, RT
19  8/3/90, at 65.) Chambers heard Gallegos' statements, and he did not coerce or
20  threaten Gallegos, or make any promises. (*Id.* at 69.) Gallegos never appeared not
21  to understand questions by Saldate or Chambers. (*Id.* at 70.) Chambers was
22  intended as a "witness" to the statement Gallegos previously made to Saldate, and
23  spent about 20 minutes with Gallegos. (*Id.* at 83.)  Then, the detectives arranged
24  for Gallegos to "confront" Smallwood, and Chambers recalled "Gallegos urging to
25  Smallwood to tell the truth, admitting he had told the truth." (*Id.* at 84-85, 87.) The
26  trial court found both confessions (the first to Saldate and the second to Saldate
27  and Chambers) were voluntary and admissible. (*Id.* at 118.)

28

GALL 259    EXHIBIT 1j    SALDATE000364

1    Although Chambers did not testify at trial, he did testify at sentencing and
2  re-sentencing.  At re-sentencing, he testified that he believed Gallegos' statement,
3  which included the statement that he was involved in the murder. (RT 10/24/94, at
4  37.)   Chambers clarified that Saldate told him the statement that Gallegos had
5  given, and then testified that Gallegos "made essentially the same statement to me
6  as well in Saldate's presence." (*Id.* at 48.)   In fact, Chambers found Gallegos'
7  statement so believable that he thought George Smallwood was involved, and,
8  against his practice in capital cases, Chambers recommended that Gallegos receive
9  a life sentence because Smallwood had not been charged. (*Id.* at 45-46.)

10    Furthermore, unlike *Milke*, Gallegos confirmed the gist of his inculpatory
11 statements—that he suffocated and sodomized the victim—in subsequent
12 testimony and statements.  Gallegos' trial testimony shows that his confession to
13 Saldate was voluntary, and that Saldate had not fabricated the confession.  Indeed,
14 Gallegos' testimony corroborated Saldate's testimony about the confession.  Rather
15 than denying his confessions, Gallegos testimony tracked his prior statements to
16 the police about what he did to the victim. He testified and admitted that he: (1)
17 rubbed the victim's back with baby oil (RT 3/13/91, at 62); (2) put his hand over
18 her nose, and that she thereafter went limp (*Id.* at 63-64); (3) thought he had killed
19 the victim  (*Id.* at 66); (4) proceeded to have sex with the victim by inserting his
20 penis into her anus (*Id.* at 68); (5) and knew it was "wrong" to insert his penis "into
21 this little girl's anal opening." (*Id.* at 113). Gallegos admitted telling the truth to
22 Detective Saldate and admitted explaining what was done to the victim.  (*Id.* at 80.)
23 He admitted he "actively participated in the killing." (*Id.* at 127.)

24    Furthermore, Gallegos did not deny his actions at either his sentencing or his
25 re-sentencing.  In his brief statement at sentencing, he did not deny what he had
26 done, but only lamented that: "None of this was meant to happen. I did not know
27 my conduct would cause her death."  (RT 5/24/91, at 42.)  At re-sentencing, he

1   admitted going into the victim's room, recognizing she was dead, carrying her

2   body outside, and "sobering up real quick" after he had sex with her.   (RT

3   10/24/94, at 25-27.)

4          Finally, regarding the sentence, the Arizona Supreme Court, on independent

5   review, found the murder was heinous and depraved, based on a statement

6   Gallegos made as part of the pre-sentence investigation to the author of the pre-

7   sentence report. *Gallegos*, 870 P.2d at 1110-11. Specifically, Gallegos told the

8   probation officer that he thought the victim was dead, and so "he went ahead and

9   finished the act because 'it wasn't like she was going to tell anybody.'" At that

10  point, he consciously decided to have sex with her:  "He sodomize[d] the victim

11  because it was like 'why not.'  He knew he was going to get caught the next day."

12  (*Id.* at 1011.)

13         Gallegos attempts to do away with his confessions to Saldate and Chambers,

14  and his own testimony at trial, on the theory that none of this evidence would have

15  been admitted at trial because the trial court would have granted Gallegos' motion

16  to suppress the statements if it had known of the currently-asserted *Brady* material.

17  But the state trial court found his confessions were voluntary and *Miranda*-

18  compliant and those findings have not been challenged in this habeas proceeding.

19  As the Ninth Circuit noted: The trial court determined [his] confessions were

20  voluntary. Gallegos did not challenge that determination in his petition for habeas

21  relief." 820 F.3d at 1018 fn.5.  Thus, Gallegos cannot undo the confessions or his

22  own testimony at trial based on speculation that the trial court would have

23  suppressed the confessions and so Gallegos would not have testified at trial and

24  confirmed the truthfulness of his confessions.

25         By contrast, Milke made a separate claim in federal habeas, including on

26

27

28

1  appeal to the Ninth Circuit, that admission of her statements to Detective Saldate
2  constituted a constitutional violation.[1]   Only Judge Kozinski's separate
3  concurrence would "set aside Milke's conviction on the separate ground that it
4  relied on an illegally-obtained confession that probably never occurred," and
5  would "bar use of the so-called confession during any retrial of Milke." *Milke*, 711
6  F.3d at 1025. Here, conversely, there is no separate claim on which to find that the
7  confessions were unconstitutionally-obtained, or that their use and Gallegos' trial
8  testimony would be barred in further proceedings. Finally, Gallegos challenges the
9  DNA evidence, claiming that both the state and federal courts have made
10  "inaccurate and damning references to Mr. Gallegos' DNA being found in the
11  victims' rectum." (Motion, at 14, fn.5.) But that claim is based on Gallegos'
12  conflating a stipulation admitted at trial regarding the DNA evidence and a factual
13  finding by the trial/PCR judge in support of its conclusion that there was no
14  prejudice from any ineffective assistance at trial because of the overwhelming
15  evidence.  The real question is whether Gallegos has overcome the presumption
16  that the finding is correct under §2254(e)(2).
17      A state court factual determination "shall be presumed to be correct," and:
18  "The applicant shall have the burden of rebutting the presumption of correctness
19
20  [1]  The Ninth Circuit panel first remanded to the district court for a determination of
21  whether the confession was illegally obtained. *Milke v. Ryan*, No. 07-99001, Dkt.
22  163. After holding an evidentiary hearing, the district court judge found Detective
    Saldate more credible than Ms. Milke, despite the impeaching evidence regarding
23  Saldate, and concluded that Milke had validly waived her *Miranda* rights. *See*
24  *Milke v. Ryan*, 2010 WL 383412, **8-12 (D. Ariz. Jan. 29, 2010) (also attached as
    Exhibit D). Moreover, the fact that the district court in *Milke* found Saldate more
25  credible than Milke, despite the impeaching evidence at issue here, shows that it is
26  unlikely that the trial court in this case would have granted the motion to
    suppress—particularly when Gallegos' separate confession to Detective Chambers
27  further confirmed that his confessions were voluntary and truthful.
28

GALL 262                           17
                           EXHIBIT 1j                    SALDATE000367

1  by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  AEDPA's standard for

2  reviewing determination of facts replaces prior habeas standards for reviewing

3  state factual findings.  *See Rice v. Collins*, 546 U.S. 333, 338 (2006). "[A] state-

4  court factual determination is not unreasonable merely because the federal habeas

5  court would have reached a different conclusion in the first instance." *Wood v.*

6  *Allen*, 558 U.S. 290, 301 (2010).

7       There is no dispute regarding the stipulation, which is in the record.  (Motion,

8  Ex. P, at 5-6.)  In summary, the stipulations were: (1) a fingerprint removed from

9  the victim's bedroom matched Gallegos' right middle finger; (2) semen was

10  detected on the victim's panties, nightshirt, and bed sheet; (3) DNA testing showed

11  that the stain on the victim's panties contained a banding pattern that matched the

12  banding pattern obtained from Gallegos' blood; and (4) the probability that an

13  individual other than Gallegos was the source of the stain on the victim's panties

14  was 1 in 10 million for Caucasians and 1 in 67 million for Hispanics.[2]

15       The PCR court's minute entry denying PCR relief included the finding that

16  "the DNA evidence in Kendall's rectum was linked to the Defendant."  (Motion,

17  Exhibit Q, at 3.)  The fallacy in Gallegos' position that this misrepresented the

18  stipulation is that the PCR court was not limited to the stipulation in making the

19  finding.  First, the stipulation included that: "DNA banding patterns were obtained

20  from the three combined rectal swabs" (Motion, Ex. P, at 5), so there is no question

21  but that there was DNA in the victim's rectum. Second, the other evidence "linked"

22  that DNA to Gallegos. For instance, Gallegos testified at trial that: (1) he

23  "proceeded to have sex with Kendall," and that "I inserted my penis into her anus"

24  (RT 3/13/91, at 68); and (2) he knew it was wrong to insert his penis into the

---

26  [2] The Arizona Supreme Court found on appeal that the DNA statistics were

27  generally inadmissible, but noted Gallegos' stipulation to them, and found their

28  admission did not constitute fundamental error. *Gallegos*, 870 P.2d at 1109.

**GALL 263**                    EXHIBIT 1j                    SALDATE000368

1   victim's anal opening.  (*Id.* at 114.)  Gallegos testified at resentencing that he
2   "sobered up real quick" after he had sex with the victim."  (RT 10/24/94, at 27.)

3        In view of the state court record before the PCR/trial judge when he made
4   the factual finding at issue, Gallegos cannot overcome the presumption of
5   correctness by "clear and convincing" evidence.  Gallegos does not offer any
6   evidence that it was someone else's DNA in the victim's rectum.  Accordingly, the
7   PCR court reasonably found that the DNA in the victim's rectum was "linked" to
8   Gallegos, and reasonably used that finding in concluding there was no prejudice
9   from the alleged ineffective assistance of counsel.

10       Gallegos attacks the Cellmark statistical probabilities and the "chain-of-
11  custody" of the victim's panties, on which Gallegos' DNA was found.  (Motion, at
12  14-15.)  As discussed, the Arizona Supreme Court found admission of the
13  probability statistics contrary to Arizona law, but noted the stipulation and found
14  no fundamental error.  And, probabilities aside, the DNA banding pattern from the
15  panties still matched Gallegos' DNA banding pattern.

16       Regarding the "chain-of-custody" point, there is no indication in the record
17  that the panties belonged to anyone other than the victim.  Gallegos testified that
18  the victim was wearing panties and that the panties were put under the dresser.  (RT
19  3/13/91, at 108.)  Jerry Gallegos testified that George found the victim's underwear
20  under the dresser.  (R.T. 3/11/91 AM, at 12.)  The underwear and shirt were placed
21  on the kitchen table.  (*Id.* at 14.)  Cindy Wishon testified that the victim's panties
22  were retrieved from the victim's bedroom and placed on the kitchen table.
23  (Motion, Exhibit K, at 123.)  Detective Hamrick collected "a pair of little girl's
24  panties" and a "pajama or leotard type" garment from the kitchen table.  (R.T.
25  3/12/91 A.M. at 29.)  On cross-examination, Hamrick testified that the two items of
26  clothing had been removed from the victim's bedroom by a family member.  (*Id.* at
27  35.)

28

SALDATE000369

1    Thus, there is no indication in the record that the panties belonged to anyone

2  other than the victim. Thus, any question about the DNA in the victim's rectum,

3  aside, the presence of Gallegos' DNA on the victim's panties is damning evidence,

4  in stark contrast to the lack of physical evidence in *Milke.*

5  **VI.    NO LIKELIHOOD OF RELIEF IN STATE COURT.**

6    Another reason to deny a stay and abeyance is the unlikelihood of obtaining

7  relief in state court. Gallegos argues he could obtain relief in state court pursuant to

8  Rule 32.1(e), Arizona Rules of Criminal Procedure, which governs claims based on

9  newly-discovered evidence. (Motion, at 17-19.)  Gallegos' assertion is belied by

10  the record in this case and Arizona case law.

11    Rule 32.1 has several requirements to obtain relief:

12  e. Newly discovered material facts probably exist and such facts
probably would have changed the verdict or sentence. Newly

13  discovered material facts exist if:

14    (1) The newly discovered material facts were discovered after
the trial.

15
    (2) The defendant exercised due diligence in securing the newly

16  discovered material facts.

17    (3) The newly discovered material facts are not merely
cumulative or used solely for impeachment, unless the

18  impeachment evidence substantially undermines testimony
which was of critical significance at trial such that the evidence

19  probably would have changed the verdict or sentence.

20

21  *See generally State v. Mata,* 916 P.2d 1035, 1049 (Ariz. 1996). Additionally, the

22  evidence must have been in existence at the time of trial, but not discovered until

23  after trial.  *State v. Sanchez,* 24 P.3d 610, ¶ 11 (Ariz. App. 2001).  *See also Milke,*

24  711 F.3d at 1017 (facts from an Arizona Court of Appeals' opinion released after

25  that prisoner's trial, facts did not constitute *Brady* material).

26    As discussed above, the purported newly-discovered evidence at issue

27  consists of a set list of nine allegations of misconduct by Detective Saldate.

28  (Motion, at 4-6.)  Gallegos does not assert any other items of misconduct, nor

**GALL 265**

EXHIBIT 1j

SALDATE000370

1   could he now develop any in state court because, as discussed above, the City of
2   Phoenix disposed of Saldate's personnel records in accordance with its record
3   retention policy.  Gallegos' proposed new state PCR claim would first fail under
4   Rule 32.1(e) (2), because of Gallegos' lack of diligence, for the same reasons
5   previously discussed.  Gallegos' *Brady* claim would be subject both to a procedural
6   bar and to dismissal on the merits for failing to state a claim under that rule. *See*
7   *Runningeagle*, 686 F.3d at 768-69 (in third state PCR, state court found *Brady*
8   claim did not satisfy requirements of Rule 32.1(e), which resulted both in a
9   procedural default and a ruling on the merits).

10      Furthermore, because the new evidence would not probably have changed
11   the verdict or sentence, Gallegos has not shown that he would obtain relief under
12   Rule 32.1(e)(3).  First, the new evidence would not probably have changed the
13   result because of the other compelling evidence of guilt, discussed above, which
14   corroborated Saldate's testimony about Gallegos' statements to him.  Second,
15   Gallegos requests a stay to assert "an unexhausted *Brady* claim arising out of
16   newly discovered *impeachment* evidence regarding the lead detective in this case,
17   Armando Saldate." (Motion, at 1, emphasis added.)  But, as the Arizona trial judge
18   found in denying Milke's request for post-conviction relief, Milke had not made "a
19   reference to the type of evidence that is allowed under Rule 608 [of the Arizona
20   Rules of Evidence] to impeach the credibility of a witness." *Milke*, 711 F.3d at
21   1008. The Ninth Circuit's opinion did not find the evidence would have been
22   admissible, but opined that the judge might have reconsidered if the evidence could
23   be admitted for impeachment, and, at any rate, the evidence would "still have been
24   valuable." *Id.* at 1009.

25      Respondents submit that, even assuming the evidence should have been
26   disclosed pursuant to *Brady* and *Milke*, it would not have been admissible to
27   impeach Saldate under a plain reading of Arizona Rule 608, and there would not be
28

**GALL 266**

21

EXHIBIT 1j

SALDATE000371

1   any constitutional bar to precluding it. *See Nevada v. Jackson*, 133 S. Ct. 1990,

2   1994 (2013) (barring impeachment evidence regarding victim under Nevada rule

3   of evidence that is similar to Rule 608 of the Federal Rules of Evidence was not an

4   unreasonable application of federal law, because "this Court has never held that the

5   Confrontation Clause entitles a criminal defendant to introduce *extrinsic* evidence

6   for impeachment purposes.") (emphasis in original.)

7        For the above reasons, it would be futile for Gallegos to return to the state

8   court, and this Court should deny a stay.

9   **VII.  THERE IS NO "INTERESTS OF JUSTICE" EXCEPTION THAT WOULD ALLOW**

10       **PRESENTATION OF THE UNTIMELY *BRADY* CLAIM.**

11        Gallegos asserts that there is an "interests of justice" exception that would

12   allow him to add the untimely *Brady* claim to his habeas petition. (Motion, at 19-

13   20). But the only exception to the time bar under Supreme Court and AEDPA is

14   one based on "actual innocence." The Supreme Court has recognized that "the

15   'actual innocence' gateway to federal habeas review" of constitutional claims

16   otherwise procedurally barred in federal court also applies to petitions that are

17   otherwise untimely under AEDPA. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928

18   (2013). The actual innocence standard, as articulated in *Schlup v. Delo*, 513 U.S.

19   298 (1995), is "demanding". *See, Perkins*, 133 S. Ct. at 1936; *see also House v.*

20   *Bell*, 547 U.S. 518, 537–38 (2006) (reiterating that to "'[t]o be credible' a gateway

21   claim [of actual innocence] requires 'new reliable evidence—whether it be

22   exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

23   physical evidence—that was not presented at trial'" and that "the *Schlup* standard is

24   demanding and permits review only in the 'extraordinary' case") (quoting *Schlup*,

25   415 U.S. at 324, 327).

26        The impeachment evidence Gallegos offers does not meet this high standard.

27   If Gallegos had evidence of his actual innocence, he could present it to the Arizona

28   courts, pursuant to Rule 32.1(h), Ariz. R. Crim. P. He has not done so.

SALDATE000372

**VIII. APPOINTMENT OF FPD FOR PROPOSED STATE POST-CONVICTION PROCEEDINGS.**

If this Court should grant Gallegos' motion to stay-and-abey this habeas proceeding so he can return to state court to litigate the *Brady* claim, Respondents take no position on whether this Court should authorize the current Assistant Federal Public Defenders to represent Gallegos in state court.

**IX. CONCLUSION.**

Respondents respectfully request this Court to deny Gallegos' motion to supplement the petition and to stay and hold the habeas proceedings in abeyance. This Court should determine whether Gallegos' *Brady* claim is untimely, after holding an evidentiary hearing on the timeliness issue.

RESPECTFULLY SUBMITTED this 21st day of December, 2016.

Mark Brnovich
Attorney General
(Firm State Bar No. 14000)

Lacey Stover Gard
Chief Counsel
Capital Litigation Section.

s/ Jon G. Anderson
Assistant Attorney General

Attorneys for Respondents

SALDATE000373

## CERTIFICATE OF SERVICE

1

2   I hereby certify that on December 21, 2016, I electronically transmitted the
    attached document to the Clerk's Office using the ECF System for filing and
3   transmittal of a Notice of Electronic Filing to the following ECF registrant:

4   Jon M. Sands
    Federal Public Defender
5   Ashwin Cattamanchi
    Emma L. Smith
6   Assistant Federal Public Defenders
    850 West Adams St., Suite 201
7   Phoenix, AZ  85007

8   Attorney for Petitioner

9

    s/ Barbara Lindsay
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

EXHIBIT 1j

SALDATE000374

1

## LIST OF EXHIBITS

2

3  A.    EXCERPTS FROM OPENING BRIEF

4  B.    PETITION FOR POST-CONVICTION RELIEF

5  C.    R.T. 8/3/90

6  D.    *MILKE v. RYAN*, 2010 WL 383412

7  E.    AMENDED CERTIFICATION OF MARK BIZIK

8  F.    AMENDED CERTIFICATION OF TIM DUFFY

9  G.    AMENDED CERTIFICATION OF MARIT MEDNICK

10  H.   SUPPLEMENTAL CERTIFICATION OF TOM VAN DORN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GALL 270                                    SALDATE000375

EXHIBIT 1j

1   Jon M. Sands
    Federal Public Defender
2   District of Arizona
3   Ashwin Cattamanchi (IL No. 6289199)
    Emma L. Smith (IL Bar No. 6317192)
4   Assistant Federal Public Defenders
5   850 West Adams Street, Suite 201
    Phoenix, Arizona 85007
6   Ashwin_Cattamanchi@fd.org
7   Emma_Smith@fd.org
    602.382.2816 Telephone
8   602.889.3960 Facsimile

9

**IN THE UNITED STATES DISTRICT COURT**

10

**FOR THE DISTRICT OF ARIZONA**

| 11 | Michael Gallegos, | No. CV 01-1909-PHX-NVW |
|---|---|---|
| 12 | Petitioner, | DEATH-PENALTY CASE |
| 13 | vs. | **Reply to Response to Motion to Hold** |
| 14 | Charles L. Ryan, | **Habeas Proceedings in Abeyance, to** |
| 15 | Respondent. | **Supplement Petition, and to Represent Petitioner in State Court Proceedings** |
| 16 | | |

17      Petitioner Michael Gallegos respectfully moves this court: (1) to temporarily stay

18 and hold his federal habeas proceedings in abeyance while he pursues available state

19 court relief; (2) to allow him to supplement his habeas petition; and (3) to authorize his

20 federal habeas counsel to appear on his behalf in state court. In state court, Mr. Gallegos

21 seeks to pursue a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), based on newly

22 discovered impeachment evidence regarding the lead detective in this case,

23 Armando Saldate.

24      Respondent takes no position on Mr. Gallegos's request to have federal habeas

25 counsel appear on his behalf in state-court litigation. (ECF No. 135, Resp. at 23.)

26 Mr. Gallegos therefore relies on the arguments in his Motion on this issue.

27 (ECF No. 128, Mot. at 20–22.) Respondent objects to Mr. Gallegos's request for a

28 temporary stay and for amendment of his habeas petition. (Resp. at 2.) Respondent does

**GALL 271**

EXHIBIT 1j

SALDATE000377

1  not defend the misconduct or suppression that occurred in this case, but attempts to shift

2  the focus to Mr. Gallegos, arguing that he suffered no prejudice, that a federal claim

3  would be barred by AEDPA's statute of limitations, and that he delayed in bringing his

4  claim. For the reasons discussed below and in the Motion, this Court should reject

5  Respondent's contentions and grant Mr. Gallegos the requested relief.

6  **I.    A temporary stay of Mr. Gallegos's federal proceedings is appropriate.**

7      **A.    The relevant inquiry is whether Mr. Gallegos has satisfied
8          *Rhines v. Weber*, not whether he meets the standard for a stay of
        execution.**

9      The question before the Court is whether a stay of pending federal proceedings is

10  appropriate under *Rhines v. Weber*, 544 U.S. 269 (2005). Respondent seems to assert

11  that this is not the correct standard by attempting to distinguish *Gonzalez v. Wong*,

12  667 F.3d 965, 980 (9th Cir. 2011), where the *Rhines* standard was employed. (Resp. at

13  10.) This attempt is unavailing. Respondent emphasizes that the petitioner in *Gonzalez*

14  raised a *Brady* claim in state court and in his federal habeas petition, while

15  Mr. Gallegos did not. But the *Brady* claim that precipitated the *Rhines* stay by the Ninth

16  Circuit in *Gonzalez* was raised for the first time in motions for reconsideration from the

17  denial of the petitioner's habeas petition. *Id.* at 972, 978. It relied on both evidence that

18  had been previously considered by the state and newly discovered evidence. *Id.* at

19  978-89. Without deciding whether this was a new claim, the Ninth Circuit stayed the

20  case, noting that a "'new claim' inherently invites questions regarding exhaustion." *Id.*

21  at 979. The Court proceeded to apply *Rhines* and granted a stay. *Id.* at 980. The same

22  relief is warranted here, and *Rhines* is the appropriate inquiry.

23      Instead, Respondent contends that this Court should treat the instant motion as a

24  motion to stay an execution. (Resp. at 11.) The State, however, has not moved for a

25  warrant of execution in this case, making this standard inapplicable. Respondent argues

26  that Mr. Gallegos's request for a stay should be examined in light of a series of

27  equitable factors. *Rhines* itself incorporates equitable considerations, so Respondent's

28  imposition of additional criteria is inappropriate. *See Blake v. Baker*, 745 F.3d 977,

1    981–82 (9th Cir. 2014). Mr. Gallegos has met the *Rhines* standard, so a temporary stay

2    is warranted.

3    **B.     Mr. Gallegos has satisfied the *Rhines* standard.**

4    **1.     Mr. Gallegos has shown good cause for not exhausting his claim
         and has not engaged in intentionally dilatory litigation tactics.**

5    Because Respondent fails to appreciate the appropriate legal framework for the

6    requested stay, Respondent does not directly engage with all of the *Rhines* factors or

7    Mr. Gallegos's arguments that he has satisfied them. Mr. Gallegos therefore refers the

8    Court to the arguments in his Motion that he has good cause for failing to exhaust his

9    claim in state court and that he has not engaged in intentionally dilatory litigation

10   tactics. (Mot. at 8–9.) To the extent Respondent argues Mr. Gallegos has not shown

11   good cause because he could have subsequently returned to state court (Resp. at 10),

12   Mr. Gallegos notes that he could not have done so without authorization from this

13   Court. *See* Rep. of the Judicial Conf. Comm. on Def. Servs. to the Chief Justice of the

14   U.S. and Members of the Judicial Conf. of the U.S. 9–10 (Mar. 1999) (CR-DEFSVS-

15   MAR 99) ("Defender Services appropriation funds may not be used to represent an

16   individual under a state-imposed death sentence in a state proceeding unless a presiding

17   judicial officer in a federal judicial proceeding involving the individual has determined

18   that such use of Defender Services appropriation funds is authorized by law.").

19   **2.     Mr. Gallegos has a potentially meritorious *Brady* claim.**

20   Respondent argues that because this case is factually different from *Milke v.*

21   *Ryan*, 711 F.3d 998 (9th Cir. 2013), Mr. Gallegos cannot assert a potentially

22   meritorious *Brady* claim. (Resp. at 12–14.) The question is not if the facts of

23   Mr. Gallegos's case are identical to those of *Milke*, but rather whether "the

24   government's evidentiary suppression undermines confidence in the outcome of the

25   trial." *Id.* at 1018 (internal quotation marks and citation omitted). Respondent concedes

26   that Mr. Gallegos has satisfied the first two *Brady* prongs—that the evidence is

27   favorable to Mr. Gallegos and the prosecution failed to disclose it. He argues only that

28   Mr. Gallegos can show no prejudice. (Resp. at 13.) But in doing so, he completely

3
                                     EXHIBIT 1j

1 misconstrues Mr. Gallegos's prejudice argument.

2      First, Respondent argues that because Mr. Gallegos allegedly confessed to
3 Detective Chambers after Detective Saldate, there is no reasonable probability that the
4 trial court would have suppressed Mr. Gallegos's confession. (Resp. at 14.) This
5 argument fails because had the trial court suppressed Mr. Gallegos's statement to
6 Detective Saldate, it also would have suppressed his statement to Detective Chambers.
7 (Mot. at 13 n.4.) Once an accused asks for counsel, he may not be subject to further
8 interrogation "until counsel has been made available to him, unless the accused himself
9 initiates further communication, exchanges, or conversations with the police." *Edwards*
10 *v. Arizona*, 451 U.S. 477, 484–85 (1981). Here, the re-interrogation by
11 Detective Saldate with Detective Chambers present occurred after Mr. Gallegos
12 requested counsel. Counsel was not provided, and because Mr. Gallegos did not initiate
13 the subsequent interrogation, the second statement also violated his constitutional
14 rights. *See id.* at 485. Further, Detective Chambers's testimony did not, and could not,
15 speak to what occurred during the first interrogation, when only Mr. Gallegos and
16 Detective Saldate were present, and so could shed no light on the voluntariness of that
17 statement despite Respondent's assertion to the contrary. (Resp. at 14.) Finally, Mr.
18 Gallegos need not, as Respondent asserts, make a separate claim challenging the trial
19 court's finding that his confession was voluntary in order to make this argument. (Resp.
20 at 16.) The inquiry into the confidence in the trial court's suppression ruling in light of
21 the undisclosed impeachment evidence is part of the *Brady* inquiry. *See United States v.*
22 *Gamez-Orduño*, 235 F.3d 453, 461 (9th Cir. 2000).

23      Next, Respondent contends that because Mr. Gallegos testified at trial and did not
24 deny his confession, he suffered no prejudice. (Resp. at 15.) This argument ignores
25 Mr. Gallegos's prejudice arguments related to trial: If the impeachment evidence had
26 been disclosed, Mr. Gallegos would not have testified at trial. First, Mr. Gallegos would
27 not have testified if his statement was suppressed, of which there is a reasonable
28 probability as discussed above. (Mot. at 14–15.)

4
EXHIBIT 1j

1      Second, even if Mr. Gallegos's statement had not been suppressed, he still would

2  not have testified. Defense counsel develops a trial strategy based on evidence that is

3  available. Relying on the State's misrepresentation that exculpatory evidence does not

4  exist, defense counsel "might abandon lines of independent investigation, defenses, or

5  trial strategies that it otherwise would have pursued." *United States v. Bagley*, 473 U.S.

6  667, 682 (1985). Mr. Gallegos's trial counsel developed a strategy based on an

7  understanding that Detective Saldate would testify at trial against Mr. Gallegos and that

8  this testimony could not be effectively impeached. Indeed, Detective Saldate had

9  testified at the voluntariness hearing, and the judge credited him over Mr. Gallegos.

10  Believing that he faced unassailable testimony by the case agent, trial counsel chose to

11  not contradict Detective Saldate at trial, but to attempt to mitigate the impact of his

12  testimony by having Mr. Gallegos testify. (Ex. I ¶ 7.) With the suppressed impeachment

13  evidence, Mr. Gallegos would have had no need to testify because Detective Saldate's

14  testimony could have been mitigated using that information instead. (Mot. at 15–16.)

15  Respondent does not address this aspect of Mr. Gallegos's prejudice argument, which

16  does not rely on the analysis of the prejudice suffered at the voluntariness hearing.

17      Without Mr. Gallegos's testimony at trial—either because his statement was

18  suppressed or because Detective Saldate's testimony could be attacked at trial with the

19  impeachment evidence—there is a reasonable probability that the jury would not have

20  found Mr. Gallegos guilty of first-degree murder because the State's other evidence

21  could be undermined. (*Id.*) Respondent misconstrues Mr. Gallegos's arguments about

22  the other evidence produced at trial. The purpose in noting the limitations of the DNA

23  evidence is to identify evidentiary weaknesses that are now relevant to Mr. Gallegos's

24  prejudice arguments. Regarding the DNA evidence found in the victim's rectum, the

25  stipulation was the only DNA evidence presented to the jury, and it did not tie that

26  DNA to Mr. Gallegos. (Ex. P.) Respondent does not contest this, but instead argues that

27  other evidence—namely Mr. Gallegos's testimony—tied him to the DNA. (Resp. at

28  17-19.) This interpretation renders the finding irrelevant to the current prejudice

GALL 275

SALDATE000381

1   analysis, as Mr. Gallegos would not have testified if the impeachment evidence had

2   been properly produced. Regardless, Respondent's conclusion is not supported by the

3   language of the PCR court's finding, which explicitly discussed the State's evidence

4   introduced at trial in the context of the prejudice prong of a claim of ineffective

5   assistance of counsel:

> As mentioned previously, the State's evidence was completely
> overwhelming: The Defendant confessed twice to two
> different police detectives, and the DNA evidence in [the
> victim's] rectum linked to the Defendant was devastating to
> the defense; all other evidence corroborated the Defendant's
> guilt.

10   (Ex. Q at 3.) Similarly, the lack of a reliable chain of custody regarding the victim's

11   underwear and the unsupportable procedures used by the State's DNA lab to determine

12   the statistical probabilities related to the DNA in the underwear support Mr. Gallegos's

13   argument that without his testimony, the State was left with only evidence that could be

14   easily questioned, thus undermining confidence in the outcome of the verdict. (Mot. at

15   14–15.)

16       Respondent does not respond to Mr. Gallegos's argument concerning the impact

17   of the *Brady* violation on his sentence and appeal. He therefore relies on that portion of

18   his Motion. (Mot. at 16–17.)

19       Instead of engaging with Mr. Gallegos's prejudice argument, Respondent largely

20   ignores it and fails to grapple with the impact that the suppressed impeachment

21   evidence regarding Detective Saldate would have had. With access to the staggering

22   impeachment evidence, Mr. Gallegos's statement either would have been excluded

23   from trial or he would not have testified and Detective Saldate's testimony would have

24   been impeached. The suppression impacted the finding that Mr. Gallegos's confession

25   was voluntary, the finding of guilt, the imposition of the death sentence, and the

26   upholding of those verdicts on appeal. Mr. Gallegos has therefore made a potentially

27   meritorious argument that the suppressed evidence was material because there can no

28   longer be confidence in either Mr. Gallegos's guilty verdict or sentence of death.

**C.      Arizona Rule of Criminal Procedure 32.1 is an available state remedy.**

Respondent also argues that Mr. Gallegos's request for a stay should be denied because of the "unlikelihood of obtaining relief in state court." (Resp. at 20.) Respondent sets forth three reasons to support this assertion, all of which usurp the state court's role as the arbiter of state law. The ultimate determination of whether Mr. Gallegos has met the requirements of Rule 32.1(e), a question of state law, must be answered by the state court. *See Binford v. Rhode*, 116 F.3d 396, 399–400 (9th Cir. 1997) (certifying question to Arizona Supreme Court on parameters of Rule 32 because question of state law that must be answered by state court). *See generally R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499–501 (1941) (holding that federal finding of state law would be "a forecast rather than a determination"); *City of Chicago v. Fieldcrest Dairie*s, 316 U.S. 168, 172–73 (1942) (same); *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (explaining that federal court should not substitute judgment for that of state court). The only question to be answered in this Court is whether an avenue for relief in state court remains available to Mr. Gallegos.

None of Respondent's arguments support a finding that Rule 32.1(e) is unavailable to Mr. Gallegos. First, Respondent asserts that Mr. Gallegos faces a procedural bar to pursuing relief in state court because of a lack of diligence in bringing the claim. There is, however, no bright-line time limit for diligence under Rule 32.1(e). Arizona modified this rule in 1956, expressly eliminating the previous one-year statute of limitations and replacing it with the existing diligence requirement that "will prevent abuse of process, *e.g.*, a prisoner's lying-in-wait until an essential prosecution witness dies, but avoids setting a specific time limit." ARIZ. R. CRIM. P. 32.1 cmt. [Amended 2007]. This analysis necessarily is a highly fact intensive one, not determined merely by length of time. For example, in *State v. Bilke*, 781 P.2d 28, 28–30 (Ariz. 1989), a PTSD diagnosis was accepted as "newly discovered evidence" under Rule 32.1(e) even though it came 13 years after the conviction.

Mr. Gallegos has not engaged in any abuse of the process and has made a

SALDATE000383

1  sufficient showing to support a state court finding of diligence. The *Brady* material was

2  not disclosed to Mr. Gallegos, and when the State withholds evidence, it is telling the

3  defense that "the evidence does not exist." *Bagley*, 473 U.S. at 682. The Ninth Circuit's

4  decision in *Milke* was the first published court decision undersigned counsel is aware of

5  outlining the impeachment material regarding Detective Saldate. The opinion did not

6  mention Mr. Gallegos, but after its release he took steps to discover more information

7  about Detective Saldate. (Mot. at 9.) When these avenues did not prove fruitful, he

8  promptly filed a motion in the Ninth Circuit—the court with jurisdiction over his

9  case—seeking a stay of his federal proceedings so he could return to state court to

10  pursue his *Brady* claim. *Gallegos v. Ryan*, No. 08-99029, ECF No. 57-1 (9th Cir.

11  Mar. 14, 2014). Therefore, Mr. Gallegos diligently pursued evidence of a *Brady*

12  violation and swiftly brought the claim in the Ninth Circuit and then in this Court on the

13  day the mandate issued and the Court regained jurisdiction. The state court could

14  therefore find that Mr. Gallegos acted with diligence under Rule 32.1(e).

15  Next, Respondent argues that Rule 32.1(e) is unavailable because the claim would

16  fail on the merits because newly discovered evidence "would not probably have

17  changed the verdict or sentence." (Resp. at 21.) As discussed above, this argument is

18  unavailing, and Mr. Gallegos has presented a potentially meritorious *Brady* claim.

19  Respondent finally argues that the claim would fail on the merits because the

20  suppressed evidence would not be admissible under Arizona Rule of Evidence 608, so

21  its exclusion cannot be prejudicial. (Resp. at 21.) The Ninth Circuit rejected this

22  argument in *Milke*. 711 F.3d at 1009 (finding that even if evidence of perjury had not

23  been admissible, it "would still have been valuable" as a "good-faith basis for

24  questioning Saldate about prior instances where he had lied on the stand" and that

25  excluding court orders documenting Detective Saldate's violation of defendants'

26  constitutional rights would be due-process violation). Furthermore, impeachment

27  evidence need not be admissible in order to be material under *Brady*. *See Paradis v.*

28  *Arave*, 240 F.3d 1169, 1179 (9th Cir. 2001).

**GALL 278**                        8                        SALDATE000384

EXHIBIT 1j

1     Mr. Gallegos has presented a potentially meritorious *Brady* claim that is

2  cognizable under Rule 32.1(e). *See State v. Muldrow*, No. 2 CA-CR 2015-0452-PR,

3  2016 WL 538327 (Ariz. Ct. App. Feb. 11, 2016) (deciding on the merits *Brady* claim

4  under Rule 32.1(e) based on impeachment evidence regarding Detective Saldate). He

5  has shown that a state remedy remains available, and a stay is therefore appropriate to

6  allow Mr. Gallegos to pursue that relief.

7     **D.   Mr. Gallegos's claim is timely, and a stay is not futile.**

8     Respondent asserts that Mr. Gallegos's request for a temporary stay should be

9  denied as futile "primarily because of the untimeliness of the new claim." (Resp. at 2.)

10  As an initial matter, even accepting Respondent's position that Mr. Gallegos's federal

11  claim is untimely, a stay still would not be futile. To the contrary, if Mr. Gallegos

12  prevailed in state court, then further federal proceedings on the remanded *Martinez*

13  issue would be avoided in this Court. The stay would therefore conserve judicial

14  resources and prevent simultaneous litigation in two forums.[1]

15     Mr. Gallegos's claim is, however, timely. As Respondent recognizes, the

16  timeliness inquiry is dictated by 28 U.S.C. § 2244(d)(1)(D), and Respondent argues that

17  Mr. Gallegos has known about the State's *Brady* violation at least since the *Milke*

18  opinion. (Resp. at 8.) Respondent is correct—the *Milke* opinion is the date the *Brady*

19  material "could have been discovered through the exercise of due diligence."

20  § 2244(d)(1)(D). Respondent asserts that Mr. Gallegos has failed to make his claim

21  within one year from that date. But, Mr. Gallegos filed his motion in the Ninth Circuit

22  raising the *Brady* claim within the one-year deadline. The Ninth Circuit, and not this

23  Court, had jurisdiction over Mr. Gallegos's case at that time. *See United States v. Pete*,

24  525 F.3d 844, 853 (9th Cir. 2008) (noting that appellate decision is not final until

25

26  [1] Mr. Gallegos requests that even if the Court denies his request for a stay that it still
authorizes his federal habeas counsel to represent him in state court. Although

27  simultaneous litigation in two forums would be less efficient, Mr. Gallegos would wish
to pursue his rights in state court even absent a stay of his federal case. Respondent has

28  taken no position on Mr. Gallegos's request to be represented in state court by current
counsel. (Resp. at 23.)

SALDATE000385

1    mandate issues, at which point jurisdiction returns to district court); *United Nat'l Ins.*
2    *Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1109 (9th Cir. 2001) ("Once a notice of appeal
3    takes effect, the district court loses jurisdiction over the matter placed before the
4    appellate court."). The claim was therefore timely filed. *See Douglas v. Workman*,
5    560 F.3d 1156, 1187 (10th Cir. 2009) (treating a *Brady* claim discovered and raised
6    while the appeal was pending as a supplement to the petitioner's original § 2254
7    petition); *cf. Goodrum v. Busby*, 824 F.3d 1188, 1194–95 (9th Cir. 2016) (holding new
8    claims brought by pro se petitioner in court of appeals, before petition has been finally
9    adjudicated, should be treated as motion to amend petition).

10          Alternatively, if the Court does not view Mr. Gallegos's motion in the Ninth
11   Circuit as his filing the *Brady* claim, then the motion equitably tolled the limitations
12   period. *See generally Holland v. Florida*, 560 U.S. 631, 645 (2010). Mr. Gallegos could
13   not have filed a motion to amend in district court following the *Milke* decision any
14   sooner than he did. He brought his *Brady* claim to the court with jurisdiction at the time
15   and thereafter appropriately waited for the Ninth Circuit to rule on his motion before
16   filing in this Court. The time his motion was pending in the Ninth Circuit therefore was
17   an extraordinary circumstance beyond his control that prevented Mr. Gallegos's earlier
18   filing of his motion to amend in the district court. *See Smith v. Ratelle*, 323 F.3d 813,
19   819 (9th Cir. 2003) (noting extraordinary circumstances must be present for equitable
20   tolling); *cf. Sossa v. Diaz*, 729 F.3d 1225, 1235 (9th Cir. 2013) (holding that petitioner's
21   reliance on magistrate judge order extending deadline for filing past statute of
22   limitations period entitled him to equitable tolling); *Ramirez v. Yates*, 571 F.3d 993, 997
23   (9th Cir. 2009) (holding that petitioner's "lack of knowledge that the state courts have
24   reached a final resolution of his case can provide grounds for equitable tolling").
25   Because Mr. Gallegos filed the instant motion in this Court the day the mandate issued,
26   no further time ran after these extraordinary circumstances ended. The claim is thus
27   timely under either construct of the effect of Mr. Gallegos's motion in the Ninth Circuit.
28          Respondent instead argues that Mr. Gallegos should have known about the

1  suppressed *Brady* material in 2009 because a footnote in a Ninth Circuit brief in another

2  case said that "Detective Saldate has been repeatedly accused of improper behavior and

3  coercive interrogation." (Resp. at 8.) Respondent cites no authority for the proposition

4  that Mr. Gallegos should be imputed knowledge of what occurred in other cases that

5  were handled by different attorneys, even if they were also federal public defenders.

6  *Cf. United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991) (rejecting argument that

7  public defender could be "charged with the knowledge of" the criminal record of a

8  defendant represented by a co-worker, the suppression of which was a potential *Brady*

9  violation, and recognizing that no authority was cited for the proposition to the

10  contrary). Such a requirement would be impracticable. The footnote Respondent cites

11  was in the statement of facts section of the opening brief on appeal. *See Runningeagle v.*

12  *Ryan*, No. 07-99026, ECF No. 22, at 18 n.18 (9th Cir. Nov. 25, 2009). The information

13  about Detective Saldate was included in the federal habeas petition, filed before the

14  case was assigned to the Federal Public Defender's Office, in the context of a

15  non-*Brady* claim that the state court found precluded. *See Runningeagle v. Stewart*,

16  No. CIV 98-1903-PHX-PGR, ECF No. 18, at 51–55 (D. Ariz. Apr. 15, 1999); *Arizona*

17  *v. Runningeagle*, No. CR 87-11508, ECF No. 451 (Ariz. Sup. Ct. Oct. 21, 1996). It was

18  therefore defaulted in federal court, so there was never a merits ruling on the claim.

19  *See Runningeagle v. Schriro*, No. CV-98-1903-PHX-PGR, ECF No. 108, at 10

20  (D. Ariz. Mar. 10, 2006); *id.*, ECF No. 90, at 20–22 (D. Ariz. Feb. 6, 2004). Accepting

21  Respondent's position would mean that every federal public defender is required to

22  have knowledge of the facts of every case in the office and the evidence supporting

23  even defaulted claims. Section 2244(d) requires reasonable diligence; it does not require

24  "the maximum feasible diligence." *Moore v. Knight*, 368 F.3d 936, 938 (7th Cir. 2004)

25  (internal quotation marks and citation omitted).

26      Perhaps most importantly, Respondent's suggested timeliness analysis would

27  penalize Mr. Gallegos for the State's *Brady* violation. *Brady* imposes a duty on the

28  State, and Mr. Gallegos is not required to seek information that the State has told him

1   does not exist. S*ee Carter v. Bigelow*, 787 F.3d 1269, 1282 (10th Cir. 2015) (noting that

2   "due diligence did not require [petitioner] to divine all possible sources of suppressed

3   evidence; he was entitled to rely on the state's representation" that all exculpatory

4   evidence had been disclosed); *Jefferson v. United States*, 730 F.3d 537, 546 (6th Cir.

5   2013) ("[T]he government's position that Jefferson failed to exercise due diligence

6   because he did not seek information 'the very existence of which the [government] had

7   improperly withheld in violation of *Brady* . . . is fundamentally at odds with *Brady*

8   itself.'" (alterations in original)). Respondent's argument instead would mean that "'the

9   prosecution can lie and conceal and the prisoner still has the burden to . . . discover the

10  evidence,' . . . A rule thus declaring 'prosecutor may hide, defendant must seek,' is not

11  tenable in a system constitutionally bound to accord defendants due process." *Banks v.*

12  *Dretke*, 540 U.S. 668, 696 (2004) (internal citations omitted). The evidence was never

13  disclosed in this case,[2] and Respondent's position effectively absolves the State from

14  complying with *Brady* in cases like Mr. Gallegos's where a relevant *Brady* violation has

15  been discovered in another case. Ms. Milke's team found the suppressed evidence after

16  7,000 hours of searching through state court records, which is more than due diligence

17  requires despite Respondent's assertion. (Resp. at 9.) *See Milke*, 711 F.3d at 1017–18.

18  Respondent now seeks to use this discovery, and Mr. Runningeagle's reliance on

19  Ms. Milke's efforts, to excuse the State from having failed to disclose the evidence to

20  Mr. Gallegos and to preclude Mr. Gallegos from holding the State accountable for its

21  constitutional violation. *Cf. Shelton v. Marshall*, No. C 10-01100 PJH, 2012 WL

22  _____

23  [2] Respondent argues that *Brady* does not apply to post-conviction proceedings, relying on *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009). *Osborne*, as well as *Jones v. Ryan*, 733 F.3d 825 (9th Cir. 2013), are distinguishable

24  because they did not involve the pre-trial suppression of material exculpatory evidence that extended into post-conviction proceedings. And courts have held that the State's

25  obligation to disclose exculpatory evidence that was suppressed prior to trial extends past trial. *See Whitlock v. Brueggemann*, 682 F.3d 567, 587–88 (7th Cir. 2012)

26  (rejecting argument that *Osborne* held that *Brady* does not require State to disclose throughout judicial proceedings exculpatory evidence available at time of trial);

27  *Douglas*, 560 F.3d at 1173. Moreover, the Arizona Supreme Court has held that the State has "an ethical and constitutional obligation to disclose clearly exculpatory

28  material that comes to its attention after the sentencing has occurred." *Canion v. Cole*, 115 P.3d 1261, 1262 (Ariz. 2005) (en banc).

GALL 282                     12                     SALDATE000388

1    2203022, at *9 (N.D. Cal. June 14, 2012) (holding that due diligence under § 2244(d)

2    did not require petitioner to monitor co-defendant's habeas filings that raised relevant

3    *Brady* claim and contrasting situation to hypothetical one where State had notified

4    petitioner after discovery of suppressed evidence in co-defendant's case and petitioner

5    had then failed to raise claim). Accepting Respondent's argument would forgive the

6    State of its *Brady* obligation and instead impose a duty on criminal defendants.

7        Mr. Gallegos agrees with Respondent that a hearing on the issue of timeliness is

8    not necessary. (Resp. at 3.)

9    **II.    The requested amendment is warranted under Federal Rule of Civil**
         **Procedure 15 and is not futile.**
10

11        Respondent argues that Mr. Gallegos's motion to amend his habeas petition to

12    include his *Brady* claim is futile because the claim is time-barred and will fail in state

13    court under Rule 32. (Resp. at 4.) As discussed above, Mr. Gallegos's claim is timely

14    and so can be added to his petition. Additionally as discussed above, Mr. Gallegos has

15    presented a potentially meritorious *Brady* claim, meaning amendment would not be

16    futile.

17        Respondent finally argues that amendment should be denied because

18    Mr. Gallegos unduly delayed bringing his claim. Respondent asserts that Mr. Gallegos

19    could have sought amendment in 2009 based on the footnote in the opening brief on

20    appeal in *Runningeagle*. (Resp. at 5.) As discussed above, this position is flawed.

21    Mr. Gallegos filed a motion in the Ninth Circuit raising his *Brady* claim soon after the

22    impeachment evidence was disclosed in *Milke* and after efforts to investigate the claim.

23    He cannot be faulted for the time that elapsed while the State violated its *Brady* duty,

24    and he diligently pursued his rights after information exposing that violation was

25    available. Furthermore, Mr. Gallegos could not have filed an amended petition in this

26    Court any sooner than he did. The Ninth Circuit had jurisdiction over Mr. Gallegos's

27    case starting in 2008 when Mr. Gallegos filed his Notice of Appeal. (ECF No. 115.)

28    *See United Nat'l Ins. Co.*, 242 F.3d at 1109. This Court therefore could not have

**GALL 283**

13

SALDATE000389

1   entertained a motion to amend Mr. Gallegos's petition. The same day that jurisdiction

2   was restored in this Court, Mr. Gallegos filed the instant motion seeking to amend his

3   petition. Nor could Mr. Gallegos have filed a petition under Rule 32 in state court

4   before this Court authorized counsel to do so. *See* Rep. of the Judicial Conf. Comm. on

5   Def. Servs. to the Chief Justice of the U.S. and Members of the Judicial Conf. of the

6   U.S. 9–10 (Mar. 1999) (CR-DEFSVS-MAR 99). He has therefore acted diligently in

7   bringing his timely *Brady* claim.

8         Mr. Gallegos notes that Respondent mistakes his argument that amendment is

9   proper under Federal Rule of Civil Procedure 15. Mr. Gallegos did not make any

10  argument about an "interests of justice exception" akin to a showing of actual

11  innocence. (Resp. at 22.) Instead, he quoted the standard for an amendment under Rule

12  15—that it should be "freely granted *when justice so requires*." FED. R. CIV. P. 15(a)(2)

13  (emphasis added). (Mot. at 19.) Mr. Gallegos stands by his argument in his motion that

14  amendment is proper because he has presented a timely, potentially meritorious claim

15  that could not have been previously pursued and has therefore never been adjudicated

16  by any court. Leave to amend lies within the discretion of this Court and should be

17  granted with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

18  1048, 1051 (9th Cir. 2003); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027,

19  1038–39 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment

20  after an adverse ruling, and in the normal course district courts should freely grant leave

21  to amend when a viable case may be presented."); *Douglas*, 560 F.3d at 1187 (treating a

22  *Brady* claim raised while appeal was pending as a supplement to the petitioner's

23  original § 2254 petition).

24  **III.   Conclusion**

25        For the reasons stated in the Motion and above, Mr. Gallegos requests that this

26  Court stay his federal habeas proceedings, allow him to amend his habeas petition to

27  include his potentially meritorious *Brady* claim, and authorize his federal habeas

28  counsel to represent him in ancillary state court litigation. Mr. Gallegos requests that

1   even if his requested stay and amendment are denied that current counsel still be

2   authorized to represent him in state court.

3          Respectfully submitted this 25th day of January 2017.

4                                          Jon M. Sands
5                                          Federal Public Defender
                                           District of Arizona
6

7                                          Ashwin Cattamanchi
                                           Emma L. Smith
8                                          Federal Public Defenders

9
                                           s/ Emma L. Smith
10                                         Counsel for Petitioner

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GALL 285                              15                        SALDATE000391
                              EXHIBIT 1j

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Certificate of Service

I hereby certify that on January 25, 2017, I electronically filed the foregoing Reply to Response to Motion to Hold Habeas Proceedings in Abeyance, to Supplement Petition, and to Represent Petitioner in State Court Proceedings, with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Haily Perkins
Assistant Paralegal
Capital Habeas Unit

SALDATE000392



# __Gallegos__

# __documents__

## *Milke v. City of Phoenix et. Al*

Milke: Gallegos documents

EXHIBIT 1j