1      MR. TUROFF:  THAT POINT AGAIN WE CAN'T, FOR LEGAL

2   REASONS CAN'T GET INTO THAT.

3      MR. SMITH.  AGAIN A POINT ON THAT.  DID HE SAY

4   THAT -- SHOULD BE ASKING YOU -- DID HE INDICATE THAT HE

5   SAW HER LEAVE IN HER CAR?  HE DID SAY HE SAW HER DRIVING

6   AWAY?

7      A.  YES.

8      Q.  HEADED SOUTH?

9      MR. MILLER.  HEADED SOUTH.

10      MR. SMITH.  WHEN THE CAR WAS FOUND WAS IT IN THE

11   SAME LOCATION THE SECURITY GUARD HAD SEEN IT AT EARLIER,

12   THE SAME EXACT LOCATION APPARENTLY?

13      A.  I CAN'T -- I DON'T THINK YOU CAN SAY THE

14   EXACT LOCATION, BUT YOU CAN SAY THE SAME GENERAL AREA.

15      MS. MCBRIDE:  TOP PARKING LOT AT THE POINTE?

16      A.  THAT IS CORRECT.

17      MS. VOSE:  WAS HER CAR LOCKED AND --

18      A.  LOCKED AND SECURED.

19      Q.  KEYS WERE IN HER PURSE THAT WAS FOUND IN THE

20   DUMPSTER?

21      A.  YES.

22      MR. [DONOFRIO]  ANY OTHER QUESTIONS?  YES, MR.

23   MILLER.

24   [illegible]

25   [illegible]

1          Q.   OKAY.

2               MR. DONOFRIO.   ANY OTHER QUESTIONS?  THERE BEING

3    NO OTHER QUESTIONS, THANK YOU, DETECTIVE SALDATE.  YOU

4    ARE ADMONISHED ARIZONA LAW PROHIBITS YOU DISCUSSING YOUR

5    TESTIMONY HERE TODAY WITH ANYONE OTHER THAN THE

6    PROSECUTION.  IF YOU WOULD HAVE A SEAT IN THE WAITING

7    ROOM I WOULD APPRECIATE IT.

8               (WITNESS EXCUSED FROM GRAND JURY ROOM.)

9               MR. DONOFRIO.   AT THIS TIME DOES THE GRAND JURY

10   HAVE ANY LEGAL QUESTIONS?  THERE BEING NO LEGAL

11   QUESTIONS, PLEASE DELIBERATE AT THIS TIME TO DETERMINE

12   WHAT YOU WISH TO DO NEXT.  I WOULD REMIND THE GRAND JURY

13   OF THE OPTIONS THAT YOU DO HAVE AVAILABLE TO YOU.

14

15               (THEREUPON, THE DEPUTY COUNTY ATTORNEYS

16   AND THE COURT REPORTER WERE EXCUSED FROM THE GRAND JURY

17   ROOM WHILE THE JURY DELIBERATED, WERE SUBSEQUENTLY

18   RECALLED INTO THE GRAND JURY ROOM, AND THE FOLLOWING

19   PROCEEDINGS TOOK PLACE.)

20

21               MR. CARLSON   THE JURY HAS VOTED AND DIRECTS THE

22   COUNTY ATTORNEY TO PREPARE A DRAFT INDICTMENT FOR OUR

23   CONSIDERATION.

24               MR. DONOFRIO.   THE COUNTY ATTORNEY HAS PREPARED A

25   DRAFT INDICTMENT FOR YOUR CONSIDERATION.  THOSE

RANGEL 052

EXHIBIT 1K

MILKE NSB030107

31

1   ADMONITIONS READ TO YOU THIS MORNING CONCERNING DRAFT

2   INDICTMENTS ARE APPLICABLE.

3                   (THEREUPON, THE DEPUTY COUNTY ATTORNEYS

4   AND THE COURT REPORTER WERE EXCUSED FROM THE GRAND JURY

5   ROOM WHILE THE JURY DELIBERATED, WERE SUBSEQUENTLY

6   RECALLED INTO THE GRAND JURY ROOM, AND THE FOLLOWING

7   PROCEEDINGS TOOK PLACE.)

8

9       MR. CARLSON.   THE CLERK WILL READ THE GRAND JURY

10  FINDINGS.

11              MS. SCOTT.   THE GRAND JURY, WITH 13 MEMBERS

12  PRESENT, AND ONLY MEMBERS OF THE GRAND JURY PRESENT,

13  DELIBERATED UPON EVIDENCE, AND WITH 13 JURORS VOTING, BY

14  A VOTE OF 13 TO ZERO RETURNED A TRUE BILL.

15

16

17

18

19

20

21

22

23

RANGEL 053          EXHIBIT "1k"          MILKE NSB030108

32

1                              5:30 P.M.

2

3              (THEREUPON, JUDGE GREGORY H. MARTIN WAS

4     CALLED INTO THE COURTROOM AND THE FOLLOWING PROCEEDINGS

5     WERE HAD.)

6

7                    P R O C E E D I N G S

8              RE:    RETURN OF INDICTMENTS

9

10         MR. CARLSON:   YOUR HONOR, CASE 112 GJ 87, A TRUE

11    BILL. MY SIGNATURE APPEARS ON THE INDICTMENT ENDORSING

12    IT AS A TRUE BILL.

13         MR. DONOFRIO:   IN THIS MATTER, YOUR HONOR, THE

14    STATE BELIEVES A NOTICE OF SUPERVENING INDICTMENT SHOULD

15    ISSUE.  THERE WAS A NO BOND SET.  THE STATE BELIEVES

16    THAT NO BOND SETTING IS CORRECT PURSUANT TO ARTICLE II,

17    SECTION 22 OF THE ARIZONA CONSTITUTION, AND ALSO ARIZONA

18    REVISED STATUTES 13-3961.  THE OFFENSE IS MURDER IN THE

19    FIRST DEGREE.

20              STATE BELIEVES IT IS A CAPITAL OFFENSE AND

21    IS PROCEEDING THAT WAY AT THIS TIME.  THE AGGRAVATING

22    CIRCUMSTANCES IN THIS MATTER WOULD BE A CRUEL AND

23    HEINOUS METHOD OF DEATH, THE VICTIM WAS SHOT FIVE TIMES

24    WITH A .35 MAGNUM REVOLVER  BECAUSE OF  SEASON, SHE WAS

25    LEFT IN A DRIVEWAY ON WEST JEFFERSON.

1          THE DEFENDANT AND THE VICTIM IN THIS MATTER,
2    YOUR HONOR, WERE ENGAGED.  THERE IS TESTIMONY TO
3    INDICATE THAT THE DEFENDANT IN THIS MATTER NO LONGER
4    WISHED TO BE MARRIED, DID NOT KNOW HOW TO TELL THE
5    INDIVIDUAL.  THE VICTIM WAS LAST SEEN ALIVE WITH, WITH A --
6    OR IN THE PROXIMITY OF A TRUCK THAT IS SIMILAR TO THAT
7    DRIVEN BY THE DEFENDANT.

8          THE DEFENDANT INDICATED THAT HE DID GO TO
9    THE POINTE AND WHERE THE VICTIM WAS GETTING OFF WORK AND
10   DID MEET WITH HER, TOOK HER TO A JOB SITE AND THEN
11   BROUGHT HER BACK.  HOWEVER, HER CAR WAS FOUND AT THE
12   POINTE.

13         AFTER THE INDIVIDUAL INVOKED HIS MIRANDA
14   RIGHTS, DURING HIS INTERVIEW HE THEN WENT ON TO INDICATE
15   AND ADMITTED THE KILLING.  HOWEVER, THERE MAY BE MIRANDA
16   PROBLEMS CONCERNING THAT PART OF THE CONFESSION.

17         THE COURT.  IT IS ORDERED ASSIGNING THIS CAUSE A
18   CRIMINAL NUMBER.

19         IT IS ORDERED THAT A NOTICE OF INTERVENING
20   INDICTMENT ISSUE, WITH COPIES SENT TO THE PARTIES SHOWN
21   ON THE FACE THEREOF.

22         IT IS ORDERED AFFIRMING THE NO BOND RELEASE

RANGEL 055                    EXHIBIT 1K              MILKE NSB030110

34.

1  NOT ENTITLED TO BOND IN THIS CASE AS THE PROOF IS

2  EVIDENT, PRESUMPTION GREAT THAT HE IS GUILTY OF THIS

3  OFFENSE, AND FURTHER THAT THE OFFENSE IS A CAPITAL

4  OFFENSE.

5  IT IS ORDERED THE MATTER REMAIN SECRET UNTIL

6  NOTICE IS SENT, WITH THE EXCEPTION THAT THE JUSTICE

7  COURT AND THE SHERIFF'S OFFICE BE NOTIFIED TO PREVENT

8  PREMATURE RELEASE.

9  MR. DONOFRIO.  YOUR HONOR, IF THE RECORD MAY

10 REFLECT THE STATE IS FILING AN ALLEGATION OF DANGEROUS

11 NATURE OF THE FELONY IN THIS MATTER.

12 THE COURT.  IT MAY.

13

14

15

16

17

18

19

20

21

22

23

24

RANGEL 056                    MILKE-NSB030111

EXHIBIT 1k

I    **REDRICK GAIO III** _____, do
hereby certify that the foregoing pages constitute a full,
accurate typewritten record of my stenographic notes
taken at said time and place, all done to the best of my
skill and ability.

     DATED this 22nd day of August .19 89.

_____
Official Court Reporter

RANGEL 057

EXHIBIT 1k

MILKE NSB030112

**DEBUS & KAZAN, LTD.**
LAWYERS
335 EAST PALM LANE
PHOENIX, ARIZONA 85004
257 8900 808

STATE BAR CODE:   005456

ATTORNEYS FOR:   Defendant RANGEL

## SUPERIOR COURT OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, | ) |
|              Plaintiff, | )   NO.  CR-89-08086 |
| -vs- | ) |
| | )   MOTION TO REMAND |
| MICHAEL SCOTT RANGEL, | ) |
| | )   (Oral Argument Requested) |
|              Defendant. | ) |

Defendant, Michael S. Rangel, by and through his attorneys undersigned, respectfully requests this Court enter an Order remanding this matter to the Maricopa County Grand Jury for a new finding of probable cause, pursuant to Rule 12.9 of the Arizona Rules of Criminal Procedure.  This motion is made upon the grounds and for the reasons that defendant has been denied substantial procedural rights.  Rangel contends that:

(1) he was denied a fair and impartial presentation of the evidence before the grand jury; and,

(2) the grand jury was not adequately or properly instructed as to the applicable law.

This motion is based upon the accompanying Memorandum of Points and Authorities, as well as the transcript of the grand jury proceedings filed in this matter on August 23, 1989, attached as Exhibit "A" and by reference made a part hereof.

EXHIBIT 1k

MILKE_NSB030067

1         **RESPECTFULLY SUBMITTED this** *15th* **day of September,**

2 1989.

3                   **DEBUS & KAZAN, LTD.**

4

5                  By *[signature]*

6                    Lawrence I. Kazan
                   Attorneys for Defendant RANGEL

7

8           **MEMORANDUM OF POINTS AND AUTHORITIES**

9 **I.   INTRODUCTION**

10       On June 25, 1989, at approximately 1:00 p.m., the body

11 of Kathleen Henderson was found at the location of 5726 West

12 Jefferson, Phoenix, Arizona.   It was initially determined that

13 Ms. Henderson was the victim of a homicide, since police officers

14 observed at least four gunshot wounds to her chest area.

15       Police   investigation   during   the   following   weeks

16 revealed no witnesses to the homicide. However, by early August,

17 1989, police focused their investigation on the victim's fiance',

18 Michael Rangel.   Rangel had been questioned on numerous occasions

19 by investigating detectives, and on August 3, 1989, Rangel was

20 interviewed for the final occasion at the main police station

21 located at 620 West Washington, Phoenix, Arizona, at

22 approximately 6:40 p.m.

23       At that time, the police meticulously and methodically,

24 point by point, picked apart details previously provided to them

25 by Rangel.   Finally, after two hours of strenuous examination by

26 investigating detectives, Rangel confessed to the homicide.

27       The lawfulness and admissibility of said confession

28

-2-

**RANGEL 059**     EXHIBIT 1k     **MILKE_NSB030068**

1   will be the subject of another pleading.  Suffice it to say for

2   purposes of this motion, Rangel prior to confessing, on three

3   separate occasions requested that he be allowed to contact an

4   attorney.  These requests were ignored by investigating Detective

5   Saldate of the Phoenix Police Department.

6          His requests for a lawyer unheeded, Rangel informed

7   detectives as to the facts and circumstances surrounding Kathleen

8   Henderson's death.  Rangel indicated that he met Kathy Henderson

9   at the South Mountain Pointe after she got off work and that from

10  the outset, Henderson continually badgered him about one thing or

11  another.

12          Rangel indicated that he picked Henderson up so that

13  she could make his rounds with him for his parking lot sweeping

14  business.  Michael confessed that he was tired and had a whole

15  night's work in front of him.  From the outset, Kathy began to

16  question him as to where he had been, and was angry with him.

17  This in turn angered Rangel, since he felt he had made a special

18  trip to the Pointe to pick Kathy up.

19          Rangel admitted that he and Kathy proceeded to check a

20  parking lot complex in the area of 67th Avenue and Thomas Road,

21  Phoenix, Arizona.  On the way, Kathy accused Rangel of having

22  another girlfriend.  He opined that her general demeanor was that

23  of a person who was going to steam all night.

24          As Michael drove on the freeway, he realized he was

25  driving very fast as a result of his anger.  Kathy criticized his

26  driving and kept complaining that he was driving too fast.  Kathy

27  accused Michael of having been drinking at the Little League

28

-3-

EXHIBIT 1k

1 baseball game he had attended earlier in the evening, even though

2 Michael had not consumed anything to drink.

3     While they were driving, a revolver that Michael kept

4 under the seat of the his truck for personal protection, slid

5 forward into view. Kathy saw the gun and immediately started

6 complaining about its presence indicating that she never wanted

7 him to own a gun. She complained it was stupid for him to

8 possess one. Michael tried to tell her about his problems at the

9 time, but she would not listen.

10     At one point while they were driving, Kathy grabbed the

11 gun and when she did this, Michael pulled over and stopped the

12 truck. At that time, he grabbed the gun from her and placed it

13 on the seat and continued driving.

14     Michael attempted to discuss their problems, but Kathy

15 wasn't interested. Instead she wanted to go home. At this

16 point, they had arrived at the vicinity of 57th Avenue and

17 Jefferson, and Michael pulled into the business complex. Michael

18 stopped the truck, got out, walked to the rear of the vehicle,

19 and sat down. At this point, he was extremely angry from the

20 fact that Kathy wouldn't listen to him, and was taking the

21 position that she wanted to go home even though he had driven her

22 all the way to the westside.

23     As Michael fumed, Kathy got out of the cab of the truck

24 carrying the gun. She approached him and began to chastise him

25 once again for carrying the gun. At that point, Michael

26 indicated: "I blew up, I just blew up." Michael said that he

27 grabbed the gun from Kathy and then shot her. Michael indicated

28

-4-

1   that he only heard the first shot, but realized that he fired the

2   weapon several more times, although he wasn't even aiming at her

3   when he did.   After shooting Kathy, Michael indicated that he

4   remained in his truck for an unknown time period and then decided

5   to leave the area.

6       Following his confession, Rangel was booked into the

7   County Jail on charges of first degree murder.

8       The grand jury met with respect to this investigation

9   on August 9, 1989.  At that time, the instant Indictment was

10  returned by them.

11  II.  THE GRAND JURY PROCEEDINGS

12      The presentation of evidence to the grand jury with

13  respect to the present case was presented with the intention of

14  obtaining an Indictment for first degree, premeditated murder.

15  From the outset, the grand jurors were only referred to A.R.S.

16  §13-1105, the first degree murder statute.  No other degrees of

17  homicide were referred to the grand jury.

18      In order to obtain this Indictment, the testifying

19  detective, as well as the County Attorneys in attendance, did not

20  present the entirety of the information that they had in their

21  possession at the time, and excluded any reference to the

22  totality of Rangel's explanation as to how Kathy Henderson died.

23      While the grand jury was informed that Michael Rangel

24  did meet Kathy Henderson at the South Mountain Pointe on June 24,

25  1989, and that the two continued to fight throughout the entirety

26  of their contact, the testifying detective only related those

27  portions of Rangel's statements made prior to the time he

28

-5-

EXHIBIT 1k

1  confessed his involvement in the homicide.

2      In effect, the State presented evidence that Rangel no

3  longer wished to marry Kathy Henderson, that he had somehow been

4  involved with another woman, and that his story varied on the

5  different occasions he was questioned by officers.

6  Unfortunately, the State opted to present only those statements

7  of Rangel that they felt were pertinent for the grand jury's

8  consideration and intentionally and purposely prevented grand

9  jury inquiry as to other matters disclosed by Rangel.

10     This grand jury was misled as a result of the State's

11  failure to present the whole story.

12     At page 23 of the transcript, the testifying detective

13  indicated that Rangel denied having a gun, however never cleared

14  up that point as a result of Rangel's later admission that he had

15  in fact purchased a gun and did have one present in the vehicle

16  the night of Ms. Henderson's death.  Furthermore, at page 26, the

17  testifying detective indicated in response to a grand juror's

18  question, that they have not found the murder weapon, but

19  specifically failed to disclose the fact that Rangel explained

20  where he had hidden the weapon used.

21     Finally, and most importantly, at page 28 of the

22  transcript, a grand juror asked if Rangel was confronted in an

23  obvious attempt to find out the balance of Rangel's statements.

24  In response, Mr. Turoff of the County Attorney's Office stated:

25  "That point again we can't, for legal reasons, can't get into

26  that."  (R.T. 9 Aug. at 29).

27     Other grand juror questions centered upon other

28

-6-

1  statements made by Rangel and the police officer referred only to
2  some of the statements Rangel made and again excluded from the
3  grand jury consideration, the entirety of Rangel's statements.
4          For example, at page 29 of the transcript, a grand
5  juror asked if Rangel indicated he saw Kathy leave in her car and
6  saw her driving away.  The officer testified that Rangel admitted
7  this and that he observed her vehicle headed south.
8  Unfortunately, the officer failed to notify the grand jurors that
9  at a later occasion, Rangel confessed this was not true and that
10 Kathy had remained with him until the time of her death.
11         The sum and substance of the presentation of this
12 matter to the grand jury was entirely misleading.  When the grand
13 jurors asked questions to follow-up on that presented by the
14 County Attorney, they were misled again.  This grand jury
15 proceeding was permeated by unfairness and partiality.  The
16 evidence was not fairly presented, and the grand jurors not
17 properly instructed.  Rangel was denied due process and therefore
18 a substantial procedural right in the presentation of this matter
19 to the Maricopa County Grand Jury.
20 III.  APPLICABLE LAW
21         The grand jury system is an investigative body acting
22 independently of either prosecutor or judge whose mission is to
23 bring to trial those who may be guilty and clear the innocent.
24 United States vs. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d
25 67 (1973).
26         A person under investigation by a grand jury is
27 protected by constitutional rights.  If the State resorts to the

-7-

RANGEL 064                                    MILKE NSB030073
EXHIBIT 1k

grand jury procedure, the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution require the presentation of evidence in a fair and impartial manner. State vs. Emery, 131 Ariz. 493, 642 P.2d 831, 851 (1982).

A component of the due process requirement is an independent grand jury. As a result, the duties of fair play and impartiality are imposed on those who attend and serve the grand jury to insure the determinations made by that body are informed, objective and just. Crimmins vs. Superior Court, 137 Ariz. 39, 668 P.2d 882, 884 (1983).

It is important to note that the duties of the prosecutor do not include deciding what evidence may be considered by the grand jury. A.R.S. §21-408 confers upon the prosecuting attorney certain duties with respect to the grand jury. These are limited to examining witnesses or giving legal advice. He may also, when requested, draft indictments or cause to issue subpoenas for witnesses. By exclusion, the prosecutor may not tell the grand jury or decide for the grand jury what evidence it may hear in an investigation. As Justice Corcoran stated in State vs. Young, 149 Ariz. 580, 720 P.2d 965 (1986):

> The powers of the prosecutor derive of those of the grand jury. The grand jury has broad investigative powers and is the decision maker in exercising those powers. . . . The power to initiate and control inquiries into public offenses rests with the grand jury and not the prosecutor. The prosecutor's duty is to assist the grand jury in its investigation; the prosecutor may not exercise dominion over those investigations by evading the grand jury's will.

-8-

EXHIBIT 1k

720 P.2d at 969.

In <u>Crimmins vs. Superior Court</u>, 137 Ariz. 39, 668 P.2d 882 (1983), the Supreme Court began delineating due process rights that attached to grand jury proceedings. There, they held that due process required a fair and impartial presentation of evidence. This more specifically as indicated in the opinion, required being adequately informed of the facts and instructed on the applicable law. The Court found that the omission of legal advice considered with inaccurate testimony presented rendered the presentation of that case less than fair and impartial.

The next case that dealt with a similar issue was <u>Nelson vs. Roylston</u>, 137 Ariz. 272, 669 P.2d 1349 (1983). The Court found that the due process requirement of a fair and impartial presentation of the evidence and an adequate instruction of the law was denied. There, the grand jury was denied evidence of the defendant's state of mind at the time of the commission of the offense which could have led the grand jury to find that a requisite element of the offense, i.e., intent, was not present. As a result, the Court of Appeals ordered the matter be remanded to the grand jury for a redetermination of probable cause.

In the present case, the State presented only a portion of the statements given by Rangel. The State provided to the grand jury information that Rangel initially told officers he had been at a Little League game until approximately 10:30 p.m., went home, went to sleep, and didn't realize Kathy was missing until the next morning. The grand jury was also informed that Rangel

-9-

EXHIBIT 1k

1  indicated on another occasion that he did, in fact, after leaving

2  the Little League game, meet with Kathy at the Pointe, go to one

3  job site, and then return Kathy to the Pointe after which he went

4  home and went to bed, not realizing she was missing until the

5  next morning.

6        The State's manner in which this matter was presented

7  to the grand jury completely lacked fairness and impartiality.

8  The picture painted drew the defendant as an individual who no

9  longer wished to marry the victim, and had begun some interest in

10 another woman. It was also demonstrated to the grand jury that

11 the defendant had called this other woman at 11:00 p.m. the night

12 before the missing person's report was filed and that after

13 meeting with police, the defendant contacted this individual

14 indicating the potential need for an alibi. When one of the

15 grand juror's attempted to question the police officer concerning

16 whether or not Rangel had cause to believe himself a suspect at

17 the time he informed this woman of the potential need for an

18 alibi, the Deputy County Attorney cut off the question.

19        Furthermore, no information at all was provided

20 concerning the defendant's explanation as to how Ms. Henderson's

21 death occurred. As noted above, the defendant had explained to

22 police officers how he shot Ms. Henderson after he "blew up" as a

23 result of her persistent nagging, criticism, and arguing. Had

24 the grand jury heard this information, it certainly could have

25 considered that Ms. Henderson's death was the result from a heat

26 of passion situation and cause them to look at a lesser degree of

27 homicide. At a minimum, they could have found the crime lacked

28

-10-

1  premeditation.

2      Along those same lines, the County Attorney attending

3  the grand jury purposely did not instruct the grand jurors on any

4  lesser degrees of homicide.  The grand jurors were only given a

5  first degree murder statute, and nothing more.

6      The Supreme Court addressed this situation in State vs.

7  Coconino County (Mauro), 139 Ariz. 422, 678 P.2d 1386 (1984).

8  There they stated:

9          We find that the State is not required by
           Crimmins, supra, or any other authority, to
10         instruct on all lesser included offenses.  If
           an indictment is supported by probable cause,
11         and the State makes a fair and impartial
           presentation of the evidence and law, see
12         Crimmins, supra, 137 at 43, 668 P.2d at 886,
           the State need only instruct the grand jury
13         on the highest charge supported by the
           evidence.

14
15  678 P.2d at 1389.

16      This portion of the opinion indicates that the grand

17  jury need not be instructed on all lesser included offenses if

18  the State makes a fair and impartial presentation of the evidence

19  and law.  In the case at bar, the State did not make a fair and

20  impartial presentation of the evidence inasmuch as the

21  defendant's explanation as to how the homicide occurred was not

22  included.  The Court in Mauro, supra, also referred to State vs.

23  O'Daniel, 62 Ha. 518, 616 P.2d 1383 (1980), which stands for the

24  proposition that if the evidence clearly establishes a lesser

25  offense, the prosecutor must, of his own volition, instruct the

26  grand jury on the significance of the evidence.

27      Here, the prosecutor opted not to do so.  The evidence

28  that this killing was the result of a heat of passion was

                          -11-

RANGEL 068

EXHIBIT 1k

MILKE_NSB030077

1 specifically excluded from grand jury consideration. Had this
2 evidence been presented, it may very well have vitiated the
3 requirement of premeditation found at A.R.S. §13-1105.

4 Since the State failed to fairly and impartially
5 present the evidence in this case, and further failed to
6 adequately instruct on the law, it is respectfully requested that
7 this Court enter an Order remanding this matter to the grand jury
8 for a new finding of probable cause, along with an Order
9 requiring that the County Attorney's Office fairly and
10 impartially present the evidence and adequately instruct the
11 grand jury in any future proceedings.

12 RESPECTFULLY SUBMITTED this 15ᵗʰ day of September,
13 1989.

14 DEBUS & KAZAN, LTD.

15

16 By _____
   Lawrence I. Kazan
17 Attorneys for Defendant RANGEL

18 Copy of the foregoing delivered
   this 15ᵗʰ day of September,
19 1989, to:

20 The Hon. Gregory Martin
   Judge of the Superior Court
21 101 W. Jefferson
   Phoenix, Arizona 85003
22

23 Mr. Lawrence Turoff
   Deputy County Attorney
   111 W. Monroe, Suite 1800
24 Phoenix, Arizona 85003

25

26 _____

27 Lawrence I. Kazan

28

-12-

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

Lawrence Turoff
Deputy County Attorney
Bar ID #: 001431
111 West Monroe, Suite 1800
Phoenix, AZ 85003
Telephone:  602 256-5780
Attorney for Plaintiff

FILED
1989 SEP 25  PM 4 01

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA,

              Plaintiff,

          vs.

MICHAEL SCOTT RANGEL,

             Defendant.

)
)
)
)
)
)
)
)
)
)

NO. CR 89-08086

RESPONSE TO DEFENDANT'S MOTION
TO REMAND

(Assigned to the Honorable
Gregory Martin)

      COMES NOW the State of Arizona, by and through undersigned counsel and urges the Court to deny the defendant's Motion to Remand upon the grounds and for the reasons that the defendant has not been denied any substantial procedural rights as more fully explained in the following Memorandum of Points and Authorities.

      Respectfully submitted this 25th day of September, 1989.

                      RICHARD M. ROMLEY
                      MARICOPA COUNTY ATTORNEY

                      BY
                      Lawrence Turoff
                      Deputy County Attorney

RANGEL 070                              MILKE NSB030114

## MEMORANDUM OF POINTS AND AUTHORITIES

As stated in the defendant's Motion to Remand, the Grand Jury was told of the defendant's statements which he made prior to his request for an attorney. These statements dealt in the main about his arguments with the victim on the night she was killed and of his anger at her as a result of this argument. The statements also contained denials of culpability. Only after the defendant suggested to the officers that he needed to have counsel, did the defendant admit that he killed the victim. These admissions were obtained in a clear violation of Miranda and it's progeny, a fact that the defense counsel obviously has recognized, as can be seen by counsel's statement at pages 2 and 3 of the motion "The lawfulness and admissability of said confession will be the subject of another pleading."

The undersigned suggests to the Court that had the prosecution presented the confession to the Grand Jury knowing that at trial the confession could not be used during its case in chief, a Motion to Remand would have been immediately forthcoming.

In its presentation of the evidence to the Grand Jury, the State did not deny the defendant any substantial procedural rights.

The defendant states "The evidence that this killing was the result of heat of passion was specifically excluded from Grand Jury consideration."

2

RANGEL 071

EXHIBIT 1k

MILKE-NSB030115

Manslaughter as defined in 13-1103 A (2), is committing a second degree murder upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim.

The Arizona Supreme Court in State v. Doss, 116 Ariz. 156, 568 P.2d 1054 (1977) held that mere language however aggravated, abusive, opprobrious or indecent is not sufficient provocation to reduce a killing committed with a deadly weapon from pre-meditated murder to manslaughter. In State v. Ortiz, 754 P.2d 13 (1988), the Court held that words alone are not adequate provocation to justify reducing an intentional killing to manslaughter.

Courts generally do not concern themselves with the evidence underlying indictment and will not speculate as to what Grand Jurors would have done with additional information. State v. Jacobson, 22 Ariz. App. 128, State v. Jessen, 130 Ariz. 1, 633 P.2d 410.

In refusing to conjecture about how the Grand Jury might have treated additional testimony the Court in State v. Bell, 60 Hawaii, 241, 589 P.2d 517 stated that conjecture as to the significance which the Grand Jury would have attached to testimony not presented to it would exceed the courts supervisory authority over the grand jury system.

In State v. Coconino County, 139 Ariz. 422, 678 P.2d 1386 in construing Crimmins the Arizona Supreme Court stated that the State is not required to instruct on all lesser included offenses if an indictment is supported by probable cause and if the State makes a fair and impartial presentation of the law and evidence.

3

The Grand Jury need be instructed only on the highest charge supported by the evidence.

It is submitted by the State that those requirements were met in this instant case.

For all the foregoing reasons, it is respectfully urged that the Court deny the defendant's Motion to Remand.

Respectfully submitted this 25th day of September, 1989.

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

BY _____
Lawrence Turoff
Deputy County Attorney

Copy of the foregoing mailed/
delivered this 25th day of
September, 1989, to:

The Honorable Gregory Martin
Judge of the Superior Court

Debus and Kazan, Ltd.
335 E. Palm Lane
Phoenix, Arizona 85004
Defense Attorneys

BY _____
Lawrence Turoff
Deputy County Attorney

LT:jd
922.4

4

EXHIBIT 1k

DEBUS & KAZAN. LTD.
LAWYERS
310 EAST PALM LANE
PHOENIX, ARIZONA 85004
257-9500 5501

STATE BAR CODE:  005456

ATTORNEYS FOR:  Defendant RANGEL

SUPERIOR COURT OF ARIZONA

COUNTY OF MARICOPA

STATE OF ARIZONA,          )
                          )
          Plaintiff,       )    NO.   CR-89-08086
                          )
-vs-                       )
                          )    REPLY TO RESPONSE TO
MICHAEL SCOTT RANGEL,      )    DEFENDANT'S MOTION TO
                          )    REMAND
          Defendant.       )
_____)

          Defendant Michael Rangel, by and through his attorneys undersigned, replies to the State's response to his Motion to Remand this matter for a new finding of probable cause as set forth in the accompanying Memorandum of Points and Authorities.

          RESPECTFULLY SUBMITTED this 27th day of September, 1989.

                              DEBUS & KAZAN, LTD.


                              By _____
                                 Lawrence I. Kazan
                                 Attorneys for Defendant RANGEL

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

A prosecutor's obligations with respect to the grand jury process arise from A.R.S. S21-408. This statute allows prosecuting attorneys to examine witnesses or give legal advice. They may also, when requested, draft indictments or cause to issue subpoenas for witnesses.

By exclusion, the prosecution may not tell the grand jury or decide for the grand jury what evidence it may hear in an investigation.

The prosecutor attending the grand jury in this particular case violated the limited powers of his relationship with the grand jury. This prosecutor decided what evidence would be appropriate for them to consider and what they should not consider. As a result, the grand jury was misled and presented a less than fair and impartial picture of the evidence in the possession of the police.

The State contends that the admissions made by the defendant to police officers were obtained in a clear violation of the Fifth Amendment and therefore it would have been improper for the State to present this information to the grand jury.

First, it must be remembered that a grand jury proceeding is viewed substantially different than that of a trial. The sufficiency of evidence presented to a grand jury cannot be challenged. State vs. Jacobson, 22 Ariz.App. 128, 524 P.2d 962 (1974). Furthermore, in pursuing its investigations, the grand jury is not bound to act on the customary rules of evidence. As a result, hearsay testimony is freely admitted, as

-2-

EXHIBIT 1k

MILKE_NSB030119

well as other types of evidence unlawfully obtained. For example, in <u>State Ex Rel Berger vs. Meyers</u>, 108 Ariz. 248, 495 P.2d 844 (1972), the Court held that while illegally seized evidence could not be introduced at trial, the Court was aware of no case which extends this rule to grand jury proceedings. There, the Court was dealing with illegally obtained wire tap evidence, violative of the Fourth Amendment to the United States Constitution. In the present case, the State takes the position that the defendant's statements kept from the grand jury were the result of a Fifth or Sixth Amendment violation and therefore should not have been presented.

The reason Rangel's statements were not presented to this grand jury is obvious. The grand jury certainly could have found from the defendant's statements a lack of premeditation, therefore vitiating any charge of first degree murder. Thus, if the evidence was fairly and impartially presented, and the grand jury adequately instructed, they could have been free to return a charge of second degree murder or manslaughter on the facts of this case. They were denied any opportunity to do so when the State concealed evidence from them, misled them, and did not adequately instruct them.

Had the defendant in this case following his request for counsel, not only admitted to killing the victim, but admitted to planning said killing, this Court could rest assured that those statements would have been presented to the grand jury since they supported the State's theory of the offense. Had the defendant at that time requested a new finding of probable cause, the State would have fallen back to the position (as it always

-3-

RANGEL 076                                    MILKE_NSB030120

EXHIBIT 1k

1   has in the past), that illegally obtained evidence is admissible

2   in grand jury proceedings. The reason for allowing illegally

3   obtained evidence in the grand jury is obvious. There is no

4   pre-indictment means by which a defendant can challenge the

5   lawfulness of a confession, a wire tap, or a search and seizure.

6   Therefore, at the time grand juries meet, there has been no

7   tribunal setting at which these matters can be litigated.

8         The other two positions taken by the State are of no

9   avail. First, the State indicates that the confession of Rangel

10  did not reveal evidence sufficient to warrant an indictment for

11  manslaughter. The State continues to forget who is supposed to

12  be making the decision here, the County Attorney's Office or the

13  grand jury. Additionally, in State vs. Coconino County, 139

14  Ariz. 422, 678 P.2d 1386 (1984), mentioned in the State's

15  pleading (as previously cited by the defendant), certainly stands

16  for the proposition set forth. The defendant agrees that the

17  State is not required to instruct on all lesser included

18  offenses. The exception to this rule as set forth in the

19  decision is based on the State's fairly and impartially

20  presenting the law and evidence. Here, there was no such fair

21  and impartial presentation of either, and instead the grand

22  jurors were misled. As a result, a remand of this matter for a

23  new finding of probable cause is required.

24

25

26  . . .

27  . . .

28  . . .

—4—

EXHIBIT 1k

1   RESPECTFULLY SUBMITTED this 27th day of September,

2   1989.

3                                    DEBUS & KAZAN, LTD.

4

5                                    By _____
                                        Lawrence I. Kazan
6                                    Attorneys for Defendant RANGEL

7   Copy of the foregoing mailed
    this 27 day of September,
8   1989, to:

9   The Hon. Gregory Martin
    Judge of the Superior Court
10  101 West Jefferson
    Phoenix, Arizona  85003
11

    Mr. Lawrence Turoff
12  Deputy County Attorney
    111 West Monroe, Suite 1800
13  Phoenix, Arizona  85003

14

15  _____
    Lawrence I. Kazan
16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

RANGEL 078                    MILKE_NSB030122
EXHIBIT 1k



RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

Lawrence Turoff
Deputy County Attorney
Bar ID #:  001431
111 West Monroe, Suite 1800
Phoenix, AZ  85003
Telephone:  602 256-5780
Attorney for Plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA,<br><br>              Plaintiff,<br><br>        vs.<br><br>MICHAEL S. RANGEL,<br><br>            Defendant. | NO. CR 89-08086<br><br>NOTICE OF INTENT TO SEEK THE DEATH PENALTY<br><br>(Assigned to the Honorable Gregory Martin) |

COMES NOW the State of Arizona, by and through undersigned counsel, and hereby gives notice that it intends to seek the death penalty against the Defendant.

The State will rely on the following aggravating circumstance:  A.R.S. §13-703(6).

Respectfully submitted this _13th_ day of October, 1989.

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

BY _____
Lawrence Turoff
Deputy County Attorney

Copy of the foregoing mailed/
delivered this _____ day of
October, 1989, to:

The Honorable Gregory Martin
Judge of the Superior Court

Debus & Kazan
Attorneys for Defendant
335 East Palm Lane
Phoenix, Arizona  85004

BY _____
    Lawrence Turoff
    Deputy County Attorney

LT:ks
10.13d

2

RANGEL 080

MILKE_NSB030124

EXHIBIT 1k

OFFICE DISTRIBUTION

| CHANGE OF VENUE | |
|---|---|
| JURY FEES | |
| REMANDS | |
| MUSO | X |
| | |
| | |
| disp. | X |

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

RECEIVED   PROCESSED

OCT 18 '89   OCT 19 '89

CLERK OF THE COURT

Code _10-13-89_   Hon. Gregory H. Martin   S. Hurley

NO. _CR89-08086_   Judge or Commissioner   Deputy

State of Arizona

County Attorney
By: Laurence Turoff

V

Michael Scott Rangel                    George G. Shyuno, P.D.

10:12 a.m. This is the time set for hearing on
Defendant's Motion to Remand. The State is represented
by counsel above-named. Defendant is present with
counsel above-named.

Court reporter, Sharon Hubbard, is present.

Defendant's counsel supplements written Motion
to Remand with oral argument. State argues motion
to the Court.

It is Ordered taking this matter
under advisement.

10:19 a.m. Matter concludes.

FORM 43-17A REV. 2-87

01480

Page 11

RANGEL 081
EXHIBIT 1k
MILKE_NSB012566

OFFICE DISTRIBUTION

| CHANGE OF VENUE | |
|---|---|
| JURY FEES | |
| REMANDS | X |
| | |
| | |
| | |
| DISP | X |

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

RECEIVED     PROCESSED

OCT 18 '89     OCT 19 '89

Cl--- of the Court — DIST. CENTER

CLERK OF THE COURT

10/16/89     HON. GREGORY H. MARTIN     S. Hawley
Code     Date     Judge/Commissioner/Pro Tem     Deputy

NO.  CR89-08086

STATE OF ARIZONA

v.

MICHAEL SCOTT RANGEL

County Attorney
By:  Lawrence Turoff

Lawrence I. Kazan

The Court has had under advisement the defendant's Motion
To Remand.  The Court has considered the arguments of counsel
and read their pleadings filed herein and the grand jury transcript.

The defendant contends that his, perhaps, tainted -
confession should have been presented to the grand jury and that
the grand jury should have been instructed on the lesser degrees
of homicide rather than just murder, first degree.  The defendant
argues that the State's failure to do this made the presentation
of evidence to the grand jury less than fair and impartial resulting
in a denial of a substantial procedural right to the defendant,
in turn, calling for a new finding of probable cause.

The Court agrees.  The Court concludes that the defendant's
final statement to law enforcement should have been presented
to the grand jury.  The fact that the acquisition of the statements
might be later found to have been in violation of the defendant's
constitutional rights is of no moment.  The Court is of the opinion
that had the grand jury heard the defendant's final account of
the evening in question, it could have found that the killing
was intentional but without premeditation, i.e., Murder, second
degree.

Accordingly, IT IS ORDERED granting the defendant's motion
to remand.

FURTHER ORDERED vacating pretrial conference set for
11/19/89 in this division.

UNLINED MINUTE ENTRY R1-88

Page  34

01474

**RANGEL 082**

EXHIBIT 1k

**MILKE_NSB012560**



1   **DEBUS & KAZAN, LTD.**
    LAWYERS
2   335 EAST PALM LANE
    PHOENIX, ARIZONA 85004
3   602-2000-1061

4   **STATE BAR CODE:** 005456

5   **ATTORNEYS FOR:** Defendant RANGEL

6                    SUPERIOR COURT OF ARIZONA

7                        COUNTY OF MARICOPA

8   STATE OF ARIZONA,              )
                                   )
9            Plaintiff,            )   NO.  CR-89- 08086
                                   )
10  -vs-                           )
                                   )   MOTION TO SUPPRESS STATEMENTS
11  MICHAEL RANGEL,                )
                                   )   (Oral Argument and Evidentiary
12           Defendant.            )        Hearing Requested)
                                   )
13  ──────────────────────────────

14          Defendant Michael Rangel, by and through his attorneys

15  undersigned, respectfully requests this Court enter an Order

16  suppressing for use during trial, all statements obtained in

17  violation of the defendant's Fifth and Sixth Amendment rights to

18  the United States Constitution, and those rights guaranteed by

19  the Arizona Constitution.

20          This motion is based upon the accompanying Memorandum

21  of Points and Authorities.

22          RESPECTFULLY SUBMITTED this ___ day of October, 1989.

23                        DEBUS & KAZAN, LTD.

24

25                        By _____
                              Lawrence I. Kazan
26                            Attorneys for Defendant RANGEL

27  . . .

28  . . .

FILED

1989 OCT 16  PM 4: 31

**RANGEL 083**                              **MILKE_NSB030129**

EXHIBIT 1k

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This pleading deals with suppression of statements made by the defendant following three separate requests for counsel that were ignored by the interrogating police officers. The State appears to have conceded this issue. In fact, in the State's Response to the defendant's Motion to Remand this matter for a new finding of probable cause, the State contended that the admissions made by the defendant to police officers were obtained "in a clear violation of the Fifth Amendment". In order to prevent the State from changing horses mid-stream, and attempt to use these statements at trial, Rangel contends that they were the product of Fifth and Sixth Amendment violations and therefore requests this Court enter an Order suppressing their use at trial.

The lawfulness of the manner in which Rangel arrived in police custody, and the admission of any statements made, is addressed by way of a different pleading entitled "Motion to Suppress" filed this same date. Therefore, this motion is directed solely to the unlawfulness of the manner in which Rangel's admission to the commission of the crime was obtained.

### II.  FACTS

The majority of facts necessary to determine this issue can be found in Rangel's "Motion to Suppress" filed this same date. In addition, it should be noted that during Rangel's interrogation, on three separate occasions a request was made for counsel. On each occasion, the interrogating officer ignored said request and continued questioning. Thereafter, and in

-2-

RANGEL 084

MILKE_NSB030130

EXHIBIT 1k

1   response to the persistent questioning, Rangel admitted to the

2   perpetration of the death of Kathleen Henderson.

3   III.   LAW

4          In Miranda vs. Arizona, 384 U.S. 436 (1966), the Court

5   held that a criminal suspect in custody must be informed of

6   certain constitutional rights before the police may interrogate

7   him.   These rights include the right to remain silent, the right

8   to be represented by an attorney and to have that attorney

9   present during questioning, and, if the suspect cannot afford to

10  hire a lawyer, the right to have counsel appointed before

11  questioning begins.   Additionally, the police are required to

12  warn the suspect that any statements made could be used against

13  him in Court.

14         In Edwards vs. Arizona, 451 U.S. 477 (1981), the

15  Supreme Court, drawing upon the Fifth Amendment privilege against

16  self-incrimination and the Sixth Amendment right to counsel,

17  created a "bright line" rule holding that once an arrestee is

18  apprised of his Miranda rights, and invokes the right to counsel,

19  he must not thereafter be interrogated until counsel has been

20  made available to him, unless the accused himself initiates

21  further communication, exchanges, or conversations with the

22  police.

23         Generally, the right to counsel attaches only when

24  adversary judicial proceedings have been initiated against the

25  defendant by formal charge, preliminary hearing, indictment,

26  information or arraignment.   However, an exception to this rule

27  was established in Escobedo vs. Illinois, 378 U.S. 478 (1964).

28  There, the Court ruled the defendant is denied his constitutional

-3-

**RANGEL 085**                          **MILKE_NSB030131**

EXHIBIT 1k

1   right to counsel in interrogation settings where the suspect

2   requests but is denied counsel, when the police investigation has

3   focused on the defendant and is no longer a generalized inquiry

4   into an unsolved crime.

5           The relatively rigid requirement that interrogation

6   must cease upon the accused's request for an attorney has the

7   virtue of informing police and prosecutors with specificity as to

8   what they may do in conducting custodial interrogation, and of

9   informing courts under what circumstances statements obtained

10   during such interrogation are not admissible. Unfortunately, the

11   police in this case were unable, for whatever reason, to follow

12   this requirement and continued interrogation after the

13   defendant's assertion of his right to counsel.

14           Therefore, the statements made in violation of this

15   right must be suppressed for use during trial of this matter.

16           RESPECTFULLY SUBMITTED this _16th_ day of October, 1989.

17                           DEBUS & KAZAN, LTD.

18

19                       By _____

20                         Lawrence I. Kazan
                          Attorneys for Defendant RANGEL

21

22

23

24   Copy of the foregoing mailed this
      _16th_ day of October, 1989, to:

25

26   The Hon. Gregory Martin
      Judge of the Superior Court
      101 W. Jefferson

27   Phoenix, Arizona   85003

28

-4-

RANGEL 086                         MILKE_NSB030132

EXHIBIT 1k

1
2   Mr. Lawrence Turoff
    Deputy County Attorney
3   111 West Monroe, Suite 1800
    Phoenix, Arizona  85003

4
5   Lawrence I. Kazan

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-5-

RANGEL 087

EXHIBIT 1k

MILKE_NSB030133



1 | **DEBUS & KAZAN, LTD.**
2 | LAWYERS
   | 335 EAST PALM LANE
   | PHOENIX, ARIZONA 85004
3 | 257-8900 1902



FILED

'89 OCT 16 PM 4:22

4 | **STATE BAR CODE:** 005456

5 | **ATTORNEYS FOR:** Defendant RANGEL

6 | SUPERIOR COURT OF ARIZONA

7 | COUNTY OF MARICOPA

8 | STATE OF ARIZONA, )
9 |           Plaintiff, ) NO.   CR-89-08086
10 | -vs- ) MOTION TO SUPPRESS
11 | MICHAEL RANGEL, ) (Oral Argument and Evidentiary
12 |           Defendant. )     Hearing Requested)
13 | )

14 |       Defendant Michael Rangel, by and through his attorneys
15 | undersigned, respectfully requests this Court enter an Order
16 | suppressing for use at trial all evidence obtained as a result of
17 | the unlawful stop of his vehicle, and his arrest occurring on
18 | August 3, 1989, on the grounds and for the reasons that said stop
19 | and arrest were violative of the Fourth Amendment to the United
20 | States Constitution and the laws of the State of Arizona.

21 |       This motion is based upon the accompanying Memorandum
22 | of Points and Authorities.

23 |       RESPECTFULLY SUBMITTED this _____ day of October,
24 | 1989.

25 |                           DEBUS & KAZAN, LTD.
26 |
27 |                           By _____
   |                           Lawrence I. Kazan
28 |                           Attorneys for Defendant RANGEL

**RANGEL 088**                   **MILKE_NSB030134**

EXHIBIT 1k

## MEMORANDUM OF POINTS AND AUTHORITIES

### FACTS

At approximately 1:00 p.m. on June 25, 1989, Kathleen Henderson was found dead in a parking lot in an industrial complex near the intersection of 57th Avenue and Jefferson, Phoenix, Arizona.

Following weeks of investigation, the Phoenix Police Department had arrested no one in connection with this offense. By mid-July, the police had focused their investigation on the victim's fiancee', Michael Scott Rangel. Although the police had no evidence connecting Rangel with the commission of the offense, he seemed a likely suspect. The police had heard that Michael had changed his mind about his decision to marry Henderson and had also heard that he had been courting another woman who lived in Topeka, Kansas.

On August 3, 1989, Rangel was placed under surveillance by Phoenix police officers. When nothing out of the ordinary occurred, police frustrated in their investigation and acting on a hunch, had Rangel stopped by a uniformed police officer as he was driving in his vehicle at the intersection of Kyrene Road and Chandler Boulevard, [Phoenix], Arizona.

Leading up to this stop, no traffic violations were observed and in fact, there was no probable cause to stop Rangel's vehicle in the first place. Rangel was taken to the Phoenix Police Department main station at 620 West Washington, Phoenix, Arizona, and placed in a private interview room. At 6:40 p.m., Rangel was confronted by Detectives Fragoso and Saldate of the Phoenix Police Department. Rangel was Mirandized

-2-

RANGEL 089

EXHIBIT 1k

01478

MILKE_NSB012564

at that time by the officers and Rangel indicated that he understood his rights.

Thereafter, Rangel was questioned by officers for nearly two and one-half hours. On several occasions, Rangel requested an attorney, and said requests were ignored by the officers. At the end of this interrogation, Rangel was told he would be booked into the County Jail for murder.

Rangel contends that the evidence obtained during this interrogation must be suppressed for use during trial of this matter on the grounds and the stop of his vehicle was unlawful in that it was not a supportable investigatory stop authorized by Terry vs. Ohio, 392 U.S. 1 (1967), and furthermore, in effect this situation was a pretextural arrest without probable cause and therefore violative of the Fourth Amendment to the United States constitution.

APPLICABLE LAW

I. Investigatory Stop

The Fourth Amendment to the United States Constitution applies to seizures of the person, including brief investigatory stops, such as the stop of a vehicle. Reid vs. Georgia, 448 U.S. 438 (1980). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Brown vs. Texas, 443 U.S. 47 (1979).

While courts have been unclear in defining what cause is sufficient to authorize police to stop a person, the United States Supreme Court recently defined this cause in United States vs. Cortez, 449 U.S. 411 (1981), wherein the Court stated:

-3-

RANGEL 090

MILKE_NSB030136

1
2
3
4
5

> But the essence of all that has been
> written is that the totality of the
> circumstances - the whole picture - must
> be taken into account. Based upon that
> whole picture, the detaining officers
> must have a particularized and objective
> basis for suspecting the particular
> person stopped of criminal activity.

6    449 U.S. at 417, 418.

7         The predicate permitting seizures on suspicion short of

8    probable cause is that law enforcement interests warrant a

9    limited intrusion on the personal security of the suspect.

10   Therefore, the scope of the intrusion permitted will vary to some

11   extent with the particular facts and circumstances of each case.

12   This much, however, is clear: An investigative detention must be

13   temporary and last no longer than is necessary to effectuate the

14   purpose of the stop. Similarly, the investigative methods

15   employed should be the least intrusive means reasonably available

16   to verify or dispel the officer's suspicion in a short period of

17   time. Florida vs. Royer, 460 U.S. 491, 500 (1983).

18        The stop of Rangel's vehicle in this particular case

19   was unlawful. There were no particularized facts available to

20   police officers indicating that Rangel had, was in the process

21   of, or was about to be, committing a crime. The purpose of an

22   investigatory stop is to in short form allow an officer to

23   quickly confirm or dispel suspicions about criminal conduct.

24        The officers in the present case legitimize the stop of

25   Rangel's vehicle on the basis that they merely wanted to know

26   whether or not he would come to the police station and

27   voluntarily answer questions. What was wrong with a phone call?

28        The police had Rangel under surveillance the entire

-4-

1 date of the stop.  Whether or not Rangel agreed or not was of no

2 moment.  Rangel would have been taken to the police station for a

3 custodial interrogation regardless of his response.

4       Just as important as the lack of facts justifying the

5 basis for the stop, is the fact that when Rangel was taken to the

6 Phoenix Police Department, he was placed in a private

7 interrogation room, and when met by officers, was Mirandized.

8 Certainly, the officers had focused their investigation on Rangel

9 and used the stop of his vehicle on the highway as a ruse to get

10 him into police custody without advance warning.

11       The stop in this case was an unlawful detention

12 violative of the Fourth Amendment to the United States

13 Constitution.  As a result, the evidence obtained as a result

14 thereof must be suppressed.

15 II.  Illegal Arrest

16       A person is under arrest whenever his liberty of

17 movement has been restrained in any significant way.  Henry vs.

18 United States, 361 U.S. 98 (1959).

19       To legally arrest and detain, the State must establish

20 probable cause to believe the arrestee has committed a crime.

21 "Probable cause" to arrest or search exists where at that moment

22 the facts and circumstances within the officer's knowledge and of

23 which they have reasonably trustworthy information are sufficient

24 in themselves to warrant a prudent man in the belief that an

25 offense has been or is being committed.  Beck vs. Ohio, 379 U.S.

26 89 (1964).

27       In the present case, the overall conduct of law

28 enforcement officers was to effectively arrest Rangel.  The stop

-5-

RANGEL 092

EXHIBIT 1k

MILKE_NSB030138

1  of his vehicle was unlawful and while the officer indicated to
2  Rangel that it was requested that he voluntarily go to the
3  station to answer questions, had he refused he would have been
4  taken anyway. Rangel was never told by officers that he was free
5  to leave and when arriving at the station, he was taken to a
6  private interrogation room, and read his <u>Miranda</u> warnings. This
7  type of conduct is not consistent with the voluntary interview
8  situation the police attempt to portray. This conduct was in
9  effect an arrest of Rangel and was not supported by probable
10 cause.

11                              <u>CONCLUSION</u>

12         In determining whether an investigative stop is invalid
13 as pretextural, the proper inquiry is whether a reasonable
14 officer would have made the seizure in the absence of
15 illegitimate motivation.  <u>United States vs. Smith</u>, 799 F.2d 704
16 (11th Cir. 1986).

17         Whether a Fourth Amendment violation has occurred
18 "turns on an objective assessment of the officer's actions in
19 light of the facts and circumstances confronting him at the time
20 and not on the officer's actual state of mind at the time the
21 challenged action was taken."  <u>Maryland vs. Macon</u>, 472 U.S. 463,
22 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985).

23         The inescapable conclusion to be drawn from the facts
24 in this case is that the officers, lacking probable cause to
25 arrest Rangel, seized, detained, and transported him to the
26 Phoenix Police Department in the hope of developing sufficient
27 probable cause or obtaining a confession in a more custodial
28 setting. The police conduct in this case cannot be characterized

                              -6-

RANGEL 093                                   MILKE_NSB030139
                         EXHIBIT 1k

intrusive. This sort of police activity is an abuse

tive detention and violates the Fourth Amendment.

here remains the question whether the connection

his unconstitutional police conduct and the

ng statements obtained during Rangel's illegal

was nevertheless sufficiently attenuated to permit the

ial of the statements. Dunaway vs. New York, 442 U.S.

), and Brown vs. Illinois, 422 U.S. 590 (1975), hold

tements given during a period of illegal detention are

ible even though voluntarily given if they are the

of the illegal detention and not the result of an

dent act of free will. See also, Wong Sun vs. United

371 U.S. 471 (1963).

In the present case, there can be no question that the

of Rangel's vehicle was a seizure, an illegal detention

ted, and during said illegal detention, numerous statements

given. The interrogation and stop are not sufficiently

nuated to justify utilization of the statements. As a

lt, Rangel requests this Court enter an Order suppressing for

all evidence obtained as a result of his illegal detention by

enix police officers.

RESPECTFULLY SUBMITTED this 16th day of October, 1989.

DERUS & KAZAN, LTD.

By _Lawrence J. Kazan_
Lawrence J. Kazan
Attorneys for Defendant RANGEL

-7-

1  Copy of the foregoing mailed
2  this ___ day of October,
   1989, to:

3  The Hon. Gregory Martin
4  Judge of the Superior Court
   101 West Jefferson
5  Phoenix, Arizona  85003

6  Mr. Larry Turoff
   Deputy County Attorney
7  111 W. Monroe, Suite 1800
   Phoenix, Arizona  85003

8

9

10 Lawrence I. Kazan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

RANGEL 095                    EXHIBIT 1k              MILKE_NSB030141

FILED

10/24/89   4:45 PM
JUDITH ALLEN, Clerk

By  M Cerf—
Deputy

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

LAWRENCE TUROFF
BAR ID #: 001431
Deputy County Attorney
111 West Monroe, Suite 1800
Phoenix, AZ 85003
Telephone: 602 256-8780
Attorney for Plaintiff

QUADRANT UA

DR. 89-090702 PHOENIX P.D.

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| STATE OF ARIZONA, | ) | CR89-08086 |
| | ) | 114 GJ 84 |
| Plaintiff, | ) | |
| | ) | INDICTMENT |
| vs. | ) | |
| | ) | MURDER FIRST DEGREE, |
| MICHAEL SCOTT RANGEL, | ) | A CLASS 1 FELONY |
| | ) | |
| Defendant. | ) | |

The Grand Jurors of Maricopa County, Arizona, accuse MICHAEL
SCOTT RANGEL, on this 24th day of October, 1989, charging that in
Maricopa County, Arizona:

MICHAEL SCOTT RANGEL, on or between the 24th and 25th days of
June, 1989, intending or knowing that his conduct would cause
death, with premeditation caused the death of KATHLEEN HENDERSON,
in violation of A.R.S. §§ 13-1105, 13-1101, 13-703, 13-801, and 13-
812.

_____
("A True Bill")

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY          Date:  October 24, 1989

_____          _____
LAWRENCE TUROFF                  FREDERICK A. FLOHRSCHUTZ
DEPUTY COUNTY ATTORNEY           FOREMAN OF THE GRAND JURY

LT:ks/OK
1t10.24

RANGEL 096          EXHIBIT 1k          MILKE_NSB030143

**RICHARD M. ROMLEY**
**MARICOPA COUNTY ATTORNEY**

**Lawrence Turoff**
**Deputy County Attorney**
**Bar ID #:  001431**
**111 West Monroe, Suite 1800**
**Phoenix, AZ  85003**
**Telephone:  602 256-5780**
**Attorney for Plaintiff**



1988 OCT 24  PM 4: 56

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, ) | NO. CR 89-08086 |
| Plaintiff, ) | RESPONSE TO MOTION TO SUPPRESS |
| vs. ) | STATEMENTS |
| MICHAEL RANGEL, ) | (Oral Argument and Evidentiary Hearing Requested) |
| Defendant. ) | (Assigned to the Honorable Gregory Martin) |

COMES NOW the State of Arizona, by and through undersigned counsel, and submits to the Court the following:

This response is to the Motion to Suppress Statements given by the Defendant to investigators after the Defendant invoked his Miranda Rights.  The State agrees with the Defendant that these statements given in violation of Miranda will not be used in its case-in-chief.  However, the State submits that the statements are admissible if found to be voluntary as impeachment should the Defendant decide to testify and testifies contrary to the statements made to the investigators.  Voluntary statements made after a defendant invokes his Miranda privilege may still be admissible as impeachment evidence to attack the credibility of the defendant should the defendant elect to testify.  State v.

Routhier, 137 Ariz. 90, 669 P.2d 68 (1983); State v. Swinburne, 116 Ariz. 403, 569 P.2d 833 (1977); Harris v. New York, 401 U.S. 22, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

Respectfully submitted this 24th day of October, 1989.

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

BY _____
Lawrence Turoff
Deputy County Attorney

Copy of the foregoing mailed/
delivered this 24th day of
October, 1989, to:

The Honorable Gregory Martin
Judge of the Superior Court

Debus & Kazan, Ltd.
335 East Palm Lane
phoenix, Arizona 85004

BY _____
Lawrence Turoff
Deputy County Attorney

LT:ks
10.24b

2

RANGEL 098

EXHIBIT 1k

MILKE_NSB030147

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

Lawrence Turoff
Deputy County Attorney
Bar ID #: 001431
111 West Monroe, Suite 1800
Phoenix, AZ 85003
Telephone: 602 256-5780
Attorney for Plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| STATE OF ARIZONA, | NO. CR 89-08086 |
| Plaintiff, | |
| vs. | RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS |
| MICHAEL RANGEL, | (Oral Argument and Evidentiary Hearing Requested) |
| Defendant. | (Assigned to the Honorable Gregory Martin) |

COMES NOW the Plaintiff, by and through its attorneys undersigned, and urges the Court to deny the Defendant's Motion to Suppress those statements which were made prior to the Defendant's request for counsel. This response is based upon the following Memorandum of Points and Authorities.

Respectfully submitted this _____ day of October, 1989.

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

BY _____
Lawrence Turoff
Deputy County Attorney

RANGEL 099          EXHIBIT 1k          MILKE_NSB030151

## MEMORANDUM OF POINTS AND AUTHORITIES

### FACTS

The body of Kathleen Henderson was found in the drive-way of a business located at 5726 West Jefferson, Phoenix, Arizona, on June 25, 1989, at approximately 12:55 p.m. She had been shot five times, four of the wounds were fatal wounds. The body was fully clothed with the exception of shoes and a belt. There were no signs of sexual molestation or activity. Two gold rings with a diamond on each were on her fingers.

Kathleen Henderson had been engaged to the defendant and a marriage had been planned for September.

Kathleen Henderson had been employed at the Rustler's Rooste Restaurant located at the Pointe South Resort, 7777 South Pointe Parkway West, which is about twenty to twenty-five miles from where her body was found. She left her work and was taken to her car at about 11:10 p.m., June 24, 1989. She never made it to her home in Chandler where she lived with the defendant. She was reported missing by the defendant sometime after 7:00 a.m. on June 25, 1989. Her car was found in a parking lot at the Rustler's Rooste.

Shortly after 4:00 p.m., on June 25, 1989, the defendant was interviewed and advised the investigators that he had last seen Kathy at approximately 4:45 p.m. on June 24, when she left their home for work. He further advised the officers that he had fallen asleep that evening at about 11:20 p.m. and had awakened at 5:45 a.m. the following morning to find that Kathy was not there, and that she had not returned home from work. When asked by the

2

**RANGEL 100**

EXHIBIT 1k

MILKE_NSB030152