investigator why he had waited so long to report her missing, the defendant stated that he thought she had possibly gone with her sister, Bobbi, to Park-N-Swap and that at approximately 7:00 a.m. he received a call for Kathy from her sister and then knew at that time they were not together. The defendant went on to say that he and Kathy did not argue and that they were very happy together. He also said that it was not unusual for Kathy to come home between 11:30 p.m. and 1:30 a.m. After this first interview with the defendant the investigators learned the following: That the defendant drove a white 1989 Chevrolet pick-up; a witness advised investigators that he had heard gunshots that appeared to come from the area just east of 59th Avenue (which is the area where the body was found), and that he saw a late model white Chevrolet or GMC pick-up travelling southbound on 57th drive just north of Jefferson. This occurred between *midnite* and 1:00 a.m. of June 25, 1989; a witness had seen Kathleen Henderson drive her car out of the parking lot at Rustler's Rooste sometime after 11:00 p.m. on June 24, followed by a 1988 or 1989 white Chevrolet pick-up. The witness, a security guard, at the Pointe followed the vehicles and saw both vehicles go to another parking lot at the Rustler's Rooste/Pointe and park; he saw Kathy get out of her car and get into the white pick-up. Later that evening the white pick-up was gone from the parking lot. The location where Kathy's car was found was the same as where the witness observe her park right before entering the white Chevy pick-up; approximately two weeks before the killing of Kathy Henderson, the defendant went to the office of the people from whom he had rented his business property

3

RANGEL 101

MILKE NSB030153

and requested that a location to the west side of Phoenix be located for him to relocate his office. He was told that an area around 59th Avenue and Van Buren had some property which would be for lease and was given a map which listed and described the piece of property where Kathy's body was found; the day Kathy's body was found, her purse was found in a dumpster located at Camelback Mall, 70th Street and Camelback Road. The defendant had a contract to sweep that parking lot; it was learned that the relationship between the defendant and Kathleen Henderson was not as loving and warm as the defendant described it, but that, in fact, the defendant did not want to get married and that he had been pursuing another woman who lived in Topeka, Kansas; at approximately 11:00 p.m. on June 24, 1989, the defendant called this woman and asked if she had seen the letter he had written to his sister-in-law and what she thought of it; he then hung up. Later on the 25th at approximately 12:00 noon, Phoenix time, the defendant again called the woman in Topeka and told her that Kathy was missing and may be dead. He stated he might need an alibi and wanted her to remember that he had called at 11:00 p.m. the night before, from home. This second telephone call was approximately 55 minutes before Kathy's body was found.

On August 3, 1989, at approximately 5:50 p.m., Phoenix Police Officer Crump, at the request of the homicide investigators, stopped Rangel at Kyrene and Chandler Boulevards in Chandler. Officer Crump advised Rangel that the Phoenix homicide detectives had asked him to request Rangel to come to the Phoenix Police Station for an interview and that Crump did not know any more than that.

4

RANGEL 102                    MILKE_NSB030154

EXHIBIT 1k

Rangel responded that his girlfriend had been killed about a month before and that they probably wanted to talk to him again about it and that he would go to Phoenix for the interview. He then asked Crump if he should follow in his truck. Crump said that they should travel together as it would be faster. Rangel then parked his truck in a nearby parking lot, removed his portable telephone and some papers, locked the truck and walked over to Crump's police vehicle and got in. At no time was he advised that he was under arrest or that he must go to the police department. Rangel was cooperative and voluntarily accompanied Officer Crump. This occurred at approximately 5:50 p.m. and Rangel arrived at the Phoenix Police Department at approximately 6:40 p.m. Prior to any questions asked of Rangel, he was given his Miranda Rights and was advised that the officers felt the need to clarify certain statements that he had made which they believe he had lied about. Rangel responded that he had not lied about anything and that he would try to cooperate. The defendant went on then to make several statements which were exculpatory in nature. Somewhere along the line the defendant then requested counsel. It is the statements made prior to the first request for counsel that this motion to suppress is directed towards.

### LAW

It is clear that before August 3, 1989, the investigation had proceeded to the point that the police had more than a reasonable suspicion that the defendant had murdered Kathleen Henderson and that, in fact, they had probable cause to arrest him.

5

EXHIBIT 1k

In State v. Wiley, 144 Ariz. 525, 531, 698 P.2d 1244 and State v. Lawson, 144 Ariz. 547, 553, 698 P.2d 1266 (1985), the Arizona Supreme Court said:

> "That a police officer has probable cause for arrest if he has reasonable grounds to believe an offense had been committed by the person arrested. That in reviewing whether probable cause existed, the court will look at the totality of the facts and circumstances and that it was not essential that the arresting officer have all the facts as long as probable cause exists from the collective knowledge of all the law enforcement agents involved."

Despite the fact that the police had probable cause, they did not arrest Rangel. Rangel voluntarily accompanied Officer Crump to the police station for questioning. The question of whether Rangel would have been permitted to refuse is not relevant as it never came up. As stated in State v. Morse, 617 P.2d 1141, 127 Ariz. 25, the unexpressed intent of a police officer to detain a suspect whom he in interrogating does not constitute custodial interrogation. Justice Rehnquist stated in his dissenting opinion in Dunaway v. New York, 442 U.S. 220, 60 L.Ed.2d 824, 842, 843:

> "Voluntary questioning not involving any 'seizure' for Fifth Amendment purposes may take place under any number of varying circumstances. And the occasions will not be few when a particular individual agrees voluntarily to answer questions that the police wish to put to him either on the street, at the station, or in his house, and later regrets his willingness to answer these questions." . . .but the fact that the officers accompanied petitioner from his house to the station in no way vitiates the State's claim that petitioner acted voluntarily. Similarly, the unexpressed intentions of police officers as to hypothetical situations have little bearing on the question whether the police conduct, objectively viewed, restrained petitioner's liberty by show of force or authority."

6

RANGEL 104

MILKE NSB030156

Assuming for the sake of argument that the defendant was unlawfully arrested, that in and of itself does not require the suppression of his statements. A confession can be purged of the taint of an illegal arrest. In determining whether any taint has been purged, the court must proceed on a case by case basis considering many factors including: 1) the voluntariness of the confession, as a threshold requirement; 2) the temporal proximity between the illegal arrest and the confession; 3) the presence of intervening circumstances; and particularly, the purpose and flagrancy of official misconduct.

Once voluntariness has been determined, the court should then go on to the next factors with the number two factor, temporal proximity being the least important. Probable cause has been determined to be an intervening factor as that tends to break the chain of causation between the illegal arrest and the confession. The final factor, the purpose and flagrancy of official misconduct is entitled to special weight. <u>State of Arizona v. Fred Reffitt, Jr.</u>, 702 P.2d 681, 145 Ariz. 452, 458, 459.

In reviewing the facts of this particular case, it is obvious that the <u>four</u> factors as considered by <u>Reffitt</u>, have been affirmatively met by the State and any possible taint between the time the defendant was stopped by Officer Crump and his statements, have been purged.

## CONCLUSION

By reason of all of the foregoing, it is respectfully submitted as follows: 1) that the investigators had probable cause to arrest the defendant and therefore there was nothing improper in their

7

RANGEL 105

EXHIBIT 1k

MILKE NSB030157

questioning of him; 2) that the defendant was not arrested at the time of the stop by Officer Crump, but that he voluntarily accompanied Officer Crump to the police department for questioning; and, 3) that any possible taint, if the Court should find that the defendant was in fact improperly detained, was purged by the facts and conduct of the officers and defendant.

The defendant's Motion to Suppress should be denied.

Respectfully submitted this 24th day of October, 1989.

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

BY Lawrence Turoff
Deputy County Attorney

Copy of the foregoing mailed/
delivered this 24th day of
October, 1989, to:

The Honorable Gregory Martin
Judge of the Superior Court

Mr. Lawrence Debus
Mr. Lawrence I. Kazan
335 East Palm Lane
Phoenix, Arizona 85004
ATTORNEYS FOR DEFENDANT

BY Lawrence Turoff
Deputy County Attorney

LT:kg
2.11t

8

RANGEL 106

MILKE NSB030158

EXHIBIT 1k

RECEIVED   PROCE

NOV 03 '89   10/03

DISTRIBUTION

**ARIZONA  SUPERIOR  COURT**
**MARICOPA  COUNTY**
**101 W. JEFFERSON, PHOENIX AZ, 85003**

THURSDAY   NOVEMBER  2, 1989
AT  8:30 AM
NOT GUILTY ARRAIGNMENT

DEPUTY COURT CLERK........ L. Carlson

SU INDCT

#CR8908086 * STATE OF ARIZONA      COUNTY ATTORNEY IS REPRESENTED   10/24/89
              VS                                                    10-24-8
                                   COURT REPORTER........ Bob Wall

RANGEL, MICHAEL SCOTT
IN CUSTODY                                                          1373
CNT 01 MURDER 1 F1N
ATTY: DEBUS, LARRY
BOND SET  NO BOND
INITIAL 08/04/89 IN CUSTODY

CASE ASSIGNED TO CRIMINAL DIVISION  S. JUDGE ....Martin.........
DEFENDANT IS PRESENT AND ENTERS A PLEA OF NOT GUILTY TO ALL CHARGES.
IT IS ORDERED:

1. DEFENDANT SHALL CONFER WITH COUNSEL 14-21 DAYS FROM THIS DATE FOR
   THE PURPOSE OF PREPARING FOR THE PRETRIAL CONFERENCE SCHEDULED
   BELOW:
2. SETTING PRETRIAL CONFERENCE AND FILING OF COMPLETED CASE STATUS

   REPORT FOR ........Dec..7............., 1989 AT 8:45 A.M...... ;

3. SETTING TRIAL FOR ...Jan.17............., 19   AT 8:45 A.M...... ;
4. DIRECTING THE CLERK TO AMEND THE CHARGE TO REFLECT THE TRUE NAME

   OF DEFENDANT TO BE ................................... .

5. OTHER ..............................................................
NOTICE TO DEFENDANTS:
   FAILURE TO COMPLY WITH THE ABOVE ORDERS MAY RESULT IN REVOCATION
OF DEFENDANT'S RELEASE FROM CUSTODY AND/OR THE IMPOSITION OF OTHER
SANCTIONS.
   THE DEFENDANT MAY BE TRIED IN HIS/HER ABSENCE IF HE/SHE FAILS TO
APPEAR FOR TRIAL.

COPIES OF THIS MINUTE ORDER AND A CASE STATUS REPORT FORM ARE GIVEN TO
ALL PARTIES THIS DATE.
(152)

MILKE_NSB0301590

RANGEL 107          EXHIBIT 1k



RECEIVED   PROCESSED

FEB 21 '90   FEB 21 '90

Clerk of the Court — DEP. CLERK

CLERK OF THE COURT

2-9-90    HON. GREGORY H. MARTIN    L. Martin

NO. CR89-08086

**STATE OF ARIZONA**

County Attorney
by: Larry Turoff

**VS**

**MICHAEL SCOTT RANGEL**

Larry Kazan

10:50 a.m. This is the time set for Pretrial Motions. State is represented by above-named counsel. Defendant is present with above-named counsel.

Court Reporter, Sharon Hubbard, is present.

Defendant's Motion to Suppress and Motion to Suppress Statements are presented to the Court.

Counsel for defendant invokes the rule of exclusion of witnesses and the following persons are sworn, instructed by the Court and leave the courtroom with the exception of Armando Saldate, Jr., who is allowed to remain and assist counsel for the State: Armando Saldate, Jr., Eleuterio Fragoso, Trent Crump.

Trent Crump, having been previously sworn, testifies.

The witness makes an in-court identification of the defendant.

Armando Saldate, Jr., having been previously sworn, testifies.

12:00 p.m. Court stands at recess.

UNLINED MINUTE ENTRY R1-86

(cont'd)

Page 50

**RANGEL 108**

EXHIBIT 1k

**MILKE NSB030188**

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

RECEIVED   FILED
FEB 21 '90   FEB 21 '90
Clerk of the Court — DISH. CENTER
CLERK OF THE COURT

4

2/9/90   Hon. Gregory N. Martin   C. Bichheld

No. CR 89-08086

State vs Rangel                         Continued

_____

1:34pm. Court reconvenes with respective

counsel and defendant present.

Court Reporter, Sharon Hubbard is present.

Armando Saldate Jr. resumes the stand

and testifies further.

Defendant's exhibits one and two are marked

for identification as follows:

1. small color photo

2. copy of diagram

State rests.

Defendant's Case:

Defendant rests

Opening argument by counsel for defendant.

Argument by counsel for the State.

Closing argument by counsel for defendant.

                    Continued              51

FORM 43-17A REV. 2-87

RANGEL 109          EXHIBIT 1k          MILKE NSB030189

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

RECEIVED          PROCESSED
FEB 21 '90        FEB 2 1 '90
Clerk of the Court — DIST, CLERK

CLERK OF THE COURT

4

2/9/90   Hon. Gregory N. Martin   A. Michalek

No. CR 89-08016

State vs. Rangel                    Continued

---

It Is Ordered denying motion to suppress
the statements made after the Miranda Rights
were given to defendant and before he
requested a lawyer, which the Court finds admissible.

Further Ordered vacating trial of March 19,
1990 and resetting trial for March 26, 1990 at
11:00 a.m. in this Division.

The Court finds extraordinary circumstances
exist and that a delay is indispensable to the
interest of justice.

It Is Ordered excluding time from 3-19-90
to 3/26/90 (7 days). New Last Day: 3/30/90.
2:51 p.m. Matter concludes.

---

FORM 43-17A REV. 2-87

Page 32

RANGEL 110                          MILKE_NSB030190

EXHIBIT 1k

SUPERIOR COURT OF ARIZONA

MARICOPA COUNTY

RECEIVED   PROCESSED

MAR 30 '90   APR 0 2 '90

Clerk of ~~~~~~~~~~~~~ CENTER

DD 3

5

3/30/90   Hon. Gregory H. Martin   C. Mjeduleck

NO. CR 89-03086

STATE OF ARIZONA

vs.

Michael Scott Rangel

County Attorney

by Larry Turoff

Laurence Kazan

## PLEA AGREEMENT/CHANGE OF PLEA

[ ] Alford Plea

9:05 a.m. _____ State is represented by above-named counsel. Defendant is present with above-named counsel.

Court Reporter ___Kitty Lovejoy_____ is present.

Executed Plea Agreement is presented to the Court and reviewed with Defendant. Defendant states true name is as noted in the agreement.

The Court advises the Defendant as to the range of possible sentences for the offense, including whether or not probation is available and any other conditions imposed by statute, including special requirements for probation, if available. The Court further advises the Defendant as to all constitutional rights waived by the Plea Agreement.

Upon inquiry, the Court finds that the Defendant desires to forego the constitutional rights, that the plea of

[ X ]   GUILTY is made knowingly, intelligently and voluntarily, not the result of force, threats or promises; that there is a factual basis for the plea; and that the Defendant understands the range of sentences and other penalties available.

[ ]   NO CONTEST is made knowingly, intelligently and voluntarily, not the result of force, threats or promises; that there is a factual basis for the plea of No Contest; that due consideration of the views of the parties and best interest of the public in the effective administration of justice requires the acceptance of the plea; that the Defendant understands the range of sentences and other penalties available.

The Defendant enters a plea of Guilty / No Contest to the following crime(s):

105
PLEA AGREEMENT/CHANGE OF PLEA          (Continued)          Page 27

1001-001-1 R9-85

RANGEL 111          MILKE NSB030209

EXHIBIT 1k

5

Hon. _____

STATE VS _____

_____ (Continued)

A.R.S. Sections 13-1104, 1101, 710, 201, 812

on or about June 24, 1919 to June 25, 1989

[ ] The plea of the Defendant is accepted and entered of record.

IT IS ORDERED setting time for entry of judgment of guilt and sentencing

_____ before Judge _____

[ ] Acceptance of the plea is deferred to time of sentencing

IT IS ORDERED setting time for acceptance of plea, entry of judgment of guilt and sentencing

on April 24, 1990 at 9:00 a.m. before Judge _____

IT IS ORDERED that a presentence investigation and report be made and that the Defendant, if not in custody, shall immediately report to the Adult Probation Department. ISSUED: Request for presentence report (green slip).

IT IS FURTHER ORDERED that the motion to dismiss _____

as reflected in the Plea Agreement, will be deemed submitted at the time of sentencing.

IT IS FURTHER ORDERED affirming prior custody/release orders.

IT IS FURTHER ORDERED vacating the pretrial conference date of _____

and the trial date of 3-22-90

FILED: Plea Agreement.

9:14 a.m. Hearing concludes.

RANGEL 112     MILKE NSB030210

EXHIBIT 1k

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA )
)
vs. )
)
MICHAEL B. RANGEL, )       NO. ___ CR 89-08006
)       PLEA AGREEMENT
)
_____ )
)
Defendant )

FILED

The State of Arizona and the defendant hereby agree to the following disposition of this case:

**Plea:** The defendant agrees to plead guilty/no contest to:

MURDER SECOND DEGREE, A CLASS 1 FELONY, in violation of A.R.S. §§13-1104,

13-1101, 13-710, 13-801, 13-812

_____ committed on **6/24 OR 6/25/89**
(DATE)

This is a ☐ **non** dangerous, ☐ **non** repetitive offense under the criminal code.

**Terms:** On the following understandings, terms and conditions:

1. The crime carries a presumptive sentence of __15__ years; a minimum sentence of __10__ years and a maximum sentence of __20__ years. Probation ☐ **is not** available. Restitution of economic loss to the victim and waiver of extradition for probation revocation procedures are required. The maximum fine that can be imposed under A.R.S. 13-801 to 804 is $150,000 plus __37__% surcharge. There will also be a mandatory assessment of $ __100.00__ pursuant to A.R.S. __13-812__ _____ Special conditions regarding sentence, parole, or commutation imposed by statute (if any) are **THE DEFENDANT MUST SERVE THE ENTIRE**

**SENTENCE IMPOSED BY THE COURT WITH NO PAROLE ELIGIBILITY.**

2. The parties stipulate to the following additional terms: (These stipulations are subject to court approval at the time of sentencing as set forth in paragraph 7.) **THE DEFENDANT SHALL BE SENTENCED TO 15 YEARS IMPRISONMENT.**

_____
_____
_____
_____
_____

3. The following charges are dismissed, or if not yet filed, shall not be brought against the defendant: _____
_____
_____
_____
_____

Page 1 of 2

STATE OF ARIZONA            )
                           )
vs.                        )      SUPERIOR COURT NO. CR 89-08086
                           )
MICHAEL S. RANGEL,         )      J.P. COURT
                           )
            Defendant      )      P. NO.
                           )

**4.** This agreement serves to amend the complaint or information, to charge the offense to which the defendant pleads, without the filing of any additional pleading. However, if the plea is rejected by the court or withdrawn by the defendant, or if the conviction is reversed upon an appeal by the defendant, the original charges and any charges that are dismissed by reason of this plea agreement are automatically reinstated.

**5.** If the defendant is charged with a felony, he hereby waives and gives up his rights to a preliminary hearing or other probable cause determination on the charges to which he pleads. The defendant agrees that this agreement shall not be binding on the State should the defendant be charged with or commit a crime between the time of this agreement and the time for sentencing in this cause; nor shall this agreement be binding on the State until the State confirms all representations made by the Defendant and his attorney, to-wit:

_____

_____

In the event the court rejects the plea, or either the State or the defendant withdraws the plea, the defendant hereby waives and gives up his right to a preliminary hearing or other probable cause determination on the original charges.

**6.** Unless this plea is rejected by the court or withdrawn by either party, the defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. Defendant further waives and gives up the right to appeal based upon any of the above.

**7.** The parties hereto fully and completely understand and agree that it is the court's duty to impose sentence upon the defendant, and that any sentence either stipulated to or recommended herein in paragraph two is not binding on the court. If after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the term and conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing, it must give both the state and the defendant an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges will automatically be reinstated. The defendant in such case waives and gives up his right to a probable cause determination on the original charges.

**8.** If the court decides to reject the plea agreement provisions regarding sentencing and neither the state nor the defendant elects to withdraw the plea agreement, then any sentence either stipulated to or recommended herein in paragraph 2 is not binding upon the court, and the court is bound only by the sentencing limits set forth in paragraph 1 and the applicable statutes.

**9.** This plea agreement in no way effects any forfeiture proceedings pursuant to A.R.S. § 13-4301 et seq., § 13-2314, or § 32-1993, if applicable, nor does the plea agreement in any way compromise or abrogate any civil actions, including actions pursuant to A.R.S. § 13-2301 et seq or § 13-4301 et seq., or the provisions of A.R.S. § 13-2314(G) or A.R.S. § 13-4310(C).

I have read and understand the provisions of pages one and two of this agreement. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading guilty I will be waiving and giving up my right to a determination of probable cause, to a trial by jury, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my right to remain silent, my privilege against self-incrimination and presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein. I fully understand that if, as part of this plea agreement, I am granted probation by the court, the terms and conditions thereof are subject to modification at any time during the period of probation. I understand that if I violate any of the written conditions of my probation, my probation may be terminated and I can be sentenced to any term or terms stated above in paragraph one, without limitation.

I have personally and voluntarily placed my initials in each of the above boxes and signed the signature line below to indicate I read and approved all of the previous paragraphs in this agreement, both individually and as a total binding agreement.

Date _March 22, 1990_          Defendant _____
                                         MICHAEL S. RANGEL

I have discussed this case with my client in detail and advised him of his constitutional rights and all possible defenses. I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

Date _March 23, 1990_          Defense Counsel _____

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

Date _MARCH 13, 1990_          Prosecutor _____
                                          LAWRENCE TUROFF

2400-234 Page 2 R1-87

RANGEL 114

MILKE N98930342

EXHIBIT 1k

THE STATE OF ARIZONA
        Plaintiff

    vs.

MICHAEL SCOTT RANGEL
        Defendant

CAUSE NO. CR8908086

HONORABLE GREGORY H. MARTIN

CRIMINAL DIVISION 19

SUPERIOR COURT

### PRESENTENCE INVESTIGATION

#### PRESENT OFFENSE:

        The following information is taken from Phoenix Police Departmental Reports #89-090607 and #89-090702:

        On June 25, 1989, at 12:55 p.m., Alex and Ramona Navarro found the body of Kathleen Henderson in a parking lot at 5726 West Jefferson. The body was in a state of rigor mortis and it had at least four gunshot wounds to the following areas:  below the right breast; beneath the left nipple of the left breast; below the left armpit; and on the left side.  The body was transported to the office of the Medical Examiner where Dr. George Bolduc conducted an autopsy on June 26, 1989.  Dr. Bolduc classified the death as a homicide which was caused by gunshot wounds of the chest, back, and abdomen.

        Extensive investigation by the Phoenix Police Department developed defendant Michael Scott Rangel as a suspect in this homicide. Rangel was the victim's fiance.  These individuals had lived together for approximately four years.  On June 25, 1989, Rangel filed a missing persons report with the Phoenix Police Department stating that the victim was missing.

        On August 3, 1989, the police interviewed the defendant. Rangel admitted killing the victim.  He stated, on the evening in question, he had picked up the victim from her place of employment at a local restaurant. The defendant and victim became involved in an argument while they were driving in the defendant's truck.  The victim thought the defendant had another girlfriend.  During this argument, the defendant drove westbound on I-10.  The defendant was driving fast because he was angry.  The victim began to yell at the defendant because he was driving too fast.  At this time, the defendant exited the freeway at Fifty-ninth Avenue.  Sometime during the above incident, the defendant's .44 caliber pistol slid forward from underneath the truck seat.  The victim saw the gun, and she started to complain about the defendant having it.  The victim grabbed the gun, and the defendant pulled over and stopped his truck.  The defendant grabbed the gun and continued to drive.

        The defendant drove to 5726 West Jefferson and stopped the truck.  He got out of the truck and walked to the back bumper and sat down.

PAGE 1

**RANGEL 115**

**MILKE NSB030221**

MICHAEL SCOTT RANGEL                    CAUSE NO. CR8908086
        Defendant

He had left the victim inside the truck with the gun. The victim exited the truck with the gun in her hand and walked towards the defendant. She began to complain about the gun. The defendant became upset, grabbed the gun, and shot the victim several times.

After shooting the victim, the defendant remained in his truck next to the victim for "quite a while." The defendant then drove to a shopping mall and threw the victim's purse, belt, and boots into a trash dumpster. The defendant drove to a canal south of Elliot Road on Rural Road and threw the gun into the canal. He then drove home and went to sleep.

The defendant was arrested in this matter on August 3, 1989. He was booked on a charge of first degree murder. The defendant has remained in custody since this date.

## RELATED OFFENSES/STIPULATIONS:

On August 9, 1989, the defendant was indicted for murder, first degree, a class 1 felony. On March 26, 1990, he pled guilty to murder, second degree, a class 1 felony. The plea agreement stipulates that the defendant shall be sentenced to fifteen years imprisonment. Acceptance of the plea was deferred.

## DEFENDANT'S STATEMENT:

The defendant's version of the present offense is similar to that depicted in the police report. However, he stated that he did not stop his truck and grab the gun from the victim; he drove to the location of this incident. Also, he did not remain with the victim after he shot her. He claims that after she fell to the ground and he saw her hands fall, he left the area. He did not call an ambulance because he knew she was dead and he got scared. The defendant claims he did not call anyone for an alibi. He stated that he did not know what to do, so he reported the victim as missing. He denies that he premeditated this offense. The defendant advised this writer that he was having second thoughts about his marriage to the victim. He was not thinking about his marriage when he shot the victim. He is afraid to face people he knows because he is ashamed of his actions.

The defendant's goal in prison is to finish his education and to study accounting. When he is released from prison, he wants to be employed in a professional career.

The defendant feels the Court should follow the plea agreement because of the crime classification. He feels he should be punished because what he did was wrong.

PAGE 2

EXHIBIT 1k

MICHAEL SCOTT RANGEL
Defendant

CAUSE NO. CR8908086

---

## STATEMENT OF VICTIMS:

Janice Henderson, mother of the victim, feels the plea agreement is appropriate. The county attorney advised her family that he felt that the State had a good case for second degree murder, but they did not have a good case for first degree murder because there was only enough evidence to prove a second degree murder charge. She feels the county attorney was better qualified to make this type of decision. She is pleased with the plea agreement because she was afraid this case would go to Court and the defendant would have been found guilty of manslaughter. She does not feel fifteen years in prison is enough for killing someone. Mrs. Henderson does not believe the defendant's reason for killing her daughter. The defendant stated that he did not love the victim, and the defendant's parents would not let him get out of this marriage. She does not go along with the defendant's statement when he said, "I just blew up." She feels that there is more involved in this case; however, she believes that the defendant and victim will only know the true course of this incident. Mrs. Henderson stated that the defendant could have used other means to break off his marriage to the victim. She believes that there might have been an argument between the victim and the defendant because the victim was the type to be involved in an argument. Mrs. Henderson cannot understand how the defendant could put her family and his family through this situation. Mrs. Henderson stated that her husband wants restitution in a total of $11,548.00 for funeral expenses for the victim. This amount includes the cost of two funeral homes, the cemetery plot, tombstone, flowers, the cost of transporting the victim from Phoenix to Kansas, and the burial preparations. Mrs. Henderson does not want the defendant paroled before fifteen years nor does she want him to return to Kansas.

Robert Henderson, the victim's father, indicated it was difficult to learn that the defendant had killed his daughter five weeks after the offense. The defendant was like one of their own children. He does not believe the defendant's story. The victim's father was sick with cancer when this situation occurred. He claims the victim was their baby, and when they learned of her murder they were in shock. He cannot believe that this incident occurred. His thoughts concerning the plea agreement are the same as his wife's. He does not believe the defendant gave a good enough reason for killing his daughter. He believes the defendant lied. He has some hatred towards the defendant. The defendant had other choices to get out of his marriage to the victim.

## STATEMENT OF INTERESTED PARTIES:

Phoenix Police Detective Saldate concurs with the plea agreement. Saldate believes the defendant premeditated this murder; however, it would have been difficult to prove this. Therefore, he is satisfied with the plea agreement.

PAGE 3

RANGEL 117

MILKE NSB030223

**MICHAEL SCOTT RANGEL**
**Defendant**

CAUSE NO. CR8908086

Larry Turoff, Deputy County Attorney, recommends the plea agreement be followed.

Attempts to contact Lawrence Kazan, attorney for the defendant, were unsuccessful.

**ARREST HISTORY:**

### JUVENILE:

The defendant avows to no prior juvenile arrests. Due to the defendant's mature age, this writer was unable to substantiate this avowal.

### ADULT:

The following information was obtained from records provided by the F.B.I., Arizona Department of Public Safety, Maricopa County Sheriff's Office, Phoenix Police Department, LEJIS, the state of Kansas, and avowals from the defendant:

| ARREST DATE | PLACE OF ARREST | CRIME/DISPOSITION |
|---|---|---|
| 08-03-89 | Phoenix, AZ | First degree murder/Present offense. |

**SOCIAL HISTORY:** Unless otherwise noted, the following information was provided by the defendant:

**Family:** The defendant was born to the union of John and Alice Rangel. He has one younger brother, Timothy Rangel, age twenty-five. The defendant's family resides in Topeka, Kansas. The defendant did not experience any problems with his upbringing.

**Education:** The defendant graduated from Highland Park High School in Topeka, Kansas, in 1981. He attended Washburn University in Topeka, Kansas, for one semester and studied liberal studies. The defendant attended Kaw Area Vocational Tech in Topeka, Kansas, in 1982 and received a vocational certificate for photography and journalism graphics.

A Word Recognition Aptitude Test administered to the defendant indicates a reading ability above the sixth grade level.

**Employment:** The defendant co-owns Prosweep, Inc.

| EMPLOYER | CITY/STATE | KIND OF WORK | DATES FROM/TO |
|---|---|---|---|
| Prosweep, Inc. | Chandler, AZ | Owner | 1986/08-89 |

PAGE 4

**RANGEL 118**

MILKE

EXHIBIT 1k

**MICHAEL SCOTT RANGEL**
      **Defendant**
                                    **CAUSE NO. CR8908086**

Subia Color       Phoenix, AZ    Photo Technician    1985/1986

**Substance Use:** The defendant first used alcohol at age eighteen. His last use was in July of 1989. He indicated he drinks socially approximately two times per month, at which time he will consume two or three glasses of wine. The defendant has not received counseling for a drinking problem nor does he feel he needs such counseling.

The defendant avows that he has never used any illicit drug.

**Marital:** The defendant's relationship with Kathleen Henderson began in 1980. They planned on marrying on September 9, 1989. He indicated that they occasionally had arguments, but they did not have major problems. Prior to this incident, their relationship was excellent.

**FINANCIAL STATUS AND EVALUATION:**

      The defendant is not currently receiving income. His assets total $98,070.00 for cash savings, cash on hand, income tax returns, and ownership in Prosweep, Inc. The defendant's only expense is a $35,000.00 business loan which requires him to pay $2,500.00 per month.

      The plea agreement in this cause does not stipulate to restitution. Restitution is owed to the family of the victim in the total of $11,548.00. It is recommended that the plea agreement be amended to reflect this amount.

      The probation officer has considered the following factors in determining the manner of payment:

1. Defendant's age: twenty-seven.
2. Defendant's income: zero.
3. Defendant's expenses: $2,500.00.
4. Defendant's assets: $98,070.00.
5. Defendant's education: vocational certificate.
6. Defendant's obligation to support dependents: none.
7. Defendant's employment history: good.
8. Defendant's prospects for employment: poor.
9. Others: none.

      Based on the above, it is recommended the defendant pay restitution through the Clerk of the Court per the attached restitution ledger sheet.

PAGE 5

**RANGEL 119**       EXHIBIT 1k       **MILKE_NSB030225**

MICHAEL SCOTT RANGEL
            Defendant

CAUSE NO. CR8908086

---

DISCUSSION AND EVALUATION:

The present offense commenced as an argument between the defendant and his fiancee, the victim. This argument escalated to the point that the defendant lost control and shot the victim. The significance of this incident is that it ended in the death of the victim.

The defendant clearly poses a threat to the community. The defendant's loss of control resulted in the tragic death of his fiancee. It is recognized that the defendant's actions were atypical, and he lacks a criminal record. However, the fact remains that he carelessly took the life of Kathleen Henderson.

Community supervision for the defendant is totally inappropriate. Imprisonment in the Arizona Department of Corrections appears to be the best solution for the defendant. This recommendation is supported by the following factors: the offense culminated in the tragic loss of human life; the defendant used a weapon in the commission of this offense; the defendant left the victim without attempting to summons medical assistance in hope of saving the victim's life; the defendant attempted to conceal his role in this offense by filing a false police report and by discarding the victim's personal effects and the murder weapon.

These factors were considered in making the sentencing recommendation:

1.  This offense culminated in the tragic loss of life.
2.  A weapon was used.
3.  The defendant left the scene of the crime without seeking medical assistance for the victim.
4.  The defendant attempted to conceal his involvement in this offense.

RECOMMENDATION:

It is respectfully recommended that the defendant be committed to the Department of Corrections for the presumptive term, pay a felony penalty assessment of $100.00, and pay an $8.00 time payment fee per A.R.S. 12-116, unless all penalties, fines, and sanctions are paid in full on this sentencing date.

It is further recommended the defendant pay restitution per the attached restitution ledger sheet.

PAGE 6

RANGEL 120

EXHIBIT 1k

MILKE_NSB030226

MICHAEL SCOTT RANGEL
      Defendant

CAUSE NO. CR8908086

                The defendant has served 263 days of presentence incarceration.

Respectfully submitted,

I have reviewed and considered
the probation officer's report.

By: _Randy M. Tirado_
Randy M. Tirado
Deputy Adult Probation Officer
261-7467

Judge: _____

Date: _____

RMT:ms:1514u
April 17, 1990

PAGE 7

**RANGEL 121**

EXHIBIT 1k

**MILKE_NSB030227**